**EXHIBIT A**



PROPOSAL PREPARED FOR

# Damian & Valori, LLP

DRAFT

August 16, 2024



**AUGUST 16, 2024**

Kenneth Murena
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131

Dear Kenneth,

Thank you for your consideration and the opportunity to provide information on our services relating to the case styled *Securities and Exchange Commission v. Drive Planning, LLC and Russell Todd Burkhalter,* No. 1:24-cv-03583, in the Northern District of Georgia.

In deference to both you and your firm, **Stretto is willing to offer a 20% discount on fees throughout the duration of this matter**. Please note this discount is reflected in the attached Fee Structure. Our hope is that this pricing concession evidence our desire to work with you on this new matter.

TrustWorks©, our proprietary claims administration and distribution technology, has financial institution level security, including 256-bit AES and SALT encryption to protect sensitive case data and transactions. Our Banking Services Team has over 100 years of cumulative financial-institution experience, facilitating a wide range of bank transactions.  We are adept at working with a diverse group of corporate, legal, and financial professionals as more than 600 firms across the nation rely on Stretto's technology and subject-matter experts to facilitate and simplify every aspect of case management.

Stretto is the only industry-leading restructuring-services provider offering a full suite of cash-management and deposit services.  We leverage long-standing strategic partnerships with UST-approved depositories across all bankruptcy jurisdictions to navigate the numerous administrative requirements related to rapid activation of bank accounts in support of foreign filing entities.

We look forward to working with you and providing the highest level of professional service, allowing you to focus on the more substantive aspects of this matter. Should you have any questions or if I can provide additional information, please do not hesitate to contact me.

Best regards,

Brian Soper
*Managing Director*
847.334.9442 | brian.soper@stretto.com



# Stretto Receivership Services

Court-appointed Receivers face a myriad of complex challenges that may hinder their ability to effectively investigate cases and efficiently distribute recovered assets. These obstacles not only impact Receivers' day-to-day operations but can also cause material delays to the recovery and distribution of monies owed to various parties.

Stretto provides Receivers with a multi-faceted approach to alleviating these burdens while supporting their unique case- and cash-management needs. As a trusted service partner, Stretto offers streamlined workflows, best-in-class technology, and subject-matter experts to facilitate the administrative process so professional advisors can focus on more substantive aspects, bringing cases to a swift resolution.

### Established Banking Partners

In many instances, government-led investigations into allegations of fraud, money laundering or other criminal activity complicate establishing bank accounts. Stretto's nationwide network of partner banks are accustomed to these matters, allowing our clients to quickly establish bank accounts. Stretto clients receive competitive interest rates with discounted activity fees and maintenance costs. Our partner banks do not require any term to deposits, providing clients' full liquidity.

Stretto's team: (1) assists clients with any operational needs and establishes customized workflows to ensure best practices for effectively managing multiple engagements; (2) provides banking clients with in-house banking-support professionals with specialized funds management expertise; and (3) assigns each client dedicated regional directors with in-depth knowledge of the rules and requirements for government-appointed receiverships.

### Technology Solutions & Streamlined Processes

Understanding the importance of day-to-day operational efficiency, Stretto developed a proprietary software allowing clients to streamline workflows and manage online processes. With customized features designed to meet the needs of Receivers, we provide a case-administration platform to facilitate accounting transactions, manage documents, and perform other administrative tasks. Receivers are able to create, customize and submit reports to comply with federal and state court requirements. The calendar feature helps manage process time-frames and ensure that deadlines are met for submitting reports and other required documents.

Stretto's software allows clients to accomplish a multitude of important banking tasks, including viewing cleared checks, opening additional accounts within minutes, creating reserve accounts, and sending and receiving wire transfers. Receivers rely on Stretto's software to easily manage accounts with online access to balances, transactions, and statements.

# Corporate Restructuring

Stretto's case management team facilitates the corporate-restructuring process from start-to-finish so busy corporate restructuring professionals can focus on more substantive case aspects. Clients value Stretto's subject matter experts for anticipating needs and simplifying tasks by leveraging decades of hands-on experience working on some of the industry's most notable Chapter 11 engagements.

We handle every detail so you do not stress any detail.

### LEGAL NOTICING
Stretto provides the latest deadline for same-day turnaround on overnight packages and messenger deliveries. We offer affidavits/ certificates of service, custom-merged data on court forms, and document tracking with real-time updates.

### SCHEDULES & SOFAS
Stretto understands this process because we handle it day-in-and-day-out. Our Schedules & SOFA team leads complex data aggregation projects for compilation of Schedules & SOFA and draft generation.

### CLAIMS PROCESSING, ANALYSIS & RECONCILIATION
Stretto creates and maintains a claims database, processes and distributes proofs of claim, and provides real-time updates and reports.

### SOLICITATION, BALLOTING & TABULATION
Utilizing best-in-class technology, Stretto's balloting software allows an unlimited number of votes to be cast - in multiple cases - at the same time. Our secure, online platform provides users with an electronic ballot and password, enabling an easy voting process.

### DEPOSITORY, TREASURY, DISTRIBUTION AGENT & ESCROW SERVICES
Leveraging a national network of UST-approved banks, Stretto expertly navigates the numerous requirements such as KYC to help clients quickly open and manage multiple bank accounts, protect principal, and maximize returns.

### COMMUNICATIONS & CALL CENTER MANAGEMENT
Clients deploy Stretto's Call Center services to track, record, and report all inbound and outbound call center activity related to a specific case. Stretto utilizes scripted responses to ensure inquiries are addressed according to case developments.

### PUBLIC SECURITIES SERVICES
Stretto works closely with domestic and international companies and their advisors to assist in the successful consummation of all aspects of the corporate events including consent solicitations as well as debt tenders and exchanges.





# Stretto Receivership Network

Stretto recognizes that government-enforcement actions present unique, complex, and administrative challenges to court-appointed fiduciaries. Our experts leverage subject-matter expertise and sophisticated - yet practical - experience to effectively facilitate even the most complicated receivership engagements.

Stretto's partnerships with Receivers alleviate operational burdens, minimize interruptions to business operations, and help clients maximize productivity. As a trusted service partner, Receivers rely on Stretto to facilitate all elements of the case-management process so they can focus on more substantive aspects, bringing cases to a swift resolution.

## REPRESENTATIVE PARTNERSHIPS

| | |
|---|---|
| American Fiduciary Services LLC | McCarter & English LLP |
| Amy Mitchell, Trustee | Moglia Advisors |
| AZBK Trustee | Newpoint Advisors Corporation |
| Bononi & Company P.C. | Parr Brown Gee & Loveless |
| Capstone Partners | Ray Quinney & Nebeker P.C. |
| Damian & Valori LLP | Rocky Mountain Advisory |
| Development Specialists Inc. | Roderick, Linton & Belfance |
| EHI | Salter McGowan Sylvia & Leonard Inc. |
| FTI Consulting Inc. | Saul Ewing LLP |
| Greenberg Traurig LLP | Sommerset Capital |
| Grier Wright Martinez PA | Springer Larsen Greene, LLC |
| Gibbons P.C. | Teneo |
| Insolvency Services Group Inc. | The Law Offices of Craig B. Leavers |
| John Cournoyer, Trustee | The Offices of Steven M. Speier C.P.A. |
| John Mitchell, Trustee | Weiland Golden Goodrich LLP |
| Manty & Associates P.A. | Zeisler & Zeisler PC |



## OUR EXPERTS

# We've Got This

Stretto has over 250 years of combined industry experience supporting every aspect of the corporate-restructuring process. From turnaround experts to restructuring-industry technologists, our team is at the top of the game. After years of working together at KCC, the professionals who changed the claims and noticing industry reunite at Stretto. Our team has successfully led claims-agent engagements from middle-market turnarounds to industry changing mega cases as well as every case size in between.



### Jonathan Carson
Chief Executive Officer

Jonathan serves as co-Chief Executive Officer of Stretto, leading the charge in outlining go-to market strategies and tactics geared toward company growth.

LEARN MORE



### James M. Le
President and Chief Operating Officer

With 20 years of experience in the corporate-restructuring industry, James serves as co-President and Chief Operating Officer directing the day-to-day management of the firm's overall business functions, as well as providing oversight to the Client Services, Technology Development and Banking Services Teams.

LEARN MORE



### Robert Klamser
Chief Revenue Officer

As Chief Revenue Officer, Robert leverages a long history of extensive bankruptcy experience, business acumen, and an enduring entrepreneurial spirit to effectively lead Stretto's revenue-generation strategy.

LEARN MORE

STRETTO

DRAFT

OUR EXPERTS

# We've Got This



**Sheryl Betance**
Senior Managing Director

In her role as Senior Managing Director, Sheryl keeps Stretto's Corporate-Restructuring Teams focused on claims and noticing operations and consultative services.

LEARN MORE



**Dan McElhinney**
Senior Managing Director

In his role as Senior Managing Director, Dan is responsible for deploying effective claims-administration solutions, business insights, and operational excellence to our clients.

LEARN MORE



**Brian Soper**
Managing Director

For almost 15 years, Brian has overseen the development and expansion of Stretto's Corporate Restructuring Team. Clients rely on him for his consistent responsiveness and deft approach to identifying solutions to their various banking-related needs.

LEARN MORE



**Aileen Daversa**
Director

Aileen brings nearly two decades of corporate-restructuring expertise to her role as Director. As a former financial advisor, she effectively guides  distressed companies through the restructuring and turnaround process.

LEARN MORE



STRETTO

## OUR PRICING

# Prevailing Rate Structure

| CONSULTING RATES | |
| --- | --- |
| **POSITION** | **HOURLY RATE** |
| **Analyst** | $96 |
| **Associate** | $193 |
| **Senior Associate** | $276 |
| **Director** | $293 |
| **Managing Director** | $336 |
| **Senior Managing Director** | $446 |

| PRINTING & DISBURSEMENT SERVICES | |
| --- | --- |
| **SERVICES** | **PRICING** |
| **Printing** | $0.10 (per image) |
| **Customization/Envelope Printing** | $0.05 (each) |
| **Document Folding and Inserting** | Waived |
| **Postage/Overnight Delivery** | Preferred Rates |
| **Email Noticing** | Waived |
| **Fax Noticing** | $0.10 (per page) |
| **Envelopes** | Varies by Size |

| | |
|---|---|
| **Coordindate and Publish Legal Notices** | Available on Request |

## ELECTRONIC SERVICES

| SERVICES | PRICING |
|---|---|
| Case Website Set-Up | Waived |
| Custom Software, Workflow and Review Resources | Quoted at Time of Request |
| Robotic Process Automation | Varies by Use |
| eDiscovery | Quoted at Time of Request |

## CALL CENTER SUPPORT SERVICES

| SERVICES | PRICING |
|---|---|
| **Case-Specific Voice-Mail Box for Creditors** | Waived |
| **Interactive Voice Response (Per Minute)** | Waived |
| **Monthly Maintenance Charge** | Waived |
| **Management of Call Center (Per Hour)** | Standard Hourly Rates |

## DISBURSEMENT SERVICES

| SERVICES | PRICING |
|---|---|
| **Check Issuance** | $1.25 (per check) |
| **W-9 Mailing and Maintenance of TIN Database** | Standard Hourly Rates |
| **Public Securities** | Quoted at Time of Request |

# Receivership Process Outline

**Key**[1]

*Level 1*: Associate / Senior Associate (Hourly Rate: $275 - $325)

*Level 2*: Director (Hourly Rate: $345)

*Level 3*: Managing Director / Senior Managing Director (Hourly Rate: $395 - $595)

| PROJECT TASK | LEVEL ASSIGNED |
|---|---|
| **CASE ONBOARDING** | |
| ***Website Development*** | |
| • Secure customized URL | Level 1 |
| • Develop & deploy receivership website | Level 1 |
| • Develop with Receiver FAQ and post to website | Level 1 & 2 |
| ***Communications*** | |
| • Develop FAQ to respond to inquiries | Level 1 & 2 |
| • Manage incoming communications | Level 1 & 2 |
| • Create and deploy reports to Receiver | Level 1 |
| ***Initial Noticing*** | |
| • Obtain/validate address info from Receiver | Level 1 |
| • Serve Notice re Appointment of Receiver | Level 1 |
| • Create certificate of service | Level 1 & 2 |

| CLAIM FORM DEVELOPMENT & DEPLOYMENT | |
|---|---|
| **_Claim Portal_** | |
| • Identify claim form requirements with Receiver | Level 2 & 3 |
| • Work with dev. team to create screen mock-ups | Level 2 & 3 |
| • Obtain/integrate Receiver comments | Level 2 & 3 |
| • Develop initial claim form portal for review | Level 2 & 3 |
| • Conduct UAT testing/bug check | Level 1 & 2 |
| **_Claim Procedures Motion_** | |
| • Provide comments to claim procedures motion | Level 2 & 3 |
| • _Claim Filing Notice Campaign_ | |
| • Develop email noticing campaign | Level 1 & 2 |
| • Develop and manage FCM noticing campaign | Level 1 & 2 |
| **_Manage bad mail/unsuccessful_** | |
| • Prepare reports for client | Level 1 & 2 |
| • _Information Management_ | |

[1] This outline reflects how Stretto will assign its primary Case Team to ensure the lowest-cost, qualified team member is assigned to manage each task. Support services, such as print, claim intake, disbursements, and software development, to the extent needed, are not included in this outline, although each group will also adhere to the approach of assigning the lowest-cost, qualified team member to fulfill the services they provide to the Receiver.

| PROJECT TASK | LEVEL ASSIGNED |
|---|---|
| • Update website FAQ | Level 1 & 2 |
| • Post documents to website | Level 1 |
| CLAIM PROCESSING & RECONCILIATION | |
| **_Define & manage claim intake procedures_** | |
| • Initial quality assurance review | Level 1 |
| • Internal escalation | Level 2 |
| • Client escalation | Level 2 & 3 |

| | |
|---|---|
| **_Define & manage claim reconciliation procedures_** | |
| • Initial review | Level 1 |
| • Internal escalation | Level 2 |
| • Client escalation | Level 2 & 3 |
| **_Outreach to investors/creditors_** | |
| • Manage register updates | Level 1 & 2 |
| • Weekly claim reports | Level 1 |
| **_Deploy Notices of Determination_** | |
| • Create certificate of service | Level 1 |
| **DISTRIBUTION** | |
| **_Provide comments to Distribution Plan Motion_** | |
| • Manage distribution information | Level 1 & 2 |
| • Execute distribution | Level 1, 2 & 3 |
| • Create reports | Level 1 & 2 |
| • Manage anti-fraud process | Level 1 & 2 |
| **ADDITIONAL SUPPORT** | |
| • Additional support requested by Receiver | To be determined in consultation with the Receiver |

ABOUT STRETTO

# Who We Are

Stretto leverages subject-matter insight and foresight to ensure fiduciaries are prepared for anything that comes their way. We combine deep-industry expertise, tailored processes, and best-in-class technology to help fiduciaries manage the complexities of case administration and cash management.

Drawing on their varied capabilities as former bankruptcy Attorneys, Trustee Administrators, paralegals, financial services analysts, and computer science experts, Stretto's team partners with clients to ensure busy professionals remain one step ahead of the ever-changing fiduciary landscape.



Click to play video in browser



**ABOUT STRETTO**

# What We Do

---

**CORPORATE RESTRUCTURING**

Understanding the importance of effective collaboration, Stretto's experts work closely with a national network of turnaround professionals to ensure the highest level of client service and seamless case management. Whether your needs involve claims administration, deposit management, or legal noticing, Stretto provides the right solution throughout the entire duration of Chapter 11 cases, from pre-filing support to post-confirmation services.

**BANKRUPTCY SOLUTIONS**

For more than 30 years, Stretto has been at the forefront of the Chapter 7 landscape. We provide bankruptcy Attorneys and Trustees with collaborative tools that increase productivity and maximize efficiency. By connecting more parts of the bankruptcy life cycle than any other service provider, Stretto offers the market the only end-to-end, bankruptcy-technology solution.

**BEST CASE BY STRETTO**

Best Case by Stretto, used to prepare more than 80% of the bankruptcy cases filed nationwide, represents the industry-leading case-preparation and filing software for Attorneys. Providing a myriad of useful and time-saving features, this best-in-class technology simplifies workflows and eases operational burdens.

**TRUSTEE SUITE BY STRETTO**

Trustee Suite by Stretto is a unique blend of case-administration software and professional-level client service to provide Chapter 7 Trustees a complete bankruptcy solution. More than half of U.S. Panel Trustees rely on Trustee Suite for their case-management needs.

**RECEIVERSHIPS**

Receivers often face numerous challenges that may hinder their ability to effectively investigate cases. Stretto leverages a multi-faceted approach to assist federal and state-appointed receivers in recovering assets, identifying creditors, and navigating the claims-reconciliation process. Each client is also assigned a dedicated Regional Director with in-depth knowledge of the rules and requirements for government-appointed receiverships.

**DEPOSIT SERVICES**

Drawing on a strategically-selected, national network of well-capitalized financial institutions, Stretto provides clients with customized deposit-management solutions. Through long-established relationships with UST-approved banks, we offer depository services for debtors needing to comply with section 345(b) of the Bankruptcy Code and Operating Guidelines. In turn, Stretto connects clients with the right banking partner and deploys a tailored technology solution that's right for the deal.





STRETTO

THANK YOU

# We Look Forward To Working With You

**Brian Soper**
*Managing Director*

📞   847.334.9442

✉   brian.soper@stretto.com

# Services Agreement

This Services Agreement (this "**Agreement**") is entered into as of August 19, 2024, between Stretto, Inc. ("**Stretto**") and Kenneth D. Murena as Court appointed receiver (the "**Receiver**") in the case styled *Securities and Exchange Commission v. Drive Planning, LLC et al.*, pending in the United States District Court for the Northern District of Georgia (the "**Action**").

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a) Stretto agrees to provide the Receiver with consulting services regarding (i) legal noticing and maintenance of claims registers, creditor mailing matrices, an electronic platform for filing claims and supporting documents, and claim noticing, claim responses and disputes, disbursements, and administrative support in preparation of notices, claims, and schedules; and (ii) crisis communications, claims analysis and reconciliation, contract review and analysis, case research, public securities, depository management, treasury services, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement), and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b) The Receiver acknowledges and agrees that Stretto will often take direction from the Receiver's representatives, employees, agents and/or professionals (collectively, the "**Receiver Parties**") with respect to providing Services hereunder. The parties agree that Stretto may rely upon, and the Receiver agrees to be bound by, any requests, advice or information provided by the Receiver Parties to the same extent as if such requests, advice or information were provided by the Receiver.

   (c) The Receiver agrees and understands that Stretto shall not provide the Receiver or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a) Stretto will provide the Services on an as-needed basis and upon request or agreement of the Receiver, in each case in accordance with Stretto's Preferred Rate Structure, attached hereto. The Receiver agrees to pay for reasonable out of pocket expenses incurred by Stretto in connection with providing Services hereunder.

   (b) Stretto will bill the Receiver no less frequently than monthly. Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Stretto may require advance or direct payment from the Receiver before the performance of Services hereunder. If any amount is unpaid as of 30 days after delivery of an invoice, the Receiver agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

   (c) In the case of a dispute with respect to an invoice amount, the Receiver shall provide a detailed written notice of such dispute to Stretto within 10 days of receipt of the invoice.

   (d) The undisputed portion of the invoice will remain due and payable immediately upon entry of an order granting Stretto's fee application and the expiration of any applicable objection period under applicable Local Rules. Late charges shall not accrue on any amounts disputed in good faith.

   (e) The Receiver shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Receiver or the Receiver Parties.

(f) The Receiver shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Stretto or paid by Stretto to a taxing authority.

(g) Upon execution of this Agreement, the Receiver will file a motion to employ Stretto in the Action. No fees or expenses shall be incurred under this Agreement until entry of an order granting the Receiver's motion to employ Stretto. Upon entry of an order granting the Receiver's motion, the Receiver shall pay Stretto an advance of $15,000. Stretto may use such advance against unpaid fees and expenses hereunder. Stretto may use the advance against all fees and expenses upon entry of an order granting Stretto's fee application and the expiration of any applicable objection period under applicable Local Rules. The Receiver shall upon Stretto's request, which request may take the form of an invoice, replenish the advance to the original advance amount. Stretto may also, at its option hold such advance to apply against unpaid fees and expenses hereunder.

(h) Stretto reserves the right to make reasonable increases to the Rate Structure on a periodic basis. If any such increase represents an increase greater than 10% from the previously effective level, Stretto shall provide 30 days' notice to the Receiver of such increase.

(i) Payments to Stretto under the terms of this Agreement for services rendered, may be remitted by Receiver using either (or both) of the following methods:

> **Wire Transmission**
> Bank Name – Banc of California
> Bank Address – 110 West A Street, Suite 100, San Diego, CA 92101
> ABA – 122238200
> Account Number – 1000681781
> Account Name – Stretto, Inc.
>
> **Check**
> Stretto
> Attn: Accounts Receivable
> 410 Exchange, Suite 100
> Irvine, CA 92602

## 3. Retention in Bankruptcy Case

(a) If the Receiver commences a case pursuant to title 11 of the United States Code (the "**Bankruptcy Code**"), the Receiver promptly shall file any necessary application with the Bankruptcy Court to retain Stretto to provide the Services. The form and substance of such applications and any order approving them shall be reasonably acceptable to Stretto.

(b) If the Receiver seeks authorization in a chapter 11 case to obtain postpetition financing, including debtor-in-possession loans or use of cash collateral, the Receiver shall include Stretto's fees and expenses incurred hereunder in any professional compensation carve-out.

(c) If any Receiver chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Stretto will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

## 4. Confidentiality

(a) The Receiver and Stretto agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the receiving party's possession or known to it, independently

© 2024 Stretto, Inc., All Rights Reserved. Federal Receiver Services Agreement v.2024.1, July 19, 2024.

developed by the receiving party, lawfully obtained by the receiving party from a third party or required to be disclosed by law, then the receiving party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, (i) such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time, if possible, to seek any remedy available under applicable law to prevent disclosure of the information; and (ii) such party will limit such disclosure to the extent such party's counsel in good faith determines such disclosure can be limited.

## 5.  Property Rights

Stretto reserves to itself and its agents all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "**Property**") furnished by Stretto for itself or for use by the Receiver hereunder. The foregoing definition of Property shall include any and all data, from any source, downloaded, stored and maintained by Stretto's technology infrastructure. Fees and expenses paid by the Receiver do not vest in the Receiver any rights in such Property. Such Property is only being made available for the Receiver's use during and in connection with the Services provided by Stretto hereunder.

## 6.  Bank Accounts

At the request of the Receiver or the Receiver Parties, Stretto shall be authorized to establish accounts with financial institutions in the name of and as agent for the Receiver to facilitate cash management and distributions pursuant to a Court-approved plan of distribution or other transaction. To the extent that certain financial products are provided to the Receiver pursuant to Stretto's agreement with financial institutions, Stretto may receive compensation from such institutions for the services Stretto provides pursuant to such agreement.

## 7.  Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to other party; or (ii) immediately upon written notice for Cause (as defined herein). "**Cause**" means (i) gross negligence or willful misconduct of Stretto that causes material harm to the Receiver's duties under the Receivership Order, (ii) the failure of the Receiver to pay Stretto invoices for more than 60 days from the date of entry of an order granting Stretto's fee application and the expiration of any applicable objection period under applicable Local Rules, or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Stretto where Stretto reasonably believes it likely will not be paid.

(b) If this Agreement is terminated after Stretto is retained pursuant to Court order in the Action, the Receiver promptly shall seek entry of a Court order discharging Stretto of its duties under such retention, which order shall be in form and substance reasonably acceptable to Stretto.

(c) If this Agreement is terminated, the Receiver shall remain liable for all amounts then accrued and/or due and owing to Stretto hereunder.

(d) If this Agreement is terminated, Stretto shall coordinate with the Receiver and, to the extent applicable, the clerk of the Court, to maintain an orderly transfer of record keeping functions, and Stretto shall provide the necessary staff, services and assistance required for such an orderly transfer. The Receiver agrees to pay for such Services pursuant to the Rate Structure.

**8. No Representations or Warranties**

Stretto makes no representations or warranties, express or implied, regarding the services and products sold or licensed to the Receiver hereunder or otherwise with respect to this Agreement, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity. Notwithstanding the foregoing, if the above disclaimer is not enforceable under applicable law, such disclaimer will be construed by limiting it so as to be enforceable to the extent compatible with applicable law.

**9. Indemnification**

(a) To the fullest extent permitted by applicable law, the Receiver shall indemnify and hold harmless Stretto and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "**Indemnified Parties**") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "**Losses**") resulting from, arising out of or related to Stretto's performance hereunder. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b) Stretto and the Receiver shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c) The Receiver's indemnification of Stretto hereunder shall exclude Losses resulting from Stretto's negligence, willful misconduct, or failure to comply with the terms of this Agreement or Court order entered in the Action.

(d) The Receiver's indemnification obligations hereunder shall survive the termination of this Agreement.

**10. Limitations of Liability**

Except as expressly provided herein, Stretto's liability to the Receiver for any Losses, unless due to Stretto's negligence, willful misconduct, or failure to comply with the terms of this Agreement or Court order entered in the Action, shall be limited to the total amount paid by the Receiver to Stretto for the portion of the particular work that gave rise to the alleged Loss. In no event shall Stretto be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

**11. Receiver Data**

(a) The Receiver is responsible for, and Stretto does not verify, the accuracy of the programs, data and other information it or any Receiver Party submits for processing to Stretto and for the output of such information, including, without limitation, with respect to preparation of notices, schedules, and claims (collectively, "**Notices**"). Stretto bears no responsibility for the accuracy and content of the Notices, and the Receiver is deemed hereunder to have approved and reviewed all Notices filed or served on its behalf.

(b) The Receiver agrees, represents, and warrants to Stretto that before delivery of any information to Stretto: (i) the Receiver has full authority to deliver such information to Stretto; (ii) it has complied with all applicable data protection laws in the collection and retention of personal data (including providing any required notices and/or disclosures to data subjects, consumers, or other necessary parties); and (iii) Stretto is authorized to use such information to perform Services hereunder and as otherwise set forth in this Agreement.

(c) The Receiver also agrees and represents that, before delivery of any information to Stretto that is personal data subject to the GDPR or other data protection laws, Receiver shall notify Stretto of the impending delivery and request any modification to this Agreement that Receiver believes may be required by the applicable data protection laws with respect to that personal data.  For the avoidance of doubt, Stretto shall not be required to comply with data protection laws and regulations unless and until they take effect during the term of the Agreement and are applicable to the information Receiver delivers to Stretto.  Personal data shall have the meaning assigned to the terms "personal data" and/or "personal information" under the applicable data protection laws.

(d) If Receiver notifies Stretto of the applicability of the GDPR to personal data delivered pursuant to this Agreement, the parties agree that the Agreement shall be subject to the terms set forth in the GDPR Addendum attached hereto as **Exhibit A** and incorporated herein in its entirety by reference.

(e) Any data, storage media, programs or other materials furnished to Stretto by the Receiver may be retained by Stretto until the Services provided hereunder are paid in full. The Receiver shall remain liable for all fees and expenses incurred by Stretto under this Agreement as a result of data, storage media or other materials maintained, stored, or disposed of by Stretto. Any such disposal shall be in a manner requested by or acceptable to the Receiver; provided that if the Receiver has not utilized Stretto's Services for a period of 90 days or more, Stretto may dispose of any such materials in a manner to be determined in Stretto's sole reasonable discretion, and be reimbursed by the Receiver for the expense of such disposition, after giving the Receiver 30 days' notice. The Receiver agrees to initiate and maintain backup files that would allow the Receiver to regenerate or duplicate all programs, data, or information provided by the Receiver to Stretto.

(f) Notwithstanding the foregoing, if Stretto is retained pursuant to Bankruptcy Court order, disposal of any Receiver data, storage media, or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

**12. California Consumer Privacy Act.**

(a) Definitions.  In this Section 12,
   (i)   "**CCPA**" means the California Consumer Privacy Act of 2018, including amendments and final regulations;
   (ii)  "**Personal Information**" has the same meaning given to such term under section 1798.140 of the CCPA and is limited to Personal Information contained in any Receiver data provided to Stretto by the Receiver in order for Stretto to provide Services under this Agreement; and
   (iii) "**Commercial Purposes**", "**Sell**", "**Share**", "**Business**", and "**Service Provider**" have the same meanings assigned to them in section 1798.140 of the CCPA.

(b) Relationship Between the Parties. To the extent the Receiver is considered a Business under the CCPA, and subject to the terms of this Section 12, Stretto will act solely as Receiver's Service Provider with respect to Personal Information.

(c) Restrictions. Stretto will not: (i) Sell or Share Personal Information, (ii) retain, use, or disclose Personal Information for any purpose other than for the specific purpose of performing the Services specified in this Agreement, including retaining, using, or disclosing Personal Information for any Commercial Purpose other than providing the Services specified in this Agreement unless otherwise permitted under the CCPA; (iii) retain, use, or disclose the Personal Information outside the direct business relationship between Stretto and the Receiver; or (iv) combine the Personal Information that Stretto receives from, or on behalf of, the Receiver with Personal Information that it receives from, or on behalf of, another

person or persons, or collects from its own interaction with a consumer, except as permitted by CCPA.

## 13. Non-Solicitation

The Receiver agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Stretto during the term of this Agreement and for a period of 12 months after termination thereof unless Stretto provides prior written consent to such solicitation or retention.

## 14. Force Majeure

Whenever performance by Stretto of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Stretto's reasonable control, then such performance shall be excused.

## 15. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 16. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators named in accordance with such rules. The arbitration shall be conducted in the English language in Irvine, California in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon commencement of any chapter 11 case(s) by the Receiver, any disputes related to this Agreement shall be decided by the bankruptcy court assigned to such chapter 11 case(s).

## 17. Integration: Severability; Modifications: Assignment

(a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

(b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

(c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Receiver and an officer of Stretto.

(d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Stretto may assign this Agreement to a wholly-owned subsidiary or affiliate without the Receiver's consent.

## 18. Electronic Signatures; Effectiveness of Counterparts

This Agreement may be executed with electronic signatures using DocuSign or a similar service that provides a complete, automated history of the sending and signing, including key event timestamps. If the Parties execute this Agreement electronically, they agree that their electronic signatures are the legally binding equivalent to their handwritten signatures.  This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

## 19. Notices

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

If to Stretto:

Stretto
410 Exchange, Ste. 100
Irvine, CA 92602
Attn: Sheryl Betance
Tel: 714.716.1872
Email: sheryl.betance@stretto.com

If to the Receiver:

Kenneth D. Murena
Damian Valori Culmo
1000 Brickell Avenue, Ste. 1020
Miami, FL 3313
Tel: 305.371.3960
Email: kmurena@dvcattorneys.com

With a copy to:

Mary Dhanji
Damian Valori Culmo
1000 Brickell Avenue, Ste. 1020
Miami, FL 3313
Tel: 305.371.3960
Email: mdhanji@dvcattorneys.com

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement effective as of the date first above written.

STRETTO, INC.

_____

By:

Title:

KENNETH D. MURENA, AS RECEIVER FOR DRIVE PLANNING, LLC

_____

By:

Title:

**STRETTO**

**Exhibit A**

**GDPR Addendum**

This GDPR Addendum is a part of the Services Agreement (the "**Agreement**") by and between Stretto (the "**Processor**") and the Receiver (together, the "**Parties**") only if Receiver notifies Processor in advance of processing relevant data that such data is subject to the GDPR pursuant to Paragraphs 11(c) and 11(d) of the Agreement[1].

**RECITALS**

**WHEREAS**,

(A)     The Processor and the Receiver have agreed to the following terms regarding the Processing of Receiver Personal Data.

(B)     The Receiver acts as a Controller of the Receiver Personal Data.

(C)     The Receiver wishes to subcontract certain Services, pursuant to the Agreement, which imply and require the processing of personal data, to the Processor.

(D)     The Receiver instructs the Processor to process Receiver Personal Data.

(E)     The Parties seek to implement a data processing agreement that complies with the requirements of the current legal framework in relation to data processing and with the Regulation (EU) 2016/679 of the European Parliament and of the Council of 27 April 2016 on the protection of natural persons with regard to the processing of personal data and on the free movement of such data, and repealing Directive 95/46/EC (General Data Protection Regulation or "**GDPR**").

**NOW THEREFORE**, the Receiver and the Processor agree as follows:

1.      **Definitions.**  The parties agree that the following terms, when used in this GDPR Addendum, shall have the following meanings.

(a)     "**Addendum**" shall mean this GDPR Addendum;

(b)     "**Data Protection Laws**" means EU Directive 95/46/EC, as transposed into domestic legislation of each Member State and as amended, replaced or superseded from time to time, including by the GDPR and laws implementing or supplementing the GDPR;

(c)     "**Receiver Personal Data**" means any Personal Data Processed by the Processor or a Subprocessor on behalf of the Receiver pursuant to or in connection with the Agreement, and may include, for example, Personal Data of Receiver's employees, clients, customers, creditors, equity interest holders, or counter-parties;

---

[1] Capitalized terms utilized but not defined in the GDPR Addendum have the meanings ascribed to them in the Agreement.

(d)     "**Services**" means the services the Processor provides to the Receiver pursuant to the Agreement;

(e)     "**Subprocessor**" means any person appointed by or on behalf the Processor to process Personal Data on behalf of the Receiver in connection with the Agreement;

(f)     "**Technical and organizational security measures**" means those measures aimed at protecting Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing;

(g)     The terms "**Commission**", "**Controller**", "**Data Subject**", "**Member State**", "**Personal Data**", "**Personal Data Breach**", "**Processor**", "**Processing**", "**Special Categories of Personal Data**", and "**Supervisory Authority**" shall have the same meaning as in the GDPR, and their derivative terms shall be construed accordingly.

2.     **Obligations of the Receiver.**  The Receiver agrees and warrants:

(a)     that the Processing, including the transfer itself, of the Receiver Personal Data has been and will continue to be carried out in accordance with the relevant provisions of the applicable Data Protection Laws (and, where applicable, has been notified to the relevant authorities of the Member State);

(b)     that it has instructed and throughout the duration of the Services will instruct the Processor to process the Receiver Personal Data transferred only on the Receiver's behalf and in accordance with the applicable Data Protection Laws, the Agreement, and this Addendum;

(c)     that the Processor will implement appropriate technical and organizational security measures with respect to the Personal Data;

(d)     that after assessment of the requirements of the applicable Data Protection Laws, the technical and organizational security measures implemented by Processor are appropriate to protect the Receiver Personal Data against accidental or unlawful destruction or accidental loss, alteration, unauthorized disclosure or access, in particular where the processing involves the transmission of data over a network, and against all other unlawful forms of processing, and that these measures ensure a level of security appropriate to the risks presented by the processing and the nature of the data to be protected having regard to the state of the art and the cost of their implementation;

(e)     that it will ensure compliance with the technical and organizational security measures; and

(f)     that the Receiver Personal Data transferred to Processor does not include or involve any special categories of data, as defined by Article 9 of the GDPR.

3.    **Obligations of the Processor.**  The Processor agrees:

(a)    to comply with the Data Protection Laws;

(b)    to process the Receiver Personal Data only on behalf of the Receiver and in compliance with the Receiver's instructions and this Addendum unless required to do so by Data Protection Laws to which Processor is subject; in such a case, the Processor shall inform the Receiver of that legal requirement before processing, unless that law prohibits such information on important grounds of public interest; if Processor cannot comply with the Receiver's instructions, it agrees to inform promptly the Receiver of its inability to comply with such instructions, in which case the Parties shall work together in good faith to resolve Processor's inability to process Personal Data pursuant to the Receiver's instructions for no less than thirty (30) days, and failing resolution, Receiver is entitled to suspend the processing of Personal Data and/or terminate the Agreement;

(c)    that it has implemented reasonable and appropriate technical and organizational security measures before processing the Receiver Personal Data;

(d)    that it will promptly notify the Receiver about:

(i)    any legally binding request for disclosure of the Receiver Personal Data required by law, subpoena, warrant, court order, government agency, or law enforcement unless otherwise prohibited by law, subpoena, warrant, court order, government agency, or law enforcement;

(ii)    any Personal Data Breach ; and

(iii)    any request received directly from any Data Subject and shall not otherwise respond to such request, unless required by Data Protection Laws;

(e)    to respond promptly to reasonable inquiries from the Receiver relating to Processor's processing of the Receiver Personal Data and to abide by the advice of the supervisory authority with regard to the Processing of the Receiver Personal Data;

(f)    to treat all confidential information and/or Receiver Personal Data received by Receiver in accordance with the confidentiality provisions in the Agreement.  Any Subprocessor authorized by Processor or the Receiver shall contractually agree to maintain the confidentiality of such information or be under an appropriate statutory obligation of confidentiality; and

(g)    that it shall have the Receiver's authorization to use Sub-processors from an agreed list and shall specifically inform the Receiver in writing of any intended changes to that list through the addition or replacement of Sub-processors at least thirty (30) days in advance, thereby giving Receiver sufficient time to be able to object to such changes prior to the engagement of the Sub-processor(s). The data importer shall provide the data exporter with the information necessary to enable the data exporter to exercise its right to object.

4.    **Obligations after Termination of Personal Data Processing Services.**

STRETTO

(a)     The Parties agree that within 10 business days of the termination of the Agreement or provision of Services, the Processor and any Subprocessor shall, at the choice of the Receiver, return all Receiver Personal Data and the copies thereof to the Receiver or shall destroy all the Receiver Personal Data and notify the Receiver that it has done so, unless prohibited by applicable law, subpoena, warrant, court order, government agency, or law enforcement.   In that case, the Processor will abide by the confidentiality provisions in the Agreement and will not further process the Receiver Personal Data.

(b)     The Processor and any Subprocessor warrant that upon request of the Receiver and/or of the supervisory authority, it will submit its data-processing facilities for an audit of the technical and organizational security measures.

5.    **Notices.**

(a)     All notices and communications given under this Addendum must be delivered as provided for by the Agreement.

*Remainder of page is intentionally blank.*