# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

    **Plaintiff,**

**v.**

                                    **Civil Action No. 1:24-cv-03583-VMC**

**DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,**

    **Defendants,**

**and**

**JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,**

    **Relief Defendants.**

_____/

## RECEIVER'S INITIAL STATUS REPORT

Kenneth D. Murena, the court-appointed Receiver (the "Receiver") in the above-captioned enforcement action, submits his first status report setting forth his activities and efforts to fulfill his duties under the Order Appointing Receiver [ECF No. 10] (the "Appointment Order") for the period from the date of appointment, August 13, 2024, through September 30, 2024 (the "Reporting Period").

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ......................................................................................4

II.     COMPLAINT, ENTRY OF PRELIMINARY INJUNCTION, AND
        APPOINTMENT OF RECEIVER ..........................................................10

        A.      Preliminary Injunction...........................................................10

        B.      Appointment and Duties of Receiver......................................11

III.    THE RECEIVER'S EFFORTS TO FULFILL HIS DUTIES UNDER
        THE APPOINTMENT ORDER ..............................................................12

        A.      Receiver's Employment of Professional.................................12

        B.      Securing Books and Records of Drive Planning ....................13

        C.      Recovery of Drive Planning's Records and Funds from Financial
                Institutions and Securing Funds in Fiduciary Accounts for
                Receivership Estate ................................................................17

        D.      Real Property, Businesses, and Personal Property in Which
                Receivership Estate Has an Interest.......................................19

                i.      Real Property and Businesses ....................................20

                        a.  Real Properties and Businesses in Georgia ........20

                            1.  The Burkhalter Ranch, Staurolite Barn, and
                                TBR Supply House .....................................22
                            2.  TBR Outdoor Supply, LLC..............................22

                        b.  Real Properties and Businesses in Florida............23

                            1.  Rental Properties ........................................23
                            2.  Club 201 at the Detroit .................................24

c.  Real Property in Indiana ......................................................24
d.  Real Property in Mexico ....................................................25

e.  Real Property Owned or Occupied by Third-Parties..........30

f.  Insurance Covering Real Property and Businesses ............33

g.  Marketing of Real Property and Businesses for Sale .........34

ii.  Personal Property ......................................................................36

a.  Personal Property Owned, Used, and Sold by The
    Burkhalter Ranch Corporation.............................................36

b.  "Live More" Yacht .............................................................39

c.  Vehicles...............................................................................41

d.  Interests in Private Jets and Lease Agreements with
    NetJets, Inc. ........................................................................43

e.  Furniture for Properties in Georgia and Florida .................44

E.  Lawsuits Filed Against Drive Planning ............................................44

F.  Known Investors and Creditors.........................................................47

G.  Identifying and Pursuing Liquidated and Unliquidated Claims ........51

IV.  CASH ON HAND AND ACCRUED EXPENSES OF ESTATE ................53

V.  CONCLUSION....................................................................................54

## I.  **INTRODUCTION**

Since the August 13, 2024 appointment of the Receiver, significant progress has been made in identifying, securing, and recovering assets for the benefit of the Receivership Estate. To date, the Receiver has taken control of more than $51 million in bank accounts of Drive Planning, LLC ("Drive Planning"), seized and liquidated over $1.1 million in cryptocurrency held by Defendant Russell Todd Burkhalter, obtained $42,000 traceable to Drive Planning from the trust account of counsel for an agent/advisor of Drive Planning, and deposited all such funds in FDIC-insured fiduciary accounts at reputable financial institutions earning significant interest.  During the Reporting Period, the Estate earned nearly $193,000 in interest on the funds held in the fiduciary accounts.  As of the end of the Reporting Period, the Receiver held $52,460,102.45 in cash on hand in these fiduciary accounts, and $47,048.65 in operating and escrow accounts for certain rental properties of the Estate.

Moreover, the Receiver has marshaled control of at least $35 million worth of real property located in Florida and Georgia and secured the turnover of ownership and control of a luxury condominium unit in Mexico with an estimated market value in excess of $4 million and a condominium unit in St. Petersburg, Florida valued at more than $2.5 million.  The Receiver is operating the various rental properties owned by Drive Planning, including two multi-family properties and a tri-plex in

Florida, working with Relief Defendant Jacqueline Burkhalter to manage the cattle ranch, western supply store, and an event space business in Georgia owned by certain Relief Defendants, monitoring accounts used for such businesses, and monitoring the finances of a bar in Florida owned by Mr. Burkhalter. The Receiver also worked on confirming that all properties and businesses have appropriate insurance and binding policies for any uninsured properties to the extent possible, investigated the status of tax payment for the properties and paid past due tax liabilities, and selected experienced and reputable realtors to market the various real properties and businesses for sale and began marketing efforts.

In the course of his investigation, the Receiver discovered various real estate and personal property that were purchased with investor funds but are currently owned or controlled by third parties, insiders, or affiliates of the Defendants. During the Reporting Period, the Receiver and his counsel took strategic steps to preserve the Estate's interests in those assets and commenced discussions with the parties in possession of the assets or their respective counsel. Further, the Receiver identified various loans that Drive Planning made to third parties and insiders with investor funds, some of which are secured by real properties owned and/or possessed by those parties, so the Receiver's counsel contacted those individuals and demanded the past due loan payments or turnover of the properties. Additionally, the Receiver took control of a 70-foot yacht owned by Mr. Burkhalter, valued at nearly $3 million,

obtained Mr. Burkhalter's agreement to its sale with the proceeds being remitted to the Estate, and located an experienced broker to market the yacht for sale. And the Receiver obtained Mr. Burkhalter's consent to the sale of a luxury automobile and a pickup truck with the proceeds going to the Estate and began marketing the automobile for sale and investigating the equity in the truck. A list of all known assets in which the Receivership Estate has an interest, noting their estimated values, is attached as **Exhibit A**.

Also, during his investigation, the Receiver discovered that significant transfers of funds and other assets (including real properties) were made to third parties, insiders, and affiliates of Drive Planning who did not appear to have provided equivalent value to Drive Planning and/or who may have facilitated the misconduct and contributed to the investor losses that are the subject of this enforcement action. The Receiver began investigating the claims that the Estate may have against those parties, gathering relevant information and documents among Drive Planning's records and sending out subpoenas to various individuals and entities requesting the production of records.

Based on his review of the Drive Planning's computers, interviews of its administrator and other employees, and discussions with a forensic accounting firm hired by Drive Planning shortly before the commencement of this enforcement action, the Receiver confirmed that Drive Planning did not manage its finances or

business operations through, or maintain its financial records on, a formal accounting system such as QuickBooks. Instead, Drive Planning's administrator attempted to keep track of its finances and operations through an Excel spreadsheet, which the Receiver discovered included a multitude of erroneous, unclear, or incomplete entries. In addition, Drive Planning did not prepare or file any tax returns for any of the years of its operation. This presented significant challenges to the Receiver and his professionals to understanding Drive Planning's finances and operations and identifying its assets, records, and information necessary for the Receiver to fulfill his duties under the Appointment Order.

The Receiver and his forensic accountant attempted to piece together the fragments of vague and incomplete information in the Excel spreadsheet, the financial information and records scattered and haphazardly stored in Drive Planning's offices and on its computers and cloud drive, the information in its ADP account, and the business records saved in its DocuSign account, to understand Drive Planning's operations and transactions with various third parties, insiders, and affiliates, to identify claims the Estate may have against such parties, to discover additional assets of Drive Planning, or assets traceable to investors, and to confirm transfers between investors and Drive Planning.

The Receiver and his forensic accountant concluded that Drive Planning's accounts would need to be reconstructed utilizing the bank records for its various

accounts. Accordingly, the Receiver issued subpoenas and demand letters to the banks at which Drive Planning held accounts requesting the records necessary to perform the reconstruction of accounts. In addition, the Receiver sent letters to various third parties believed to possess records or assets of Estate requesting information and documents needed for the reconstruction.

To complete the reconstruction of accounts, and to determine the amounts that investors transferred to, received back from, and lost as a result of their investments with, Drive Planning, it is necessary to obtain from the investors information and documents regarding their investments and returns. Accordingly, the Receiver, with Court-approval, engaged the technology company and noticing and claims agent Stretto (i) to set up a secure online portal through which investors can upload their information and documents regarding their investments and losses, (ii) to send out notices of the portal and a link with access and upload instructions to all of the approximately 2,400 investors, and (iii) to provide technical support with uploading their information and documents. This collection of information and documents will significantly streamline any future claims process that the Court may approve in this Receivership.

Finally, the Receiver set up a website (www.driveplanningreceivership.com) on which he is posting information regarding the enforcement action and Receivership, important court filings and orders, frequently asked questions and

answers, and other information.  The Receiver also established a dedicated telephone number and email address through which investors can communicate with the Receiver's office.  And the Receiver sent out letters to all known investors notifying them of the enforcement action and Receivership and providing pertinent information, including the website address, the telephone number, and the email address.    Since the first week of the Receivership, attorneys and staff at the Receiver's office have been communicating with investors, in both English and Spanish,[1] through the Receivership telephone number and email address, fielding thousands of calls and emails from investors and assisting them to locate and provide the requested information and records through the secure online portal.    The Receiver and his counsel also have been communicating and cooperating with attorneys who represent significant numbers of investors.

The Receiver will continue to work diligently with his team of professionals to fulfill his duties under the Appointment Order and report his efforts and activities in status reports and other court filings until such time as the Court may discharge him of his duties.

---

[1] It is estimated that approximately one-third of the investors only speak, or prefer to speak, Spanish.

## II. COMPLAINT, ENTRY OF PRELIMINARY INJUNCTION, AND APPOINTMENT OF RECEIVER

On August 13, 2024, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC and Russell Todd Burkhalter, alleging they operated a massive Ponzi scheme under the guise of a real estate investment program known as Real Estate Acceleration Loan ("REAL"). *See* ECF No. 1.

### A.    Preliminary Injunction

The SEC also filed an Expedited Motion for Emergency Relief to prevent the dissipation of assets and the continued defrauding of investors. *See* ECF No. 2.   In its motion, the SEC presented evidence to show that, from September 2020 through June 2024, over 2,500 investors residing in at least 48 states invested approximately $372 million based on promises of unrealistically high returns from real estate ventures. *See id*. at pp. 5-6.  Defendants primarily used new investor funds to pay earlier investors, in typical Ponzi fashion, with more than $280 million still being owed to investors. *See id*. at pp. 4-6.  Based on the foregoing, and other evidence presented in the SEC's motion, the Court found that the SEC presented sufficient evidence to support a *prima facie* case that Mr. Burkhalter and Drive Planning had violated federal securities laws by making material misrepresentations and misappropriating investor funds. *See* ECF No. 11 at ¶ 2.  The Court further found that the Relief Defendants improperly received funds derived from the fraudulent

10

activities. *See* ECF No. 11 at ¶ 4. Accordingly, the Court entered a Preliminary Injunction Freezing Assets and Granting Other Equitable Relief (the "Preliminary Injunction"), freezing the assets of the Defendants and Relief Defendants, prohibiting the destruction of documents, and requiring an accounting of the Defendant's assets and activities, among other things. *See id.*

### B.    Appointment and Duties of Receiver

On August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq., as the Receiver over the assets of Drive Planning and all assets owned by or purchased with funds derived from investors or clients of Drive Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id.* at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id.* at ¶¶ 4-7. The Receiver also was authorized to engage professionals subject to Court approval, issue subpoenas, and take any legal actions necessary to recover assets and protect the Estate. *See id.* at ¶ 7(f). Additionally, the Appointment Order requires the Receiver provide the Court with quarterly written reports detailing the Receiver's efforts to marshal, collect, and preserve assets and otherwise fulfill his duties. *See id.* at ¶ 54.

## III. THE RECEIVER'S EFFORTS TO FULFILL HIS DUTIES UNDER THE APPOINTMENT ORDER

### A. Receiver's Employment of Professionals

Promptly after his appointment, pursuant to his authority under the Appointment Order and with this Court's approval, the Receiver employed legal counsel, forensic accountants, and other professionals to assist in taking possession, custody, and control of all identified funds, assets, and records of Drive Planning (the "Receivership Estate"), marshaling records and assets in the hands of third parties, affiliates, and insiders of Drive Planning, analyzing and reconstructing Drive Planning's financial records, investigating potential assets and claims of the Estate, developing a secure online portal to obtain information and documents from investors, and otherwise fulfilling his duties under the Appointment Order. Specifically, the Receiver employed Damian Valori Culmo as his lead counsel ("Lead Counsel"), Henry F. Sewell Jr. LLC as his local Georgia counsel ("Georgia Counsel"), and Hays Financial Consulting LLC as his forensic accountant and financial advisor ("Forensic Accountant").  *See* ECF Nos. 21, 24.

Further, the Receiver employed Preti Flaherty Beliveau & Pachios LLP as local counsel in New Hampshire to assist with litigation pending against Drive Planning, and Johnathan Pikoff as local counsel in San Jose del Cabo, Mexico, to take control of and facilitate the marketing and sale of real property of the

Receivership Estate and ensure the sale proceeds are transferred to the Estate.  *See* ECF Nos. 46, 47.

Additionally, the Receiver obtained the Court's approval to employ Stretto to set up a secure online portal through which investors can upload information and documents necessary for the Forensic Accountant to complete the reconstruction of Drive Planning's accounts and which will facilitate the processing of claims in any claims process that may be approved by the Court and implemented by the Receiver in this Receivership.  *See* ECF No. 37.  Finally, the Court approved the Receiver's employment of a captain to maintain the 70-foot yacht of which the Receiver took control.  *See* ECF No. 42.

### B. Securing Books and Records of Drive Planning

During the Reporting Period, the Receiver took significant steps to obtain and secure the books and records of Drive Planning in compliance with the Appointment Order.  Drive Planning had maintained it books and records on several laptop computers, in Google email and Google Drive accounts, in a DocuSign account, and in an ADP account.  To accomplish this, the Receiver retained IT professionals to assist in imaging devices and downloading electronic records.  TransperfectLegal was engaged to forensically image eight laptop computers used by key employees and extract and preserve all data thereon.  TransperfectLegal completed the imaging process and provided the Receiver with a hard drive containing the images of all data

on the eight computers.  Additionally, the Receiver retained a forensic IT vendor to download and archive Drive Planning's Google emails and Google Drive files maintained by Drive Planning and upload all of the data to the Lexbe platform for document management and review purposes.

To ensure competitive pricing, the Receiver solicited multiple quotes for each service.  For the imaging of laptops, the Receiver obtained six quotes from Garrett Discovery, Global Digital Forensics, Fordham Forensics, TransperfectLegal, Envista Forensics, and Lexbe, ultimately selecting TransperfectLegal based on its capabilities and pricing.  For the download and preservation of Google emails and Google Drive files, quotes were obtained from TransperfectLegal and CyberDiscovery Inc.  The Receiver selected CyberDiscovery Inc. based on its lower rates for downloading, processing, and hosting of the documents.  For the document management platform, the Receiver compared quotes from DISCO and Lexbe and opted for Lexbe due to its discounted pricing for comparable service and usability.

During the Reporting Period, the Receiver's professionals visited the Drive Planning office located at 8000 Avalon Boulevard, Alpharetta, Georgia.  The office was inspected and photographed, its contents were reviewed, and all documents and records were scanned and saved to the Receiver's database for the Receivership. The Receiver and his counsel also visited Drive Planning's office in St. Petersburg, Florida and reviewed and photographed its contents, which primarily comprised

promotional materials. Thereafter, all items belonging to Drive Planning were removed from the two offices, and the offices were vacated and closed. The Receiver's counsel issued formal notices to the leasing companies confirming the office closures and termination of the leasing agreements. The Receiver's professionals also visited a small office located above a property in Blue Ridge, Georgia owned by Relief Defendant, the Burkhalter Ranch Corporation, which contained a small file cabinet. The contents of the file cabinet were reviewed and preserved.

In addition, the Receiver collected the website data of DrivePlanning.com and captured the social media content of Drive Planning's social media accounts.

The Receiver and his team also met with and/or spoke to:

1. Jacqueline Burkhalter, Relief Defendant, to discuss her involvement in receiving assets connected to Drive Planning and related entities, the Burkhalter Ranch Corporation, Drive Properties LLC, Drive Gulfport Properties LLC, and TBR Supply House Inc., all of which are Relief Defendants, and any information she could provide regarding the management and disposition of assets connected to those entities.

2. Julie Edwards, Chief Administrative Officer of Drive Planning, to obtain information concerning Drive Planning's operations, key personnel, books and records, offices, administrative matters, payroll, and her duties and involvement with Drive Planning and Mr. Burkhalter.

3. Kemp Greene, an insurance broker who procured insurance policies primarily for properties in Georgia, to review and confirm existing policies and coverages for properties owned by Defendants and Relief Defendants.

4. Julie Bowman and Melissa Sontheimer, the property manager and previous realtor for the rental properties located in St. Petersburg, Gulfport, and Holmes Beach Florida to determine the condition, income, expenses, management, and record-keeping procedures for those properties.

5. David Bradford, an agent/advisor and investor in Drive Planning, to discuss condominium units in San Jose del Cabo, Mexico and St. Peterburg, Florida purchased with Drive Planning's funds and the turnover of his ownership interests in those units and corporate records regarding entities through which he owns the units.

6. Mark Haye, an agent/advisor and investor in Drive Planning, to discuss the loan he received from Drive Planning to purchase a condominium unit in St. Petersburg, Florida, the status of his loan payments, and the Receiver's demand for payment or transfer of property to the Estate and legal and equitable claims against him.

7. Counsel for Jon Clement, part owner of the outdoor and gun store TBR Outdoors Supply operating on property purchased with Drive Planning's funds, to discuss the Receivership, the ownership interest of Mr. Burkhalter and Ms. Burkhalter in the store, and the Receiver's demand for rent payments and the store's financial records.

8. Various Investors of Drive Planning to provide details of the Receivership and assistance with gathering and submitting information and documents through the secure online portal for purposes of the Forensic Accountant's reconstruction of Drive Planning's accounts and any claims process the Court may approve.

9. Counsel for various investors of Drive Planning to discuss the Receivership, the assets and records of the Estate, and the investors' and the Receiver's respective claims against various third parties, insiders, and affiliates of Drive Planning.

**C. Recovery of Drive Planning's Records and Funds from Financial Institutions and Securing Funds in Fiduciary Accounts for Receivership Estate**

At the start of the Receivership, the Receiver and his professionals swiftly took action to review all available documents associated with Drive Planning for the purpose of identifying and investigating its assets and business operations. It immediately became apparent that Drive Planning lacked a formal accounting system. Rather than using accounting software such as QuickBooks, the company utilized an excel spreadsheet to keep track of all operations and transactions. A review of that spreadsheet by the Receiver and his Forensic Accountant revealed that it contained multiple erroneous, unclear, and incomplete entries. Further, the company never prepared or filed tax returns. Therefore, the Receiver and his forensic accountant determined that Drive Planning's financial records would need to be reconstructed from the source data, including bank account records, to assist the Receiver to identify and marshal assets of Drive Planning or traceable to investors, to formulate and pursue claims of the Estate to recover assets and funds for the benefit the investors, and to confirm the investors and their losses.

Accordingly, the Receiver issued demand letters and subpoenas with copies of the Appointment Order to numerous financial institutions with which the Drive Planning maintained accounts and/or had dealings since its inception, requesting confirmation of the freezing of accounts, the turnover of account balances, and the

production of records.  In particular, the Receiver demanded (i) confirmation of the freezing of all accounts and assets of Drive Planning, (ii) the turnover of the control and ownership to the Receiver of all accounts of Drive Planning, (iii) exclusive access to Drive Planning's accounts and account records including online access, (iv) detailed information concerning the history, nature, and value (where applicable) of each account, (v) direction of future correspondence regarding the accounts to the Receiver, and (vi) the production of records concerning each account including, without limitation, account statements, records regarding the deposit and withdrawal or other transfer of funds and other assets, account opening documents, and communications with the Defendants and their representatives.

The Receiver has received written responses from several of the institutions (i) confirming the receipt of the Receiver's demand letters, status and balances of accounts, and the freezing and/or turnover of the balances to the Receiver, (ii) producing the requested account records, and/or (v) requesting additional information to identify accounts and locate records.

During the Reporting Period, the Receiver identified and took possession and control of more than $51 million in cash held in accounts of Drive Planning at financial institutions, including Truist Bank and JP Morgan Chase Bank, and more than $1.1 million worth of cryptocurrencies held in Mr. Burkhalter's account at Coinbase.  And, the Receiver transferred those funds (including the proceeds of the

sale of the cryptocurrencies) to the fiduciary accounts he opened for the Receivership Estate at City National Bank of Florida, Synovus Bank, and Axos Bank.  As of the end of the Reporting Period, the Receiver held $52,460,102.45 in these fiduciary accounts, and $47,048.65 in an operating account and an escrow account maintained at Truist Bank for certain Florida rental properties.  All of the funds held in the fiduciary accounts at City National Bank of Florida, Synovus Bank, and Axos Bank are maintained in insured cash sweep accounts that are fully FDIC insured.

The Receiver negotiated favorable interest rates for the fiduciary accounts with the above-referenced banks, which resulted in the Estate's funds earning interest at a rate of at least 4.5% until the Federal Reserve reduced interest rates on September 18, 2024.  Since then, those funds have been earning interest at a rate of at least 4.0%.  During the Reporting Period, the Estate earned nearly $193,000 in interest.

A detailed accounting of the funds recovered from Drive Planning's bank accounts and Mr. Burkhalter's Coinbase account and deposited into the Receiver's fiduciary accounts for the Estate is set forth in the Standardized Fund Accounting Report attached as **Exhibit B**.

### D. Real Property, Businesses, and Personal Property in Which Receivership Estate Has an Interest

Upon his appointment, the Receiver immediately reviewed the SEC's analysis of Defendants' and Relief Defendants' interests in real property and associated

personal property and businesses and began marshalling those assets, taking control of or monitoring those businesses as directed in the Appointment Order, and demanding turnover of all such assets held by third parties to the extent there is equity and value for the Receivership Estate. The Receiver continues to work on determining the ownership status and structure, and value of the real property and any associated personal property owned or previously owned by Drive Planning but in the possession of third parties, affiliates, or insiders of Drive Planning.

### i.   Real Property and Businesses

The Receiver and/or his professionals has visited all real properties in Georgia and Florida owned by Defendants and Relief Defendants to inspect the premises and all fixtures, contents, and related assets, to thoroughly document their condition and to perform a preliminary assessment of their values and business operations.[2]

### a.  Real Properties and Businesses in Georgia

In particular, the Receiver and certain of his professionals, visited properties and businesses operating on those properties located in Mineral Bluff and Blue Ridge, Georgia, including the cattle ranch, event center, retail western store, and multiple rental properties owned by Defendants and/or Relief Defendants. During

---

[2] During the Reporting Period, the Receiver did not inspect the Panama City Beach, Florida property. However, the Receiver contacted the condominium's homeowner's association, Burg Management Company, Inc., to obtain general information about the condition of the unit. After the Reporting Period, the Receiver's Florida realtor assessed the unit, took pictures, and is preparing the unit to market it for sale.

these visits, the Receiver and his team photographed and took inventory of each site, including retail items at the western store and residential units on Tower Road and Doc Roof Road.  Additionally, the Receiver's team met with key personnel, including Ms. Burkhalter, the ranch manager, and the event manager, to discuss ongoing business operations, finances, and assets for purposes of maintaining and preserving them for benefit of the Estate.

Beyond the physical inspections, the Receiver swiftly implemented control over the businesses operating on the properties, establishing management protocols and ensuring all operations and expenditures were monitored and approved by the Receiver.  This included overseeing the cattle ranch and event space and instituting regular meetings with employees to manage day-to-day operations.  The Receiver also took steps to address insurance and tax issues related to these properties, ensuring that all properties and businesses were adequately insured and that outstanding property taxes were paid.  Further, all records recovered from all business locations were reviewed and transported to the Receiver's Forensic Accountant for preservation and further analysis to aid in the Receiver's oversight of business operations and maintenance and preservation of the properties and related assets to maximize their revenues and/or values.

1. *The Burkhalter Ranch, Staurolite Barn, and TBR Supply House*

During the Reporting Period, the Receiver and his professionals oversaw the operations of the Burkhalter Ranch, Staurolite Barn, and TBR Supply House, which received substantial transfers of cash and real estate from Drive Planning with funds traceable to investors.  Pursuant to the Appointment Order, to preserve the Estate's interest in these businesses, the Receiver is managing operations and payroll for these businesses, reviewing bank statements and account activity and monitoring and approving expenditures, ensuring compliance with their financial obligations, maintaining the properties and all associated personal property, addressing repair issues, approving cattle sales and managing income therefrom, and overseeing event planning at Staurolite Barn.

2. *TBR Outdoors Supply, LLC*

During his investigation, the Receiver discovered that on April 6, 2023, Drive Planning had purchased a 75% interest in TBR Outdoors Supply LLC ("TBR Outdoors") for $1.4 million on behalf of Jacqueline Burkhalter and Russell Burkhalter, with each owning a 37.5% interest in the business.  TBR Outdoors is an outdoor supply and gun store that is operating out of a property owned by Relief Defendant, Burkhalter Ranch Corporation.

Because TBR Outdoors was not paying any form of rent to the Burkhalter Ranch Corporation, the Receiver sent a demand letter to the other owner and

manager of TBR Outdoors, Jon Clement, requesting that rent payments be made. The Receiver is investigating how the membership interest of TBR Outdoors was structured and has requested that TBR Outdoors produce financial records so the Receiver can assess its operations, revenues, and expenses, and determine the distributions that should be made pursuant to the ownership interests of Mr. Burkhalter and Ms. Burkhalter that Drive Planning purchased with investor funds and the value of those interests.  The Receiver will seek to recover those interests for the benefit of the Estate.

### b.  Real Properties and Businesses in Florida

#### 1.  *Rental Properties*

The Receiver and his counsel also visited and documented the condition, fixtures, contents, renovations, and rental operations of all real properties owned by Defendants and Relief Defendants in St. Petersburg and Gulfport, Florida.   In particular, the Receiver and his counsel, with the assistance of Julie Bowman, an employee of Drive Planning who managed the properties, and Melissa Sontheimer, an independent contractor of Drive Planning and realtor, performed in-person inspections of and photographed two multi-family rental properties, three Airbnb homes, several condominium units, and a bar owned by Mr. Burkhalter located at the historic Detroit building in downtown St. Petersburg, the operations of which the Receiver was tasked with monitoring by the Appointment Order.   Further, the

realtors engaged by the Receiver inspected and the condominium units in Holmes Beach, owned by Drive Planning, and provided reports to the Receiver regarding their condition for purposes of preserving and maximizing their values.

### 2.   *Club 201 at the Detroit*

The Preliminary Injunction required Defendant Burkhalter to provide the Receiver with a weekly report detailing the funds deposited into and withdrawn from the account associated with Club 201 at the Detroit ("Club 201"), a bar in downtown St. Petersburg, Florida owned by Mr. Burkhalter, and otherwise provide the Receiver with information regarding its business operations. *See* ECF No. 11 at p. 4.  During the Reporting Period, Julie Bowman, who is managing the Florida rental properties for the Receiver, obtained from Club 201 and provided to the Receiver the required business operation reports.  The reports include details of sales, revenue trends, cash activity, and other relevant financial data but do not include certain information that the Receiver needs to fully comply with his monitoring duties.  As such, the Receiver is working with Mr. Burkhalter's attorney to obtain the missing information and expects to receive it during the next reporting period.

### c.  **Real Property in Indiana**

During the Reporting Period, the Receiver conducted an in-depth investigation into a property owned by Drive Planning in Fishers, Indiana.  Acquired for approximately $625,000, this property was intended to serve as a new office

space for Drive Planning.  Prior to the Receivership, Drive Planning had engaged Jason Schnurr of DI Build to oversee the construction and development of the Fishers project.  Mr. Schnurr, who completed the initial stages of construction, provided valuable insights into the project's status and the potential value of the property, and advised on strategies to maximize its worth.  Additionally, it was noted that Schnurr is the brother of Ms. Burkhalter.

Throughout the Reporting Period, the Receiver held multiple telephone calls with Mr. Schnurr to clarify his role and assess outstanding invoices given his relationship with Ms. Burkhalter.   Mr. Schnurr shared extensive project documentation, including construction plans for the Fishers property and a site in Roswell, Georgia.  Mr. Schnurr emphasized that both properties are well-positioned in high-demand locations and could increase in value significantly if developed according to plan; however, Mr. Schnurr also advised that delays in permitting could result in added costs for future developers.  The Receiver is currently reviewing DI Build's past due invoices and assessing whether any payments are justified in light of the project's progress, amounts already paid to DI Build, and potential future profitability.

### d. Real Property in Mexico

During this Reporting Period, the Receiver investigated and recovered a luxury condominium unit at the Solaz Resort in San Jose del Cabo, Mexico.  The

condominium unit is worth approximately $4 million.  It was purchased by Drive David LLC, SRL ("Drive David"), a Mexican limited liability company, in April 2024 for $4.1 million.  Drive David was owned 50% by Drive Planning and 50% by MAH International LLC (which was owned by Drive Planning agent/advisor David Bradford and his wife).   Because Drive Planning funded the purchase of this condominium unit, the Receiver negotiated with Mr. Bradford the turnover of all of his and his wife's interest in Drive David to the Estate.  In particular, Mr. Bradford and his wife assigned their ownership interests in MAH International LLC to the Estate such that the Estate now owns a 100% interest in Drive David, and therefore full ownership of the condominium unit.

The Receiver then obtained court authority to engage local counsel in Mexico, Pikoff & Associates, to assist with the listing of the unit for sale, to resolve the corporate and tax compliance issues for the Mexican corporation that owns the unit, to prepare all necessary documentation for the future sale of the unit, and to oversee a property manager to address issues with the unit to maximize its marketability. *See* ECF Nos. 44, 46.  Mr. Pikoff then located a qualified and experienced listing agent with a long and successful track record of selling luxury real estate in San Jose del Cabo.  The Receiver interviewed and engaged the listing agent.  Mr. Pikoff also located and engaged a property manager to correct certain outstanding issues with the building, pay outstanding invoices, have the electricity restored, visit and assess

the condition of the property, and to address any issues necessary to prepare the unit for marketing and showings.   Other than the unpaid invoices and taxes, the condominium unit is in excellent condition and will be listed for sale during the next reporting period.

Mr. Pikoff also assisted the Receiver in locating an accountant to assess Drive David's tax filing status and to bring Drive David's tax filings into compliance.  The accountant determined that Drive David is in default with the Mexican taxing authorities, and it will need to immediately submit certain past-due tax returns.  The Receiver will seek authority from this Court to engage the accountant in Mexico.

The Receiver is aware of the following real property in which Drive Planning has an ownership interest:

| STATE & CITY | PROPERTY OWNER | DESCRIPTION |
|---|---|---|
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | DRIVE PLANNING LLC | 18.59 ACRES; 2 VACANT HOUSES; 1 HOUSE RENTED THROUGH AIRBNB |
| STATE & CITY | PROPERTY OWNER | DESCRIPTION |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | DRIVE PLANNING LLC | VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | DRIVE PLANNING LLC | VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | DRIVE PLANNING LLC | VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | BURKHALTER RANCH CORP | VACANT HOME |

| STATE & CITY | PROPERTY OWNER | DESCRIPTION |
| --- | --- | --- |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER RANCH CORP** | VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER RANCH CORP** | LONG TERM RENTAL |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER RANCH CORP** | 18.92 ACRES; VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER RANCH CORP** | VACANT (1 TRAILER HOME ON PROPERTY WAS DEMOLISHED); 3 MOBILE HOMES (LONG-TERM RENTALS) |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **TBR SUPPLY HOUSE INC** | TBR SUPPLY HOUSE & TBR OUTDOOR SUPPLY |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER JACQUELINE & TODD RUSSELL** | STAUROLITE BARN |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER JACQUELINE & TODD RUSSELL** | BURKHALTER RANCH |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER JACQUELINE & TODD RUSSELL** | 1.68 ACRES; VACANT LOT |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **BURKHALTER JACQUELINE & TODD RUSSELL** | RENTED PASTURE |
| GEORGIA (ATLANTA) | **DRIVE PLANNING LLC** | VACANT BUILDING (INTENDED TO BE DRIVE PLANNING OFFICE) |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | S. DIMARIA RESIDENCE |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | LONG TERM RENTALS |

| STATE & CITY | PROPERTY OWNER | DESCRIPTION |
|---|---|---|
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | LONG TERM RENTAL (16-UNITS) (1/3) |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | LONG TERM RENTAL (16-UNITS) (2/3) |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | LONG TERM RENTAL (16-UNITS) (3/3) |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | VACANT UNIT |
| FLORIDA (ST. PETERSBURG) | **BURKHALTER JACQUELINE & TODD RUSSELL** | MR. BURKHALTER RESIDENCE |
| FLORIDA (PANAMA CITY) | **DRIVE PLANNING LLC** | VACANT UNIT |
| FLORIDA (HOLMES BEACH) | **DRIVE PLANNING LLC** | CONDO UNIT IN MARRIOT PROPERTY |
| FLORIDA (GULFPORT) | **DRIVE GULFPORT PROPERTIES LLC** | AIRBNB |
| FLORIDA (ST. PETERSBURG) | **DRIVE PLANNING LLC** | MR. BRADFORD'S PRIOR RESIDENCE TRANSFERRED TO ESTATE |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **DRIVE PLANNING LLC (OWNERSHIP IN PROCESS OF BEING CONFIRMED)** | LONG TERM RENTAL |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **DRIVE PLANNING LLC (OWNERSHIP IN PROCESS OF BEING CONFIRMED)** | LONG TERM RENTAL |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | **DRIVE PLANNING LLC (OWNERSHIP IN PROCESS OF BEING CONFIRMED)** | LONG TERM RENTAL |
| MEXICO (CABO) | **DRIVE DAVID LLC, MAH INTERNATIONAL** | VACANT CONDO UNIT |

| STATE & CITY | PROPERTY OWNER | DESCRIPTION |
|---|---|---|
| INDIANA (FISHER) | DRIVE PLANNING LLC | VACANT BUILDING (INTENDED TO BE DRIVE PLANNING OFFICE) |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | KEVIN ELKINS | MORTGAGE HELD BY BURKHALTER RANCH CORPORATION |
| GEORGIA (MINERAL BLUFF/BLUE RIDGE) | DRIVE PROPERTIES, LLC | LONG TERM RENTAL |

### e. Real Property Owned or Occupied by Third-Parties

A number of the above-listed properties were purchased by Drive Planning or with funds traceable to its investors but are not owned by Drive Planning and/or are occupied by third parties who have refused to turn over the properties notwithstanding the Receiver's demands pursuant to the Appointment Order. One St. Petersburg, Florida property is occupied by an individual with a personal relationship with Mr. Burkhalter. That occupant has refused to return the property to the Receiver, vacate the property, or otherwise compensate the Receivership Estate for her use of the property including by making rent payments. The Receiver will be taking action shortly to recover this property.

A property located Blue Ridge, Georgia, owned by Relief Defendant TBR Supply House Inc., is encumbered by a mortgage held by a third party. The Receiver

and his Forensic Accountant have evaluated the interest rate applied to the loan balance and the monthly payments due and determined that the one-month rate had been erroneously applied instead of the one-year rate, as required in the loan agreement.  The Receiver engaged in discussions with the mortgage holder to clarify the proper interest rate and requested the correct amortization schedule for future payments.  As part of the ongoing efforts to manage the property, the Receiver negotiated a lower monthly payment which is in compliance with the terms of the mortgage and coordinated the monthly mortgage payment from the funds of the Relief Defendant that owns the property.

Further, the Receiver identified several real properties acquired with Drive Planning funds that were subsequently deeded to third parties and took steps to recover those properties for the benefit of the Estate.  The first property, a luxury condominium unit located in St. Petersburg, Florida, was deeded by Drive Planning to David Bradford, the COO and an agent/advisor of Drive Planning.  The Receiver over the property, or repay the purchase price to the Estate.  If the Receiver is unable to recover negotiated the transfer of Mr. Bradford's ownership interest in that property to the Estate by a quitclaim deed.  A second luxury condominium unit in the same building in St. Petersburg, Florida was purchased by Drive Planning for Mark Haye, an agent/advisor and investor of Drive Planning.  The deed was transferred to Mr. Haye, and Drive Planning holds a note for the purchase price.  The

Receiver has demanded that Mr. Haye either make the outstanding and future monthly payments due pursuant to the note, pay the entire balance due under the note, or transfer the property to the Estate. As of the filing of this Report, Mr. Haye has failed to make any payment, or transfer the property, to the Estate. During the next reporting period, the Receiver will pursue appropriate legal and equitable remedies to recover the amount due under the note or the property for the benefit of the Estate.

The Receiver has also requested the turnover of the property in Indianapolis, Indiana that Drive Planning had purchased for Gerry Linarducci, a Managing Partner and agent/advisor of Drive Planning. Thus far, Mr. Linarducci has refused to turn the value of the property by agreement with Mr. Linarducci, the Receiver will pursue appropriate legal and equitable remedies.

Additionally, the Receiver sent a demand letter to Kelvin and Katheryn Elkins, who occupy a property located in Mineral Bluff, Georgia purchased by Relief Defendant Burkhalter Ranch Corporation with funds traceable to investors of Drive Planning. The property was transferred to the Elkins and a promissory note in favor of the Burkhalter Ranch Corporation was executed. The Receiver demanded immediate payments or surrender of the property to the Estate. As a result, the Elkins provided proof of past monthly payments and have been making the required monthly payments.

## f. Insurance Covering Real Property and Businesses

The Receiver investigated whether each of the properties owned by the Defendants and Relief Defendants were insured with coverages for property damage and general liability as appropriate.  Where it was determined that a property or business was not appropriately insured, the Receiver worked with insurance brokers to obtain appropriate insurance.  Specifically, the Receiver successfully bound insurance policies for property damage and general commercial liability for several properties in Mineral Bluff, Georgia and for Staurolite Barn, the event space at the cattle ranch in Blue Ridge, Georgia.

The Receiver also approved insurance policies for two condominium units in St. Petersburg, Florida, one condominium unit in Holmes Beach, Florida, and one condominium unit in Panama City Beach, Florida, but due to the two hurricanes that recently impacted the region, insurance carriers have delayed binding these policies. The Receiver will ensure that the policies are bound as soon as the carriers lift the hold imposed due to those storms and/or hurricane season.

The Receiver has also diligently attempted to obtain additional insurance for the multi-family rental properties located in St. Petersburg, Florida, approaching multiple insurance carriers.  Unfortunately, due to electrical and roofing deficiencies at the properties, the carriers have refused to provide the additional coverage sought.  The Receiver is working on assessing the condition of the properties and

addressing the cited issues and will continue his efforts to obtain the additional insurance coverage as is necessary to protect the properties.

The Receiver also obtained a quote for general liability insurance for the condominium unit located in the historic Detroit building in downtown St. Petersburg, Florida.  The Receiver expects to have this policy bound in short order.  The Receiver, however, has been unable to obtain quotes for property insurance for this unit because it has been vacant.  Also, because the unit suffered damages as a result of Hurricane Milton and is now under construction to repair those damages, the Receiver does not expect to obtain a quote until the repairs have been completed at the earliest.

Finally, the Receiver investigated whether the properties were covered by flood insurance policies and determined that certain properties in flood zones were not covered.  The Receiver requested that his insurance broker obtain quotes for policies for which flood insurance is appropriate, but the insurance carriers approached have delayed providing quotes given that it is still hurricane season and Hurricanes Helene and Milton caused significant flooding damage in the region.

### g. Marketing of Real Property and Businesses for Sale

Among the Receiver's duties is the duty to sell the real properties in which Drive Planning has an ownership interest, subject to this Court's approval.  The Receiver has made significant progress in fulfilling this duty, by, among other

things, engaging qualified real estate professionals in Georgia, Florida, Indiana, and Mexico to assist the Receiver to prepare and market the properties for sale.   The Receiver conducted video conferences of, and/or reviewed written proposals from, at least three real estate brokers in each region in which the properties are located, before selecting the most qualified professionals who are experts in their respective markets and capable of optimizing the marketability and values of the properties to maximize the sale prices and who were willing to reduce their commission rates for the benefit of the Receivership Estate.   In particular, the Receiver engaged Harry Norman Realtors as the real estate broker for the properties located in Mineral Bluff, Atlanta, and Blue Ridge, Georgia, Spitzer Rutland as the real estate broker for the Florida properties, Talk to Tucker as the real estate broker for the Indiana properties, and Cabo Dream Homes Real Estate as the real estate broker for the condominium unit in San Jose del Cabo, Mexico.

During the Reporting Period, the Receiver finalized the listing prices for the properties in Georgia and Mexico and is currently in the process of determining and approving the listing prices for the Florida and Indiana properties.   The Receiver intends to sell each property at its full market value to maximize recovery for the Receivership Estate for the benefit of the investors.

## ii.   Personal Property

### a. Personal Property Owned, Used, and Sold by The Burkhalter Ranch Corporation

The Receiver is aware of the following assets owned and used by the Burkhalter Ranch Corporation:

Golf Carts:

- Black Royal EV Truck
  VIN: L4MVKEC47NAOD
- Black Royal EV 6-Seater
  Pro #: Z4CJ+22068
  Model #: HD6-Z4C
- Blue Royal EV 6-Seater
  VIN: L4MCKEC48NA000546
- Gold Royal EV 4-Seater
  VIN: 7NJRGB1D1MC000674
- Blue Royal EV 6-Seater
  VIN: 7NJRGB1D6NH002330
- Blue Royal EV 6-Seater
  VIN: L4ACUEC49NA000239
- White Royal EV 6-Seater
  VIN: 7NJRGB1D4NC001660

Side by Sides:

- 2010 Green Polaris
  VIN: Unknown
- White Polaris Ranger
  VIN: 4XARSU994118063594

Mowers, Weedeaters, & Blowers:

- Ex-Mark Push Mower
  Serial #: 412691157
- Ex-Mark Zero-Turn E-Series
  Serial #: 414351629

- Ex-Mark Zero-Turn X-Series
  Serial #: 411442885
- Stihl Gas FS94R
  Serial #: 538662901
- Stihl Gas FS94R
  Serial #: 538662905
- Stihl Gas FS240
  Serial #: Unknown
- Ryobi Battery 40V
  Serial #: LT21505D080197
- Ryobi Battery 40V
  Serial #: LT21403D030129

Blowers:

- Stihl Gas BR600
  Serial #: Unknown
- Red-Max Gas EBZ8550
  Serial #: 20221700440
- EZ-GO 765CFM Battery
  Serial #: NLB122148244874
- Ryobi 40V Battery
  Serial #: T2403D030129

Trailers:

- Cattle Trailer
  VIN: 1MT5N2421PH027550
- Rock Solid Cargo Trailer
  VIN: 7H2BE1626ND043626
- Blue Gooseneck Stock Trailer
  VIN: 16GSH6C26ND043914
- Stryker Flatbed Trailer
  No VIN
- Car Hauler Trailer
  No VIN
- Spartan Cargo Trailer
  VIN: 50XBE2426NA032876
- Dump Trailer
  VIN: 4ZEDT1225K1188598

Tractors & Equipment:

- Kubota MX6000HSTC Tractor w/Loader
  VIN: KBUL3CHCHM8B15919
- Kubota M5-111D Tractor w/Loader
  VIN: KBUM4EDCKN8B66722
- Kubota 57-5 Excavator
  VIN: KBCDZ37CEM3810579
- Kubota 75-2 Skid Steer
  VIN: KBCZ052CEN1L72955
- Land Pride Bush Hog
  VIN: 920980110BC
- Tarter Fertilizer Spreader
  No VIN
- Land Pride No-Till Seed Drill
  No VIN
- Land Pride Tiller
  No VIN

Cows:

- Skype Klondike Kate (Cow)
  Registration #: 62,537
- HHH Kindness (Heifer)
  Registration #: 61,996
- Literra Misty (Heifer)
  Registration #: 64,113
- SVR Selina (Cow)
  Registration #: 51,237
- Kesabe Walking Taco (Bull)
  Registration #: 60,504
- FTA Xaffy Freya (Cow)
  Registration #: 53,559
- JTB Moonshine Mark (Bull)
  Registration #: 67,903
- JTB Macho of Staurolite (Bull)
  Registration #: 68,407
- LVH Legion 594 (Bull)
  Registration #: 67,360

- JTB Margarita Staurolite (Heifer)
  Registration #: N/A (pending registration)
- Fiona (Unregistered Black Cow)

During the Reporting Period, the Receiver oversaw and approved the sale of several cows, including three unregistered steers and three registered cows, as part of ongoing efforts to reduce costs and generate revenue for the ranch. The steers, which do not produce calves and are primarily raised for slaughter, were sold at slightly above market value due to their weight. Additionally, the cows were sold to streamline the herd, as they had either behavioral issues, smaller size, multiple miscarriages, or a history of producing unpredictable offspring.

### b. "Live More" Yacht

The Receiver identified and took control of the "Live More" yacht, a 70-foot Galeon purchased by Todd Burkhalter for $3,386,004 using Drive Planning's funds derived from investors. Although it is titled in Mr. Burkhalter's name, the Receiver with Mr. Burkhalter's consent is marketing the yacht for sale for the benefit of the Receivership Estate, and the Receiver is overseeing its maintenance and storage to preserve its value and maximize the sale price. With the Court's approval, the Receiver has continued the services of Captain Lance Brooks (ECF Nos. 41, 42), who previously managed the vessel, to maintain the yacht at a discounted monthly rate to ensure its upkeep and compliance with maritime standards. The yacht remains safely docked at a MarineMax marina in St. Petersburg, Florida.

Currently, the Receiver is working to secure new insurance for the yacht after the previous insurer cancelled the policy due to a perceived change in risk related to the Receivership. The Receiver has reached out to multiple insurance brokers, including HUB South Florida, to obtain quotes and assess the best coverage options for the vessel. To date, the Receiver has been unable to obtain suitable insurance for the yacht given many carriers' moratorium on issuing new policies during hurricane season or the exorbitant premiums and deductibles quoted.

During the Reporting Period, Hurricanes Helene and Milton impacted St. Petersburg where the yacht is docked. Following the Receiver's instructions, MarineMax removed the yacht was from the water and secured it in a safe location on land in accordance with its hurricane plan and, as a result, it sustained no damages from Hurricane Helene and only minor damage to the soft top from Hurricane Milton.

Also, during the Reporting Period, the Receiver obtained proposals to market the yacht for sale from three yacht brokers and negotiated the terms of the proposed listing agreements. After the Reporting Period, the Receiver selected the yacht broker (MarineMax) that he believed was the most qualified, had the most experience selling yachts similar to "Live More," had agreed to reduce its commission rate, and was most likely to expeditiously locate a buyer willing pay the

market price for the yacht.  Thereafter, MarineMax listed the yacht for sale, presented it at a boat show, and received several inquiries from potential purchasers.

### c.  Vehicles

The Receiver has identified the following vehicles purchased in whole or in part by Drive Planning:

1. 2017 Aston Martin DB11;

2. 2020 Porsche 911;

3. 2024 Land Rover Range Rover Sport;

4. 2022 Ford Expedition

5. 2021 Ford Bronco

6. 2022 Ford F250;

7. 2019 Ford F350;

8. 2022 Ford 450;

9.  2020 Golf Cart; and

10. 2023 Tomberlin Ghost Hawk.

Upon learning of the foregoing vehicles, the Receiver investigated whether they were insured and confirmed the identities of the title owners, including Mr. Burkhalter, Ms. Burkhalter, and certain of the Relief Defendants.  The Receiver was able to confirm that all of the vehicles were insured and, for the insurance policies that were expiring, the Receiver ensured that the polices were renewed and the

premiums were paid either by the title owners or the Estate.  Mr. Burkhalter owns the Aston Martin, the Land Rover, the golf cart, and the Ghost Hawk.  Of those vehicles, Mr. Burkhalter only agreed to the Receiver's sale of the Aston Martin and indicated through counsel that he would continue to use the other vehicles. Accordingly, the Receiver began marketing the Aston Martin for sale.  With respect to the Porsche, which is owned by Ms. Burkhalter, because Drive Planning had paid a $30,000 deposit for its purchase, the Receiver has recently demanded that Ms. Burkhalter return that amount to the Estate.

The 2022 Ford Expedition is designated for business purposes and is currently in active use by Staurolite Barn's event coordinator to facilitate event planning and management activities.  The 2021 Ford Bronco serves as Ms. Burkhalter's personal daily vehicle.  The Ford F-250, currently located in Florida, is not in active use and is therefore being prepared for sale for the benefit of the Receivership Estate. Similarly, the Ford F-350, situated at the Burkhalter Ranch, remains unused due to the absence of a registration tag and, as such, is also in the process of being sold. The Ford F-450 is regularly used on the Burkhalter Ranch for various ranch-related operational needs.

Loans were obtained to purchase certain of the vehicles.  For those vehicles that are not necessary for the operations of the cattle ranch, event space, or western supply store, the Receiver is analyzing their value and the loan balances and accrued

interest and fees to determine if there is significant equity in any of them to justify expending the time and resources necessary to take possession of any vehicle, market it for sale, locate a buyer, seek and obtain Court approval to conduct a private sale, close that sale, and pay off the outstanding loan balance. If not, the Receiver will release and waive any interest of the Estate in the vehicles and obtain consent from the parties to turn them over to the respective lenders.

### d. Interests in Private Jets and Lease Agreements with NetJets, Inc.

During the Reporting Period, the Receiver discovered and investigated Drive Planning's fractional ownership and leasehold interests in three private business jets managed through NetJets, Inc. ("NetJets"). In particular, Drive Planning holds fractional interests in the following three aircraft, including leases for two and an ownership stake in a third:

1. Phenom 300 Aircraft (Tail No. N333QS): Drive Planning leases a 6.25% fractional interest in this aircraft.

2. Citation Latitude Aircraft (Tail No. N511QS): Drive Planning leases a 6.25% fractional interest in this aircraft.
3. Citation Latitude Aircraft (Tail No. N952QS): Drive Planning owns a 6.25% fractional interest in this aircraft.

NetJets has asserted that Drive Planning owes $139,333.69 in operational costs for the two leased aircraft but has offered to repurchase Drive Planning's ownership interest in the third jet for an amount in excess of $600,000. The Receiver made a counteroffer, addressing the purported amount due under the two leases and

requesting the full repurchase amount for the third jet under Drive Planning's agreement with NetJets.  If the Receiver and NetJets cannot reach an agreement regarding the disposition of the Receivership Estate's interest in the three aircraft, the Receiver will pursue all appropriate legal and equitable remedies to maximize recovery for the Estate.

### *e. Furniture for Properties in Georgia and Florida*

During the Reporting Period, the Receiver discovered that Drive Planning had purchased a substantial amount of luxury furniture for two properties (one in Mineral Bluff, Georgia and one in St. Petersburg, Florida), and that furniture was in storage and ready to be delivered to and assembled in those properties.  The Receiver reviewed invoices for the storage, delivery, installation, and assembly of the furniture, coordinated the payment for the furniture intended for the Mineral Bluff property, and authorized the delivery, installation, and assembly in that house, which is being marketed for sale, to maximize its value and ultimate sale price.  The Receiver is considering the best course of action regarding the other luxury furniture intended for the St. Petersburg property, including selling the furniture to designers in the area.

### E.    Lawsuits Filed Against Drive Planning

During the Reporting Period, the Receiver identified six lawsuits filed against Drive Planning and related entities.  The Receiver has sought a stay and/or dismissal

of each matter pursuant to the stay provision in the Appointment Order and certain of the matters have been stayed.  *See* ECF No. 10 at ¶ 32.

In the case styled *Joseph J. Prieto v. Ketler Bosse d/b/a Bosse Future Capital Group and Drive Planning, LLC*, filed in the Hillsborough County Superior Court, New Hampshire (Case No. 24-cv-03583-VMC), Joseph J. Prieto, brought claims against Ketler Bosse and Drive Planning, alleging breach of contract, fraudulent misrepresentation, and violations of the New Hampshire Consumer Protection Act. As Mr. Prieto declined to file the Appointment Order in the New Hampshire court upon the Receiver's request, the Receiver, with this Court's approval, retained Preti Flaherty Beliveau & Pachios, LLP ("Preti Flaherty") as local counsel in New Hampshire to have the case stayed.  *See* ECF Nos. 45, 47.  During the Reporting Period, Preti Flaherty appeared in the action on behalf of the Receiver and filed a notice of the Receivership and request to stay the case, pursuant to the Appointment Order.

In the case styled *Kellay Buckelew, et al. v. Drive Planning, LLC and R. Todd Burkhalter*, filed in the Superior Court of Fulton County, Georgia (Case No. 2020-CV-338791), plaintiffs Kellay Buckelew, Chris Downing, and Anthony Ornella brought claims against Drive Planning and Mr. Burkhalter on allegations of fraudulent misrepresentation, sale of unregistered securities, and violations of the

Georgia Uniform Securities Act.  The Receiver's Georgia Counsel confirmed this case was closed pre-receivership.

In the case styled *Douglas G. Magruder, Jr. v. Drive Planning, LLC*, filed in the Sixth Judicial Circuit in and for Pinellas County, Florida (Case No. 24-002887-CI), Mr. Magruder, brought claims for breach of contract and damages against the Drive Planning.  The Receiver's Lead Counsel filed a Notice of Receivership and request to stay this matter, which remains pending.

In the case styled *Justin Hanson v. Drive Planning, LLC*, filed in the Sixth Judicial Circuit in and for Pinellas County, Florida (Case No. 24-003369-CI), Mr. Hanson brought claims against Drive Planning for breach of promissory notes.  The Receiver's Lead Counsel filed a Notice of Receivership and request to stay this matter, which remains pending.

In the case styled *Embry Development Company, LLC v. Drive Planning, LLC and R. Todd Burkhalter*, filed in the Superior Court of Fulton County, Georgia (Case No. 2023CV384406), Embry Development Company, LLC brought claims against Drive Planning and Mr. Burkhalter for unauthorized use of the Embry name, breach of trust in capital raising activities, and violations of the Georgia Uniform Deceptive Trade Practices Act, seeking emergency injunctive relief and damages.  The Receiver's Local Counsel filed a Notice of Receivership and stay request, pursuant to which this matter was stayed.

In the case styled *Bryan R. Burney v. Drive Planning, LLC and Russell Todd Burkhalter*, filed in the Hamilton Superior Court, Indiana (Cause No. 29D01-2408-PL-009063), Mr. Burney brought claims against Drive Planning and Mr. Burkhalter for breach of contract, fraud, and violations of federal and state securities laws. The Receiver filed a Notice of Receivership and motion to stay the case and, on October 15 ,2024, the Court granted that motion.

### F.    Known Investors and Creditors

To protect the identities, and prevent predatory solicitation, of Drive Planning investors, the Receiver has not attached a list of the known investors to this Report, but, upon request, the Receiver will provide a list to the Court for *in camera* review. Based on his review of certain court filings and Drive Planning's bank records to date, the Receiver is aware of nearly 2,400 investors who transferred more than $360,000,000 to Drive Planning. The Receiver and his forensic accountant are still preparing the forensic reconstruction of Drive Planning's accounts and anticipate that the completed reconstruction will reveal additional investors and investor deposits as reflected in the SEC's court filings.

The Receiver and his team have expended significant efforts in communicating with investors of Drive Planning. As explained above, soon after his appointment, the Receiver set up a dedicated telephone line and an email address for investors to communicate with the Receiver's office and obtain information

regarding the enforcement action and the Receivership, and created a website (www.driveplanningreceivership.com), which contains a summary of this action, important court filings and dates, answers to several frequently asked questions, and other information relevant to investors.  The Receiver then sent emails to all known investors notifying them of this enforcement action and his appointment, providing general information regarding the Receivership, providing the telephone number, email address, and website address, and inviting them to contact the Receiver with any questions and visit the website for further information regarding the Receivership and the enforcement action.

Among the questions that investors presented to the Receiver are questions regarding tax and individual retirement account ("IRA") issues.  The Receiver has worked with his financial advisors and tax consultants at the Forensic Accountant's office to analyze the issues and determine whether Drive Planning submitted incorrect tax filings that would affect investors' tax filings.  The Receiver confirmed that Drive Planning did not submit tax filings while it was operating, and, as such, the Receiver lacks sufficient information to submit filings to assist investors in their tax reporting.  The Receiver and his counsel informed investors that they cannot provide advice regarding tax issues, their retirement accounts, or any other matter and directed them their respective tax, IRA, and other professionals.  The Receiver then added frequently asked questions and answers to the Receivership website,

providing general information regarding these issues and referring investors to their respective professionals to address their particular issues. As investors present additional common questions to the Receiver's team, the Receiver will update the Receivership website with additional frequently asked questions and answers to the extent possible and as is appropriate.

During the initial communications with investors, the Receiver and his team learned that approximately one-third of the investors only speak, or prefer to speak, Spanish. As such, all written communications sent to all investors will be in English and Spanish, the content on the Receivership website is being translated into Spanish, and there will be an option to review the website in Spanish.

With the assistance of Stretto, the Receiver compiled one comprehensive investor email list, deduped and verified the email addresses, and on August 20, 21, and 22, 2024, sent out formal emails in English and Spanish, to all known investors, providing an explanation regarding the commencement of the SEC enforcement action, the appointment of the Receiver, certain mandates of the Appointment Order, general information concerning the role of the Receiver, and again providing the Receivership telephone number, email address, and website to facilitate the dissemination of important information to investors. Because numerous investors have asked when they will receive their money back, the Receiver also provided a general explanation regarding the procedures and possible timing of a potential

claims process and distribution plan that may be formulated, approved, and implemented in this Receivership.

As explained above, during the Reporting Period, the Receiver obtained Court approval to employ Stretto as his data collection agent to prepare a secure online portal to collect and process information and documents from investors necessary for the Receiver's Forensic Accountant to complete the account reconstruction and assist the Receiver to otherwise fulfill his duties under the Appointment Order, and to facilitate the Receiver's team's use of all the data received from investors. *See* ECF No. 38.  The Receiver then worked with Stretto to create the portal in both English and Spanish through which investors can provide their contact information and upload their documents evidencing their investments in Drive Planning, including wire transfer confirmations, canceled checks, promissory notes, bank statements, and/or retirement account statements.  The collection of this information and documentation will streamline any claims process that may be approved by the Court, given that much of the information and documentation necessary to complete the forensic reconstruction of accounts will be required to confirm investors' claims and losses.

On September 16, 2024, after the portal was completed, the Receiver with the assistance of Stretto, sent out a mass email to all investors providing a link for a data collection form and a link to the secure portal to upload their documentation through

DocuSign.  Soon thereafter, numerous investors began uploading their information and documents, contacting the Receiver's team (by email and telephone) to obtain assistance with identifying and gathering the requested documents, and calling Stretto's technical support hotline for assistance with accessing the portal and uploading the documents.  Additionally, Stretto is assisting the Receiver in organizing the significant data that investors have uploaded to the portal and will assist the Receiver in sending future mass emails to investors providing them with periodic updates regarding the Receivership.

### G.    Identifying and Pursuing Liquidated and Unliquidated Claims

During the Reporting Period, the Receiver began investigating whether Drive Planning holds liquidated and unliquidated claims against third parties, affiliates, insiders, and investors of Drive Planning who received net gains.

During his investigation, the Receiver discovered that significant transfers of funds and other assets (including real properties) were made to third parties, insiders, and affiliates of Drive Planning who do not appear to have provided equivalent value to Drive Planning and/or who may have facilitated the misconduct and contributed to the investor losses that are the subject of this enforcement action.  The Receiver began investigating the claims that the Estate may have against those parties, gathering relevant information and documents among Drive Planning's records and sending out subpoenas to various individuals and entities requesting the production

of records.  The Receiver will continue to investigate these potential claims and, after consulting with the SEC, will pursue all viable claims to obtain significant recoveries for the Estate.

In the meantime, after the Reporting Period, the Receiver prepared and sent litigation hold letters to various agents/advisors and other parties involved with Drive Planning who may be the subjects of the Receiver's future recovery actions.  These letters demand the preservation of all relevant documents, electronically stored information ("ESI"), and communications related to their involvement with the company.  The purpose is to ensure that all potential evidence is retained in anticipation of litigation aimed at recovering funds that Drive Planning misappropriated or otherwise improperly transferred to third parties, affiliates, insiders, and/or net winners.  The letter also asks the recipients to contact the Receiver's office to discuss the return of the funds they improperly received.

During the Reporting Period, the Receiver discovered that Drive Planning had paid $400,000 to the Tampa Bay Rays under a marketing agreement between Drive Planning and the Major League Baseball team.  An initial $200,000 was paid in April 2024, and an additional $200,000 was transferred on August 13, 2024 – the same day the Court entered the Appointment Order.

In exchange for this payment, Drive Planning was promised advertising and promotional rights with the Tampa Bay Rays, including visible branding and the use

of hospitality suites during postseason events.  The Receiver has demanded the return of the $400,000, as misappropriated investor funds, which unjustly enriched the Tampa Bay Rays at the expense of investors, and for which reasonably equivalent value was not provided to Drive Planning.  The Receiver is working with the Tampa Bay Rays' counsel to resolve the Estate's claim to recover the funds.

The Receiver and his professionals will continue to analyze potential sources of recovery and gather evidence for purposes of developing and pursuing claims the Receivership Estate may have to recover funds or other assets belonging to or improperly transferred from Drive Planning, including without limitation turnover and fraudulent transfer actions, as is appropriate and authorized by the Court. Further, the Receiver will investigate the Estate's potential claims against professionals and institutions that may have facilitated the alleged misconduct of Defendants or otherwise contributed to the damages alleged to have been sustained by Defendants' investors.  The Receiver will complete his investigation of those claims, and after consultation with the SEC, pursue those claims he believes are meritorious and likely to result in a significant recovery for the Receivership Estate.

## IV. CASH ON HAND AND ACCRUED EXPENSES OF ESTATE

As of September 30, 2024 (the end of the Reporting Period), the Receiver held a total of $52,460,102.45 in cash-on-hand in his fiduciary accounts for the Receivership Estate at City National Bank, Synovus Bank, and Axos Bank, and

$47,048.65 in operating and escrow accounts maintained for the Florida rental properties at Truist Bank.

The Standardized Fund Accounting Report for the Reporting Period, setting forth the receipts and disbursements of the Receivership Estate in connection with the Receiver's recoveries and preservation of assets described throughout this Report, is attached as **Exhibit B**.

During the Reporting Period, the Receivership Estate has incurred administrative expenses in the form of fees and costs of the Receiver and his Court-approved professionals, including Lead Counsel, Georgia Counsel, and the Forensic Accountant, for the work they performed or the costs they incurred in connection with fulfilling the Receiver's duties under the Appointment Order. Pursuant to the Appointment Order, the Receiver will file an application seeking approval and payment of those fees and costs from the funds the Receiver has marshalled and deposited into his fiduciary accounts since he was appointed.

## V. CONCLUSION

The Receiver and his professionals appreciate the opportunity to assist the Court in this matter. Until further order of the Court, the Receiver and his professionals will continue their efforts, as discussed herein, to fulfill the Receiver's duties under the Appointment Order in the most cost-effective manner while seeking to maximize the ultimate recovery by the Receivership Estate.

Respectfully submitted,

s/*Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
    Florida Bar No. 1025060
    apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
    Florida Bar No. 44417
    rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
    Georgia Bar No. 636265
    Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that on October 30, 2024, I electronically filed the foregoing *Notice* using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: October 30, 2024.

                           s/*Russell Landy*
                           Russell Landy, Esq.
                           Florida Bar No. 44417
                           *Admitted Pro Hac Vice*