## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

      Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

      Relief Defendants.

Case No. 1:24-cv-03583-VMC

---

### RECEIVER'S UNOPPOSED MOTION TO APPROVE SALE OF PROPERTY IN MINERAL BLUFF, GEORGIA AND REQUEST FOR EXPEDITED RELIEF TO MEET NOVEMBER 15, 2025 CLOSING DEADLINE

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, hereby files his unopposed Motion to approve sale of property located in Mineral Bluff, Georgia and seeking

expedited relief to meet the November 15, 2024 closing deadline, and in support states:

## <u>BACKGROUND</u>

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc.  On August 13, 2024, the Court entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning, LLC ("Drive Planning"). *See* ECF No. 10.

The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme.  *See id*. at pp. 1-2.  The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors.  *See id*. at ¶¶ 4-7.  Accordingly, the Receiver took immediate possession and control of, among other properties, a real property located at Tower Road, Mineral Bluff, Georgia, which is owned by Defendant Russell Todd

Burkhalter and Relief Defendant Jacqueline Burkhalter (the "Tower Road Property").

Based on the Receiver's investigation of the Georgia real estate market, and in particular the neighborhood where the Tower Road Property is located, and consultation with multiple realtors familiar with that neighborhood, with due regard to the realization of the true and proper value of such real property and to prevent waste and/or incurring expenses to maintain the Tower Road Property, the Receiver believed it would be in the best interest of the Receivership Estate to immediately start marketing the property (with its furnishings) for sale by listing it for sale with a reputable and experienced realtor.

After interviewing several qualified realtors, the Receiver selected Harry Norman Realtors ("Harry Norman") to assist him in connection with the marketing and sale of the Tower Road Property. Harry Norman has extensive experience in selling real estate throughout Mineral Bluff, Georgia, is familiar with the local real estate market and the community in which the Tower Road Property is located, and has an impressive sales record within the area.

In October 2024, Mr. Burkhalter and Ms. Burkhalter agreed to the marketing and sale of various properties owned by the Defendants and/or Relief Defendants in Georgia (and Florida), including the Tower Road Property, with the sale proceeds being remitted to the Receivership Estate. Accordingly, the Receiver, Mr.

Burkhalter, Ms. Burkhalter, and Harry Norman entered into an exclusive listing agreement for the Tower Road Property, which provided, among other things, the commission structure for Harry Norman and any broker of a buyer in the sale of the Tower Road Property and other property owned by the Defendants and/or Relief Defendants in the area. In particular, in the event that the buyer is introduced to Harry Norman through an independent broker, each broker would be entitled to receive the following commission (as a percentage of the purchase price) as full compensation for services performed in connection with the marketing and sale of the Tower Road Property:  2.5% to Harry Norman; and 2.5% to the buyer's broker. This proposed commission is below the market rate of a 3% commission per broker, which will result in a meaningful savings for the Estate.

### **FACTUAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE**

Mr. Burkhalter and Ms. Burkhalter had purchased the Tower Road Property for $2,000,000 on September 23, 2022. After conducting extensive market research Harry Norman concluded that the Tower Road Property had a current market value slightly below that amount. Accordingly, the Receiver authorized Harry Norman to begin marketing the Tower Road Property for sale, with a listing price of $2,100,000, with a goal of selling it for at least $1,750,000.

Thereafter, Harry Norman received a cash offer from Michael Dris (the "Buyer") in the amount of $1,900,000 with a closing date on or before November 15, 2024.  *See* Purchase and Sale Agreement, attached hereto as **Exhibit A**.[1]

In evaluating the Buyer's offer, the Receiver considered Harry Norman's market analysis of the sales history and current listings of comparable properties in the area, indicating that the current market value of the Tower Road Property is approximately $1,750,000.  Moreover, Harry Norman's analysis demonstrated that the real estate market is particularly weak for properties in the neighborhood and compared to adjacent neighborhoods.  Therefore, Harry Norman determined that the $1,900,000 purchase price in the Purchase and Sale Agreement is above the current market value of the Tower Road Property and, thus, the highest price the Receiver should reasonably expect to receive for that property within the next six to eight months.  Because it is an all-cash offer with a short inspection period and a proposed closing within three weeks after the offer was presented, the offer is particularly favorable and the highest and best offer received to date.  As such, Harry Norman strongly recommended that the offer be accepted.

---

[1] Exhibit A incorporates a Counteroffer to or Modification of the Unaccepted Original Offer to the Purchase and Sale Agreement, which extended the expiration date by two days to provide additional time for the parties to consider and execute the Agreement, and making other minor modifications.

The Receiver took all of the foregoing under consideration and agrees with Harry Norman that, because the proposed purchase price is above the current market value of the Tower Road Property, the offer is all cash without mortgage contingencies, and the closing will be on November 15, 2024, accepting the offer would be in the best interest of the Estate.  Therefore, given that the offer is the highest and best offer received to date and likely to be received in foreseeable future, the Receiver presented the offer and Harry Norman's market analysis to Mr. Burkhalter and Ms. Burkhalter and recommended that they, as the title owners of the Tower Road Property, accept the offer and sign the Purchase and Sale Agreement and a Counteroffer to or Modification of the Unaccepted Original Offer (extending the expiration date by two days to provide additional time for the parties to consider and execute the Agreement, and making other minor modifications).  *See* Exhibit A.

In addition, the Receiver believes it is advisable to sell the Tower Road Property now because it will only deteriorate and remain at risk of burglary as it is an Airbnb that is rented occasionally, but otherwise sits vacant.  Finally, because the there is no mortgage on the property, the net proceeds of a sale would provide the Estate with a sizeable recovery.  Therefore, for the foregoing reasons, the Receiver believes it would be in the best interest of the Receivership Estate to sell the Tower Road Property now for the purchase price of $1,900,000, pursuant to the Purchase and Sale Agreement.  *See* Exhibit A.   As such, the Receiver, Mr. Burkhalter, and

Ms. Burkhalter, accepted that offer subject to this Court's approval. The Buyer is aware that the sale is contingent on this Court's approval, pursuant to the Appointment Offer.

Accordingly, the Receiver seeks Court approval to sell the Tower Road Property in accordance with the terms set forth in the Purchase and Sale Agreement. *See id*. Because there is always the possibility that the sale to the Buyer does not close, the Receiver also seeks Court approval to sell the Tower Road Property to another buyer for $1,900,000 or more, so that the Estate need not incur further expenses seeking Court approval for a sale at the same or a higher purchase price.

The Appointment Order provides the Receiver the authority to ". . . dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate". *See id.* at ¶ 37. Accordingly, the Receiver seeks this Court's approval of the sale of the Tower Road Property pursuant to the Purchase and Sale Agreement incorporated in Exhibit A because it is the best interests of the Estate for the reasons set forth herein.

## LEGAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

Judicial sales of real property such as the sale of the Tower Road Property are governed by 28 U.S.C. § 2001. Pursuant to subsection (b) of that statute, a receiver may conduct a judicial sale of real property as a private sale subject to court approval

after notice to all interested parties and hearing.[2]  This Court has authority to approve a private sale of real property, and has significant discretion in setting the terms and conditions for such sale, provided that the Court believes the sale is in the best interest of the Estate.  *See SEC v. McClintock,* No. 1:12-CV-04028-SCJ, 2020 U.S. Dist. LEXIS 266272 at *5 (N.D. Ga. July 20, 2020) (authorizing a judicial sale of property under 28 U.S.C. § 2001(b) because it was "clearly in the best interests of the Receivership Estate."); *see also U.S. v. Coal Branch Corp.*, 390 F.2d 7, 9-10 (E.D. Pa. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales.").  "It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof."  *Coal Branch Corp.*, 390 F.2d at 9-10.  Further, the Court can waive the specific requirements of 28 U.S.C. § 2001 where it believes that the receiver has substantially complied with the requirements of the statute in connection with the sale of real property.  *See McClintock,* 2020 U.S. Dist. LEXIS 266272 at *5.

---

[2] 28 U.S.C. § 2001 (b) provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.

Moreover, the Receiver believes that his engagement of an experienced real estate broker, the significant efforts made to market the Tower Road Property, including without limitation, listing the Tower Road Property in the Multiple Listing Service and aggressively marketing the Tower Road Property to qualified potential purchasers, performing an extensive analysis of the real estate market, including comparable sales and listings, and obtaining an offer  in excess of the estimated fair market value, exceed the requirements of 28 U.S.C. § 2001, which require three appraisals and publication of the proposed sale of the Tower Road Property for 10 days.  The Receiver believes waiving the requirements of three appraisals and publishing the proposed sale, in light of the costs associated therewith, is particularly appropriate here and soundly within the Court's discretion based on the favorable offer received, the current market value of the Tower Road Property, and the acceptance of that offer by the title owners of the property.

Accordingly, the Receiver respectfully requests that the Court exercise its discretion to approve the sale of the Tower Road Property under the terms provided herein, find that the Receiver has substantially complied with the intent of 28 U.S.C. § 2001, and relieve the Receiver of the statutory requirements of a judicial sale as permitted under applicable case law.

## REQUEST FOR EXPEDITED RELIEF

The Receiver respectfully seeks an expedited ruling on this Motion pursuant to the Purchase and Sale Agreement, which requires that the closing of the sale of the Tower Road Property take place on or before November 15, 2024.  Because the sale is subject to this Court's approval, the closing cannot take place unless and until an Order is entered granting this Motion.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with counsel for Defendants and Relief Defendants, regarding the relief requested herein, and such counsel informed the Receiver or undersigned counsel that they consent to the requested relief.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court consider this Motion on an expedited basis and enter the proposed order, attached hereto as **Exhibit B**, prior to the November 15, 2024 closing deadline, approving the sale of the Tower Road Property to the Buyer in accordance with the terms and conditions set forth in the Purchase and Sale Agreement and the Counteroffer to or Modification of the Unaccepted Original Offer, attached hereto

as **Exhibit A**, and grant such other and further relief as the Court deems just and proper.

       Dated:  November 8, 2024

s/ *Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Russell Landy
Florida Bar No. 44417
rlandy@dvllp.com
*Admitted Pro Hac Vice*
Adriana M. Pavon
Florida Bar No. 1025060
apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I HEREBY CERTIFY that on November 8, 2024, I electronically filed the foregoing document using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I FURTHER CERTIFY that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  November 8, 2024.

s/ *Russell Landy*
Russell Landy, Esq.
  Florida Bar No. 44417
  *Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
rlandy@dvllp.com