## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     **Plaintiff,**

v.

                              **Civil Action No. 1:24-cv-03583-VMC**

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     **Defendants,**
**and**

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     **Relief Defendants.**

_____/

## RECEIVER'S UNOPPOSED INITIAL INTERIM APPLICATION FOR AN ORDER APPROVING AND AUTHORIZING PAYMENT OF FEES AND EXPENSES OF RECEIVER AND HIS PROFESSIONALS

Kenneth D. Murena, the Court-Appointed Receiver (the "Receiver") in the above-captioned Securities and Exchange Commission ("SEC") enforcement action, files his unopposed initial application (the "Application") seeking the Court's (a) approval of fees and costs that the Receiver and his professionals incurred from August 13, 2024, through September 30, 2024 (the "Application Period"), and (b)

authorization to immediately pay eighty percent (80%) of the fees (with a 20% holdback) and one hundred percent (100%) of the costs from funds held by the receivership estate (the "Receivership Estate"). In support of his Application, the Receiver states as follows:

## SUMMARY

During the Application Period, the Receiver and his professionals worked diligently to carry out the duties and responsibilities of the Receiver pursuant to the Order Appointing Receiver [ECF No. 10] (the "Appointment Order"). All such work is described in detail in the Receiver's Initial Status Report [ECF No. 61] and in the invoices of the Receiver and his professionals attached hereto.

Promptly following his appointment, the Receiver assumed control of all known records, computers, email and cloud storage accounts, real properties, offices, bank accounts, funds, and other assets of the Defendants and Relief Defendants, in compliance with the mandates of the Appointment Order [ECF No. 10]. To assist with such recovery and preservation of records and assets for the benefit of the Receivership Estate, and to fulfill his other duties under the Appointment Order, the Receiver engaged legal counsel, forensic accountants, forensic IT professionals, a technology company and noticing and claims agent, and real estate brokers.

During the Application Period, the Receiver identified and took possession and control of more than $51 million in cash held in accounts of Drive Planning, LLC ("Drive Planning") at financial institutions, including Truist Bank and JP Morgan Chase Bank, and more than $1.1 million worth of cryptocurrencies held in an account of Defendant Russell Todd Burkhalter ("Burkhalter") at Coinbase. The Receiver transferred those funds (including the proceeds of the sale of the cryptocurrencies) to the fiduciary accounts he opened for the Receivership Estate at City National Bank of Florida, Synovus Bank, and Axos Bank. As of the end of the Application Period, the Receiver held $52,460,102.45 in cash on hand in these fiduciary accounts, and $47,048.65 in operating and escrow accounts for certain rental properties at Truist Bank. All of the funds in the fiduciary accounts at City National Bank of Florida, Synovus Bank, and Axos Bank are maintained in insured cash sweep accounts that are fully FDIC insured and were earning interest at a rate of at least 4.5% until September 18, 2024 and then at least 4.0% until the end of the Application Period. During the Application Period, the Estate earned nearly $193,000 in interest on the funds held in the fiduciary accounts.

Further, the Receiver identified and took control of real property associated with the Defendants and Relief Defendants located in Florida, Georgia, and Indiana worth at least $35 million, including an operating cattle ranch, an event space, a western supply store, commercial buildings, several houses and condominium units,

three multi-family rental properties, and vacant land.  Additionally, the Receiver secured the turnover of ownership and control of a luxury condominium unit in Cabo San Lucas, Mexico with an estimated market value exceeding $4 million, and a condominium unit in St. Petersburg, Florida, with an estimated market value of more than $2.5 million.  Moreover, the Receiver took control of a 70-foot yacht owned by Defendant Burkhalter, valued at nearly $3 million.  A list of the assets in which the Receivership Estate has an interest, noting their estimated values, was attached to the Receiver's Initial Status Report [ECF No. 61] at Exhibit A.

With respect to the real properties and the business being operated thereon, the Receiver and his team inspected and photographed or otherwise documented the properties and businesses and their fixtures, contents, and related assets.  The Receiver, with the assistance of his professionals, took control of the management of the cattle ranch, the event space, the western supply store, and the single and multi-family rental properties, met with the various employees who run those businesses, and established procedures and protocols to ensure the Receiver's oversight and approval of all operations and expenditures.  The Receiver and his team are monitoring all bank accounts utilized by those businesses and hold regular meetings or calls with key employees and administrators.  Moreover, the Receiver worked on confirming whether the properties and businesses were insured and, if not, worked towards securing appropriate insurance coverage.  And, the Receiver

investigated the status of payment of taxes on the properties and paid past due taxes. Further, the Receiver interviewed numerous realtors for purposes of marketing the properties for sale, selected experienced and qualified realtors for the properties in each state, negotiated listing agreements providing for reduced commission rates, and executed those agreements shortly after the Application Period.

In the course of his investigation, the Receiver discovered various real estate and personal property that were purchased with investor funds but are currently owned or controlled by third parties, insiders, or affiliates of the Defendants. To preserve the Estate's interests in those assets, the Receiver recorded notices of lis pendens in the counties in which the real properties are located and sought the turnover of all such assets, including by sending demand letters and engaging is discussions with the parties in possession of the assets or their respective counsel. One agent/advisor of Drive Planning turned over his ownership interests in a condominium units in Cabo San Lucas, Mexico and St. Peterburg, Florida estimated to be worth more than $6.5 million. And, Defendant Burkhalter and a Relief Defendant agreed to the sale of certain vehicles titled in their names and to the Estate's retaining the sale proceeds, so the Receiver began marketing them for sale. The Receiver also recovered nearly $42,000, traceable to Drive Planning, which was being held in the trust account of an attorney for an agent/advisor of Drive Planning.

Also during his investigation, the Receiver discovered that significant transfers of funds and other assets (including real properties) were made to third parties, insiders, and affiliates of Drive Planning who did not appear to have provided equivalent value to Drive Planning and/or who may have facilitated the misconduct and contributed to the investor losses that are the subject of this enforcement action. The Receiver began investigating the claims that the Estate may have against those parties, gathering relevant information and documents among Drive Planning's records and sending out subpoenas to various individuals and entities requesting the production of records. After the Application Period, the Receiver sent out document preservation letters to all known agents/advisors of Drive Planning and continued to investigate the Estate's potential claims against them and other parties.

Based on his review of the Drive Planning's computers, interviews of its administrator and other employees, and discussions with a forensic accounting firm hired by Drive Planning shortly before the commencement of this enforcement action, the Receiver confirmed that Drive Planning did not manage its finances or business operations through, or maintain its financial records on, a formal accounting system such as QuickBooks. Instead, Drive Planning's administrator attempted to keep track of its finances and operations through an Excel spreadsheet, which the Receiver discovered included a multitude of unclear or incomplete entries.

In addition, Drive Planning did not prepare or file any tax returns for any of the years of its operation.  This presented significant challenges to the Receiver and his professionals to understanding Drive Planning's finances and operations and identifying its assets, records, and information necessary for the Receiver to fulfill his duties under the Appointment Order.  The Receiver and his forensic accountant attempted to piece together the fragments of vague and incomplete information in the Excel spreadsheet, the financial information and records scattered and haphazardly stored in Drive Planning's offices and on its computers and cloud drive, the information in its ADP account, and the business records saved in its DocuSign account, to understand Drive Planning's operations and transactions with various third parties, insiders and affiliates, to identify claims the Estate may have against such parties, to discovery additional assets of Drive Planning or traceable to investors, and to confirm transfers between investors and Drive Planning.  The Receiver and his forensic accountant concluded that Drive Planning's accounts would need to be reconstructed utilizing the bank records for its various accounts. Accordingly, the Receiver issued subpoenas and demand letters to the banks at which Drive Planning held accounts requesting the records necessary to perform the reconstruction of accounts.  In addition, the Receiver sent letters to various third parties that may possess records or assets of Estate requesting information and documents needed for the reconstruction.

To obtain the information and documents from the nearly 2,400 investors needed to complete the reconstruction of accounts and determine the amounts that investors transferred to, received back from, and lost as a result of their investments with, Drive Planning, the Receiver, with Court-approval, engaged the technology company and noticing and claims agent Stretto to set up a secure online portal through which investors could upload their information and documents, to send investors notice of and a link to the portal, and to provide technical support to investors. This collection of investor information and documents has assisted the Receiver's team to prepare the account reconstruction and otherwise fulfill the Receiver's duties and will significantly streamline any claims process that the Court may approve in this Receivership.

Finally, the Receiver set up a website (www.driveplanningreceivership.com) on which he is posting information regarding the enforcement action and Receivership, important court filings and orders, frequently asked questions and answers, and other information. The Receiver also established a dedicated telephone number and email address through which investors can communicate with the Receiver's office. And, the Receiver sent out letters to all investors notifying them of the enforcement action and Receivership and providing pertinent information, including the website address, the telephone number, and the email address. Since the first week of the Receivership, attorneys and staff at the Receiver's office have

been communicating with investors, in both English and Spanish, through the Receivership telephone number and email address, fielding thousands of calls and emails from investors and assisting them to locate and provide the requested information and records through the secure online portal. The Receiver and his counsel also have been communicating and cooperating with attorneys who represent significant numbers of investors.

During the Application Period, the Receiver and his lead counsel, Damian Valori Culmo ("Lead Counsel") collectively worked 983.9 hours on this Receivership at significantly reduced hourly rates. In connection with such work, the Receiver and Lead Counsel, incurred $307,258.21 in fees, at an average hourly rate of $312.29, and incurred $8,933.55 in costs. Further, the Receiver's local counsel in the Northern District of Georgia, the Law Offices of Henry F. Sewell, Jr. LLC ("Local Counsel"), worked 27.2 hours on this Receivership and incurred $10,569.00 in fees, at an average hourly rate of $388.57, and $200.00 costs. And, the Receiver's forensic accountant, Hays Financial Consulting, LLC ("Forensic Accountant"), worked 216.9 hours on this Receivership and incurred $70,855.50 in fees, at an average hourly rate of $326.67, and $484.93 in costs.

The work performed by the Receiver and his team during this initial Application Period has been a significant undertaking. Indeed, securing and marshaling all known assets and records of the Estate, identifying and seeking to

recover additional assets and records from various sources, commencing the forensic reconstruction of Drive Planning's accounts, investigating and asserting the Estate's claims against third parties, insiders, and affiliates, overseeing the operations of the cattle ranch, event space, and supply store, managing several rental properties, setting up a secure online portal for investors, creating a website, and communicating with and obtain information and records from the 2,400 investors, has required substantial time and resources of numerous experienced professionals.    While the Receiver acknowledges that the fees and costs incurred during the Application Period were significant, the Receiver believes they were reasonable and necessary to fulfill his duties and responsibilities under the Appointment Order [ECF No. 10]. And, the hourly rates of the Receiver and his professionals were reduced by up to 45.5%, their average hourly rates were well below market rates, and the Receiver has voluntarily reduced Lead Counsel's fees by more than $10,000.  Further, the Receiver expects that the fees and costs his team will incur during similar time periods throughout this receivership will be substantially less than those incurred during the particularly challenging initial Application Period.  Accordingly, the Receiver respectfully requests that the Court grant this Application, approving the fees and costs incurred during the Application Period and authorizing the payments as set forth below.

I.    **THE ENTRY OF THE APPOINTMENT ORDER, THE RECEIVER'S DUTIES THEREUNDER, AND <u>HER EMPLOYMENT OF PROFESSIONALS</u>**

A.    **Entry of Appointment Order and Receiver's Duties Thereunder**

This action commenced on August 13, 2024, with the filing of the SEC's Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC ("Drive Planning" or "Defendant") and Russell Todd Burkhalter, alleging they operated a massive Ponzi scheme under the guise of a real estate investment program known as Real Estate Acceleration Loan ("REAL"). *See* ECF No. 1. The SEC also filed a Motion for Emergency Relief seeking an asset freeze, the appointment of a receiver over Drive Planning, and a preliminary injunction to prevent the dissipation of assets and the continued defrauding of investors [ECF No. 2]. On August 13, 2024, the Court entered a Preliminary Injunction Freezing Assets and Granting Other Equitable Relief [ECF No. 11] and an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth Dante Murena, Esq., as the Receiver over Drive Planning and all assets owned by or purchased with funds derived from investors or clients of Drive Planning. *See* ECF 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Drive Planning Ponzi scheme. *Id*. at p. 1. The Receiver is tasked with securing assets attributable to investor funds, managing the estate, and liquidating

assets for the benefit of defrauded investors. *Id*. at ¶¶ 5-7.  The Receiver also has the power to engage professionals, issue subpoenas, and take any legal actions necessary to recover assets and protect the estate.  *Id*. at ¶ 7(f).

Accordingly, the Receiver sought authorization to employ legal counsel, forensic accountants, and other professionals to assist him to fulfill his duties under the Appointment Order.  Specifically, the Receiver file a Motion to employ Damian Valori Culmo as Lead Counsel, the Law Offices of Henry F. Sewell Jr. LLC as Local Counsel in Georgia, and Hays Financial Consulting LLC as Forensic Accountant to assist in the investigation and administration of the Receivership Estate.[1]  *See* ECF Nos. 21.  On August 19, 2024, the Court granted that Motion.  *See* ECF No. 24.

## B.    Compensation and Reimbursement of Expenses

Pursuant to the Appointment Order, the Receiver and his court-approved professionals are entitled to reasonable compensation for services rendered and reimbursement of expenses incurred in connection therewith.  *See* Appointment

---

[1] The Receiver also obtained Court approval employ Preti Flaherty Beliveau & Pachios LLP as counsel in New Hampshire to assist with litigation against Drive Planning, and John Pikoff as counsel in San Jose del Cabo, Mexico, to facilitate taking control of, managing, marketing for sale, and the sale transaction and transfer of tile of real property in which the Receivership Estate has an ownership interest. *See* ECF Nos. 44, 45.  The Receiver is not seeking Court approval and authority to pay any fees or costs of those counsel because they have not incurred fees in excess of the Court-approved retainers they were authorized to apply to their initial invoices. *See* ECF Nos. 46 and 47.

Order [ECF No. 10] at ¶ 59.  To receive such compensation and reimbursement, the Receiver is required to, within forty-five (45) days after the end of each calendar quarter, file with the Court an application for payment from the Receivership Estate of the fees and costs incurred by the Receiver and his court-approved professionals during the prior calendar quarter.  *See id.* at ¶ 60.  Additionally, pursuant to the Appointment Order, the Receiver's retained professionals "may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court".  *Id.* at 62.

Accordingly, the Receiver files this application seeking the Court's authorization to pay 80% of the fees (with a 20% holdback) and 100% of the costs incurred by his professionals during the Application Period as outlined herein.

## II.    CASH ON HAND AND RECEIPTS AND DISBURSEMENTS DURING APPLICATION PERIOD

As of September 30, 2024, the Receiver held a total of $52,460,102.45 in cash-on-hand in his fiduciary accounts for the Receivership Estate at City National Bank, Synovus Bank, and Axos Bank, and $47,048.65 in an operating and an escrow accounts maintained for the Florida rental properties at Truist Bank.

The SEC's Standardized Fund Accounting Report (the "SFAR") for the Application Period, setting forth the receipts and disbursements of the Receivership Estate, is attached hereto as **Exhibit A**.

### III.    REDUCED HOURLY RATES AND FEES

As explained above, the Receiver and Lead Counsel capped their hourly rates at $395 for this matter in accordance with the agreement between the Receiver and the SEC.  *See* ECF No. 26, at ¶ 5.  This represents a 45.5% reduction from the standard hourly rates of the Receiver and Lead Counsel, which has resulted and will continue to result in significant savings for the Receivership Estate.[2]

In addition to significantly reducing their hourly rates, the Receiver and his Lead Counsel reduced the fees they incurred during the Application Period by $10,303.29 (3.35%).  And, neither the Receiver nor his professionals billed for the time expended while traveling, preparing and finalizing their invoices, or confirming whether the parties have objections to the Receiver's fees or costs.  As a result of the reduced rates and fees, the average hourly rate (total fees incurred divided by total hours expended) for the Receiver and Lead Counsel during the Application Period was only $312.29.  The average hourly rate of the Receiver's Local Counsel in

---

[2] For example, the Receiver's and his Lead Counsel's hourly rates have been reduced as follows:

| | |
|---|---|
| a) Partners (including Receiver) – | From $600-$725 reduced to $395 |
| b) Of Counsel – | From $550-$625 reduced to $375 |
| c) Associate Attorneys – | From $225-$450 reduced to $200-295 |
| d) Non-Attorney Professionals – | From $125-$175 reduced to $75-$150 |

Georgia was $388.57 and the average hourly rate of the Receiver's Forensic Accountant was $326.67.

## IV.  <u>MEMORANDUM OF LAW</u>

Pursuant to the Appointment Order, the Receiver and his Lead Counsel are entitled to reasonable compensation and expenses.  A court-appointed receiver who reasonably and diligently discharges his duties is entitled to be fairly compensated for services rendered and expenses incurred.  *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."); *Donovan v. Robbins*, 588 F. Supp. 1268, 1273 (N.D. Ill. 1984) (finding a receiver that diligently and successfully discharged the responsibilities placed upon him by the Court is entitled to reasonable compensation for his efforts). A receiver and his professionals are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties."  *FTC v. Direct Benefits Grp.,* LLC, Case No. 6:11-cv-1186-Orl-28TBS, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonable hourly rate in the relevant market and the reasonable number of hours expended.  *See, e.g., SEC v. Aquacell Batteries, Inc.*, Case No. 6:07- cv-608-Orl-22DAB, 2008 WL 276026,

*3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988).  The hourly rates charged by the Receiver and his Lead Counsel, Local Counsel, and Forensic Accountant are reasonable for professionals practicing in the Northern District of Georgia, particularly in light of the reduced hourly rates (capped at $395) described above, and the fact that the services reflected in the attached invoices were reasonably necessary to the Receiver's performance of his duties under the Appointment Order.

## REQUEST FOR FEES AND COSTS FOR
## WORK PERFORMED DURING APPLICATION PERIOD

As set forth in paragraphs 59 of the Appointment Order, the Receiver is authorized to seek compensation for his activities and those of his retained professionals.  *See* ECF No. 10 at ¶ 59.  The Appointment Order directed the Receiver to file his interim fee applications in accordance with the conditions set forth therein. *See id.* at ¶ 60.  Pursuant to the Appointment Order, this fee application "may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court."  *See id.* at ¶ 62.  Accordingly, by this Application and as outlined below, the Receiver is seeking this Court's approval of all of the fees and costs incurred by the Receiver and his professionals during the Application Period, and authorization to pay from the funds in the Estate 80% of such fees (with a holdback of 20% of the fees) and 100% of such costs.

The complete time records for the work performed by the Receiver and his professionals are set forth in the invoices attached hereto as **Exhibit B-D**.

As reflected in the attached invoices, during the Application Period, the Receiver and Lead Counsel (Damian Valori Culmo) incurred fees and costs totaling $316,191.76 (including $307,258.21 in fees and $8,933.55 in costs). *See* **Exhibit B**. Local Counsel incurred fees and costs totaling $10,769.00 (including $10,569.00 in fees and $200.00 in costs). *See* **Exhibit C**. And, the Forensic Accountant incurred fees and costs totaling $71,340.43 (including $70,855.50 in fees and $484.93 in costs). *See* **Exhibit D**.

## CERTIFICATION OF CONFERRAL

Undersigned counsel for the Receiver hereby certifies that, on October 15, 2024, the Receiver provided a draft of this Fee Application and the attached invoices to counsel for the SEC and asked that they provide the SEC's position on the relief requested herein. Counsel for the SEC informed the Receiver that the SEC does not oppose the requested relief.

Further, undersigned counsel for the Receiver hereby certifies that, on October 21, 2024, the Receiver provided the attached invoices to counsel for Defendant Russell Todd Burkhalter and counsel for the Relief Defendants, with an explanation regarding the reduced hourly rates, the discounted fees, the total hours worked, and the average hourly rates, and requested that they provide their

respective clients' positions on the relief requested herein.  Counsel for Defendant Russell Todd Burkhalter and counsel for the Relief Defendants informed the Receiver that they do not oppose the requested relief.

## CERTIFICATION OF RECEIVER

The undersigned certifies that:

(a)   I have read this Application;

(b)   to the best of my knowledge, information and belief formed after reasonable inquiry, the Application and all fees and expenses therein are true and accurate;

(c)   all fees contained in the Application are based on the rates listed in the Exhibits attached hereto and such fees are reasonable, necessary and commensurate with the skill and experience required for the activity performed;

(d)   I have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission);

(e)   in seeking reimbursement for a service which I justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), I require reimbursement only for the amount billed to me by the third-party vendor

and paid by me to such vendor.  To the extent that such services were performed by me as Receiver, I certify that I am not making a profit as Receiver on such reimbursable service; and

(f)    I have not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

Respectfully submitted and certified,

/s/    *Kenneth D. Murena*
KENNETH D. MURENA, RECEIVER

**WHEREFORE**, Kenneth D. Murena, the Court-appointed Receiver, respectfully requests that the Court enter an Order:

(a)    approving the total amount of fees and costs that the Receiver and his Lead Counsel, Damian Valori Culmo, incurred during the Application Period in the amount of $316,191.76 (including $307,258.21 in fees and $8,933.55 in costs);

(b)    approving the total amount of fees and costs that the Receiver's Local Counsel, the Law Offices of Henry F. Sewell, Jr. LLC, incurred during the Application Period in the amount of $10,769.00 (including $10,569.00 in fees and $200.00 in costs);

(c)    approving the total amount of fees and costs that the Receiver's Forensic Accountant, Hays Financial Consulting LLC, incurred during the

Application Period in the amount of $71,340.43 (including $70,855.50 in fees and $484.93 in costs);

(d)    authorizing the Receiver to pay 80% of fees (with a 20% holdback) and 100% costs that the Receiver and his professionals incurred during the Application Period, to be paid from the fiduciary accounts the Receiver maintains for the Receivership Estate; and

(e)    granting any and all other relief the Court deems appropriate under the circumstances.

Respectfully submitted,

s/*Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
 Florida Bar No. 1025060
 apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
 Florida Bar No. 44417
 rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
 Georgia Bar No. 636265
 Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that on November 14, 2024, I electronically filed the foregoing *Notice* using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  November 14, 2024.

s/*Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*
