# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>DRIVE PLANNING, LLC, and RUSSELL TODD BURKHALTER,<br><br>    Defendants,<br><br>and<br><br>JACQUELINE BURKHALTER, THE BURKHALTER RANCH CORPORATION, DRIVE PROPERTIES, LLC, DRIVE GULFPORT PROPERTIES LLC, and TBR SUPPLY HOUSE, INC.,<br><br>    Relief Defendants. | Case No. 1:24-cv-03583-VMC |

## RECEIVER'S UNOPPOSED MOTION TO APPROVE SETTLEMENT AND RELEASE AGREEMENT WITH NETJETS

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, files this unopposed Motion to Approve the Settlement and Release Agreement (the "Settlement") entered into by and between the Receiver and NetJets Sales, Inc., NetJets Aviation, Inc., and NetJets Services, Inc. ("NetJets"). In support, the Receiver states:

# BACKGROUND

### A.   Appointment of Receiver

On August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq., as the Receiver over the assets of Drive Planning, LLC ("Drive Planning") and all assets owned by or purchased with funds derived from investors or clients of Drive Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id*. at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id*. at ¶¶ 4-7. The Receiver also was authorized to engage professionals subject to Court approval, issue subpoenas, and take any legal actions necessary to recover assets and protect the Estate. *See id*. at ¶ 7(f).

### B.   Drive Planning's Transfers to and Obligations Under Agreements With NetJets

Upon reviewing and analyzing the financial records of Drive Planning, the Receiver discovered that Drive Planning had transferred a total of $4,276,165.16 (the "Transfers") to NetJets during the time period it was operating the alleged Ponzi and/or otherwise fraudulent scheme. These transfers were related to Drive Planning's participation in multiple fractional aircraft ownership and lease

agreements, specifically: (i) on June 23, 2022, Drive Planning entered into a Fractional Program Agreement leasing a 6.25% fractional interest in an Embraer Phenom 300 (N333QS); (ii) on November 9, 2023, Drive Planning entered into a Fractional Program Agreement leasing a 6.25% fractional interest in a Citation Latitude (N511QS); and (iii) on March 29, 2024, Drive Planning entered into a Fractional Program Agreement owning a 6.25% fractional interest in a Citation Latitude (N952QS) (collectively, the "Program Agreements").

After Drive Planning was placed into receivership, the Receiver sought to recover the transferred funds and terminate the agreements with NetJets. On August 20, 2024, the Receiver formally notified NetJets of the termination of the agreements and requested final account statements. In response, NetJets provided preliminary accounting statements evidencing the value that NetJets had provided to Drive Planning in exchange for the Transfers and outlining the amounts that Drive Planning owed to NetJets under the Program Agreements. With respect to the value provided in exchange for the Transfers, the records provided and the Receiver's investigation revealed that Defendant Russell Todd Burkhalter used the aircraft subject to the Program Agreements. Though it appears he primarily used the aircraft for his personal benefit rather than for legitimate business purposes, there is no evidence to suggest that NetJets knew this or the fraudulent nature of Drive Planning's operations, and the aircraft usage could arguably be characterized as

business-related. Therefore, the Receiver would not likely be able to overcome NetJets's affirmative defense to the Receiver's fraudulent transfer claims that NetJets had provided reasonably equivalent value to Drive Planning and received the Transfers in good faith.

As to Drive Planning's obligations under the Program Agreements, Drive Planning owes $177,264.08 to NetJets related to the N333QS Program Agreement, owes $365,834.84 to NetJets related to the N511QS Program Agreement, and owes $60,313.97 to Net Jets related to the N952QS Program Agreement. Therefore, NetJets has claims against Drive Planning to recover these amounts pursuant to the Program Agreements.

  **C.** **Negotiations to Settle Competing Claims Between Drive Planning and NetJets**

To avoid the costs and uncertainty of pursuing the Estate's claims to recover the Transfers from NetJets and responding to NetJets's claims against the Estate, the Receiver engaged in good faith negotiations with NetJets to resolve these competing claims and recover value for the benefit of the Receivership Estate. Specifically, as to the N952QS Program Agreement, the Receiver sought to sell back Drive Planning's interest to NetJets. The N952QS Program Agreement's repurchase provisions required satisfaction of all debts and allowed for liquidated damages, which could have significantly reduced the Estate's recovery. As a result of good faith negotiations, however, NetJets agreed to waive $181,654.55 in liquidated

damages and increase its payment to the Receivership Estate from the initially proposed $403,765.23 to $585,419.78, thereby enhancing the recovery for the benefit of investors.

In addition, the Receiver agreed to grant NetJets an allowed unsecured claim in the total amount of $543,098.92, representing the combined obligations under the N333QS and N511QS Program Agreements, to be treated *pari passu* with other similarly situated creditors in any claims process that the Receiver may propose, and the Court may approve, in this Receivership. The proposed Settlement expressly notes that this allowance is not a guarantee of payment, which remains contingent upon this Court's approval of a claims process and availability of funds for distributions to unsecured *creditors* following final distributions to *investors*.

The approval of the Settlement will enable the Receiver to avoid costly, potentially-protracted litigation, secure a substantial payment to the Receivership Estate, and resolve all disputes between the Parties. The Settlement includes mutual releases of all claims related to the Program Agreements and Transfers.

## THE SETTLEMENT

On April 6 and 7, 2025, the Receiver and NetJets executed the Settlement, a copy of which is attached hereto as **Exhibit A**. The Settlement will not become effective until this Court approves it. Pursuant to the terms of the Settlement, the Receiver and NetJets agree that NetJets shall pay $585,419.78 (the "Settlement

Amount"), in connection with NetJets' repurchase of Drive Planning's ownership interest in N952QS and in exchange for a release of the Receiver's claims against NetJets. NetJets will pay to the Receiver the $585,419.78 within thirty-five days of the Court's approval of the Settlement. In the event NetJets does not pay the Settlement Amount, the Receiver shall be entitled to, and NetJets consents to, the immediate entry in the District Court (upon verified motion by the Receiver) of a judgment against NetJets in the amount of $585,419.78, less any amounts paid by or on behalf of NetJets pursuant to the Settlement. The foregoing description of the Settlement is included here for summary purposes only and not intended to constitute a full recitation of the terms of the Settlement. A review of this description or this motion should not be a substitute for a review of the complete Settlement. *See* Exhibit A.

## REQUESTED RELIEF

The Settlement will result in the recovery of significant funds for the benefit of the Receivership Estate, obviate the need to engage in costly, protracted litigation with NetJets regarding the Estate's claims to recover the Transfers and NetJets's claims under the Program Agreements, and eliminate the attendant risks and uncertainty. As such, the Receiver believes the Settlement is fair, reasonable, and in the best interests of the Estate and its creditors. Accordingly, the Receiver seeks this Court's approval of the Settlement.

## **CERTIFICATION OF CONFERENCE**

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with the respective counsel for Defendants and Relief Defendants, regarding the relief requested herein and such counsel informed undersigned counsel that they have no opposition to the requested relief.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit B**, approving the Settlement, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

                                                      s/*Russell Landy*
                                                      Russell Landy, Esq.
                                                      Florida Bar No. 44417
                                                      *Admitted Pro Hac Vice*

| | |
|---|---|
| *Lead Counsel for Kenneth D. Murena, as Court-Appointed Receiver* | *Local Counsel for Kenneth D. Murena, as Court- Appointed Receiver* |
| Adriana M. Pavon | Henry F. Sewell, Jr. |
|     Florida Bar No. 1025060 |     Georgia Bar No. 636265 |
|     apavon@dvcattorneys.com |     Buckhead Centre |
| *Admitted Pro Hac Vice* | 2964 Peachtree Road NW, Suite 555 |
| Russell Landy | Atlanta, GA 30305 |
|     Florida Bar No. 44417 | Telephone: (404) 926-0053 |
|     rlandy@dvllp.com | hsewell@sewellfirm.com |
| *Admitted Pro Hac Vice* | |

DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

**CERTIFICATE OF SERVICE, FONT AND MARGINS**

I hereby certify that on April 15, 2025, I electronically filed the foregoing *Motion* using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  April 15, 2025.

                                                s/*Russell Landy*
                                               Russell Landy, Esq.
                                               Florida Bar No. 44417
                                               *Admitted Pro Hac Vice*