UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,**

      **Plaintiff,**

v.

                                    Civil Action No. 1:24-cv-03583-VMC

**DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,**

      **Defendants,**
**and**

**JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,**

      **Relief Defendants.**
_____/

### RECEIVER'S MOTION FOR TURNOVER OF AND IMPOSITION OF CONSTRUCTIVE TRUST ON REAL PROPERTY IN GEORGIA TRACEABLE TO DRIVE PLANNING, LLC

Kenneth D. Murena, Esq., the court-appointed Receiver ("Receiver") in the above-captioned enforcement action, files this motion, pursuant to the Order Appointing Receiver [ECF No. 10] (the "Appointment Order"), and applicable law, seeking an order requiring the immediate turnover of real property in the possession

and titled in the name of Julie Ann Edwards and imposing a constructive trust on such real property in favor of the receivership estate for Drive Planning, LLC (the "Receivership Estate"), and in support states:

## I.  INTRODUCTION

The Receiver seeks the immediate turnover of and the imposition of a constructive trust over real property located in Cumming, Georgia (the "Edwards Property"), which was purchased using misappropriated investor funds of Drive Planning, LLC ("Drive Planning") and titled in the name of Julie Ann Edwards despite actual knowledge of the Receivership, just weeks after the appointment of the Receiver.  The Edwards Property constitutes property of the Receivership Estate under this Court's Appointment Order.  The Receiver has attempted in good faith to resolve this matter with Ms. Edwards through her counsel, including demands for return of the funds she received from Drive Planning or turnover of the property, but has been unsuccessful.  Upon turnover and imposition of constructive trust over the Edwards Property, the Receiver will commence marketing it for sale for the benefit of the Receivership Estate and ultimately the defrauded investors.

## II.  BACKGROUND

Julie Ann Edwards was the Chief Administrative Officer and a broker/agent of Drive Planning, had access to Drive Planning's bank accounts, and had knowledge of the Securities and Exchange Commission's (SEC) investigation of

Drive Planning prior to the commencement of the SEC enforcement action and the Receivership on August 13, 2024. *See* Declaration of Kenneth D. Murena, as Receiver of Drive Planning, LLC ("Receiver's Declaration"), attached hereto as **Exhibit A**, at ¶ 4. On June 6, 2024, Drive Planning transferred $630,000 originating from an account containing investor funds to Ms. Edwards for the purchase of the Edwards Property.[1] *See id*. at ¶ 5. Specifically, $630,000 was wired from Drive Planning's Truist Bank account ending in 2951 to Julie Ann Edwards's Wells Fargo personal checking account. *See id*. at ¶ 5. In addition, through his reconstruction of Drive Planning's financial activity, the Receiver identified a series of substantial transfers made to Julie Ann Edwards totaling $175,000 from the same Drive Planning Truist Bank account. *See id*. at ¶ 6. The Receiver later learned that a portion of those funds were used for the purchase of the Edwards Property and moving costs, furniture, and interior design for the Edwards Property. *See id*. at ¶ 10.

On or about July 3, 2024, Ms. Edwards transferred $638,280.59 and $43,280.59 from her Wells Fargo checking account to the escrow account of the attorney who served as the closing agent for Ms. Edwards's purchase of the Edwards Property. *See id*. at ¶ 11. The total purchase price of the property was $666,460.00,

---

[1] As reflected in the Receiver's Sworn Statement and Accounting, this Drive Planning account held the majority of Drive Planning's investor funds. *See* ECF No. 81.

and Ms. Edwards's closing costs were $7,443.34, accordingly Ms. Edwards paid a total of $673,903.34 in misappropriated investor funds to purchase the Edwards Property. *See id*. at ¶ 9. Upon the closing of the purchase of the Edwards Property on September 27, 2024, the title to the property was transferred to Julie Ann Edwards from Orchards of South Forsyth, LP. *See id*. at ¶ 3. Crucially, Ms. Edwards purchased the Edwards Property with Drive Planning's investor-derived funds just ***weeks after*** the SEC enforcement action and the Receivership were publicly announced, ***after*** she received actual notice of the Court's orders, and ***after*** she was interviewed by the Receiver regarding her role and duties at Drive Planning and her knowledge of and involvement with its financial record keeping and transactions. *See id*. at ¶ 12. At no point did Ms. Edwards disclose to the Receiver Drive Planning's transfer of $630,000 to her personal account shortly before the commencement of the Receivership or her intention to use those funds to purchase a residence for herself.

The Receiver confirmed through his investigation that Ms. Edwards used the $630,000 and $43,280.59 she had received from Drive Planning to purchase her current residence in Cumming, Georgia (the Edwards Property). *See id*. at ¶¶ 9-11. In particular, the Receiver confirmed that these funds were used for the down payment, balance of purchase price, and closing costs, totaling $673,903.34, leaving no ambiguity that the Edwards Property is an asset of the Receivership Estate. *See*

4

*id*. On July 3, 2024, Ms. Edwards directed a payment of $43,280.59 to the closing agent using funds she had received from Drive Planning, leaving a remaining balance to close on the purchase of the Edwards Property of $630,622.75. *See id*. at ¶ 10. On the same day, Ms. Edwards transferred to the closing attorney an additional $630,000, also derived from Drive Planning. The remaining $622.75 balance was paid by Ms. Edwards in cash at closing, as reflected in the closing statement. *See id.* at ¶ 11.

Upon further investigation, the Receiver learned that Ms. Edwards had used $102,044.73 (from the $175,000 she had received from Drive Planning prior to receiving the $630,000 transfer) to pay for home furniture and interior design for the Edwards Property, as detailed by an expenditure sheet that Ms. Edwards's counsel provided to the Receiver. *See id.* at ¶ 15.

Upon learning of the purchase of the Edwards Property with Drive Planning's funds, the Receiver demanded that Ms. Edwards return those funds or turn over the property to the Estate. As Ms. Edwards has failed to comply with these demands, the Receiver seeks the appropriate legal and equitable remedies to recover the Edwards Property so that it can be liquidated, and the proceeds can be distributed to the defrauded investors through the distribution plan that is approved by this Court.

### III. <u>MEMORANDUM OF LAW</u>

Given that Ms. Edwards is in possession of property purchased with funds transferred directly from an account of Drive Planning containing investor funds, the Court should (i) require Ms. Edwards to immediately turn over possession and control of the Edwards Property to the Receiver, and (ii) impose a constructive trust over the Edwards Property in favor of the Receivership Estate and declare that the Edwards Property is property of the Receivership Estate.[2] By acquiring valuable real estate with funds traceable to investors after the Receivership had been commenced, and failing to disclose to the Receiver the $630,000 transfer from Drive Planning or her use of those funds to purchase the Edwards Property despite having actual knowledge of the Receivership and the Receiver's inquiries regarding Drive Planning's financial records and transactions, Ms. Edwards acted in disregard of this Court's Appointment Order, the duties and authority of the Receiver, and the rights of defrauded investors. Ms. Edwards's conduct demonstrates the need for immediate relief, including turnover of and imposition of a constructive trust over the Edwards Property to preserve and protect its value for the benefit of the Receivership Estate and the defrauded investors.

---

[2] The Receiver notes that this Court has personal jurisdiction over Julie Edwards and her assets in the Northern District of Georgia pursuant to 28 U.S.C. §754.

### a. Court Orders Require Turnover of Edwards Property to Receiver

The Court should compel Ms. Edwards to immediately turn over the Edwards Property to the Receiver because it was purchased with funds transferred directly from an account of Drive Planning containing investor funds, and Ms. Edwards has refused to turn over the property to the Receiver or repay the amount transferred to purchase it, despite demand pursuant to the Appointment Order.

#### i. Preliminary Injunction

On August 13, 2024, the SEC filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC and Russell Todd Burkhalter, alleging they operated a massive Ponzi scheme under the guise of a real estate investment program. *See* ECF No. 1.

The SEC also filed an Expedited Motion for Emergency Relief to prevent the dissipation of assets and the continued defrauding of investors. *See* ECF No. 2. In its motion, the SEC presented evidence to show that, from September 2020 through June 2024, over 2,500 investors residing in at least 48 states invested approximately $372 million based on promises of unrealistically high returns from real estate ventures. *See id*. at pp. 5-6. Defendants primarily used new investor funds to pay earlier investors, in typical Ponzi fashion, with more than $280 million still being owed to investors. *See id*. at pp. 4-6.

7

Based on the foregoing, and other evidence presented in the SEC's motion, the Court entered a Preliminary Injunction Freezing Assets and Granting Other Equitable Relief (the "Preliminary Injunction"), freezing the assets of the Defendants and Relief Defendants, prohibiting the destruction of documents, and requiring an accounting of the Defendant's assets and activities, among other things. *See* ECF No. 11 at ¶ 4. In the Preliminary Injunction, the Court found that the SEC had presented sufficient evidence to support a *prima facie* case that Mr. Burkhalter and Drive Planning had violated federal securities laws by making material misrepresentations and misappropriating investor funds. *See id.* at ¶ 2. The Court further found that the Relief Defendants improperly received funds derived from the fraudulent activities. *See id.* at ¶ 4.

### ii. Appointment Order

Also on August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq., as the Receiver over Drive Planning and all assets owned by, or purchased with funds derived from investors or clients of, Drive Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id*. at pp. 1-2. The Receiver was authorized and directed to take "exclusive jurisdiction and possession of the assets, whatever kind and wherever situated" of Drive Planning and "take immediate

possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests . . ..." ECF No. 10 at ¶¶ 1, 19.  Moreover, the Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors.  *See id*. at ¶¶ 4-7.

Given that the Edwards Property was acquired with funds transferred directly from an account of Drive Planning that contained investor funds, the Receiver is authorized to take immediate possession of that property.  Because Ms. Edwards has refused to turn over the Edwards Property to the Receiver and is unable to repay the entire amount that Drive Planning had transferred to purchase the property, the Court should compel Ms. Edwards to turn over the property.

### b. Controlling Law Imposes a Constructive Trust Over the Edwards Property in Favor of Receivership Estate Because it was Purchased with Funds Fraudulently Obtained from Innocent Investors.

Courts in Georgia have explained, "[a] constructive trust is a remedy created by a court in equity to prevent unjust enrichment."  *See* Final MILE Holdings, LLC v. DSP Cap. Funding, LLC, No. 1:21-CV-00543-ELR, 2023 U.S. Dist. LEXIS 235078 * 31 (N.D. Ga. Dec. 20, 2023).  It is not an independent cause of action.  *See* APA Excelsior III, L.P. v. Windley, 329 F. Supp. 2d 1328, 1366 (N.D. Ga. 2004).  The 11th Circuit has explained that the reason for imposing a constructive trust is to

avoid unjust enrichment to the recipient of the windfall, and to do equity for the party whose property has been misused. *See Bender v. Centrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995).

The law of constructive trusts has evolved to recognize that, if the person seeking to impose the constructive trust can trace not only the original *res*, but also successive funds or property into which the original *res* has been transformed, then the party may still impose the constructive trust. *See In re Financial Federated*, 347 F.3d at 891 (*citing In re Powe*, 75 B.R. at 393). Therefore, tracing is a basic requirement and element of proof for one seeking to impose a constructive trust. *See In re First Fidelity*, 36 B.R. at 511.

Here, the Receiver has traced investor funds deposited for investment in Drive Planning to the purchase of the Edwards Property. *See* Receiver's Declaration at ¶ 8. In particular, the Receiver identified a wire transfer on June 6, 2024, in the amount of $630,000 from Drive Planning's Truist Bank account holding funds derived from investors to Ms. Edwards's Wells Fargo personal checking account. *See id.* at ¶ 5. In addition, prior to receiving the $630,000 from Drive Planning, Julie Edwards had received $175,000 from Drive Planning's Truist Bank account holding funds derived from investors. *See id.* at ¶ 6. Of those transfers from Drive Planning, Ms. Edwards transferred the entire $630,000 plus additional funds, including $43,280.59 of the $175,000 in transfers, to the closing agent for the purchase of the Edwards Property,

10

after which the title to the property was transferred to Julie Ann Edwards. *See id*. at ¶¶ 10-11. Drive Planning had obtained those funds through fraudulent means and then misappropriated them for the personal use of Ms. Edwards. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. Indeed, Drive Planning obtained funds from investors by misrepresenting how they would be invested and then misappropriated those funds by, among other things, transferring them for the purchase of assets including real properties for its agents/advisors such as Ms. Edwards. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. To prevent the unjust enrichment of Ms. Edwards at the expense of the defrauded investors whose funds were used to purchase the Edwards Property, the law provides that the Edwards Property is subject to a constructive trust in favor of those defrauded investors. *See In re Powe*, 75 B.R. at 393; *In re First Fidelity Fin. Serv., Inc.*, 36 B.R. at 511.

This Court created the Receivership Estate to marshal and safeguard assets of the Drive Planning investors. As such, the Court should impose a constructive trust over the Edwards Property in favor of the Receivership Estate, for the benefit of the investors, and compel Ms. Edwards to turn over exclusive possession and control of the property to the Receiver.

### c. **A Constructive Trust was Impressed Upon the Funds Used to Purchase the Edwards Property at the Time Those Funds Were Fraudulently Obtained, Before the Edwards Property Was Purchased.**

A constructive trust arises in favor of a defrauded party at the time the fraud was committed. *See In re General Coffee Corp.*, 828 F.2d 699, 702-707 (11th Cir. 1987) (determining that, under 11th Circuit law, a constructive trust arises at the time of the fraud rather than at the time of judgment on the party's fraud claim); *see also United States v. 1419 Mount Alto Rd.,* 830 F. Supp. 1476, 1481 (N.D. Ga. 1993) (recognizing a constructive trusts arise, not from the intention of the parties, but in equity when it is against equity that one holding legal title should retain title.). As established above, Drive Planning fraudulently obtained the funds used to purchase the Edwards Property. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. Therefore, a constructive trust arose in favor of the defrauded investors at the time Drive Planning fraudulently obtained their funds, *i.e.*, *before* the Edwards Property was purchased using their funds transferred from a Drive Planning account and *before* it was titled in the name of Julie Ann Edwards.

As such, because no individual or entity has a competing claim to the Edwards Property, the Court should impose a constructive trust in favor of the Receivership Estate (for the benefit of the defrauded investors) upon the Edwards Property, which was purchased with funds over which a constructive trust was already impressed as a result of Drive Planning's fraudulent acquisition thereof. *See*

*Lee v. Lee,* 260 Ga. 356, 392 S.E.2d 870, 872 (Ga. 1990) (noting that under Georgia law "a constructive trust may be imposed where property has been acquired by fraud, or where, though not acquired by fraud it is against equity that it should be retained by the person who holds it"); *see also In re Financial Federated*, 347 F.3d at 891 (finding that a constructive trust can be imposed upon property if fraudulently obtained funds upon which a constructive trust was already impressed can be traced to that property); *In re Hecker*, 264 F. App'x 786, 787 (11th Cir. 2008) (upholding use of tracing funds that were the subject of fraud in imposing an equitable lien against a homestead purchased with or improved by such funds).

Here, the Receiver, with the assistance of his counsel and forensic accountant, has traced funds that were obtained from investors to the purchase of the Edwards Property. *See* Receiver's Declaration at ¶¶ 5-11. Specifically, as explained above and in the attached declaration, the Receiver discovered that $630,000 was wired on June 28, 2024, from Drive Planning's account holding funds derived from its investors to Ms. Edwards's personal checking account. *See id*. Ms. Edwards then used those funds to purchase the Edwards Property, and the title to that property was transferred to her. *See id*. at ¶ 11. In addition, Julie Edwards received $175,000 from Drive Planning's Truist Bank account holding funds derived from investors of which $43,280.59 was used to purchase the Edwards Property. *See id* at ¶¶ 6, 11.

13

d. **Efforts to Resolve Issues with Julie Ann Edwards**

The Receiver has made good-faith efforts to negotiate with Ms. Edwards a resolution of the Estate's claim to the Edwards Property, including by having Ms. Edwards obtain a loan secured by the property to repay the Estate for the purchase of the Edwards' property.  As of the filing of this motion, however, a resolution had not been reached, and counsel for Ms. Edwards informed undersigned counsel that she is unable to obtain a loan and will not turn over the Edwards Property.

## IV. **CONCLUSION**

The Receiver's request for turnover of and the imposition of a constructive trust over the Edwards Property is in accord with the law in this District, principles of equity, and the Appointment Order and Preliminary Injunction.  Drive Planning defrauded thousands of innocent investors out of hundreds of millions of dollars and used a portion of their funds, earmarked for investment in Drive Planning's real estate acceleration loan or tax lien programs, to purchase the Edwards Property. Fortunately, applicable law and principles of equity impress upon that property (even homestead) a constructive trust and equitable lien in favor of the defrauded investors so the Receiver may take exclusive possession and control of the property and liquidate it for the benefit of those victims.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with counsel for Defendants and Relief Defendants, regarding the relief requested herein and such counsel informed undersigned counsel that they have no opposition to the requested relief. Further, undersigned counsel conferred with Julie Ann Edwards's former counsel, who confirmed that Ms. Edwards objects to the relief requested herein.

WHEREFORE, the Receiver respectfully requests that this Court enter an order: (i) requiring the immediate turnover of possession and control of the Edwards Property to the Receiver; (ii) imposing a constructive trust over the Edwards Property in favor of the Receivership Estate and/or declaring that it is property of the Estate and thus subject to exclusive possession, control, and/or liquidation by the Receiver; (iii) ordering Ms. Edwards and any other occupant to vacate the premises upon a date certain not to exceed 30 days from entry of this Court's order; (iv) authorizing the Receiver to market and sell the Edwards Property; and (vi) directing Ms. Edwards to cooperate with, and provide any information or signatures needed by the Receiver to preserve the value of the Edwards Property and effect its sale and transfer.

Respectfully submitted,

        s/*Russell Landy*
        Russell Landy, Esq.
        Florida Bar No. 44417
        *Admitted Pro Hac Vice*

| | |
|---|---|
| *Lead Counsel for Kenneth D. Murena, as Court-Appointed Receiver* | *Local Counsel for Kenneth D. Murena, as Court- Appointed Receiver* |
| Adriana M. Pavon | Henry F. Sewell, Jr. |
|    Florida Bar No. 1025060 |    Georgia Bar No. 636265 |
|    apavon@dvcattorneys.com |    Buckhead Centre |
| *Admitted Pro Hac Vice* | 2964 Peachtree Road NW, Suite 555 |
| Russell Landy | Atlanta, GA 30305 |
|    Florida Bar No. 44417 | Telephone: (404) 926-0053 |
|    rlandy@dvllp.com | hsewell@sewellfirm.com |
| *Admitted Pro Hac Vice* | |
| DAMIAN | VALORI | CULMO | |
| 1000 Brickell Avenue, Suite 1020 | |
| Miami, Florida 33131 | |
| Telephone: (305) 371-3960 | |
| Facsimile: (305) 371-3965 | |

**<u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>**

    I hereby certify that on May 13, 2025, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record.

    I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: May 13, 2025.

        s/*Russell Landy*
        Russell Landy, Esq.
        Florida Bar No. 44417
        *Admitted Pro Hac Vice*