## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**UNITED STATES SECURITIES**
**AND EXCHANGE COMMISSION,**

     **Plaintiff,**

**v.**

                           **Civil Action No. 1:24-cv-03583-VMC**

**DRIVE PLANNING, LLC, and**
**RUSSELL TODD BURKHALTER,**

     **Defendants,**
**and**

**JACQUELINE BURKHALTER,**
**THE BURKHALTER RANCH**
**CORPORATION, DRIVE**
**PROPERTIES, LLC, DRIVE**
**GULFPORT PROPERTIES LLC,**
**and TBR SUPPLY HOUSE, INC.,**

     **Relief Defendants.**

_____/

## RECEIVER'S MOTION FOR TURNOVER OF AND IMPOSITION OF CONSTRUCTIVE TRUST ON REAL PROPERTY IN INDIANA TRACEABLE TO DRIVE PLANNING, LLC AND REQUEST FOR EXPEDITED RELIEF

Kenneth D. Murena, Esq., the court-appointed Receiver ("Receiver") in the

above-captioned enforcement action, seeks the expedited entry of an order, pursuant

to the Order Appointing Receiver [ECF No. 10] (the "Appointment Order"), and

applicable law, requiring the immediate turnover of real property in the possession

and titled in the name of Gerardo Lorenzo Linarducci and Jennifer Joan Linarducci, and imposing a constructive trust on such real property in favor of the receivership estate for Drive Planning, LLC (the "Receivership Estate"), and in support states:

## I.    <u>INTRODUCTION</u>

The Receiver seeks the immediate turnover of and the imposition of a constructive trust over the mansion located in Indianapolis, Indiana (the "Linarducci Property"), which was purchased using misappropriated investor funds of Drive Planning, LLC ("Drive Planning") and titled in the name of Gerardo Lorenzo Linarducci and Jennifer Joan Linarducci.   The Linarducci Property constitutes property of the Receivership Estate under this Court's Appointment Order.   The Receiver has attempted in good faith to resolve this matter with Mr. Linarducci, including discussions with his attorney and demands for payment or turnover of the property, all of which have been unsuccessful.

Further, the Receiver seeks expedited consideration of this motion in light of a recent communication from a neighbor of Mr. Linarducci, who reported that Mr. Linarducci stated he does not intend to turn over the property voluntarily and would "trash the place" to prevent others from benefiting from it.   While the Receiver does not know if Mr. Linarducci intends to act on this statement, his threat creates a risk of significant harm to Receivership property, and violation of the Appointment Order, warranting prompt judicial intervention.   Upon turnover and the imposition

of a constructive trust over the Linarducci Property, the Receiver intends to take possession and promptly market the property for sale for the benefit of the Receivership Estate and the defrauded investors.

## II.    BACKGROUND

On July 10, 2023, Drive Planning transferred $1,920,535.75 originating from an account containing investor funds for the purchase of the Linarducci Property. *See* Declaration of Kenneth D. Murena, as Receiver of Drive Planning, LLC ("Receiver's Declaration"), attached hereto as **Exhibit A**, at ¶ 5. Specifically, $1,920,535.75 was wired from Drive Planning's Account ending in 2951 to Title Services, LLC on July 10, 2023. *See id*. As reflected in the Receiver's Sworn Statement and Accounting, this account held the majority of Drive Planning's investor funds. *See* ECF No. 81.

The title to the Linarducci Property was transferred to Gerardo Lorenzo Linarducci and Jennifer Joan Linarducci. *See id.* at ¶ 3. Mr. Linarducci was an agent/advisor and investor of Drive Planning. *See id.* at ¶ 4. Jennifer Joan Linarducci is Mr. Linarducci's wife. The Receiver's review of Drive Planning's records did not uncover any written promissory note, mortgage, or loan agreement pursuant to which Drive Planning purchased the property for Mr. Linarducci. The Receiver, through his counsel, has requested that Mr. Linarducci produce any documentation evidencing an agreement or other arrangement with Drive Planning

concerning the property or Drive Planning's transfer of funds to purchase it; to date, no such documents have been provided.

Upon learning of the purchase of the Linarducci Property, the Receiver made several demands to Mr. Linarducci that he transfer the property to the Estate for the benefit of defrauded investors. As Mr. Linarducci has failed to comply with these demands, the Receiver seeks a Court order directing him to turn over the property and imposing a constructive trust over it in favor of the Receivership Estate as of the date Drive Planning transferred the funds for its purchase.

### III.    <u>MEMORANDUM OF LAW</u>

As Mr. Linarducci is in possession of property purchased with funds transferred directly from an account of Drive Planning containing investor funds, the Court should (i) require Mr. Linarducci and (and any other occupant including without limitation Ms. Linarducci) to immediately turn over possession and control of the Linarducci Property to the Receiver, and (ii) impose a constructive trust over the Linarducci Property in favor of the Receivership Estate and declare that the Linarducci Property is property of the Receivership Estate.

### a.  <u>The Court Has Jurisdiction Over the Linarducci Property.</u>

This Court has jurisdiction and control over all real property of the Receivership Estate, including the Linarducci Property purchased with Drive Planning funds, located in the Southern District of Indiana, pursuant to 28 U.S.C. §§

754 and 1962. "A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754; *see also SEC v. Bilzerian*, 378 F.3d 1100, 1104 (D.C. Cir. 2004) (Section 754 extends "the territorial jurisdiction of the appointing court. . . to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754.") (*citing Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981). To establish such jurisdiction, the Receiver must "within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." 28 U.S.C. §754. The Receiver complied with 28 U.S.C. §754 by filing a copy of the Complaint [ECF No. 1] and the Appointment Order [ECF No. 10] in the Southern District of Indiana within ten days of the entry of the Appointment Order. *See* S.D. Ind. Case No. 1:24-mc-00046-JRS-MKK at ECF No. 1 ("S.D. Ind. 754 Action").

When 28 U.S.C. §754 applies, its companion statute, 28 U.S.C. § 1692, is triggered. Section 1692 effectively expands the territorial jurisdiction of the court that appoints the receiver to any district in the United States where property believed to be that of the receivership estate is found, provided that the proper documents

have been filed in each such district as required by §754. *See* 28 U.S.C. § 1692 ("In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts."); *see also Bilzerian*, 378 F.3d at 1104 (finding that personal jurisdiction is established by the nationwide service of process authorized in receivership proceedings by 28 U.S.C. § 1692, under which "[t]he appointment court's process extends to any judicial district where receivership property is found." (*quoting Haile*, 657 F.2d at 826)). Further, Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute.".

Therefore, because the Receiver has filed the Appointment Order in the S.D. Ind. 754 Action and recorded it in the county in which the Property is located (*see* Receiver's Declaration at ¶ 11), and has served this Motion and the Appointment Order on Mr. Linarducci and Ms. Linarducci through their counsel, this Court has personal jurisdiction over that Property, pursuant to 28 U.S.C. § 1692 and Fed. R. Civ. P. 4(k)(1)(C).

**b.  The Receiver's Claim for Constructive Trust Is Proper
Because It Is Based on Harm to the Receivership Entity (Drive
Planning), not Investors.**

A receiver has standing to bring a constructive trust claim because it represents the legal interests of the entities in receivership, which are distinct from the interests of individual investors in a Ponzi scheme. *See Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014) ("[a] receiver of entities used to perpetrate a Ponzi scheme does not have standing to sue on behalf of the defrauded investors but does have standing to sue on behalf of the corporations that were injured by the Ponzi scheme operator").  Here, the Receiver's claim for a constructive trust arises from the direct harm to Drive Planning, LLC ("Drive Planning") as a result of Mr. Burkhalter transferring funds from Drive Planning's accounts to purchase the Linarducci Property for Mr. Linarducci, wrongfully diverting them for the improper purpose of depriving Drive Planning of its assets and unjustly enriching Mr. Linarducci. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024) (finding that receiver had standing to maintain fraudulent-transfer claims against brokers because those transfers injured the receivership corporate entities).

Even though the entities involved in the Ponzi scheme were used as tools by the schemer, they are still considered separate legal entities with their own rights and duties. *See Wiand v. Lee*, 753 F.3d at 1202.   These entities are harmed when their assets are diverted for unauthorized purposes, such as perpetuating the Ponzi

scheme, rather than being used for their stated purpose, such as investing on behalf of investors. *See id.*

Once a receiver is appointed, the entities in receivership are no longer under the "evil zombie" control of the Ponzi schemer, but are "freed from his spell," and are entitled to recover assets that were improperly transferred from the entities. *See id.* at 1201-1203; *see also Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024) (finding that receiver had standing to maintain fraudulent-transfer claims against brokers because those transfers injured the receivership corporate entities). A receiver has standing to pursue constructive trust claims on behalf of the receivership entities, as opposed to individual investors who are considered tort creditors of the entities and do not have direct claims to recover the diverted assets from the parties to which they were improperly transferred. *See id.*

### c. Court Orders Require Turnover of Linarducci Property to Receiver.

Based on the findings in this Court's Orders, because the Linarducci Property was purchased with funds transferred directly from an account of Drive Planning containing investor funds, and Mr. Linarducci has refused to turn over the property to the Receiver or repay the amount transferred to purchase it, despite the Receiver's demands, the Court should compel Mr. Linarducci to immediately turn over the property to the Receiver.

### i.   Preliminary Injunction

On August 13, 2024, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC and Russell Todd Burkhalter, alleging they operated a massive Ponzi scheme under the guise of a real estate investment program. *See* ECF No. 1.

The SEC also filed an Expedited Motion for Emergency Relief to prevent the dissipation of assets and the continued defrauding of investors. *See* ECF No. 2. In its motion, the SEC presented evidence to show that, from September 2020 through June 2024, over 2,500 investors residing in at least 48 states invested approximately $372 million based on promises of unrealistically high returns from real estate ventures. *See id*. at pp. 5-6. Defendants primarily used new investor funds to pay earlier investors, in typical Ponzi fashion, with more than $280 million still being owed to investors. *See id*. at pp. 4-6.

Based on the foregoing, and other evidence presented in the SEC's motion, the Court entered a Preliminary Injunction Freezing Assets and Granting Other Equitable Relief (the "Preliminary Injunction"), freezing the assets of the Defendants and Relief Defendants, prohibiting the destruction of documents, and requiring an accounting of the Defendant's assets and activities, among other things. *See* ECF No. 11 at ¶ 4. In the Preliminary Injunction, the Court found that the SEC

had presented sufficient evidence to support a *prima facie* case that Mr. Burkhalter and Drive Planning had violated federal securities laws by making material misrepresentations and misappropriating investor funds. *See id.* at ¶ 2. The Court further found that the Relief Defendants improperly received funds derived from the fraudulent activities. *See id.* at ¶ 4.

### ii. Appointment Order

Also on August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq. as the Receiver over Drive Planning and all assets owned by, or purchased with funds derived from investors or clients of, Drive Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id.* at pp. 1-2. The Receiver was authorized and directed to take "exclusive jurisdiction and possession of the assets, whatever kind and wherever situated" of Drive Planning and "take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests . . .." ECF No. 10 at ¶¶ 1, 19. Moreover, the Receiver was tasked with, *inter alia*, securing assets **acquired with or otherwise traceable to investor funds**, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id.* at ¶¶ 4-7 (emphasis added).

### iii.    Final Judgment against Defendant Burkhalter

On April 10, 2025, the Court entered a Judgment as to Defendant Russell Todd Burkhalter (the "Judgment"), based on Defendant Burkhalter's having consented to the Court's jurisdiction over him and the subject matter of this action, consented to the entry of the Judgment without admitting or denying the allegation of the Complaint, and waived findings of fact and conclusions of law and any right to appeal from the Judgment.  *See* ECF No. 102.  The Judgment permanently enjoined Defendant Burkhalter from violating sections of the Securities Act and the Exchange Act and certain rules promulgated thereunder and prohibited Mr. Burkhalter from engaging in various actions that are the subject of the SEC's Complaint.  Further, the Judgment ordered Defendant Burkhalter to pay disgorgement of ill-gotten gains, interest, and a civil penalty, in amounts to be determined upon motion of the SEC.

With Defendant Burkhalter's liability as to the claims alleged in the SEC's Complaint having been established, and the findings and mandates in the Preliminary Injunction and Appointment Order effectively becoming permanent, the Receiver is entitled to take immediate possession of and to liquidate for the benefit of the defrauded investors all assets acquired with or otherwise traceable to Drive Planning investor funds.  As such, given that the Linarducci Property was acquired with funds transferred directly from an account of Drive Planning containing

11

investor funds, the Receiver is authorized to take immediate possession of that property.  Because Mr. Linarducci has refused to turn over the Linarducci Property to the Receiver or repay the entire amount of investor funds that Drive Planning had transferred to purchase the property, the Court should compel Mr. Linarducci to turn over the property so the Receiver can liquidate it for the benefit of the investors.

d. **Controlling Law Imposes a Constructive Trust Over the Linarducci Property in Favor of Receivership Estate Because It Was Purchased with Funds Fraudulently Obtained from Innocent Investors.**

Courts in Indiana[1] have explained, a constructive trust is a creature of equity, devised to do justice by making equitable remedies available against one who through fraud or other wrongful means acquires property of another.  *See Criss v. Bitzegaio*, 420 N.E.2d 1221, 1224 (Ind. 1981).

> A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may rise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which

---

[1] In constructive trust cases involving real property, federal and state courts in Georgia generally follow the traditional conflict of law rule of *lex loci rei sitae,* that is, the law of the place where the thing is. *See United States v. One 1990 Lincoln Town Car*, 817 F. Supp. 1575, 1577 (N.D. Ga. 1993) (applying Alabama law to a constructive trust issue because the property in question was located in Alabama)*; see also Veach v. Veach,* 205 Ga. 185, 190, 53 S.E.2d 98 (1949).

would result if the person having the property were permitted to retain it.

*Melloh v. Gladis*, 261 Ind. 647, 656, 309 N.E.2d 433, 438-39 (1974).

Constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would 'secure an unconscionable advantage, irrespective of the existence or evidence of actual intent to defraud.'" *Paramo v. Edwards*, 563 N.E.2d 595, 598 (Ind. 1990) (*quoting Beecher v. City of Terre Haute*, 235 Ind. 180, 184-85, 132 N.E.2d 141, 143 (1956)). It is "based on the premise that there are situations which might not amount to actual fraud, but which are 'so likely to result in injustice that the law will find a fraud despite the absence of fraudulent intent.'" *Stoll v. Grimm*, 681 N.E.2d 749, 757 (Ind. Ct. App. 1997) (*quoting Scott v. Bodor, Inc.*, 571 N.E.2d 313, 324 (Ind. Ct. App. 1991)).

The law of constructive trusts has evolved to recognize that, if the person seeking to impose the constructive trust can trace not only the original *res*, but also successive funds or property into which the original *res* has been transformed, then the party may still impose the constructive trust. *See* Hicks v. State, 635 N.E.2d 1151, 1156 (Ind. Ct. App. 1994) (upholding the imposition of constructive trusts over bank accounts containing stolen funds, emphasizing that tracing the funds into those accounts was essential to prevent unjust enrichment and facilitate restitution to the rightful owners). Therefore, tracing is a basic requirement and element of proof for one seeking to impose a constructive trust.

Here, the Receiver has traced investor funds deposited for investment in Drive Planning to the purchase of the Linarducci Property. *See* Receiver's Declaration at ¶¶ 5-8. In particular, the Receiver identified a wire transfer on July 10, 2023, in the amount of $1,920,535.75 from Drive Planning's account holding funds derived from investors to Title Services, LLC. *See id*. Those funds were used to purchase the Linarducci Property, and the title to the property was transferred to Gerardo Linarducci and Jennifer Linarducci. *See id*. at ¶ 8. Drive Planning had obtained those funds through fraudulent means and misappropriated them for the personal use of Mr. Linarducci. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 6; *see also Kalwitz v. Estate of Kalwitz,* 822 N.E.2d 274, 280 (Ind. Ct. App. 2005) (finding that fraud, either actual or constructive, is a prerequisite for the imposition of a constructive trust). Indeed, Drive Planning obtained funds from investors by misrepresenting how they would be invested and then misappropriated those funds by, among other things, transferring them (sometimes pursuant to promissory notes) for the purchase of valuable assets including real properties for its agents/advisors such as Mr. Linarducci. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 6. To prevent the unjust enrichment of Mr. Linarducci at the expense of Drive Planning and the defrauded investors whose funds were used to purchase the Linarducci Property, the law provides that the Linarducci Property is subject to a constructive

trust in favor of the Receivership Estate of Drive Planning for the benefit of those defrauded investors.

This Court created the Receivership Estate to marshal and safeguard assets of the Drive Planning investors. As such, the Court should impose a constructive trust over the Linarducci Property in favor of the Estate, for the benefit of the investors, and compel Mr. Linarducci to turn over exclusive possession and control of the property to the Receiver.

### e. A Constructive Trust Was Impressed Upon the Funds Used to Purchase the Linarducci Property at the Time Those Funds Were Fraudulently Obtained, Before the Linarducci Property Was Purchased and Titled in Name of the Linarduccis

A constructive trust arises by operation of law when one holding legal title to property cannot in good conscience retain the beneficial interest in that property, which justly belongs to another. *See Kalwitz*, 822 N.E.2d at 282. As established above, Drive Planning had fraudulently obtained the funds used to purchase the Linarducci Property. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 6. Therefore, a constructive trust arose in favor of the defrauded investors at the time Drive Planning had fraudulently obtained their funds, *i.e.*, *before* the Linarducci Property was purchased using their funds transferred from a Drive Planning account and *before* it was titled in the name of Gerardo Linarducci and Jennifer Linarducci.

As such, because no individual or entity has a competing lien on or other claim to the Linarducci Property, *see* Receiver's Declaration at ¶ 9, the Court should

impose a constructive trust in favor of the Receivership Estate (for the benefit of the defrauded investors) upon the Linarducci Property, which was acquired with the fraudulently obtained funds over which a constructive trust was already impressed as a result of Drive Planning's fraudulent acquisition thereof.

## IV.  CONCLUSION

The Receiver's request for turnover of and the imposition of a constructive trust over the Linarducci Property is in accord with the law in this District and in the State of Indiana (which applies given the property's location), principles of equity, and the Appointment Order and Preliminary Injunction.  Drive Planning defrauded thousands of innocent investors out of hundreds of millions of dollars and used a portion of their funds, earmarked for investment in Drive Planning's real estate acceleration loan or tax lien programs, to purchase the Linarducci Property. Fortunately, applicable law and principles of equity impress upon that property (even homestead) a constructive trust and equitable lien in favor of the Receivership Estate for the benefit of the defrauded investors so the Receiver may take exclusive possession and control of the property and liquidate it for the benefit of those victims.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with counsel for Defendant Burkhalter and counsel for Relief Defendants, regarding the relief

requested herein and such counsel informed the Receiver or undersigned counsel that they have no opposition to the requested relief.  Undersigned counsel also conferred with Gerardo Linarducci's counsel, who confirmed that Mr. Linarducci objects to the requested relief.

WHEREFORE, the Receiver respectfully requests that this Court enter an order: (i) requiring the immediate turnover of possession and control of the Linarducci Property to the Receiver; (ii) imposing a constructive trust over the Linarducci Property in favor of the Receivership Estate and/or declaring that it is property of the Estate and thus subject to exclusive possession, control, and/or liquidation by the Receiver; (iii) ordering Mr. Linarducci, Ms. Linarducci, and any other occupant of the Linarducci Property to vacate the premises upon a date certain not to exceed 30 days from entry of this Court's order; (iv) authorizing the Receiver to market and sell the Linarducci Property; and (v) directing Mr. Linarducci and Ms. Linarducci to cooperate with, and provide any information or signatures needed by the Receiver to preserve the value of the Linarducci Property and effect its sale and transfer.

Respectfully submitted,

s/*Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
    Florida Bar No. 1025060
    apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
    Florida Bar No. 44417
    rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
    Georgia Bar No. 636265
    Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

    I hereby certify that on June 12, 2025, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record and served Gerardo Lorenzo Linarducci the foregoing Motion through his counsel Stephen D. Councill at scouncill@cgc-law.com.

    I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: June 12, 2025.

                    s/*Russell Landy*
                    Russell Landy, Esq.
                    Florida Bar No. 44417
                    *Admitted Pro Hac Vice*