## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     Relief Defendants.

Civil Action No.
1:24-cv-03583-VMC

## OPINION AND ORDER

Before the Court is the Receiver's Motion for Turnover of and Imposition of

Constructive Trust on Real Property Traceable to Drive Planning, LLC ("Motion,"

Doc. 98). Through the Motion, the Receiver seeks an order requiring the immediate

turnover of real property in the possession and titled in the name of Mark Haye,

as trustee of the Mark Haye Living Trust, and imposing a constructive trust on

such real property in favor of the receivership estate. Mr. Haye filed a response to the Motion (Doc. 104). The Receiver filed a Reply in support of the Motion. (Doc. 106). Mr. Haye filed a Surreply without leave of Court (Doc. 109), but the Court permitted the Receiver to file a response to the Surreply rather than striking the Surreply (Doc. 113). The Receiver filed a response to the Surreply (Doc. 118) as permitted.[1] The Court ordered supplemental briefing on May 21, 2025. (Doc. 124). The Receiver filed a supplemental brief (Doc. 129), and no other party filed a responsive supplemental brief. For the reasons that follow, the Court will grant the Motion.

**Background[2]**

This matter arises in a civil action brought by the United States Securities and Exchange Commission ("SEC") against Drive Planning, LLC ("Drive Planning") and the company's CEO Todd Burkhalter under federal securities laws. (Declaration of Cody C. Turley dated Aug. 9, 2024, "Turley Decl.," ¶ 4, Doc. 2-6; *see generally* Compl., Doc. 1).

---

[1] In accordance with the Court's Order precluding "further responses or replies" made without leave of Court, the Court has disregarded Mr. Hayes's May 12, 2025 (Doc. 115), May 15, 2025 (Doc. 121), and May 19, 2025 (Doc. 122) filings.

[2] The Court draws the following factual background from the declarations of record. Fed. R. Civ. P. 43(c). Quotation marks are omitted from declaration excerpts to improve readability.

## I.      Drive Planning

Drive Planning, under the direction of Mr. Burkhalter, offered an investment opportunity called the "Real Estate Acceleration Loan" or "REAL" program. (Turley Decl. ¶ 7). Drive Planning produced and distributed advertisements for REAL in the form of brochures, online videos, social media posts, and web pages. (*Id.* ¶ 8). These advertisements were distributed to the general public through means such as U.S. Mail, email, YouTube, Facebook, and the company's website. (*Id.*).

Drive Planning's offering materials for REAL stated that the investment was a safe and low risk opportunity for investors to generate passive income. (*Id.* ¶ 9). The advertisements and offering materials stated that an individual could invest with a minimum of $20,000 and receive a guaranteed return of 10% every 90 days. (*Id.*). The advertisements stated that Drive Planning would use investments in REAL to fund bridge loans to real estate developers. (*Id.*). Drive Planning claimed that such bridge loans were fully collateralized by real estate and other assets. (*Id.*).

Financial and bank records show that from September 2020 through June 2024 Drive Planning and Mr. Burkhalter raised $372 million in REAL. (*Id.* ¶ 10). During this period, more than 2,500 investors invested funds in REAL. (*Id.* ¶ 11). These investors reside in at least 48 states (including Georgia), two territories, and multiple countries. (*Id.*).

The SEC contends that Drive Planning did not generate sufficient revenue to pay the promised returns to investors in REAL, Drive Planning and Mr. Burkhalter used investor funds to pay returns to other investors, and that Mr. Burkhalter used investor funds for what appear to be large personal purchases. (*Id.* ¶ 12). As a result of its investigation, the SEC filed this case on August 13, 2024 and sought the appointment of a receiver. (Docs. 1, 2).

## II. Receivership History

On August 13, 2024, the Court entered an Order appointing Kenneth D. Murena as Receiver over "all assets of Defendant Drive Planning, LLC ('Receivership Assets') and the assets of Defendant Burkhalter and the Relief Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the 'Recoverable Assets')." ("Receivership Order," Doc. 10 at 1–2). The Court also took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of" Drive Planning. (*Id.* ¶ 1).

The Receivership Order further provided the Receiver to take possession of the receivership estate as follows:

> The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records and all other documents or instruments relating to the Receivership Defendant. All

persons and entities having control, custody or
possession of any Receivership Property are hereby
directed to turn such property over to the Receiver. . . .

The Receivership Defendant, as well as its agents,
servants, employees, any persons acting for or on behalf
of the Receivership Defendant, and any persons
receiving notice of this Order by personal service,
facsimile transmission or otherwise, having possession
of the property, business, books, records, accounts or
assets of the Receivership Defendant are hereby directed
to deliver the same to the Receiver, his agents and/or
employees. . . .

The Receiver is authorized to take immediate possession
of all real property of the Receivership Defendant,
wherever located, including but not limited to all
ownership and leasehold interests and fixtures. . . .

(*Id.* ¶¶ 15–16, 19). The Receiver complied with 28 U.S.C. § 754 by filing a copy of

the Complaint (Doc. 1) and the Appointment Order (Doc. 10) in the Middle District

of Florida within ten days of the entry of the Appointment Order. *U.S. Sec. & Exch.*

*Comm'n v. Drive Planning, LLC*, No. 8:24-mc-00017-WFJ-UAM (M.D. Fla. Aug 20,

2024), ECF No. 1.

### III.  The Haye Property

Mark Haye was an agent/advisor of Drive Planning. (Declaration of

Kenneth D. Murena, Receiver, dated March 24, 2025, "Receiver's Decl.," ¶ 4, Doc.

98-1). On January 26, 2024, Drive Planning transferred $1.4 million originating

from an account containing investor funds for the purchase of a luxury

condominium unit located in St. Petersburg, Florida which was purchased using

investor funds of Drive Planning and titled in the name of Mark Paul Haye, Trustee of the Mark Haye Living Trust (the "Haye Property"). (*Id.* ¶¶ 2, 5). Specifically, on January 25, 2024, $1,400,000 was transferred from Drive Planning's Truist account no. ending in 32951 to Upward Title & Closing Agency LLC and a Warranty Deed[3] was executed and recorded in the public record by the Grantors John L. Thayer and Jennifer A. Thayer, collectively, transferring their respective interests in the Haye Property to Mark Paul Haye, Trustee of the Mark P. Haye Living Trust (dated March 7, 2022). (*Id.* ¶ 3).

On January 10, 2024, Mark Haye executed a promissory note for $1.4 million in favor of Drive Planning. (Doc. 98-3). The promissory note required monthly payments to Drive Planning in the amount of $18,501.00, inclusive of principal and interest, at an annual rate of 10%. The note's maturity date is March 1, 2034, at which time all remaining principal and interest amounts are due in full. (Receiver's Decl. ¶ 11). Since the inception of the promissory note, the loan balance was reduced by a total of only $74,004. (*Id.* ¶ 12). None of that $74,004 was personally paid or otherwise contributed by Mr. Haye or the Mark Haye Living Trust. (*Id.*). Instead, all of the $74,004 applied to pay down the loan balance was deducted from commissions purportedly earned by Mr. Haye as an agent/advisor

---

[3] The Warranty Deed appears to be dated January 26, 2024. (Doc. 98-2).

for Drive Planning. (*Id.*). These commissions were directly derived from investor funds. (*Id.*).

Mr. Haye received commissions from Drive Planning totaling over $1.2 million, excluding the $74,004 in commissions that Drive Planning used to make his monthly payments under the note. (*Id.* ¶ 13).

The Receiver filed this Motion seeking turnover of the Haye Property on March 24, 2025. (Doc. 98). Mr. Haye was personally served with a copy of the Motion on April 2, 2025. (Doc. 100).

## Discussion

### I.    Jurisdiction and Venue

The Court has subject matter jurisdiction over this proceeding regarding estate property by virtue of the Receivership Order. *Riehle v. Margolies*, 279 U.S. 218, 223 (1929) ("The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit . . .  or by ancillary proceedings. . . .") (citing *Rouse v. Letcher*, 156 U.S. 47, 49, 50 (1895); *White v. Ewing*, 159 U.S. 36 (1895)); *see also* 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with

7

complete jurisdiction and control of all such property with the right to take possession thereof.").

The Court has personal jurisdiction over Mark Haye, as trustee of the Mark Haye Living Trust, by virtue of personal service on Mr. Haye. (Doc. 100). Service of Mr. Haye in the Middle District of Florida is appropriate under 28 U.S.C. § 1692, which provides that "[i]n proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts." *Newman v. William L. Gunlicks Irrevocable Tr.*, 897 F. Supp. 2d 1270, 1274 (M.D. Fla. 2012); *Huddleston v. Grafton Enters. Midway LLC*, No. 1:09-CV-2799-ODE, 2010 WL 11549771, at *3 (N.D. Ga. Jan. 19, 2010).[4]

Lastly, because the receivership is pending in this district, venue over this case is proper in this district. *Huddleston*, 2010 WL 11549771, at *7 (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 822 n.6 (6th Cir. 1981)). Mr. Haye did not object to the Receiver bringing this matter by motion rather than by complaint, *see* Fed. R. Civ. P. 12(b)(4), (h)(1) (defense of insufficient process waived by failure to raise responsively), and the Court sees no obstacle to resolving the merits of the Motion

---

[4] Because the Receiver timely filed a copy of the Complaint and Receivership Order in the Middle District of Florida, jurisdiction over property in that district was not stripped by 28 U.S.C. § 754.

on the briefs. Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule."); *Riehle*, 279 U.S. at 223 (holding federal courts may resolve competing claims to estate property in "the original suit" or "by ancillary proceedings."); *see also* Fed. R. Civ. P. 71 ("When an order . . . may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."); Fed R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court therefore turns to the merits.

## II.    Applicable Law

Though this is a federal receivership arising in a federal question case, "[p]roperty interests are created and defined by state law." *Sec. & Exch. Comm'n v. Pension Fund of Am. L.C.*, No. 05-20863-CIV, 2006 WL 8433996, at *8 (S.D. Fla. Sept. 11, 2006) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). In determining the state law to apply in a federal question case, courts in this circuit generally apply the conflict of law rules of the forum state. *Mukamal v. Bakes*, 378 Fed. App'x 890, 896 (11th Cir. 2010); *see also PRN Real Est. & Invs., Ltd. v. Cole*, 85 F.4th 1324, 1348 (11th Cir. 2023) (recognizing that *Mukamal* is unpublished and that the Eleventh Circuit has not reached the issue in a published case). "In cases involving

real property, Georgia courts generally follow the traditional conflict of law rule of lex loci rei sitae, that is, the law of the place where the thing is." *United States v. One 1990 Lincoln Town Car*, 817 F. Supp. 1575, 1581 (N.D. Ga. 1993) (citing *Veach v. Veach*, 53 S.E.2d 98 (Ga. 1949)). The Court therefore applies Florida law.

Under Florida law, "[t]he doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Fin. Federated Title & Tr. Inc.*, 273 B.R. 706, 717–18 (Bankr. S.D. Fla. 2001), *aff'd*, 347 F.3d 880 (11th Cir. 2003) (citing *In re Powe*, 75 B.R. 387, 393 (Bankr. M.D. Fla. 1987)). "Before one can successfully impress a constructive trust, there must be an identifiable res on which the trust can be impressed." *Id.* at 718. "If the original res no longer remains, but is transformed into a different form, it is the burden of the party seeking to impress a constructive trust to trace the property to specific funds before it can prevail." *Id.* (citing *Powe*, 75 B.R. at 393). "Traceable proceeds from prior fraudulent transfers, which are used to acquire a homestead, may also be subject to a constructive trust." *Id.* (citing *In re Lapes*, 254 B.R. 501 (Bankr. S.D. Fla. 2000)). A constructive trust arises at the time the fraud was committed. *In re Gen. Coffee Corp.*, 828 F.2d 699, 702–07 (11th Cir. 1987).

10

As noted above, unjust enrichment is sufficient grounds for imposing a constructive trust. *Turturro v. Schmier*, 374 So. 2d 71, 73–74 (Fla. Dist. Ct. App. 1979) (quoting *Quinn v. Phipps*, 113 So. 419, 422 (Fla. 1927)) ("[E]quity will raise a constructive trust and compel restoration, where one through actual fraud, abuse of confidence reposed and accepted, or through other questionable means gains something for himself which in equity and good conscience he should not be permitted to hold.").

## III. Standing

Even assuming Mr. Haye was unjustly enriched by receiving property traceable to investor funds as the Receiver argues, however, that does not answer the question of whether the *Receiver* can seek the return of the property, as opposed to the investors themselves. This is a question of standing that the Court is required to answer sua sponte. *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024). Accordingly, the Court ordered the parties to file supplemental briefs on the issue. (Doc. 124).

The Receiver has disclaimed any effort to act on behalf of the investors but asserts instead that "[t]he Receiver's claim for a constructive trust arises from the direct harm to Drive Planning, not the investors in the Ponzi scheme." (Doc. 129 at 3). To determine whether the Receiver can bring a cause of action for unjust enrichment, the Court is guided by *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296

(11th Cir. 2020), an Eleventh Circuit case interpreting Florida law and determining that receivers lack standing[5] to bring certain Florida common law tort claims on behalf of Ponzi corporations.

In *Isaiah*, a receiver of a Ponzi debtor brought two Florida common law tort claims against a bank into which funds were deposited for allegedly willfully ignoring suspicious activity and aiding and abetting the Ponzi scheme. *Id.* The Eleventh Circuit drew heavily on a Florida court of appeals case, *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d Dist. Ct. App. 2003). As the Eleventh Circuit explained, the *Freeman* court "differentiated between two types of cases. On the one hand, 'there are actions that the corporation, which has been cleansed through receivership, may bring directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation and taken prior to the receivership.'" *Isaiah*, 960 F.3d

---

[5] *Isaiah* and cases following it often contain some overlap in discussion between the issue of standing on the one hand and the availability of the "unclean hands" or "in pari delicto" affirmative defenses on the other, because both issues hinge on the conduct and structure of the entity pre-receivership. *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020) ("Isaiah's ability to pursue these claims is barred not by the doctrine of in pari delicto, but by the fact that the Receivership Entities were controlled exclusively by persons engaging in and benefitting from the Ponzi scheme, and so the Receivership Entities were not injured by that scheme."). Judge Marcus, in a concurrence signed by the entire panel, criticized this line of cases because they mischaracterize a claim-processing rule as a jurisdictional limitation. *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1312–16 (11th Cir. 2024) (Marcus, J., concurring).

at 1306 (quoting *Freeman*, 865 So. 2d at 551). "On the other hand," the court explained "are common law tort claims against third parties to recover damages for the fraud perpetrated by the corporation's own insiders." *Id.* (citing *Freeman*, 865 So. 2d at 551). "With respect to these claims, *Freeman* held that unless the corporation in receivership has at least one honest member of the board of directors or an innocent stockholder, the fraud and intentional torts of the insiders cannot be separated from those of the corporation itself and the corporation cannot be said to be an entity separate and distinct from the individual tortfeasors." *Id.* (citing *Freeman*, 865 So. 2d at 551). "The corporation—and the receiver who stands in the shoes of the corporation—lacks standing to pursue such tort claims because the corporation, 'whose primary existence was as a perpetrator of the Ponzi scheme, cannot be said to have suffered injury from the scheme it perpetrated.'" *Id.* (quoting *O'Halloran v. First Union Nat'l Bank of Fla.*, 350 F.3d 1197, 1203 (11th Cir. 2003)). "*Freeman* thus distinguished 'between an honest corporation with rogue employees, which can pursue claims for the fraud or intentional torts of third parties while in receivership, and a sham corporation created as the centerpiece of a Ponzi scheme, which cannot pursue such claims.'" *Id.* at 1307 (quoting 865 So. 2d at 552). This distinction, between "a large corporation with an honest board of directors and multiple shareholders, suffering from the criminal acts of a few rogue employees in a regional office" and a "robot or the evil zombie

of the corporate insiders" is frequently referenced by courts. *Id*. (quoting 865 So.

2d at 551). Where a receivership entity's sole existence pre-receivership was as an

instrumentality of a Ponzi scheme, the Eleventh Circuit explained that "it was not

the corporation but the individual customers who suffered injury as a result of the

Ponzi scheme, and who may have rights to pursue claims against third parties that

allegedly aided and abetted that scheme." *Id*. (citing *Freeman*, 865 So. 2d at

553).[6] The distinction in *Isaiah* between "fraudulent transfers" against insiders and

"common law tort claims" against third parties may have created some confusion

about whether only statutory fraudulent transfer claims are available against

insiders or whether common law tort claims against insiders are also "cleansed

through receivership." *Isaiah*, 960 F.3d at 1306 (quoting *Freeman*, 865 So. 2d at 551).

But it is a distinction without a difference: the availability of a statutory fraudulent

transfer remedy presumes a preexisting tort cause of action because only a

"creditor" can bring a fraudulent transfer action. *Wiand v. Lee*, 753 F.3d 1194, 1203

(11th Cir. 2014) ("The receivership entities were thus creditors because they had a

right to a return of the funds . . . transferred for unauthorized purposes for the

benefit of their innocent investors . . . . The Receiver's claim thus fits within the

---

[6] The Eleventh Circuit further expounded on *Isaiah* in two cases *Perlman v. PNC Bank, N.A.*, 38 F.4th 899, 903 (11th Cir. 2022) and *Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1315 (11th Cir. 2024). Neither case's specific holding is relevant to the Court's opinion here.

statutory language of FUFTA, which requires the existence of a creditor and a debtor.") (citing *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995)). Thus, courts have recognized that a receiver is not limited to bringing statutory fraudulent transfer causes of action for the purpose of clawing back transfers to Ponzi scheme insiders. *See, e.g.*, *In re Wiand*, No. 8:05CV1856 T27MSS, 2007 WL 963165, at *7 (M.D. Fla. Mar. 27, 2007) ("An unjust enrichment claim may be properly categorized as an action "'directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation.'") (quoting *Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. 2d Dist. Ct. App. 2003)); *Kent v. Calcada*, No. CV 21-18396, 2024 WL 4504426, at *8 (D.N.J. Apr. 25, 2024) ("Furthermore, although not a fraudulent transfer claim, Plaintiff's breach of contract claim is more like the types of claims for which in pari delicto would not apply to a receiver—i.e., claims that seek to 'recover assets rightfully belonging to the corporation and taken prior to the receivership.'") (citing *Isaiah*, 960 F.3d at 1306).

IV. **Application to the Facts**

Under the above authorities, the Receiver has standing to bring this unjust enrichment claim because he is seeking to recover assets rightfully belonging to Drive Planning. *In re Wiand*, No. 8:05CV1856 T27MSS, 2007 WL 963165, at *7 (M.D. Fla. Mar. 27, 2007). Moreover, there appears to be no dispute that Drive Planning

was operated as a Ponzi scheme by Mr. Burkhalter. (Doc. 1 ¶¶ 3–4; Doc. 98 at 6; Doc. 107 at 2–3). Courts have held that recipients of funds from a Ponzi scheme are unjustly enriched such that a constructive trust is an appropriate remedy. *Lee v. Wiand*, 603 B.R. 161, 176 (M.D. Fla. 2018) ("Because Lee and Sommers-Lee were unjustly enriched by the receipt of funds fraudulently obtained from other investors and transferred to them, the Bankruptcy Court did not err in imposing a constructive trust against the Property. Defendants have benefitted from the fraudulent conduct of Nadal at the expense of third parties, and their investment in the Property was made from funds that did not rightfully belong to them. Therefore, a constructive trust against the Property is an appropriate remedy.").

Mr. Haye does not dispute that Defendants operated a Ponzi scheme or that the Haye Property was purchased with funds traceable to investor funds. Indeed, the Receiver has demonstrated that all of the funds used to purchase the Haye Property are traceable to investor funds. (Receiver's Decl. ¶¶ 2, 5). Instead, Mr. Haye makes a number of arguments in response which do not create any dispute of fact or law as to the Receiver's entitlement to the remedy he seeks.

First, Mr. Haye argues he provided valuable services to Drive Planning in good faith and without knowledge of wrongdoing. (Doc. 109 at 2). But if Mr. Haye's argument is that the Haye Property was in consideration for services rendered, this seems belied by the fact that he executed a promissory note for $1.4

16

million in favor of Drive Planning in connection with the acquisition of the Haye Property (Doc. 98-3).[7] To the extent Mr. Haye means that individual payments toward the note were compensation for his services rendered, the Receiver has stated he is willing to credit the payments of $74,004 towards the balance of the note, and upon the sale of the Haye Property of at least $1,509,550.95 plus per diem interest of $375.98 through the closing of the sale, the Receiver will deem the Promissory Note fully satisfied. (Doc. 129 at 8).[8]

Second, Mr. Haye argues that the Receiver's claim against him is an unsecured debt which does not permit the Receiver to seize his property. But this misconstrues the nature of the Motion, which seeks to recognize the receivership's

---

[7] The Court agrees with the Receiver that the fair market value of the promissory note does not bear on the Receiver's entitlement to the remedy of constructive trust because even if Mr. Haye gave value for the Haye Property in the form of a reciprocal obligation, Mr. Burkhalter or his designee's use of investor funds to purchase the property for Mr. Haye was fraudulent as to Drive Planning and its investors. (Doc. 129 at 9) (citing *Wiand v. Lee*, 574 B.R. 286, 298 (Bankr. M.D. Fla. 2017)). The Receiver has also stated that he will credit the sale proceeds towards the note balance.

[8] While not squarely raised by Mr. Haye's briefing, if he is arguing that he has used funds other than those received from Drive Planning to improve or maintain the Haye Property, *see Lee v. Wiand*, 603 B.R. 161, 168 (M.D. Fla. 2018), these arguments would be premature at this stage. That is because the receiver can sell the Haye Property free and clear of any interest created by Mr. Haye's contributions with any such interest attaching to the proceeds of the sale, to be addressed during the claims allowance process. *E.g. Sec. & Exch. Comm'n v. Harbor City Cap. Corp.*, No. 6:21-CV-694-CEM-DCI, 2023 WL 3995297 (M.D. Fla. Apr. 26, 2023). Mr. Haye is advised to retain evidence of any such services provided.

interest in an asset which is traceable to investor funds, not to seek a judgment of personal liability against Mr. Haye. (Receivership Order at 1–2).

Similarly, Mr. Haye's argument that the Haye Property is subject to a homestead exemption is unfounded. (Doc. 109 at 2–3). An equitable interest founded on unjust enrichment can prevail over a homestead exemption "[e]ven where the party claiming benefit from the homestead exemption committed no wrongdoing." *Lee v. Wiand*, 603 B.R. 161, 172 (M.D. Fla. 2018) (citing *In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003)).

Finally, Mr. Haye's argument that he received inadequate due process is baseless for the reasons the Court gave in the Jurisdiction and Venue section, above. (Doc. 109 at 3). Mr. Haye has received personal service of the Motion and was given extensive opportunities to respond. And while the Court appreciates Mr. Haye's settlement efforts, they cannot overcome the Receiver's entitlement to relief.

## Conclusion

For the above reasons, it is

**ORDERED** that the Receiver's Motion for Turnover of and Imposition of Constructive Trust on Real Property Traceable to Drive Planning, LLC (Doc. 98) is **GRANTED**. It is

**FURTHER ORDERED** that the Court **DECLARES** that any interest of Mark Paul Haye, Trustee of the Mark P. Haye Living Trust in the Haye Property is subject to a constructive trust in favor of the Receivership Estate as beneficiary relating back to the moment of acquisition of the Haye Property by Mark Paul Haye, Trustee of the Mark P. Haye Living Trust. It is

**FURTHER ORDERED** that (unless the Receiver and Mr. Haye agree to service by another method) the Receiver is **DIRECETED** to promptly serve Mr. Haye by priority mail express (or similar delivery service, or by personal delivery) a form quitclaim deed conveying the Haye Property to the Receiver on behalf of the Receivership Estate and prepaid return envelope. It is

**FURTHER ORDERED** that, within 45 days from the date of mailing of the form quitclaim deed (or such later time as the Receiver may in his discretion permit), Mr. Haye is **DIRECTED** to execute the form as directed by the Receiver and to vacate the Haye Property. To encourage compliance with this directive, the Receiver may in his discretion agree to pay a reasonable moving expense to Mr. Haye from estate funds, not to exceed $3,000, without the need for court approval. It is

**FURTHER ORDERED** that, in the event that Mr. Haye fails to timely execute the quitclaim deed, the Receiver may either: (1) apply to this Court for an Order under Federal Rule of Civil Procedure 70(a), or (2) seek an order from the

United States District Court for the Middle District of Florida subject to that court's discretion vesting title to the Haye Property under Federal Rule of Civil Procedure 70(b). Upon completion of either of these steps, or in the event that Mr. Haye executes the quitclaim deed but does not timely vacate the Haye Property, the Receiver may seek a writ of possession from either the United States District Court for the Middle District of Florida subject to that court's discretion or from the appropriate Florida state court. It is

FURTHER ORDERED that the Receiver is DIRECTED to register a copy of this Order with the United States District Court for the Middle District of Florida within seven days of the date of entry of the Order.

SO ORDERED this 30th day of June, 2025.

Victoria Marie Calvert
United States District Judge