UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
(ATLANTA DIVISION)

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>DRIVE PLANNING, LLC et al.,<br><br>Defendants,<br><br>and<br><br>JACQUELINE BURKHALTER, et al.,<br><br>Relief Defendants. | Civil No. 1:24-cv-3583-VMC |

**PLAINTIFF'S PRE-HEARING MEMORANDUM**

Plaintiff United States Securities and Exchange Commission ("SEC") respectfully submits this memorandum in advance of the hearing on Defendant Todd Burkhalter's Motion for Order to Allow Funds for Living Expenses (ECF No. 138). The Court has directed that the parties "be prepared to address the factors courts consider in addressing motions to unfreeze funds for living expenses." (ECF Entry 7/10/25.) The SEC is submitting this memorandum in advance of the hearing to facilitate that discussion.

BACKGROUND

The SEC filed suit against Burkhalter on August 13, 2024. (ECF No. 1.) In the Complaint, the SEC alleged that Burkhalter and his company Drive Planning, LLC engaged in a Ponzi scheme in which they raised more than $300 million from investors. (*Id.*) The SEC sought emergency relief, including an asset freeze and the appointment of a Receiver over Drive Planning, which the Court granted by consent. (ECF Nos. 2, 10-11.) In imposing the asset freeze, the Court permitted Burkhalter to have $62,000 "to cover his reasonable living and other expenses for the next six months." (ECF No. 11 at 4.) The Court's order also provided that "the Receiver shall not seek to sell or otherwise require Mr. Burkhalter to vacate the condominium at which he currently resides without leave of the Court." (*Id.*) On December 30, 2024, the Court released an additional $60,000 to Burkhalter. (ECF No. 78.) Although the SEC did not oppose that relief, it did so without prejudice to opposing any further requests by Burkhalter to release additional funds. (ECF No. 77.)

RELEASING FUNDS TO PAY LIVING EXPENSES

Courts have the discretion to modify an asset freeze to release funds for a defendant to pay reasonable living expenses. *See, e.g.*, *SEC v. Duclaud*, 170 F. Supp.2d 427, 430 (S.D.N.Y. 2001) ("It is well settled that this Court has authority to freeze personal assets temporarily and the corollary authority to release frozen personal assets, or lower the amount frozen."). In exercising this discretion, courts

"commonly look to several factors." *SEC v. Forte*, 598 F. Supp.2d 689, 692-695 (E.D. Pa. 2009); *SEC v. Dowdell*, 175 F. Supp.2d 850, 854 (W.D. Va. 2001).

One factor courts consider is whether releasing funds is in the interest of investors. *Forte*, 598 F. Supp.2d at 692 (noting "[s]everal courts have held that before they will unfreeze assets, the defendant must establish that [the] modification is in the interest of the defrauded investors.") (internal quotation marks omitted); *SEC v. Valente*, 2015 WL 5501611, at *1 (S.D.N.Y. Aug. 28, 2015) (same). For this factor, courts generally focus on whether there are sufficient funds to satisfy a future disgorgement award that may be used to repay harmed investors. *SEC v. Ahmed*, 123 F. Supp.3d 301, 313-14 (D. Conn. 2015) ("The touchstone of the Court's inquiry is 'equity' and a party seeking to unfreeze assets must establish that the funds he seeks to release are untainted and that there are sufficient funds to satisfy any disgorgement remedy that might be ordered in the event a violation is established at trial.") (internal quotation marks omitted).[1]

Courts also evaluate the expenses the defendant seeks to pay – i.e., whether the defendant is requesting funds to pay necessary living expenses or whether the defendant will use the funds to pay for something else. *SEC v. Private Equity Mgmt. Group.*, 2009 WL 2058247, at *3 (C.D. Cal. July 9, 2009); *Duclaud*, 170 F. Supp.2d

---

[1] The SEC notes that disgorgement is not limited to funds traceable to the fraud. *See, e.g.*, *SEC v. Banner Fund Int'l*, 211 F.3d 602, 617 (D.C. Cir. 2000).

at 430. For this factor, courts often distinguish between a defendant "requesting funds for luxuries" and a defendant seeking funds to pay for "necessities." *Private Equity Mgmt. Group*, 2009 WL 2058247, at *3; *Forte*, 598 F. Supp.2d at 694. Likewise, courts assess whether the amount of funds requested is reasonable. *Id.* Courts routinely reject requests for "excessive amounts" of funds to pay even necessary living expenses. *See, e.g., Forte*, 598 F. Supp.2d at 694.

In addition, courts have considered the defendant's "overall assets or income" to determine whether he has "other sources of income" to pay his living expenses. *Private Equity Mgmt. Group*, 2009 WL 2058247, at * 3. In other words, courts evaluate whether there are sources to pay the defendant's living expenses that are not covered by the asset freeze (such as from a family member) or subject to collection if a final judgment is entered against the defendant. *See, e.g., Dowdell*, 175 F. Supp.2d at 854; *SEC v. Coates*, 1994 WL 455558, at *1-2 (S.D.N.Y. Aug. 23, 1994).

Ultimately, courts balance the equities between maintaining the asset freeze and releasing a portion of the frozen funds to pay for a defendant's living expenses. *Dowdell*, 175 F. Supp.2d at 854 (noting that "[c]ourts are called upon to weigh the disadvantages and possible deleterious effect of a freeze against the considerations indicating the need for such relief.") (cleaned up); *SEC v. Masanotti*, 2024 WL 3520154, at *3 (D. Conn. Apr. 30, 2024) (same). Courts thus weigh "the defendant's interest in having access to funds needed to pay ordinary and necessary living

expenses against the government's interest in preventing the depletion of potentially forfeitable assets." *Forte*, 598 F. Supp.2d at 693 (cleaned up).

<u>The SEC's Position on Defendant's Motion</u>

Against this backdrop, the SEC does not oppose Burkhalter's request to release additional funds. To be clear, the SEC is not joining Burkhalter's motion and is not affirmatively seeking the release of funds to him. The SEC wants to preserve assets and maximize the recovery for harmed investors, which is why the SEC sought an emergency asset freeze in the first place. The points raised by the Receiver in his opposition brief and the investors who have written to the Court are also well taken. Burkhalter must carry his own burden of persuading the Court that releasing additional funds is appropriate and should, at a minimum, identify for the Court the expenses for which the funds will be used.

The SEC's decision not to oppose Burkhalter's motion, however, is informed by the fact that Burkhalter: (i) consented to the initial asset freeze; (ii) has not opposed or otherwise impeded the Receiver's collection and liquidation of assets; and (iii) has already agreed not to contest liability in this case. As a result, Burkhalter has generally moved this case forward without creating additional burdens for the SEC, Receiver, or the Court. Moreover, the SEC and Burkhalter are currently discussing the resolution of the SEC's claims for monetary relief, which would obviate the need for further motions practice and likely expedite the recovery for

harmed investors. Lastly, the requested carve out is relatively modest compared to what the SEC understands to be within the receivership estate. At the same time, the SEC has made clear to Burkhalter that it will not consent to any further requests to release additional funds. *Cf. SEC v. North Star Finance, LLC*, 2017 WL 476602, at *1-2 (D. Md. Feb. 3, 2017) (approving release of funds but noting that "[n]o further releases will be authorized.").

Finally, the SEC notes that its position on this motion does not mean it consents to Burkhalter remaining in the Florida condominium at which he currently resides. To the contrary, in accordance with the Court's preliminary injunction order, the SEC understands that the Receiver is planning to file a motion to remove Burkhalter from the condominium. The SEC will not oppose any such motion. Moreover, the SEC defers to the Court on whether to consider the pending motion to release frozen funds along with the Receiver's request that Burkhalter vacate the condominium so that it may be sold and the proceeds be used to repay harmed investors.

Dated: July 21, 2025              Respectfully submitted,

                                              /s/ Harry B. Roback
                                              M. Graham Loomis (GA Bar No. 457868)
                                              Pat Huddleston II (GA Bar No. 373984)
                                              Harry B. Roback (GA Bar No. 706790)
                                              U.S. Securities and Exchange Commission
                                              950 East Paces Ferry Road, NE, Suite 900
                                              Atlanta, GA 30326

Tel: (404) 942-0690
Facsimile: (404) 842-7679
RobackH@sec.gov

Attorneys for Plaintiff

## **CERTIFICATION OF COMPLIANCE**

      This is to certify that the foregoing was prepared using Times New Roman 14-point font in accordance with Local Rule 5.1 (B).

                                        /s/ Harry B. Roback
                                        Harry B. Roback

-2-

## CERTIFICATE OF SERVICE

      I hereby certify that on July 21, 2025, the foregoing was served on counsel of record for Defendants and Relief Defendants using the Court's ECF system.

      /s/ Harry Roback
      Harry Roback
      Senior Trial Counsel
      Securities and Exchange Commission