## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br>     Plaintiff, <br><br> v. <br><br> DRIVE PLANNING, LLC, and RUSSELL TODD BURKHALTER, <br><br>     Defendants, <br> and <br><br> JACQUELINE BURKHALTER, THE BURKHALTER RANCH CORPORATION, DRIVE PROPERTIES, LLC, DRIVE GULFPORT PROPERTIES LLC, and TBR SUPPLY HOUSE, INC., <br><br>     Relief Defendants. | Case No. 1:24-cv-03583-VMC |

## RECEIVER'S MOTION TO APPROVE
## CLAIMS PROCESS AND FOR AUTHORIZATION TO EMPLOY
## STRETTO INC. AS NOTICING AND CLAIMS PROCESSING AGENT

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") of the assets of Drive Planning LLC (the "Estate"), hereby files his Motion to Approve Claims Process and for Authorization to Employ Stretto Inc. as Noticing and Claims Processing Agent (hereinafter "Stretto"), and states:

## I.    <u>INTRODUCTION</u>

Since his appointment on August 13, 2024, the Receiver has recovered more than $67,000,000 in funds from various sources, including the bank accounts of Drive Planning, LLC ("Drive Planning"), the liquidation of real property purchased with investor funds, third parties who received property and funds from Drive Planning, Drive Planning's real estate investments with and loans to third parties, Drive Planning's marketing arrangements with third parties, the sale of ownership and leasehold interest in private jets, and the turnover of funds from Relief Defendants, agents/advisors, and other insiders of Drive Planning.  Further, the Receiver has taken control of real property titled in the name of Drive Planning or Defendant Burkhalter and/or certain Relief Defendants, purchased with funds traceable to investors, estimated to be worth approximately $45,000,000. The Receiver has liquidated some of this real property (at market prices) and continues to market for sale all other real property recovered to date.  After payment of the expenses to maintain and preserve the properties of the Estate and operate the ranch, the event space, and the multi-unit properties, and the Estate's court-approved administrative expenses, the Estate holds more than $61,000,000 in cash on hand.

In light of the amount of funds presently in the Estate and the dire financial condition of many investors, the Receiver believes that commencement of the proposed claims administration process (the "Claims Process") is appropriate at this

time.  The Receiver proposes to conduct one Claims Process for all investors and creditors of the Estate and to make distributions to investors and other creditors with allowed claims based on the determinations made in that Claims Process.  After the claims process phase of the receivership has been concluded, the Receiver will propose to the Court a plan of distribution to disburse the majority of funds in the Estate to investors and other creditors who are determined to have allowed claims. The fund from which the disbursement will be made to investors and creditors, net of Court-approved fees and costs and other administrative expenses, shall be referred to as the "Drive Planning Recovery Fund."

## II.    BACKGROUND

### A.    ENTRY OF PRELIMINARY INJUNCTION

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc.  The SEC also filed an Expedited Motion for Emergency Relief to prevent the dissipation of assets and continued defrauding of investors.  *See* ECF No. 2.  The Court found that the SEC had established a *prima facie* case of securities law violations by Defendants Burkhalter and Drive Planning, and that the Relief Defendants improperly received funds derived from the fraudulent activities.  *See* ECF No. 11 at ¶¶ 2, 4.  Accordingly,

the Court entered a Preliminary Injunction freezing the assets of the Defendants and Relief Defendants, prohibiting the destruction of documents, and requiring an accounting, among other things. *See id.*

### B.    APPOINTMENT AND DUTIES OF RECEIVER

On August 13, 2024, the Court also entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning and all assets owned by or purchased with funds derived from investors or clients of Drive Planning (collectively, "Receivership Property"). *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id.* at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id.* at ¶¶ 4-7. The Receiver also was authorized to engage professionals subject to Court approval, issue subpoenas, and take any legal actions necessary to recover assets and protect the Estate. *See id.* at ¶ 7.F. Pursuant to the Appointment Order, the Receiver was granted all powers, rights, and control over Drive Planning previously held by its former management. *See id.* at ¶¶ 4-7. In particular, the Receiver was authorized:

- To use reasonable efforts to determine the nature, location, and value of all property interests of Drive Planning and/or

purchased with, or otherwise traceable to, investor funds.

- To take custody, control, and possession from third parties of all Receivership Property and records relevant thereto.

- To manage, control, operate, and maintain the Estate and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court.

- To use Receivership Property for the benefit of the Estate, making payments and disbursements, and incurring expenses as may be necessary or advisable in the ordinary course of business and discharging his duties as Receiver.

- To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities under the Appointment Order.

- To take all actions necessary to manage, maintain, and/or wind-down business operations, including making legally required payments to creditors, employees, and agents.

*See id.* at ¶ 7.

As the Receiver was charged with marshalling all assets owned by or purchased with funds derived from investors or clients of Drive Planning and with liquidating such assets for the benefit of the defrauded investors, for the ultimate purposes of distributing funds to those investors, it is necessary and appropriate for the Receiver to identify those investors, confirm the amounts they invested with Drive Planning and lost, and eventually return funds to the investors based on the amounts of their losses. To do so, the Receiver first needed to gather information and documents from investors reflecting their investments and losses, which the

Receiver has done with the assistance of Stretto, as reported in the Receiver's quarterly Status Reports. Then, the Receiver and Stretto worked on formulating a claims process through which investor losses could be confirmed. Because the Appointment Order does not expressly authorize the Receiver to administer a claims process, the Receiver seeks the Court's approval and authority to administer the Claims Process proposed herein.

### C.    KNOWN INVESTORS AND CREDITORS

Based on the Receiver's review of Defendants' bank records, documents provided by investors, and a bank reconstruction prepared by the Receiver's forensic accountant, the Receiver is aware of approximately 2,400 investors who transferred more than $380,000,000 to Drive Planning. The Receiver and his forensic accountant have substantially completed the forensic reconstruction of Drive Planning's accounts, which reflect payments back to investors of approximately $160,000,000 and investor losses of approximately $220,000,000.

The Receiver and his counsel have attempted to confirm each investor's identity and contact information through a data collection portal sent by email to all investors. The Receiver has also requested documentation from all investors and received supporting documents evidencing the investment amounts from a majority of investors. He has reviewed those documents with the bank reconstruction prepared by his forensic accountant and calculated a net loss amount for each

investor who has suffered a loss as a result of his or her investment with Drive Planning.

The Receiver is aware that Drive Planning has non-investor creditors, and most have been paid in the ordinary course of business and/or to preserve the Estate's assets. To the extent that the Receiver has been unable to calculate the exact amounts owed to certain creditor, Stretto will email those creditors a link to a blank claim form to complete and require that they upload supporting documentation.

## III.    RETENTION OF CLAIMS AGENT

Pursuant to the Appointment Order, the Receiver seeks the Court's approval to engage Stretto as a noticing and claims agent (the "Claims Agent") to assist the Receiver in connection with preparing and implementing the Claims Process proposed herein and otherwise fulfilling his duties under the Appointment Order. *See* ECF No. 18. The Receiver is authorized to, among other things, "engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys … financial or business advisers, forensic experts … or auctioneers." *See id.* at ¶ 7.F. Prior to engaging any such personnel, the Receiver must first obtain an Order of this Court authorizing such engagement. *See id.* at ¶ 58. Any personnel that the Receiver engages with this Court's approval are "entitled to reasonable compensation and expense reimbursement from the Receivership Estate . . . . Such compensation shall

require the prior approval of the Court." *Id*. at ¶ 59.  The Receiver requests authority to pay the Claims Agent an advanced payment retainer of $15,000 and fees and expenses incurred of up to $10,000 per month during the course of the Claims Process rather than requiring the Claims Agent to submit quarterly fee applications.

Based on the significant number of claims expected in this case, the Receiver believes retention of Stretto as the Claims Agent for the Claims Process is necessary for a successful Claims Process.  Stretto is a well-recognized national service provider with extensive experience in handling a large volume of claims in receivership cases.

Stretto's services will include compiling and maintaining notice lists, developing and hosting an online claims portal, disseminating notice of the claims process, receiving claims and supporting documentation from claimants, maintaining claims register, communicating with claimants regarding the approval or submission of claims and supporting documents, resolving technical issues, and other troubleshooting, preliminarily reviewing claims and supporting documentation and calculating the allowed claim amounts, sending the initial claims determinations, collecting and processing objections, and preparing claims reports for the Receiver. Based on Stretto's extensive experience with claims processes in other receiverships, the Receiver believes that using Stretto to create and disseminate a claims portal, to provide technical phone support to investors attempting to upload their

documentation, and to organize, review, and store the claims data in an easily searchable database will be more efficient and secure than having the Receiver's law office attempt to collect the claims and organize and sift through the data at attorney and paralegal hourly rates. Stretto has agreed to provide its services at a 20% discount from its market hourly rates, which range from $595 to $100, pursuant to the Proposal and Services Agreement attached as **Exhibit A**. The Receiver requests authorization to pay Stretto an advance payment retainer of $15,000 to commence the build-out of the online claims portal and to create the email notice lists. Thereafter, Stretto will submit its invoices for service fees and costs to the Receiver on a monthly basis, and the Receiver requests this Court's authority to pay those invoices up to $10,000 per month without further order from this Court. Stretto has assured the Receiver that it will make every effort to keep its fees reasonable and promptly notify the Receiver of any issues that might arise that could increase the costs to the Estate so the Receiver can attempt to expeditiously resolve the issues.

## IV.    PROPOSED NOTICING AND CLAIMS PROCESS

### A. The Email Notice, Claim Form, and Online Claims Portal

To commence the proposed Claims Process, the Receiver proposes to have Stretto, as Claims Agent, send notice of the proposed Claims Process to potential claimants by email to the extent that he has their email addresses. *See* proposed Legal Notice of Claims Process ("Notice"), attached as **Exhibit B**. Moreover, the

Receiver proposes the use of an online Proof of Claim and Release Form ("Claim Form"), in substantially the form attached as **Exhibit C**, which the Claims Agent will host through an online claim filing portal.  That Claim Form for investors will be pre-filled with the claimant's contact information and net loss amount, which claimants can accept or dispute by providing documentation supporting their alleged claim amount.  The Receiver will deliver by email to all known investors and creditors the Notice (Exhibit B) containing a link to the online Claim Form (Exhibit C) (collectively, the "Claims Package"), and he will post the Claims Package on the receivership website.  The Claim Form for potential creditor claimants will not be pre-filled; such claimants will need to fill in the form and submit it with supporting documentation.  The Claims Package will be written in English and Spanish.[1]  The link to the Claim Form contained in the Notice will direct claimants to the online portal where they can electronically complete and submit the Claim Form and supporting documentation without the need to print and mail any documents to the Receiver.

All investors and creditors with claims in the receivership would be required to timely submit the Claim Form, together with documentation supporting the stated claim amount.  Submissions must be made to the Receiver through Stretto using the online claims filing portal (preferred method), or by mail to Drive Planning

---

[1] The primary language of a significant number of investors is Spanish.

Receivership Claims Processing c/o Stretto 410 Exchange, Ste. 100, Irvine, CA 92602.  To best assist claimants with their submissions, Stretto will provide technical support by telephone at (949) 800-7544 (U.S./Canada Toll-Free) and (855) 693-5100 (International Toll).  The deadline by which Claim Forms must be received by the Receiver shall be 90 days from the date of the Order approving this motion.

## B. Calculating the Allowed Claim Amount

The Receiver will pre-fill the Claim Form with each investor claimant's net loss amount (the "Allowed Claim Amount"), as calculated by the Receiver using Drive Planning's bank account records, the forensic reconstruction of Drive Planning's bank accounts prepared by the Receiver's forensic accountant, and the investors' documents uploaded to the data collection portal hosted by Stretto.  The Receiver will calculate the Allowed Claim Amount by subtracting the total amount of transfers (regardless of how those transfers were categorized by Drive Planning) that an investor or creditor received from Drive Planning from the total amount of transfers that such investor made to Drive Planning (*i.e.*, a simple money-in, money-out calculation).[2]  The Receiver proposes that an investor's allowed claim amount be equal to the investor's net loss.  If the Claims Process proposed herein is approved

---

[2] This net loss calculation is only for purposes of setting the Allowed Claim Amount. For purposes of making distributions to claimants, the Receiver will employ the "rising tide" method, taking into account each claimant's pre-receivership recovery of funds from Drive Planning so that most claimants recover the same percentage of their investments.  *See* Section VI, *infra*.

by the Court, each known investor will receive notice of the Claims Process and a pre-filled claim form stating the Receiver's determination of the investor's Allowed Claim Amount with a breakdown of that investor's deposits to and withdrawals from Drive Planning.  Investors will have the opportunity to confirm and/or dispute each deposit and withdrawal and the resulting net loss (allowed claim) amount, as calculated by the Receiver, and, if disputed, submit a claim against the Estate for a different amount with supporting documentation.  The Receiver will carefully consider such claims and supporting documentation in making a determination regarding the amount of each investor's Allowed Claim Amount.

The Receiver's calculation of a claimant's Allowed Claim Amount will not include any interest, profit, or fees promised, but not paid, to an investor or creditor. Further, the Receiver proposes to calculate a claimant's net loss on a consolidated basis, so that if a claimant has multiple accounts, including personal accounts held individually or jointly with a spouse, individual retirement accounts, trust accounts, and/or sole-owned limited liability company accounts, the Allowed Claim Amount will be the total deposits in all accounts minus the total withdrawals from all accounts.  The Receiver proposes to require claimants to report any amounts recovered from third parties related to the Drive Planning scheme so that those amounts may be deducted from the Allowed Claim Amount.  At any point in the Claims Process or during implementation of the plan of distribution, an Allowed

Claim Amount may be increased or decreased if the Receiver discovers additional deposits, withdrawals, or recovery of losses from a third party. The investor or creditor will be promptly notified of any change in Allowed Claim Amount and given an opportunity to dispute that change.

### C. Requirements for Completing the Claim Form

The proposed Claim Form will solicit confirmation of: (a) details regarding the claimant's identity and contact information; (b) details regarding the amount, timing, and transfer of the claimant's investment into Drive Planning or details regarding the debt(s) of Drive Planning to the claimant, and the amount and timing of any goods or services from the claimant to Drive Planning; (c) details regarding the amount, timing, and transfer of funds received by the claimant from Drive Planning and/or its affiliates; and (d) the claimant's Allowed Claim Amount. *See* Exhibit C. As explained above, claimants will also be required to report any recovery from third parties related to the Drive Planning scheme, and they will have a continuing obligation to report any such recovery to the Receiver. In addition, claimants will need to upload supporting documentation unless they have already uploaded their investor documents to the Receiver's data collection portal. Those claimants do not need to upload their investor documents again. Further, the Claim Form will require the claimant to, *inter alia*, certify the accuracy of the information provided and certify that each of the three factors of an Allowed Claim (set forth in

Section V.A. below) are satisfied. And, the Claim Form will require that claimants provide their payment details to streamline the distribution process. Finally, claimants will be required to release all of their claims against Drive Planning and the Receivership Estate and agree that their recovery from the Receivership Estate will be limited to the amount they receive from the Estate through the Claims Process and the distribution plan (which the Receiver will propose in a separate motion following the completion of the Claims Process – *see* Section VI., *infra*). Once all requisite sections of the Claim Form are completed, claimants will be able to electronically submit the Claim Form and supporting documentation for processing by Stretto.

## V. <u>RECEIVER'S CLAIMS DETERMINATIONS</u>

### A. Requirements for an Allowed Claim

The claim of an investor or creditor will be allowed (an "Allowed Claim"), such that the claimant will be *entitled* to receive a distribution from the Drive Planning Recovery Fund based on that claimant's loss of principal investment or the value of the goods or services rendered, provided that the claimant sufficiently demonstrates to the satisfaction of the Receiver through documentation and/or sworn statements, among other things:

(i)    that such claimant invested funds with, and/or provided goods or services or a loan *directly* to, Drive Planning;

(ii)    that the total amount that such claimant transferred, or the value of the goods or services the claimant provided, to Drive Planning, exceeds the total amount that Drive Planning or its affiliates transferred back or paid to such claimant;

AND

(iii)   that such claimant (a) was not a member, owner, officer, director, or other insider of Drive Planning, (b) was not a member, owner, officer, director, or other insider of any entity owned in full or in part by Drive Planning, and (c) did not knowingly assist Drive Planning or Defendant Burkhalter to effectuate, perpetuate, or promote any of Drive Planning's investment scheme(s) or have knowledge of the fraudulent nature of such scheme at the time of the investment, loan, or other transaction underlying the claim.[3]

The Receiver may consider other factors in determining whether a claim is an Allowed Claim.[4]  If an investor or creditor cannot prove all three of the foregoing

---

[3] Upon receipt of a Claim Form from agent-investors who suffered a net loss, the Receiver will review the relationship between that agent and Drive Planning and determine whether the agent can properly certify that he/she is not an insider of Drive Planning as stated in this subsection (ii).  To the extent the Receiver determines that an agent can properly certify the statements in subsection (ii), that agent will be treated as a non-agent investor in this Claims Process.

[4] Notwithstanding these factors for determining whether a claim should be allowed, the Receiver will analyze each claim and the circumstances surrounding each

factors to the Receiver's satisfaction, that claimant's claim will be disallowed, and such investor or creditor will receive no distribution.

Claimants who accept the Receiver's Allowed Claim Amount as stated on the pre-filled Claim Form will only need to complete the release and certification to have an allowed claim.

Creditors will need to complete the Claim Form because their form will not be pre-filled and to upload supporting documents evidencing the value of the goods and services provided to Drive Planning and the unpaid nature of their invoices or Drive Planning's purported debt.

### B. Disputing the Allowed Claim Amount

Claimants who dispute the Allowed Claim Amount stated in the pre-filled claim form must follow the objection process as set forth herein. The Receiver, with the assistance of Stretto, will review each disputed claim and supporting documentation and make a final determination (the "Final Determination") as to the amount, if any, to be allowed for each claim. To the extent the Receiver decides to reject a claim in whole or in part, the Receiver, with Stretto's assistance, will send the claimant a letter via email setting forth the Receiver's Final Determination and

---

investor's investment in or transfers to Drive Planning, and relationship with, Drive Planning and/or Defendant Burkhalter and the entities owned by Drive Planning and/or Defendant Burkhalter and reserves the right to object to and seek to disallow any claim based on any information or circumstances.

identifying: (i) the reasons the Receiver has rejected or not accepted the full amount of the claim; and (ii) the classification of the claim. The letter to claimants will also state the deadline to appeal the Receiver's Final Determination.

### C. Appealing Receiver's Final Determination of Allowed Claim Amount

A claimant may appeal the Receiver's Final Determination to the Court for final adjudication. The Receiver will file with the Court a response to any such appeal. In its discretion, the Court would conduct a hearing, if deemed necessary, to consider any objection to the Receiver's Final Determination before entering an order establishing the appropriate Allowed Claim Amount. Upon completion of the claims determination phase, the Receiver will file a motion submitting all Final Determinations of Allowed Claim Amounts to the Court and seeking approval of a distribution plan and the proposed distributions to all claimants holding an Allowed Claim.

### D. Proposed Sequence and Timing of Claims Process

The Receiver proposes that the Claims Process proceed in accordance with the following schedule:

a. Claims Process Approval: The date upon which this Court grants this motion and approves the Receiver's proposed Claims Process shall be referred to herein as the "Approval Date";

b. <u>Receiver's Sending Out Claims Packages</u>:  The Receiver would send the Claims Package to known investors and creditors of Drive Planning via email, and/or U.S. mail to the extent email addresses are not known, within sixty (60) days after the Approval Date;

c. <u>Claims Bar Date</u>:  Investors and creditors would then have until ninety (90) days after the Approval Date (the "Claims Bar Date") to return the completed Proof of Claim and Release Form to the Receiver indicating agreement with the Allowed Claim Amount or disputing the Allowed Claim Amount.  Any completed Proof of Claim and Release Form not submitted through the online claims portal, or by trackable physical mail delivery postmarked by the Claims Bar Date would be barred, and claims submitted after the Claims Bar Date will not be allowed except for good cause shown, to be determined in the Receiver's sole discretion;

d. <u>Receiver's Final Determination of Allowed Claims</u>:  The Receiver will have until thirty (30) days after the Claims Bar Date ("Receiver's Final Determination Date") to approve or reject, in whole or in part, all disputed claims received.  In the event the Receiver decides to reject any disputed claim, in whole or in part, the Receiver would apprise the claimant via email of the rejection of the claim, the basis for that rejection, and the process for appealing such rejection to this Court.

e. <u>Claimant's Appeal of Receiver's Final Determination</u>:    Any claimant whose claim was partially or wholly rejected by the Receiver may appeal the Receiver's Final Determination to the Court by filing with the Court a written appeal of the Receiver's Final Determination, which must be filed with this Court by mailing such appeal to the Clerk of Court for the United States District Court for the Northern District of Georgia and postmarked within twenty (20) days after the Receiver's Final Determination Date (the "Appeal Deadline"), and which must state the basis of the claim, provide supporting documentation, and set forth the claimant's response to the Receiver's Final Determination.

f. <u>Receiver's Response to Appeals</u>:  The Receiver's Response to all appeals filed with this Court shall be due within thirty (30) days after the Appeal Deadline.    Following this deadline, the Court may make a final determination or may set the matter for hearing.  A final determination by the Court is final for all purposes.  There shall be no further appeal of such determination or proceedings.

g. <u>Receiver's Motion to Approve Plan of Distribution and Proposed Distribution Amounts</u>:  The Receiver shall file his motion to approve a plan of distribution and proposed distribution amounts to claimants with Allowed Claims, apprising the Court of the Allowed Claims and the

rejected claims, the proposed plan of distribution, the proposed methodology for calculating the initial distributions, and the proposed distribution amounts, by no later than thirty (30) days after final adjudication of all appeals to Final Determinations filed with the Court.

The foregoing schedule is reflected in the following summary timetable:

| Day 0 | Plan Approval Date |
|---|---|
| Day 60 | Receiver to send out Claims Packages |
| Day 90 | Claims Bar Date |
| Day 120 | Receiver's Final Determination Date |
| Day 140 | Claimants' Deadline to Appeal Final Determinations to the Court |
| Day 170 | Receiver's Deadline to File Responses to Appeals |
| TBD | Receiver's Deadline to File Motion to Approve Plan of Distribution and Proposed Initial Distribution Amounts |

## VI.  PLAN OF DISTRIBUTION

Within thirty (30) days after the Court's final adjudication of all appeals of the Receiver's Final Determinations, the Receiver will file a motion seeking this Court's approval of a plan of distribution that employs the rising tide method to provide the most equitable outcome for investors and creditors of Drive Planning. The rising tide method will take into account each claimant's pre-receivership recovery of funds from Drive Planning.  In particular, pre-receivership withdrawals

and payments to a claimant will be considered part of the distribution received by a claimant and subtracted from the amount of receivership funds to which a claimant would have been entitled had there been no pre-receivership withdrawals or payments. For this reason, the Receiver designed the Claims Process to allow investors to confirm the pre-receivership transfers they received from Drive Planning.

The rising tide method is the most equitable distribution method in cases, such as this one, in which numerous claimants received significant payments from the defendant prior to the commencement of the receivership. The rising tide method aims to ensure that no investor will recover a greater percentage of his/her investment than any other investor. Courts in this District have approved the rising tide distribution method "as it provides a more equal level of recovery for all Investors, taking into account returns realized prior to the Receivership. Case law also supports the selection of the rising tide theory. 'Rising tide appears to be the method most commonly used (and judicially approved) for apportioning receivership assets.'" *See SEC v. Torchia*, U.S. Dist. LEXIS 244660 *19 (N.D. Ga. Aug. 24, 2018) *citing SEC v. Detroit Mem'l Partners, LLC*, 2016 U.S. Dist. LEXIS 154474 *36 (N.D. Ga. Nov. 8, 2016), *quoting SEC v. Huber*, 702 F.3d 903, 905 (7th Cir. 2012). Moreover, a receiver has the discretion to implement a rising tide method of distribution, which provides for *pro rata* distributions based on net losses to those

claimants who suffered the greatest losses and then, only after those claimants' losses are brought to the level of those who suffered the less significant losses, subsequent *pro rata* distributions based on net losses to all investors on that level, and so on until all receivership assets are distributed or all claimants are paid in full. *See Huber*, 702 F.3d at 904 (approving the use of the rising tide method to allocate compensation and losses).

Moreover, in his motion to approve the plan of distribution, the Receiver will likely propose an initial distribution totaling at least $50,000,000 to claimants with Allowed Claims (in accordance with the rising tide method), with the remaining sum to be held by the Receiver as he continues to marshal and liquidate assets of the Estate and increase the Drive Planning Recovery Fund to be disbursed through a future interim or final distribution to claimants holding Allowed Claims. The Receiver will file supplemental motion(s) for approval of the subsequent distributions following the recovery of significant additional amounts from the liquidation of assets and/or the Estate's claims against third parties, insiders, and affiliates of Drive Planning.

## VII.  LEGAL ARGUMENT

The Receiver believes that the foregoing proposed Claims Process employing the money-in-money-out method of calculating each claimant's net loss will provide

a fair, equitable, and efficient method for determining each claimant's Allowed Claim Amount.

Generally, the District Court has broad powers and wide discretion to grant relief in an equity receivership, including in approval and implementation of a claims process and plan of distribution. *See SEC v. Infinity Group Co.*, 226 Fed. Appx. 217, 218 (3d Cir. 2007) ("District Courts have wide equitable discretion in fashioning distribution plans in receivership proceedings, and we review the District Court's order only for abuse of that discretion.") (citations omitted); *SEC v. Forex Asset Mgmt., LLC*, 242 F.3d 325, 331 (5th Cir. 2001) (finding that a district court has wide latitude when it exercises its inherent equitable power to approve a plan to distribute receivership assets and that such approval is reviewed for abuse of discretion).

District Courts have approved the use of the net loss method of determining allowed claim amounts proposed by the Receiver herein. Courts have employed this net investment methodology in receiverships both at the claims-calculation stage and as part of proposed plans of distribution. *See S.E.C. v. Complete Bus. Sols. Grp., Inc.*, 2024 U.S. Dist. LEXIS 146133, *48-51 (S.D. Fla. Jun. 26, 2024) (holding that application of the net investment methodology is fair, reasonable, and appropriate for calculating the claims of investors in receivership and approving the Receiver's proposed net investment methodology) (citing *S.E.C. v. Capital Consultants, LLC*, No. CIV.00-1290-KI, 2002 U.S. Dist. LEXIS 27399, 2002 WL 32502450, at *2-3

(D. Or. Dec. 5, 2002) (concluding that use of "Receiver's proposed money-in/money-out pro rata approach is an equitable one" and adopting it for purposes of calculating claims); *S.E.C. v. Illarramendi*, 2013 U.S. Dist. LEXIS 172119, 2013 WL 6385036, at *1 (D. Conn. Dec. 6, 2013) (approving use of "net investment method" in claims administration, where the Received calculated "a claimant's net investment on a consolidated basis, so that if a claimant has multiple accounts, any fictitious profits withdrawn from one account will be subtracted from the claimant's Allowed Amount in another account"); *S.E.C. v. Champion-Cain*, 2023 U.S. Dist. LEXIS 31535, 2023 WL 2215955, at *4 (S.D. Cal. Feb. 24, 2023) (approving claims determinations where approved claims were calculated using a "net loss" or "money-in money-out" (MIMO) method, which looks at all amounts the investor paid in and subtracts all amounts the investor received back).

Accordingly, the Receiver submits that this Court should exercise its discretion to approve the proposed Claims Process as detailed herein.

## VIII.  CERTIFICATION OF CONFERRAL

Undersigned counsel hereby certifies that the Receiver has conferred with counsel for the SEC and undersigned counsel has conferred with counsel for all Relief Defendants regarding the relief requested herein.  Counsel for the SEC and counsel for the Relief Defendants confirmed that the SEC and Relief Defendants have no objection to the requested relief.  Undersigned counsel further certifies that,

on July 31, 2025, she sent an email to Defendant Russell Todd Burkhalter attaching a near-final draft of this motion, Stretto's Proposal and Services Agreement, and the proposed Notice and Claim Form, and requesting that he confirm whether he had any objections to the requested relief. Thereafter, undersigned counsel sent emails to Defendant Burkhalter on three different dates following up on her request that he confirm his position on the requested relief. As of the time of this filing, Defendant Burkhalter had not provided his position.

## IX.  **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter an order similar in form to the proposed order attached as **Exhibit D**: (1) approving the proposed employment of and payments to Stretto as Claims Agent; (2) approving the proposed Claims Process; (3) authorizing the Receiver to email a Claims Package (comprising the Notice and Claim Form attached as Exhibits B and C) to all known, potential claimants; and (4) granting such other relief as this Court deems just and appropriate.

Respectfully submitted this 11th day of August, 2025.

s/*Adriana Pavon*
Adriana M. Pavon, Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
     Florida Bar No. 1025060
     apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
     Florida Bar No. 44417
     rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
     Georgia Bar No. 636265
     Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

     I hereby certify that, on August 11, 2025, I electronically filed the foregoing motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I served the motion on Defendant Russell Todd Burkhalter via e-mail.

     I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

                         <u>s/*Adriana Pavon*</u>
                         Adriana M. Pavon, Esq.
                         Florida Bar No. 1025060
                         *Admitted Pro Hac Vice*