FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

SEP 17 2025

KEVIN P WEIMER, Clerk
By:
Deputy Clerk

Clerk of Court
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
2211 United States Courthouse
75 Ted Turner Drive SW
Atlanta, Georgia

Re: Civil Action and Appointment of Receiver 1:24-cv-03583-VMC
Drive Planning LLC and Todd Russell Burkhalter
Re: Notice to Investors of Drive Planning and Approved Ancillary Proceedings to Recover
Net Gains

I am submitting grave concerns about the actions of the Receiver, Kenneth Murena, and the
permissions for actions granted to him by the Court.

The Receiver should not sue or make claims against past Lenders and Agents in Drive
Planning, accusing them of Fraudulent Transfers, when the perpetrator of the malfeasance
has not even been charged or found guilty of fraud.

The receiver is bringing in so much funds, from seized properties, third parties, and more,
as documented in this analysis, there should be no reason to go after innocent citizens
except that it lines the already rich pockets of the receiver.

I am submitting a well-researched analysis of the action about to be taken against past
Lenders/Investors in Drive Planning and Agents, of which I am both.

The following analysis that I have included here is available on
https://accountability101.com

I wish to remain anonymous for fear of retribution by the Receiver, but I do want the
enclosed Analysis publicly recorded if possible, just without my name attached.

I have heard reports of harassment by the receiver's staff to former independent agents of
Drive Planning, in which such bullying has taken place that women were threatened to be
forced to file for bankruptcy and lose their homes if they did not agree to send money to the
receiver. These are agents that long ago stopped doing business with Drive Planning, and
some were not even aware of the appointment of the Receivership. They are terrified and
frightened. As am I. While Todd Burkhalter has not even been charged with fraud and is
living the high life, we are being destroyed by the words and actions of the Receiver and this
Court.

I have been fighting breast cancer all year; my business has been devastatingly harmed, my reputation ruined, and these threats from the Receiver hang over me. And no fraud has even been proven to have been committed by the perpetrator, Todd Burkhalter.

Dozens, possibly hundreds, of Lenders/Investors have been out of a relationship with Drive Planning for a long time, some for over a year, and they are going to have their lives disrupted or worse if the Receiver is allowed to go after them for interest they made years ago from what they knew was a legitimate business enterprise and large financial planning office. Now, out of the blue, they face these terrible threats and loss of their retirement funds, after all this time.

These past lenders, who are about to be unfairly charged by the procedures authorized by this Court, are my clients and friends. This is absolutely devastating that the Receiver would be allowed to go after innocent people when the ONE person who took money has not even been found guilty of fraud or anything.

I plead with the court to make the receiver do a FULL analysis and accounting of the market value of everything coming into the Receivership estate, now and potentially in the future, and legitimately see if there is a shortfall to restore the NET amount due back to current Lenders. The current lenders were in Drive Planning at their own risk, including my little Solo401k that has been trapped for over a year.

These procedures and going after 'net gains' and past commissions that the court is allowing will destroy people's reputations and lives. We don't deserve it.

I believe we will all have to make pleas to Congress to get this type of action stopped in the future. The leeway and powers given to Receivers via the Courts are out of control. They can put a heavy hand down on unsuspecting and innocent people, and the receiver makes big money doing it.

I would plead with the court to take action to stop them.

Thank you in Advance for your consideration,

*Robin Rowan 9/15/25*

Robin Rowan

Safe Life Solutions LLC

Robin@safelifesolutionsllc.com

251-401-5152

# Memorandum Regarding Overreach by, and Proposed Actions of, the Court-Appointed Receiver in Drive Planning LLC Proceedings

## Analysis of Overreach Toward Victim Lenders and Agents

### Introduction and Summary

For the purpose of this document, 'Investors' in Drive Planning are also referred to as 'Lenders.'

This analysis and request to the Court will not defend in any way Todd Burkhalter, the owner of Drive Planning LLC, who has serious allegations against him. It appears from the Receiver's reports that Mr. Burkhalter misappropriated funds and funded a lavish lifestyle, possibly with Lender funds; however, he has not been charged with or found guilty of fraud, as defined by a Ponzi scheme.

The Receiver is using an unproven accusation and no due process on an unproven 'Ponzi scheme' as a basis to make demands of past Lenders/Investors and Agents, falsely accusing them of receiving 'fraudulent transfers.'

The Receiver is requesting to demand funds from innocent citizens and pursue settlement proceedings against past Lenders and Agents who believed they were involved in a legitimate business with a large financial planning office, Drive Planning LLC. They were completely unaware of the actions that were done solely

1

by Mr. Burkhalter. Many of these Lenders and Agents had been out of Drive Planning for over a year before the SEC looked at Drive Planning and well before the Receiver was appointed.

The Court should recognize the error of Receiver Kenneth Murena in making accusations against and disrupting the lives of Agents and past Lenders. Accusing someone of receiving a "Fraudulent Transfer" is very serious and could ruin lives and businesses. Doing this to innocent unknowing citizens when the perpetrator has not even been found guilty of fraud, and who is still living luxuriously off of Lenders' funds, still to this day, is absurd.

 The Receiver should not be paid Contingency Fees for harassing, threatening, and taking funds from innocent civilians. We strongly object to the procedures being put forth by the Court and the Receiver.

The case will be made here as to why the proposed settlement arrangements should not be approved, and the Receiver should be stopped.

- No Ponzi has been proven, no fraud has been found in a court of law against the accused owner of Drive Planning, Todd Burkhalter.
- The definition of 'illegal transfers' to Lenders, claimed by the Receiver, has not been met.

2

- The Receiver wants to collect long-ago past-earned interest on loans from unsuspecting, innocent past Lenders/Investors and commissions earned from innocent independent Agents who believed they were doing legitimate business activities.

- The Receiver, in its own reports, proves Lender's money was going to legitimate business activities.

- Todd Burkhalter is being allowed to maintain his luxurious lifestyle in his St. Petersburg condominium and receiving $10,000 a month in living expenses, and other benefits, from the Receivership.

- The Receiver is being paid hundreds of thousands of dollars per quarter while asking the court to allow them to earn additional 'contingency fees' by going after innocent citizens who are completely unaware of the actions by Mr. Burkhalter.

- The Receiver has seized over $57 million in cash, tens of millions of Burkhalter's personal assets, tens of millions in commercial and luxury properties owned by Drive Planning as part of the Real Estate business. The Receiver has gotten a large settlement from the Tampa Bay Rays, $583,000 from NETJET, over $1million from National Life Company, and many properties and assets coming in from David Bradford and other third parties could bring in a hundred million dollars or more into the Receivership.

The Receiver estimates net losses to current Lender/Investors at $220 million. This is based only on a forensic evaluation and not on actual claims submitted to the Receivership.

With lawsuits and seizures worth potentially hundreds of millions of dollars coming into the receivership, and multimillion-dollar properties yet to be sold, the Receiver has not reported the totality of the funds and assets being received, which may be sufficient to make the current Lenders whole.

A complete analysis should be conducted of the net claims from Lenders, and a full review of the market value of all seized assets, in addition to all lawsuits and assets being transferred in.

This should be done before even considering making false claims against and demands of funds from innocent past Lenders and Agents. The only purpose of which is for the Receiver to make Contingency Fees.

## Background

**Accusations Against Russell Todd Burkhalter, CEO of Drive Planning LLC**

The SEC civil complaint against Todd Burkhalter alleged that Burkhalter committed violations of the federal securities laws. It was a SEC Civil Complaint,

4

alleging he sold unregistered securities. It was not a criminal fraud charge and does meet the definition of a Ponzi scheme.

In April 2025, Burkhalter agreed to a resolution of the SEC's claims against him. He consented to the entry of the Judgment without admitting or denying the allegations of the Complaint. The was no guilty verdict. He consented not to be an officer of any securities-related company, not to sell securities or send out false information dishonestly, and to other sanctions by the SEC. He agreed to pay penalties, which the amount was not named.

As of September 2025, Todd Berhaulter has been permitted to retain his luxury condominium in St. Petersburg, Florida, and has been granted permission by the court to have the taxes paid from the receivership funds. Additionally, the court has twice allowed Berhalter to receive $10,000 a month in living expenses from the receivership funds, among other benefits. He has not been charged or found guilty of any fraud and continues to live off of Lenders' funds.

Importantly, the Agents and Lenders had no knowledge that Mr. Burkhalter was mishandling funds, nor were they aware that the secured loans could potentially be considered unregistered securities.

The advertising and massive social media marketing a legitimate financial planning office. The Tampa Bay Rays took on a $400,000 advertising contract, Mr.

Burkhalter got involved with charities and the St. Petersburg Chamber of Commerce, sponsored a race car, opened offices in various cities. Lenders and Agents believed that they were conducting legitimate business and were earning interest income on secured promissory notes, on loans, *in a legitimate business activity.*

The Loans were marketed as interest-earning loans and were not considered to be securities. Interest earned by Lenders was reported on a 1099-I to the IRS. Taxes were paid by Lenders on the Interest earned on their Loans to Drive Planning for legitimate business activities, described below.

## Allegations Passed onto Innocent Lenders and Agents

*"WHEREAS, on August 13, 2024, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC and Russell Todd Burkhalter ("Defendants"), **alleging** they operated a Ponzi scheme."*

This is an **allegation**.

And,

6

*"The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' **alleged Ponzi scheme.**"*

To date, no fraud has been charged, and the Ponzi scheme is an allegation.

According to the Legal Information Institute of the Cornell Law School, *"Ponzi schemes are a type of investment fraud in which investors are promised artificially high rates of return with little or no risk. Original investors and the perpetrators of the fraud are paid off by funds from later investors, **but there is little or no actual business activity that produces revenue.**"*

## Legitimate Business Activities

However, Drive Planning LLC had many legitimate business activities, which were well documented and advertised, which produced revenue; therefore, it did not meet the definition of a Ponzi scheme.

Drive Planning featured financial planners, tax professionals, and CPAs in their training and promotional materials, offering a wide variety of financial products.

Some were featured in videos available to the public.

- Financial Planning advertised on YouTube

7

- Everett Stull, a seasoned financial consultant, will be sitting down with Ryan Lawlor, another brilliant mind in the world of finance.
- More Financial Planning – "Comprehensive Financial Planning Group"
- Tax Planning and Tax Strategies advertised on YouTube
- Training Events focused on Life Insurance

Drive Planning recruited dozens of Life Insurance agents and gave training on selling life insurance. Life insurance pays commissions, and Drive Planning received overrides on those commissions, which is a very lucrative business.

The Receiver acknowledges that Drive Planning was buying cash flow-producing businesses with Lender/Investor funds, including financial services. Page 26 of the Receiver's Fourth report states

> "Drive Planning had acquired an accounting practice through DPFS called Fishman Accounting & Tax Resolutions. The purchase was funded entirely by Drive Planning and closed on January 17, 2023, for $400,000 plus the value of accounts receivable."

Drive Planning's investors' funds also purchased the Sandy Springs, Georgia, office of the financial service and accounting office for $675,724. It was purchased from the cash account containing investor funds, according to the Receiver's accounting report, page 25. Another party has sold the property for $550,000, and the Receiver has yet to get back those funds.

8

It seems that the Receiver's time would be better spent recovering the lost money rather than making false allegations against and suing innocent Lenders and agents who are unlikely to have the funds.

## Other financial offerings/loan opportunities included –

- REAL – The Real Estate Acceleration Loan, which will be discussed in detail below.
- Oil and Gas Investments
- CORE – A tax lien house flipping business, CORE was professionally marketed and presented in training sessions at Drive Planning. It was an interest-bearing loan secured by real estate.
- Self-storage unit investments, and others.

## Commercial and cash-flowing Properties purchased with Lenders' Funds for Legitimate Business Activities

Mr. Burkhalter was buying properties and investing in cash-flowing businesses with Lenders' funds as advertised by his company, as displayed by the numerous

properties for sale and being seized by the Receiver. These were legitimate business activities as expected by the Lenders.

These properties served as collateral to secure the loans and for the future benefit of the Lenders in the REAL program, described below.

The Receiver has seized the Properties purchased with Lender funds, and they are for sale for the benefit of the Lenders/Investors.

The commercial properties are pictured on a website set up by the Receiver and include –

- 6-bedroom, 6-bath Mountain Estate in GA– Sold by the Receiver
- 4,189 Commercial Space in Roswell, GA - Sold by the Receiver
- 10 Unit Apartment Building in St. Petersburg, FL – Sold by the Receiver
- Duplex and Cottage in Gulfport FL – Sold by the Receiver


The following properties owned by Drive Planning, bought with investor funds, include many commercial cash-flowing properties that were seized by the Receiver and are for sale.

- 3 bedroom, 3.5 bathroom Private Villa in Los Cabos Mexico
- 2 bedroom, 2 bath Waterline condo in Anna Maria Island Florida
- 1 bed, 1 bath Beach Condo, Panama City Beach, Florida

- 2 bedroom, 2.5 bath High Rise Condo in St Petersburg Florida

- 4 bedroom, 4 bath Mountain Home in Mineral Bluff, Ga

- Another 4 bedroom, 4 bath Home in Mineral Bluff, Georiga

- 119 acres Luxurious Cattle Ranch, Event Center and estate in Mineral Bluff Georgia

- Vacant Land for development in Gulfport, Florida

- 9,200 sq ft retail space in Blue Ridge Georgia which was a cash flowing Western clothing store.

- Commerical lots, .5 acre and 1.7 acres vacant land for development in Blue Ridge Georiga

- 3 Bed, 2 bath house in St. Petersburg, Florida

- 16 unit Apartment Building in St. Petersburg, Florida

- 3 bedroom, 2 bath, custopm home in Blue Ridge Georgia

These properties, sold and for sale, show the legitimate investments in real estate development and commercial properties made by Drive Planning in the REAL program, many of which generate cash flow. This shows the legitimate business activities being produced and disproves the definition of a Ponzi scheme.

The market value of these properties, and many other properties now being transferred in from seizures from David Bradford and other third parties, needs to

11

be properly evaluated and analyzed as to what shortfall there is in net claims before the Receiver goes after innocent Agents and past Lenders.

## Fraudulent Transfer Does Not Apply.

The Receiver is claiming that transfers of net gains to Lenders/Investors were "illegal transfers."

The Receiver claims that, per precedent -

*"investors of a **debtor later determined to constitute or operate a Ponzi scheme** are not entitled to retain Net Gains (payments in excess of their investments), as those funds are considered fraudulently transferred from other investor deposits."*

and

In Motion to Approve Litigation and Settlement Protocol, page 3, the Receiver states;

*"Drive Planning paid those Net Gains to investors with other investors' funds (rather than actual profits on their investments), making those Net Gains recoverable by the Receiver under applicable law."*

However,

12

- Drive Planning has not been found guilty of operating a Ponzi scheme, which is defined by fraud, so the "fraudulent" or "illegal transfer" does not apply.

- Investors who exited Drive Planning in 2021 to early 2024, before other later investors put money in, could not have been transferred from the later investors' deposits and therefore are not involved in an illegal transfer. They were not paid with other investors' funds, as those later investors had not yet put funds in.

The same applies to the agents' commissions that the receiver is making a similar claim to.

Georgia Uniform Fraudulent Transfers Act ("GUFTA") defines claims for fraudulent transfers are transfers made with actual intent to defraud a creditor.

This was not the case. There was no intent to defraud anyone when a citizen believes they are conducting a legitimate business activity in funding an interest-earning loan for real estate transactions and other related businesses. These are arguably not "illegal transfers."

## The Real Estate Acceleration Loan (REAL)

The primary focus of the court cases and receiver is the Real Estate Acceleration Loan (REAL).

13

REAL was very professionally marketed as a bridge loan to fund real estate development projects.

REAL was a secured loan, secured by the real estate properties. It paid interest to the Lenders. Lenders were issued a 1099-I reporting the interest earned to the IRS. It was marketed as an interest-earning loan, not a security. Interest earned by lenders was reported on a 1099-I to the IRS, confirming a legitimate business activity.

REAL was marketed to the Agents and to Lenders as a real estate loan to Mike Embry Development, a large real estate developer well known for over 70 years of development in Atlanta and with development projects across the Southeast United States. It was structured, according to the marketing materials, as a Bridge Loan so the developer could work on more than one project at a time, and fund other commercial properties which were being built or purchased by Drive Planning.

Mike Embry Development's decades-long reputation and success were heavily promoted to recruit agents and Lenders into the REAL program. One or more of the Emby projects was used as collateral to secure the loans, convincing the agents and lenders that this was a short-term loan secured by real estate.

Drive Planning, after working with Mike Embry Development for a period of time, had in fact, stopped funding his projects. The accounting records of the Receiver show funds going from Drive Planning LLC to Embry Development from 2020-2022. Mr. Embry later discovered, from agents that were doing due diligence, that Mr. Burkhalter had continued to raise funds for the REAL program using Mike Embry's name.

In the case  Embry Development Company v. Drive Planning, LLC and R. Todd Burkhalter, filed in the Superior Court of Fulton County, Georgia (Case No. 2023CV384406), Embry Development Company brought claims against Drive Planning and Mr. Burkhalter for unauthorized use of the Embry name, breach of trust in capital raising activities, seeking emergency injunctive relief and damages.

When many Agents found that the funding of Mike Embry Developments was being misrepresented, dozens of Agents started pulling their money and clients out of Drive Planning. This was due diligence on the agent's part. They informed their clients of the 'red flag' and told them that if they stayed in Drive Planning, it was at their own risk. Over $40 million was exited from Drive Planning as a result of the agents and Lenders leaving when this took place in 2023.

15

Todd Burkhalter claimed that Drive had started using other real estate developers and continued the development and commercial property business. This turned out to be true as the same has been seen in other states in the Receiver's reports.


## The Previous Lenders were not Paid with Later Lenders' Funds

When it was discovered through due diligence by agents that Drive Planning was not being honest in funding Emby Development, as described in detail below, dozens of agents pulled away from Drive Planning, exiting their clients, pulling out over $40 million of the Lenders' funds from REAL and Drive Planning in early 2023 to mid-2024.

Following the exit of these clients, Drive Planning accelerated its advertising efforts and raised an additional $200 million. Between January and June 2024, they raised another $100 million.

The Lenders that pulled their funds out from 2020 to mid-2024 could not possibly have been paid with funds of the later Lenders whose funds are now frozen, as they legitimately received their funds long before those Lenders came in. Therefore, it could not be an 'illegal transfer."

The 'net gains' are actually 'interest earned' should NOT have to be returned to the Receiver.

16

The previous Lenders that had already exited Drive Planning had a 1099-I reported to the IRS for the interest earned on those loans and have paid taxes on that earned interest. If their money had not been loaned to Drive Planning, it would have been put in the stock market or with another company and gotten a return.

*Now the Receiver wants the interest long-ago earned, that have had taxes paid on it, to be seized so the Receiver can get their contingency fees and Todd Burkhalter can still live in luxury.*

## Unwarranted Accusations Against Agents

The Receiver claims that "These Agents were compensated through Commissions… many of whom actively promoted Drive Planning's fraudulent investment products without conducting proper due diligence or with reckless disregard for the Ponzi-like structure of the operation."

- Agents did due diligence, and the Receiver acknowledges the professional marketing displaying the products offered by Drive Planning.

- These are not proven to be fraudulent investment products. Collateral listings were given to be easily verified. Purchase records of properties were easily attainable via public records; the event center, gun store, and western store were all public and easily accessible to verify business activities. The

17

Life Insurance Sales were legitimate activity, and professionals did Financial Planning and Tax Strategies.

- Agents that left Drive Planning, pulled out clients in 2023 – mid 2024, did not display reckless disregard, as through their due diligence, became suspicious of the claims of David Bradford and Todd Burkhalter regarding funding Mike Embry Development as advertised. They told their clients to exit as they considered the Embry issue to be a red flag.

Independent Agents had every reason to believe the Offerings / Loans / Insurance were legitimate business offerings. There was no way for the agents to know that Todd Burkhalter was misusing funds.

As no fraud has been proven, and the businesses Drive Planning were involved in were legitimate based on the massive real estate assets seized, these are false allegations being made against the Agents, and the Receiver should not be paid fees and profit from unfairly harassing and suing innocent Agents that had no idea Todd Burkhaiulter was misusing funds.

## Conclusion

### Plenty of Assets to Cure Current Lenders

In the fourth reporting period, April 25, 2025, to June 30, 2025, the receiver reported earning interest on the funds in the receivership estate in the amount of $495,854.96.

After the Reporting Period, the "Receiver sold three additional properties in St. Petersburg, Florida, and Blue Ridge and Mineral Bluff, Georgia, recovering an additional $4,425,015.25."

The receiver is managing a portfolio of real properties located in Georgia, Florida, Indiana, and Mexico. Some of these properties are worth million of dollars.

A $57.119 million cash fund is in the Receivership, (Fund Accounting report p.38), in addition to the multiple tens of millions in equity in seized and unsold properties. Over $1 million was retrieved from National Life Insurance, $585,500 from NetJets, a $3 million yacht, among many other seizures, including $4 million from recent property sales and potentially $20 million or more from David Bradford's assets.

Transfers from David Bradford include liquidating multiple private placement investments, 11 rental homes in South Carolina, two Airbnb properties in Alabama, and others currently being transferred to the Receiver, but no value has yet to be assigned to them. This is from the Receiver's Fourt Report, page 24.

## The Receiver is Making Money

In the fourth reporting period, the Receivership took $412,851 for business operations and $277,653 in disbursements to the Receiver or other professionals. They want to go after innocent citizens to get themselves paid more in contingency fees.

The Receiver should be focused on selling the massive amount of real estate properties, some of which are worth many millions of dollars, instead of going after unsuspecting innocent citizens who, at one time, did business with Drive Planning.

## Conclusion

No fraud or Ponzi has been proven, yet the Receiver is using the ALLEGATIONS against Todd Burkhalter to make demands of and potentially sue innocent people who did business with Drive Planning in the past.

Past Lenders and Agents should not be subject to ruin of reputation, demands, seizures of funds, or harassment by the Receiver because of the misdeeds of Todd Burkhalter, who has not been found guilty of accusations of fraud in a court of law, is living in luxury off of Lender's frozen funds as the Receiver makes

20

extraordinary money by potentially harassing innocent people and ruining their lives.

All the current assets for sale, incoming assets, assets from David Bradford, as well as pending lawsuits against third parties, should be thoroughly analyzed for their full value and potential to restore funds to current individuals who have been frozen in the receivership. This should be done before the Receiver is permitted falsely to go after innocent past Lenders and Agents, many of whom are middle-class citizens and have no means to pay, or to hire a lawyer.

**We ask the court to have the receiver report accurately what net claims are outstanding from current Lenders, and the FULL amount of money that is due to come in from lawsuits, transfer from third parties, asset sales and other seizures, before allowing the Receiver to go after innocent citizens and Agents.**

**We ask the Court to not allow the Receiver to pursue the proposed settlement agreements or claims on innocent Lenders and Independent Agents.**

21



ROBIN ROWAN
2240015152
ROBIN ROWAN
2149 W 1ST STREET
GULF SHORES AL 36542

SHIP TO:
KEVIN WEIMER / CLERK OF COURT
4042151600
UNITED STATES DISTRICT COURT 2211
75 TED TURNER DR SW
ATLANTA GA 30303

1.0 LBS LTR    1 OF 1

GA 303 9-02

UPS NEXT DAY AIR SAVER    1P

TRACKING #: 1Z U31 TK0 29 2407 2047

BILLING: P/P
SIGNATURE REQUIRED

Reference #1: DP Documents

Serving you for more than 100 years
United Parcel Service.

01B80250709  08/21  United Parcel Service