# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      **Plaintiff,**

**v.**

                                          **Civil Action No. 1:24-cv-03583-VMC**

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

      **Defendants,**

**and**

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

      **Relief Defendants.**

_____/

## RECEIVER'S MOTION FOR TURNOVER OF AND IMPOSITION OF CONSTRUCTIVE TRUST OVER CLUB 201, LLC, INCLUDING ALL ITS ASSETS AND MEMBERSHIP INTEREST

      Kenneth D. Murena, Esq., the court-appointed Receiver ("Receiver") in the

above-captioned enforcement action, files this motion, pursuant to the Order

Appointing Receiver [ECF No. 10] (the "Appointment Order"), and applicable law,

seeking an order requiring the immediate turnover of assets and membership units

in the possession of Defendant Russell Todd Burkhalter and titled in the name of 201 Detroit, LLC and imposing a constructive trust on such business and membership interest in favor of the receivership estate for Drive Planning, LLC (the "Receivership Estate"), and in support states:

## I.    <u>INTRODUCTION</u>

The Receiver seeks the immediate turnover of, and the imposition of a constructive trust over, 201 Detroit LLC and all its assets, including the business known as known as Club 201 at the Detroit ("Club 201"), located on Central Avenue, St. Petersburg, Florida, and operated by Club Detroit, LLC, a Florida limited liability company solely owned and controlled by Defendant, Russell Todd Burkhalter. The business, together with its assets, was purchased for $847,375.04 using funds misappropriated from investors of Drive Planning, LLC ("Drive Planning") and is, therefore, property of the Receivership Estate and subject to this Court's Appointment Order [ECF No. 10].

Despite repeated demands, Mr. Burkhalter has refused to turn over the business, depriving the Receivership Estate and the defrauded investors of their rightful interest in this asset. Meanwhile, the Receiver has received multiple reports indicating that Club 201 is not being operated in a manner that preserves or enhances its value. Instead, based on available information, the bar is being mismanaged, neglected, or operated primarily for the benefit of Mr. Burkhalter.

Club 201 does not provide any revenue for the Receivership Estate and is at risk of continued decline, thereby wasting a potentially valuable asset that could otherwise be monetized for the benefit of harmed investors. Moreover, the Receiver and his team regularly receive telephone calls from distraught investors that Mr. Burkhalter is frequently present at the bar, conducting himself in a manner that is disruptive to patrons, staff, and the bar's professional operations.

The Receiver seeks to take immediate control of Club 201, secure its assets, and facilitate an orderly sale of the business to preserve and maximize its value for the Receivership Estate. The Receiver has already received expressions of interest and potential offers for the purchase of Club 201 and believes that, once under the Receiver's control, the business can be marketed and sold quickly.

## II.   BACKGROUND

Drive Planning purchased Club 201 with two wires collectively totaling $652,375.04 using funds from an account containing investor money. Specifically, on March 18, 2024, Drive Planning wired $25,000, and on March 27, 2024, Drive Planning wired $627,375.04, to Hitchens & Hitchens, P.A. Trust Account, the closing attorneys. *See* Declaration of Kenneth D. Murena, as Receiver of Drive Planning, LLC ("Receiver's Declaration"), attached as **Exhibit A**, at ¶¶ 3-6. As reflected in the Receiver's Sworn Statement and Accounting, this account held the majority of Drive Planning's investor funds. *See* ECF No. 81.

Drive Planning purchased 100% of the membership units of 201 Detroit, LLC, which was the legal owner of all of the assets of the business of Club 201, including furniture, fixtures, equipment, goodwill, inventory, and the valuable 4COP liquor license (License No. BEV62-00711). The total purchase price was $985,708.00, of which Drive Planning paid $25,000 as earnest money on March 18, 2024, and $627,375.04 at closing on March 27, 2024, for a combined total of $652,375.04. *See* Receiver's Declaration at ¶ 3. The remaining balance of $335,708.00 represented a note assumed by Mr. Burkhalter which is secured by the liquor license.[1] *See id.* Additionally, the Receiver's bank reconstruction of Drive Planning's accounts reflects that, following the purchase, Drive Planning transferred a total of $170,000 in investor funds to Club 201 to cover its operating expenses. *See id.* at ¶ 5.

Upon learning that Club 201 was acquired using investor funds, the Receiver asked Mr. Burkhalter's prior counsel if Mr. Burkhalter would agree to turn over the business so it could be marketed for sale for the benefit of the Estate, but Mr. Burkhalter declined. As a result, the Receiver seeks the Court's intervention to impose a constructive trust over and order the immediate turnover of Club 201 to preserve its value and maximize the Estate's recovery for the benefit of defrauded investors.

---

[1] Based on his preliminary investigation and discussions with potential purchasers, the Receiver estimates that the liquor license is worth approximately $600,000.

### III.   MEMORANDUM OF LAW

As Mr. Burkhalter is in possession and control of the assets, business and membership interests of Club 201 purchased with funds transferred directly from an account of Drive Planning containing investor funds, the Court should (i) require Mr. Burkhalter to immediately turn over possession and control of Club 201 to the Receiver, and (ii) impose a constructive trust over Club 201 in favor of the Receivership Estate and declare that Club 201 is property of the Receivership Estate.

#### a.   The Court Has Jurisdiction Over Club 201

This Court has jurisdiction and control over all property of the Receivership Estate, including Club 201 purchased with Drive Planning funds, located in the Middle District of Florida, pursuant to 28 U.S.C. §§ 754 and 1962.  "A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control of all such property with the right to take possession thereof."  28 U.S.C. § 754; *see also SEC v. Bilzerian*, 378 F.3d 1100, 1104 (D.C. Cir. 2004) (Section 754 extends "the territorial jurisdiction of the appointing court. . . to any district of the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754.") (*citing Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 823 (6th Cir. 1981).  To establish such jurisdiction, the

Receiver must "within ten days after the entry of his order of appointment, file copies of the complaint and such order of appointment in the district court for each district in which property is located." 28 U.S.C. § 754. The Receiver complied with 28 U.S.C. § 754 by filing a copy of the Complaint [ECF No. 1] and the Appointment Order [ECF No. 10] in the Middle District of Florida within ten days of the entry of the Appointment Order. *See* M.D. Fla. Case No. 8:24-mc-00017-WFJ-UAM at ECF No. 1 ("M.D. Fla. 754 Action").

When 28 U.S.C. § 754 applies, its companion statute, 28 U.S.C. § 1692, is triggered. Section 1692 effectively expands the territorial jurisdiction of the court that appoints the receiver to any district in the United States where property believed to be that of the receivership estate is found, provided that the proper documents have been filed in each such district as required by § 754. *See* 28 U.S.C. § 1692 ("In proceedings in a district court where a receiver is appointed for property, real, personal, or mixed, situated in different districts, process may issue and be executed in any such district as if the property lay wholly within one district, but orders affecting the property shall be entered of record in each of such districts."); *see also Bilzerian*, 378 F.3d at 1104 (finding that personal jurisdiction is established by the nationwide service of process authorized in receivership proceedings by 28 U.S.C. § 1692, under which "[t]he appointment court's process extends to any judicial district where receivership property is found." (*quoting Haile*, 657 F.2d at 826)).

Further, Federal Rule of Civil Procedure 4(k)(1)(C) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."

Therefore, because the Receiver has filed the Appointment Order in the M.D. Fla. 754 Action and recorded it in Pinellas County, Florida in which Club 201 is located (*see* Receiver's Declaration at ¶ 9), and this Motion and the Appointment Order have been served on Mr. Burkhalter, this Court has personal jurisdiction over that business, pursuant to 28 U.S.C. § 1692 and Fed. R. Civ. P. 4(k)(1)(C).

### b. <u>The Receiver's Claim for Constructive Trust is Proper Because it is Based on Harm to the Receivership Entity (Drive Planning), not Investors.</u>

A receiver has standing to bring a constructive trust claim because it represents the legal interests of the entities in receivership, which are distinct from the interests of individual investors in a Ponzi scheme. *See Wiand v. Lee*, 753 F.3d 1194, 1202 (11th Cir. 2014) ("[a] receiver of entities used to perpetrate a Ponzi scheme does not have standing to sue on behalf of the defrauded investors but does have standing to sue on behalf of the corporations that were injured by the Ponzi scheme operator"). Here, the Receiver's claim for a constructive trust arises from the direct harm to Drive Planning as a result of Mr. Burkhalter's transferring funds from Drive Planning's accounts to purchase Club 201, wrongfully diverting them for the improper purpose of depriving Drive Planning of its assets and unjustly

enriching Mr. Burkhalter. *See Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024) (finding that receiver had standing to maintain fraudulent-transfer claims against brokers because those transfers injured the receivership corporate entities).

Even though the entities involved in the Ponzi scheme were used as tools by the schemer, they are still considered separate legal entities with their own rights and duties. *See Wiand v. Lee*, 753 F.3d at 1202. These entities are harmed when their assets are diverted for unauthorized purposes, such as perpetuating the Ponzi scheme, rather than being used for their stated purpose, such as investing on behalf of investors. *See id.*

Once a receiver is appointed, the entities in receivership are no longer under the "evil zombie" control of the Ponzi schemer, but are "freed from his spell," and are entitled to recover assets that were improperly transferred from the entities. *See id.* at 1201-1203; *see also Wiand v. ATC Brokers Ltd.*, 96 F.4th 1303, 1310 (11th Cir. 2024) (finding that receiver had standing to maintain fraudulent transfer claims against brokers because those transfers injured the receivership corporate entities). A receiver has standing to pursue constructive trust claims on behalf of the receivership entities, as opposed to individual investors who are considered tort creditors of the entities and do not have direct claims to recover the diverted assets from the parties to which they were improperly transferred. *See id.*

Further, as this Court has clarified in its previous order, ". . . courts have recognized that a receiver is not limited to bringing statutory fraudulent transfer causes of action for the purpose of clawing back transfers to Ponzi scheme insiders." *See, e.g., In re Wiand*, No. 8:05CV1856 T27MSS, 2007 WL 963165, at *7 (M.D. Fla. Mar. 27, 2007) ("An unjust enrichment claim may be properly categorized as an action "'directly against the principals or the recipients of fraudulent transfers of corporate funds to recover assets rightfully belonging to the corporation.'") (quoting *Freeman v. Dean Witter Reynolds, Inc.*, 865 So. 2d 543, 550 (Fla. 2d Dist. Ct. App. 2003)); *Kent v. Calcada*, No. CV 21-18396, 2024 WL 4504426, at *8 (D.N.J. Apr. 25, 2024) ("Furthermore, although not a fraudulent transfer claim, Plaintiff's breach of contract claim is more like the types of claims for which in pari delicto would not apply to a receiver—i.e., claims that seek to 'recover assets rightfully belonging to the corporation and taken prior to the receivership.'") (citing *Isaiah*, 960 F.3d at 1306). *See* ECF No. 15. As such, the Receiver has standing to bring this motion to recover assets rightfully belonging to Drive Planning.

### c. Court Orders Require Turnover of Club 201 to Receiver

Based on the findings in this Court's Orders, because Club 201 was purchased with funds transferred directly from an account of Drive Planning containing investor funds, and Mr. Burkhalter has refused to turn over the business to the

Receiver, the Court should compel Mr. Burkhalter to immediately turn over the property to the Receiver.

### i. Preliminary Injunction

On August 13, 2024, the Securities and Exchange Commission ("SEC") filed a Complaint for Injunctive Relief, Civil Monetary Penalties, and Other Equitable Relief against Drive Planning, LLC and Russell Todd Burkhalter, alleging they operated a massive Ponzi scheme under the guise of a real estate investment program. *See* ECF No. 1.

The SEC also filed an Expedited Motion for Emergency Relief to prevent the dissipation of assets and the continued defrauding of investors. *See* ECF No. 2. In its motion, the SEC presented evidence to show that, from September 2020 through June 2024, over 2,500 investors residing in at least 48 states invested approximately $372 million based on promises of unrealistically high returns from real estate ventures. *See id*. at pp. 5-6. Defendants primarily used new investor funds to pay earlier investors, in typical Ponzi fashion, with more than $280 million still being owed to investors. *See id*. at pp. 4-6.

Based on the foregoing, and other evidence presented in the SEC's motion, the Court entered a Preliminary Injunction Freezing Assets and Granting Other Equitable Relief (the "Preliminary Injunction"), freezing the assets of the Defendants and Relief Defendants, prohibiting the destruction of documents, and

requiring an accounting of the Defendant's assets and activities, among other things. *See* ECF No. 11 at ¶ 4. In the Preliminary Injunction, the Court found that the SEC had presented sufficient evidence to support a *prima facie* case that Mr. Burkhalter and Drive Planning had violated federal securities laws by making material misrepresentations and misappropriating investor funds. *See id.* at ¶ 2. The Court further found that the Relief Defendants improperly received funds derived from the fraudulent activities. *See id.* at ¶ 4.

Further, the Preliminary Injunction expressly anticipated that the Receiver might need to take additional steps with respect to Club 201. In particular, the Preliminary Injunction authorizes the Receiver to "seek further relief with respect to Club 201 at the Detroit," including but not limited to turnover and liquidation, to preserve and maximize the value of that asset for the Receivership Estate. *See* ECF No. 11 at p. 6. Therefore, with the Receiver now having traced Drive Planning's funds to the purchase and operations of Club 201, regardless of Mr. Burkhalter's conduct, the time has come for the Receiver to exercise that authority and seek the turnover of Club 201 for the benefit of the Estate.

### ii. Appointment Order

Also on August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq., as the Receiver over Drive Planning and all assets owned by, or purchased with funds derived from investors or clients of, Drive

Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id.* at pp. 1-2. The Receiver was authorized and directed to take "exclusive jurisdiction and possession of the assets, whatever kind and wherever situated" of Drive Planning and "take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests . . .." ECF No. 10 at ¶¶ 1, 19. Moreover, the Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id.* at ¶¶ 4-7.

### iii. Judgment Against Defendant Burkhalter

On April 10, 2025, the Court entered a Judgment as to Defendant Russell Todd Burkhalter (the "Judgment"), based on Defendant Burkhalter's having consented to the Court's jurisdiction over him and the subject matter of this action, consented to the entry of the Judgment without admitting or denying the allegation of the Complaint, and waived findings of fact and conclusions of law and any right to appeal from the Judgment. *See* ECF No. 102. The Judgment permanently enjoined Defendant Burkhalter from violating sections of the Securities Act and the Exchange Act and certain rules promulgated thereunder and prohibited Mr.

Burkhalter from engaging in various actions that are the subject of the SEC's Complaint. Further, the Judgment ordered Defendant Burkhalter to pay disgorgement of ill-gotten gains, interest, and a civil penalty, in amounts to be determined upon motion of the SEC.

With Defendant Burkhalter's liability as to the claims alleged in the SEC's Complaint having been established, and the findings and mandates in the Preliminary Injunction and Appointment Order effectively becoming permanent, the Receiver is entitled to take immediate possession of and to liquidate for the benefit of the defrauded investors all assets acquired with or otherwise traceable to Drive Planning investor funds. As such, given that Club 201 was acquired with funds transferred directly from an account of Drive Planning that contained investor funds, the Receiver is authorized to take immediate possession and control of that business. Because Mr. Burkhalter has refused to turn over Club 201 to the Receiver and presumably is unable to repay the entire amount of investor funds that Drive Planning had transferred to purchase it, the Court should compel Mr. Burkhalter to turn over the business so the Receiver can liquidate it for the benefit of the Receivership Estate and ultimately the investors.

### d. **Controlling Law Imposes a Constructive Trust Over Club 201 in Favor of Receivership Estate Because it Was Purchased with Funds Fraudulently Obtained From Innocent Investors.**

Courts in Florida[2] have explained, "[t]he doctrine of constructive trusts is a recognized tool of equity designed in certain situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence or mistake in the transaction." *In re Powe*, 75 B.R. 387, 393 (Bankr. M.D. Fla. 1987); *see also In re First Fidelity Fin. Serv., Inc.*, 36 B.R. 508, 511 (Bankr. S.D. Fla. 1983) ("The reason for imposing a constructive trust is to avoid unjust enrichment to the recipient of the windfall, and to do equity for the party whose property has been misused").

The law of constructive trusts has evolved to recognize that, if the person seeking to impose the constructive trust can trace not only the original *res*, but also successive funds or property into which the original *res* has been transformed, then the party may still impose the constructive trust. *See In re Financial Federated*, 347 F.3d at 891 (*citing In re Powe*, 75 B.R. at 393). Therefore, tracing is a basic

---

[2] In constructive trust cases, federal and state courts in Georgia generally follow the traditional conflict of law rule of *lex loci rei sitae,* that is, the law of the place where the thing is. *See United States v. One 1990 Lincoln Town Car*, 817 F. Supp. 1575, 1577 (N.D. Ga. 1993) (applying Alabama law to a constructive trust issue because the property in question was located in Alabama)*; see also Veach v. Veach,* 205 Ga. 185, 190, 53 S.E.2d 98 (1949); *Hager v. Willis*, Civil Action No. 20-00248-KD-B at *11 (S.D. Ala. Dec. 28, 2020)(a federal court sitting in Alabama applied Florida law to claims involving personal property because the personal property at issue was physically located in Florida).

requirement and element of proof for one seeking to impose a constructive trust. *See In re First Fidelity*, 36 B.R. at 511.

Here, the Receiver has traced investor funds deposited for investment in Drive Planning to the purchase of Club 201. *See* Receiver's Declaration at ¶¶ 3-6. In particular, the Receiver identified a wire transfer on March 18, 2024, in the amount of $25,000 from an account of Drive Planning containing investor funds to an account of Hitchens & Hitchens, P.A., the closing attorneys for Drive Planning's purchase of Club 201. *See id.* at ¶ 4. Additionally, the Receiver identified a wire on March 27, 2024, in the amount of $627,375.04 from that same Drive Planning account to Hitchens & Hitchens, P.A. *See id.* at ¶ 3. Those funds were then used to purchase Club 201. *See id.* at ¶ 6. Drive Planning obtained those funds from investors through fraudulent means and misappropriated them for the personal use of Mr. Burkhalter. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. Indeed, Drive Planning obtained funds from investors by misrepresenting how they would be invested and then misappropriated those funds by, among other things, transferring them for the purchase of valuable assets including the subject bar. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. To prevent the unjust enrichment of Mr. Burkhalter at the expense of Drive Planning and the defrauded investors whose funds were used to purchase Club 201, the law provides that Club 201 is subject to a constructive trust in favor of the Receivership Estate of Drive

Planning, from which those defrauded investors' funds were transferred.  *See In re Powe*, 75 B.R. at 393; *In re First Fidelity Fin. Serv., Inc.*, 36 B.R. at 511.

This Court created the Receivership Estate to marshal and safeguard assets of the Drive Planning investors.  As such, the Court should impose a constructive trust over Club 201 in favor of the Receivership Estate, for the benefit of the investors, and compel Mr. Burkhalter to turn over exclusive possession and control of the business and membership interest to the Receiver.

    e. **A Constructive Trust Was Impressed Upon the Funds Used to Purchase Club 201 at the Time Those Funds Were Fraudulently Obtained, Before Club 201 Was Purchased and the Membership Interest Was Transferred to Defendant Burkhalter.**

A constructive trust arises in favor of a defrauded party at the time the fraud was committed.  *See In re General Coffee Corp.*, 828 F.2d 699, 702-707 (11th Cir. 1987) (determining that, under Florida law, a constructive trust arises at the time of the fraud rather than at the time of judgment on the party's fraud claim); *see also Wilkins v. Wilkins*, 144 Fla. 590, 594 (1940) (recognizing a constructive trust exists from the moment the fraudulent transaction giving rise to it takes place).[3]  As

---

[3] *See also Mayer v. Cianciolo*, 463 So. 2d 1219, 1221 (Fla. 3d DCA 1985) (finding a constructive trust in favor of son arose when he quitclaimed his joint interest in real property for the sole reason of facilitating its sale by his mother); *Malkus v. Gaines*, 434 So. 2d 957, 960-61 (Fla. 3d DCA 1983) (finding Malkus held partnership interest in company in constructive trust for Gaines since the date of the fraud), *pet. for rev. denied*, 446 So. 2d 100 (Fla. 1984); *Johnson v. Johnson*, 349 So. 2d 698, 699 (Fla. 4th DCA 1977) ("When Mrs. Johnson conveyed her interest in The Harborage to her husband, she became the beneficiary under a constructive trust and he became the trustee"); *Hallam v. Gladman*, 132 So. 2d 198, 204 (Fla. 2d DCA 1961) (finding constructive

established above, Drive Planning had fraudulently obtained the funds used to purchase Club 201. *See* ECF No. 11 at ¶¶ 2, 4; Receiver's Declaration at ¶ 7. Therefore, a constructive trust arose in favor of the defrauded investors at the time Drive Planning had fraudulently obtained their funds, *i.e.*, *before* Club 201 was purchased using investor funds transferred from a Drive Planning account and *before* its membership interests were transferred to Mr. Burkhalter.

As such, because no individual or entity has a competing lien on or other claim to Club 201, *see* Receiver's Declaration at ¶ 8, this Court should impose a constructive trust in favor of the Receivership Estate (for the benefit of the defrauded investors) upon Club 201, which was acquired with the fraudulently obtained funds over which a constructive trust was already impressed as a result of Drive Planning's fraudulent acquisition thereof. *See Wilkins*, 144 Fla. at 594. (holding that a constructive trust is impressed upon the property in the very transaction in which the property is conveyed); *see also In re Financial Federated*, 347 F.3d at 891 (finding that a constructive trust can be imposed upon property if fraudulently obtained funds upon which a constructive trust was already impressed can be traced to that property).

---

trust "arises through operation of law [w]here one through fraud, abuse of confidence, or other questionable means gains property which in equity or good conscience he should not be permitted to retain"); *Traub v. Traub*, 102 So. 2d 157, 158 (Fla. 2d DCA 1958) (defendant held real property in constructive trust for his brothers from the time they executed the misleading deed to the property).

### f. A Constructive Trust May Be Imposed Over Club 201

The concept of constructive trust does not only apply to real property but also assets that were acquired through fraudulent means. *See FTC v. Life Mgmt. Servs.*, No. 6:16-cv-982-Orl-41TBS at \*25 (M.D. Fla. Jan. 24, 2019) (imposing constructive trust over homestead, vehicles, luxury watches, firearms, and any other asset purchased with fraudulently obtained funds).

As all amounts used to purchase Club 201 are directly traceable to investors, and the Receiver has not uncovered any evidence to suggest that Mr. Burkhalter used his own personal or other funds not derived from Drive Planning or its investors to purchase Club 201, to do justice and prevent unjust enrichment of Mr. Burkhalter or any other party, a constructive trust over Club 201 in favor of the Receivership Estate (for the benefit of the defrauded investors) is warranted. *See Lee v. Wiand*, 603 B.R. 161, 170 (M.D. Fla. 2018) (finding that the purpose of a constructive trust is to prevent unjust enrichment).

### g. Continued Mismanagement and Risk of Waste

In addition to refusing turnover, the Receiver has received information which indicates that Mr. Burkhalter is not operating Club 201 in a manner that preserves or enhances its value for the Receivership Estate. The Receiver and his team have received multiple calls from investors reporting that Mr. Burkhalter is frequently present at the bar (and is frequently intoxicated while on the premises), and that his

conduct has been disruptive to patrons, staff, and day-to-day operations and value of the Club 201.

Further, the Receiver has been advised that required Florida sales taxes may not be timely remitted for Club 201, exposing the business to penalties, interest, liens, and potential enforcement actions, all of which impair its marketability and reduce its value and the ultimate amount the Estate may recover upon its sale.

Therefore, based on the current risk of waste and diminution of Club 201's value absent immediate Receiver control, the requested turnover and imposition of a constructive trust is warranted to protect the Estate's interest in this significant asset for the benefit of the defrauded investors.

## IV.  REMEDY SOUGHT

The Receiver respectfully requests that the Court issue a turnover and constructive trust order which expressly includes all assets owned by or comprising the business known as "Club 201 at the Detroit," operated through 201 Detroit, LLC. Under the operative transfer documents, Drive Planning's purchase of Club 201 for Mr. Burkhalter encompassed not only 100% of the membership interests of 201 Detroit, LLC, but also the business as a going concern and its assets, including (i) the Florida 4COP liquor license (BEV62-00711); (ii) all furniture, fixtures, equipment, inventory, supplies, and other tangible assets of the bar; (iii) all intangible assets, including goodwill, trade name, customer lists, phone number, and

website; and (iv) the right to ongoing operations, including payroll accounts, contracts, and records.

The Receivership Estate has not advanced funds for Club 201 since the inception of the Receivership because the Court only directed and authorized the Receiver to monitor its operations and obtain weekly reports from Mr. Burkhatler. Based on available information, the business appears to be operating on a self-sufficient basis; nevertheless, for the reasons set forth above, the Receiver believes that its future operations, value, and marketability are in jeopardy as a result of Mr. Burkhalter's conduct. Accordingly, to preserve and maximize value for the Estate, the Receiver seeks authority to take immediate possession of and exclusive control over all membership interests, business assets, and operations of 201 Detroit LLC, operate Club 201 on an interim basis if necessary, market it for sale as a going concern, and sell Club 201 for an amount approximating its market value after conferring with the parties and obtaining Court approval.

## V.  **CONCLUSION**

The Receiver's request for turnover of and the imposition of a constructive trust over Club 201 is in accord with the law in this District and in the State of Florida (which applies given the business location), principles of equity, and the Appointment Order and Preliminary Injunction. Drive Planning and Defendant Burkhalter defrauded thousands of innocent investors out of hundreds of millions of

dollars and used a portion of their funds, earmarked for investment in Drive Planning's real estate acceleration loan or tax lien programs, to purchase Club 201 for Mr. Burkhalter. Fortunately, applicable law and principles of equity impress upon that business a constructive trust and equitable lien in favor of the Receivership Estate for the benefit of the defrauded investors so the Receiver may take exclusive possession and control of the business and liquidate it for the benefit of those victims.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with Defendant Burkhalter and counsel for the Relief Defendants, regarding the relief requested herein. Counsel for the SEC and counsel for the Relief Defendants confirmed that they have no opposition to the requested relief. Defendant Burkhalter did not respond to the Receiver regarding the relief requested herein.

WHEREFORE, the Receiver respectfully requests that this Court enter an order: (i) requiring the immediate turnover of possession and control of 201 Detroit, LLC and Club 201 to the Receiver, including all membership interests in 201 Detroit, LLC, all tangible and intangible assets owned by that company, and all operations of the business known as "Club 201 at the Detroit"; (ii) imposing a constructive trust over 201 Detroit, LLC, all of its assets, and the business operations of Club 201 in favor of the Receivership Estate and/or declaring that such assets and

operations are property of the Estate and thus subject to exclusive possession, control, and/or liquidation by the Receiver; (iii) authorizing the Receiver to market 201 Detroit, LLC and Club 201 for sale and to effect the sale subject to Court approval; and (iv) directing Mr. Burkhalter to cooperate fully with the Receiver and to execute and deliver any and all documents necessary to effectuate the transfer of 201 Detroit, LLC, its assets, and the operations of Club 201, including but not limited to an Assignment of Membership Interest and a Bill of Sale, and to provide any additional information, records, or signatures required to preserve the value of Club 201 and facilitate its sale and transfer.

Respectfully submitted,

s/*Russell Landy*
Russell Landy, Esq.
Florida Bar No. 44417
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
 Florida Bar No. 1025060
 apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
 Florida Bar No. 44417
 rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
 Georgia Bar No. 636265
 Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## <u>CERTIFICATE OF SERVICE, FONT AND MARGINS</u>

I hereby certify that on October 3, 2025, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I sent the Motion to Defendant Burkhalter by email.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  October 3, 2025.                     <u>s/*Russell Landy*</u>
                                             Russell Landy, Esq.
                                             Florida Bar No. 44417
                                             *Admitted Pro Hac Vice*