# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     Relief Defendants.

_____

Case No. 1:24-cv-03583-VMC

## RECEIVER'S MOTION TO APPROVE
## SALE OF REAL PROPERTY IN ST. PETERSBURG, FLORIDA
## BEFORE OCTOBER 31, 2025 CLOSING DEADLINE

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, hereby files this Motion to approve sale of real property located in St. Petersburg, Florida before the October 31, 2025 closing deadline, and in support states:

## BACKGROUND

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc.  On August 13, 2024, the Court entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning, LLC ("Drive Planning"). *See* ECF No. 10.

The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme.  *See id*. at pp. 1-2.  The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors.  *See id*. at ¶¶ 4-7.

Accordingly, the Receiver identified several real properties acquired with Drive Planning funds that were subsequently deeded to third parties and took steps to recover those properties for the benefit of the Estate.  Specifically, the Receiver and his professionals conducted a forensic analysis of Drive Planning's financial records and bank statements, which revealed that investor funds were used to

2

purchase a luxury condominium unit in St. Petersburg, Florida (the "St. Petersburg Condo"). The property was acquired in 2023 for approximately $2 million and titled in the names of Drive Planning agent and Chief Operating Officer David Bradford and his spouse, even though all of the funds used to purchase it originated from Drive Planning accounts holding investor money. Pursuant to the Appointment Order, because the St. Petersburg Condo was acquired with Drive Planning investor funds, it is Receivership Property subject to recovery by the Receiver. As such, the Receiver negotiated the transfer of Mr. Bradford's and his wife's ownership interests in that property to the Estate by a quitclaim deed.

Based on the Receiver's investigation of the Florida real estate market, and in particular the area where the St. Petersburg Condo is located, and consultation with multiple realtors familiar with that area, with due regard to realizing the true and proper value of the St. Petersburg Condo and preventing waste and/or incurring expenses to maintain it, the Receiver believed it would be in the best interest of the Receivership Estate to immediately start marketing the property for sale by listing it for sale with a reputable and experienced realtor.

After interviewing several qualified realtors, the Receiver selected Spitzer Rutland to assist him with the marketing and sale of the St. Petersburg Condo. Spitzer Rutland has extensive experience in selling real estate throughout Florida including in the St. Petersburg area, is familiar with the local real estate market and

the community in which the St. Petersburg Condo is located, and has an impressive sales record within the area.

Accordingly, the Receiver entered into an exclusive listing agreement for the St. Petersburg Condo, which provided, among other things, the commission structure for Spitzer Rutland and any broker of a buyer in the sale of the St. Petersburg Condo. In particular, in the event that the buyer is introduced to Spitzer Rutland through an independent broker, each broker would be entitled to receive the following commission (as a percentage of the purchase price) as full compensation for services performed in connection with the marketing and sale of the St. Petersburg Condo: 5% if an independent broker introduces the buyer, with Spitzer Rutland receiving 2.5% and the buyer's broker receiving 2.5%, and only 4% if Spitzer Rutland procures the buyer and does not need to share the commission with another broker. This proposed commission is below the market rate of 6% with each broker receiving a 3% commission, which will result in a meaningful savings for the Estate.

## FACTUAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

Drive Planning purchased the St. Petersburg Condo for $2,000,000 in 2023. After conducting extensive market research, Spitzer Rutland concluded that the St. Petersburg Condo had a current market value slightly below that purchase price. As

a result, the Receiver authorized Spitzer Rutland to list and begin marketing the St. Petersburg Condo for sale, with a listing price of $1,925,000.

Thereafter, Spitzer Rutland listed and commenced marketing the St. Petersburg Condo for sale. Despite Spitzer Rutland's active marketing efforts, only limited interest and low offers were received. In particular, the first potential purchaser submitted an offer to purchase the property for $1,700,000 in cash, the Receiver and that purchaser exchanged several counteroffers, and negotiations reached $1,825,000, but the purchaser ultimately withdrew its offer. A second prospective buyer submitted an identical initial offer of $1,700,000, which after several counteroffers rose to $1,805,000 before that purchaser also withdrew its offer.

A third prospective buyer (the "Buyer") submitted an initial written offer of $1,750,000. The parties engaged in negotiations and ultimately agreed to a purchase price of $1,825,000, subject to input from the SEC, Defendant Burkhalter, and the Relief Defendants and approval of this Court. The Buyer's offer included an appraisal contingency, but the Buyer subsequently waived that contingency. The sale is subject to the Buyer obtaining financing, and the closing is scheduled for October 31, 2025.

In light of the lack of higher competing offers, Spitzer Rutland's assessment of the property's value and current market conditions, the fact that the proposed sale

price is equal to or higher than any other offer received, and the proposed sale will eliminate the costs required to maintain the property (including substantial property taxes and homeowners association fees), the Receiver entered into the Purchase and Sale Agreement with the Buyer (attached as **Exhibit A**), subject to the Court's approval. Finally, because there is no mortgage on the St. Petersburg Condo, the Estate would recover the full net proceeds from the proposed sale. Therefore, for the foregoing reasons, the Receiver believes it would be in the best interest of the Receivership Estate to sell the St. Petersburg Condo now for the purchase price of $1,825,000, pursuant to the Purchase and Sale Agreement. *See* Exhibit A.

Because it is possible that the sale to the Buyer does not close, the Receiver also seeks this Court's approval to sell the St. Petersburg Condo to another buyer for at least $1,825,000, so that the Estate need not incur further expenses seeking Court approval for the sale of the property at or above the sale price in the Purchase and Sale Agreement. The Appointment Order provides the Receiver the authority to ". . . dispose of any Receivership Property, *other than real estate*, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate". *See id.* at ¶ 37 (emphasis added). Accordingly, the Receiver seeks this Court's approval of the sale of the St. Petersburg Condo pursuant to the Purchase and Sale Agreement attached as Exhibit A because it is in the best interest of the Estate for the reasons set forth herein.

## LEGAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

Judicial sales of real property such as the sale of the St. Petersburg Condo are governed by 28 U.S.C. § 2001. Pursuant to subsection (b) of that statute, a receiver may conduct a judicial sale of real property as a private sale subject to court approval after notice to all interested parties and hearing.[1] This Court has authority to approve a private sale of real property, and has significant discretion in setting the terms and conditions for such sale, provided that the Court believes the sale is in the best interest of the Estate. *See SEC v. McClintock,* No. 1:12-CV-04028-SCJ, 2020 U.S. Dist. LEXIS 266272 at \*5 (N.D. Ga. July 20, 2020) (authorizing a judicial sale of property under 28 U.S.C. § 2001(b) because it was "clearly in the best interests of the Receivership Estate."); *see also U.S. v. Coal Branch Corp.*, 390 F.2d 7, 9-10 (E.D. Pa. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales."). "It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof." *Coal Branch Corp.*, 390

---

[1] 28 U.S.C. § 2001 (b) provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.

F.2d at 9-10.  Further, the Court can waive the specific requirements of 28 U.S.C. §

2001 where it believes that the receiver has substantially complied with the

requirements of the statute in connection with the sale of real property.  *See*

*McClintock,* 2020 U.S. Dist. LEXIS 266272 at *5.

Moreover, the Receiver believes that his engagement of an experienced real

estate broker, the significant efforts made to market the St. Petersburg Condo,

including without limitation, listing the St. Petersburg Condo in the Multiple Listing

Service, aggressively marketing the St. Petersburg Condo to qualified potential

purchasers, and performing an extensive analysis of the real estate market, including

comparable sales and listings, and receiving offers from and negotiating with three

potential purchasers, exceeds the requirements of 28 U.S.C. § 2001, including three

appraisals and publication of the proposed sale of the St. Petersburg Condo for 10

days.  The Receiver believes waiving the requirements of three appraisals and

publishing the proposed sale, in light of the costs associated therewith, is particularly

appropriate here and soundly within the Court's discretion based on the favorable

offer received, the current market value of the St. Petersburg Condo, and the

proposed expedited closing of the sale.

Accordingly, the Receiver respectfully requests that the Court exercise its

discretion to approve the sale of the St. Petersburg Condo under the terms provided

herein, find that the Receiver has substantially complied with the intent of 28 U.S.C.

§ 2001, and relieve the Receiver of the statutory requirements of a judicial sale of real property as permitted under applicable case law.

## FINALITY OF ORDER

In light of the sale of the St. Petersburg Condo contemplated by the Purchase and Sale Agreement, the Receiver requests that the Court order that any reversal or modification on appeal of the authorization to consummate the sale shall not affect the validity of the sale of that property to the Buyer or its assigns.  This provision will allow for the immediate conveyance of the property with finality, such that the title insurance company will be able to write the necessary title policy to close the sale without waiting for the expiration of the deadline to appeal this Court's order approving the sale.  Good cause exists for including this provision in the sale approval order because the Purchase and Sale Agreement requires the sale to close on or before October 31, 2025, before the likely appeal deadline.  Any delay in closing the sale will result in increased carrying costs for the Estate and may subject the Receiver to being in default under the Purchase and Sale Agreement.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that on October 2, 2025, the Receiver sent an email to counsel for the SEC, requesting that the SEC confirm whether they have any objections to the sale proposed herein, and such counsel informed the Receiver that the SEC has no objection to the sale.  On October 6, 2025, undersigned counsel sent emails

9

to Defendant Burkhalter and to counsel for the Relief Defendants, requesting that they confirm whether they have any objections to the sale proposed herein, and counsel for the Relief Defendants informed undersigned counsel that the Relief Defendants have no objections to the proposed sale.  Despite undersigned counsel's conferral emails to Mr. Burkhalter on October 6 and October 16, 2025, Mr. Burkhalter has not responded to provide his position on the proposed sale.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit B**, approving the sale of the St. Petersburg Condo to the Buyer in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, attached hereto as Exhibit A, prior to the October 31, 2025 closing deadline, and grant such other and further relief as the Court deems just and proper.

Dated:  October 22, 2025

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Russell Landy
  Florida Bar No. 44417
  rlandy@dvllp.com
  *Admitted Pro Hac Vice*

Adriana M. Pavon
  Florida Bar No. 1025060
  apavon@dvcattorneys.com
  *Admitted Pro Hac Vice*

DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*

Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I HEREBY CERTIFY that on October 22, 2025, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I sent the Motion to Defendant Burkhalter by email.

I FURTHER CERTIFY that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  October 22, 2025.

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*