## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

      Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

      Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

      Relief Defendants.

Case No. 1:24-cv-03583-VMC

_____

### RECEIVER'S UNOPPOSED MOTION TO APPROVE SALE OF REAL PROPERTY ON TOWER ROAD IN MINERAL BLUFF, GEORGIA BEFORE NOVEMBER 20, 2025 CLOSING DEADLINE

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, hereby files this Motion to approve sale of real property located on Tower Road in Mineral Bluff, Georgia before the November 20, 2025 closing deadline, and in support states:

**BACKGROUND**

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc. On August 13, 2024, the Court entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning, LLC ("Drive Planning"). *See* ECF No. 10.

The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id*. at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id*. at ¶¶ 4-7. Accordingly, the Receiver took immediate possession and control of, among other properties, real property located on Tower Road, Mineral Bluff, Georgia (the "Tower Road II[1] Property"), which is owned by Drive Planning, LLC. The Tower Road II Property consists of 1.66 acres with a

---

[1] The Receiver previously filed, and the Court granted, a motion concerning a different parcel that was defined in prior filings as the "Tower Road Property." Therefore, to avoid confusion, the property at issue herein is referred to as the "Tower Road II Property."

3,955-square-foot home that was constructed in 2024 following the purchase of the acreage, as a luxury residential property intended for investment and resale. This property is not generating any income for the Receivership Estate, which is paying the monthly costs for its upkeep.

Based on the Receiver's investigation of the Georgia real estate market, and in particular the area where the Tower Road II Property is located, and consultation with multiple realtors familiar with that area, with due regard to realizing the true and proper value of the Tower Road II Property and preventing waste and/or incurring expenses to maintain it, the Receiver believed it would be in the best interest of the Receivership Estate to immediately start marketing the property for sale by listing it for sale with a reputable and experienced realtor.

After interviewing several qualified realtors, the Receiver selected Harry Norman Realtors ("Harry Norman") to assist him in connection with the marketing and sale of the Tower Road II Property. Harry Norman has extensive experience in selling real estate throughout Mineral Bluff, Georgia, is familiar with the local real estate market and the community in which the Tower Road II Property is located, and has an impressive sales record within the area.

Accordingly, the Receiver entered into an exclusive listing agreement for the Tower Road II Property, which provided, among other things, the commission structure for Harry Norman and any broker of a buyer in the sale of the Tower Road

II Property.  In particular, in the event that the buyer is introduced to Harry Norman through an independent broker, each broker would be entitled to receive the following commission (as a percentage of the purchase price) as full compensation for services performed in connection with the marketing and sale of the Tower Road II Property:  5% if an independent broker introduces the buyer, with Harry Norman receiving 2.5% and the buyer's broker receiving 2.5%, and only 4% if Harry Norman procures the buyer and does not need to share the commission with another broker. This proposed commission is below the market rate of 6% with each broker receiving a 3% commission, which will result in a meaningful savings for the Estate.

### FACTUAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

Drive Planning purchased the Tower Road II Property as part of a three-parcel acquisition totaling approximately $3,700,000, with each parcel titled in the name of Drive Planning, LLC.  Following the purchase, Drive Planning initiated new construction on two of the parcels, with development completed in 2024.  After conducting extensive market research, Harry Norman Realtors concluded that the Tower Road II Property should be listed for sale at $1,995,000.

Despite active marketing efforts, very few potential purchasers expressed interest in the property, and only two made very low offers, which the Receiver rejected.  As a result, the listing price was reduced from $1,995,000 to $1,899,000,

followed by subsequent adjustments to $1,799,000 and later to $1,725,000.  As of October 2025, the listing price stood at $1,695,000.

Thereafter, the potential buyer (the "Buyer") submitted a formal all-cash offer for the purchase of the Tower Road II Property in connection with a pending exchange pursuant to Section 1031 of the Internal Revenue Code, proposing a purchase price of $1,550,000, with an earnest money deposit of $23,500, a 16-day due diligence period, and a 30-day closing.  The Buyer identified approximately $50,000 to $75,000 in necessary post-closing improvements, including exterior wood restoration and staining, completion of low-voltage wiring for security systems, cameras, and lighting, and correction of backyard erosion. Following negotiations, the Receiver and the Buyer agreed to an increased purchase priceof $1,600,000 and entered into a Purchase and Sale Agreement, subject to input from the SEC, Defendant Burkhalter, and the Relief Defendants, and approval by this Court.  A copy of the Purchase and Sale Agreement is attached as **Exhibit A**.

Given the lack of competing offers, the time the property has been on the market, and the professional assessment of the listing agent, the Receiver determined that accepting the offer was in the best interest of the Receivership Estate.  This proposed sale will result in a meaningful recovery for the Estate, particularly considering the current market conditions and carrying costs associated with maintaining the property.

Finally, because there is no mortgage on the property, the Estate would recover the full net proceeds from the sale.  Therefore, for the foregoing reasons, the Receiver believes it would be in the best interest of the Receivership Estate to sell the Tower Road II Property now for the purchase price of $1,600,000, pursuant to the Purchase and Sale Agreement.  *See* Exhibit A.

Because it is possible that the sale to the Buyer does not close, the Receiver also seeks this Court's approval to sell the Tower Road II Property to another buyer for at least $1,600,000, so that the Estate need not incur further expenses seeking Court approval for the sale of the property at or above its current market value.

The Appointment Order provides the Receiver the authority to ". . . dispose of any Receivership Property, *other than real estate*, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate".  *See id.* at ¶ 37 (emphasis added).  Accordingly, the Receiver seeks this Court's approval of the sale of the Tower Road II Property pursuant to the Purchase and Sale Agreement attached as Exhibit A because it is in the best interests of the Estate for the reasons set forth herein.

## **LEGAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE**

Judicial sales of real property such as the sale of the Tower Road II Property are governed by 28 U.S.C. § 2001.  Pursuant to subsection (b) of that statute, a receiver may conduct a judicial sale of real property as a private sale subject to court

approval after notice to all interested parties and hearing.[2]  This Court has authority to approve a private sale of real property, and has significant discretion in setting the terms and conditions for such sale, provided that the Court believes the sale is in the best interest of the Estate.  *See SEC v. McClintock,* No. 1:12-CV-04028-SCJ, 2020 U.S. Dist. LEXIS 266272 at *5 (N.D. Ga. July 20, 2020) (authorizing a judicial sale of property under 28 U.S.C. § 2001(b) because it was "clearly in the best interests of the Receivership Estate."); *see also U.S. v. Coal Branch Corp.*, 390 F.2d 7, 9-10 (E.D. Pa. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales.").  "It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof." *Coal Branch Corp.*, 390 F.2d at 9-10.  Further, the Court can waive the specific requirements of 28 U.S.C. § 2001 where it believes that the receiver has substantially complied with the requirements of the statute in connection with the sale of real property.  *See McClintock,* 2020 U.S. Dist. LEXIS 266272 at *5.

---

[2] 28 U.S.C. § 2001 (b) provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.

Moreover, the Receiver believes that his engagement of an experienced real estate broker, the significant efforts made to market the Tower Road II Property, including without limitation, listing the Tower Road II Property in the Multiple Listing Service and aggressively marketing the Tower Road II Property to qualified potential purchasers, performing an extensive analysis of the real estate market, including comparable sales and listings, exceeds the requirements of 28 U.S.C. § 2001, which require three appraisals and publication of the proposed sale of the Tower Road II Property for 10 days.   The Receiver believes waiving the requirements of three appraisals and publishing the proposed sale, in light of the costs associated therewith, is particularly appropriate here and soundly within the Court's discretion based on the favorable offer received, the current market value of the Tower Road II Property, and the proposed expedited closing of the sale.

Accordingly, the Receiver respectfully requests that the Court exercise its discretion to approve the sale of the Tower Road II Property under the terms provided herein, find that the Receiver has substantially complied with the intent of 28 U.S.C. § 2001, and relieve the Receiver of the statutory requirements of a judicial sale of real property as permitted under applicable case law.

## **FINALITY OF ORDER**

In light of the consent of all parties to the sale of the Tower Road II Property contemplated by the Purchase and Sale Agreement, the Receiver requests that the

Court order that any reversal or modification on appeal of the authorization to consummate the sale shall not affect the validity of the sale of that property to the Buyer or its assigns.  This provision will allow for the immediate conveyance of the property with finality, such that the title insurance company will be able to write the necessary title policy to close the sale without waiting for the expiration of the deadline to appeal this Court's order approving the sale.  Good cause exists for including this provision in the sale approval order because the Purchase and Sale Agreement requires the sale to close on or before November 20, 2025, before the likely appeal deadline.  Any delay in closing the sale will result in increased carrying costs for the Estate and may subject the Receiver to being in default under the Purchase and Sale Agreement.

## <u>CERTIFICATION OF CONFERENCE</u>

The undersigned counsel certifies that on November 7, 2025, the Receiver sent an email to counsel for the SEC, and undersigned counsel sent emails to Defendant Burkhalter and to counsel for the Relief Defendants, requesting that they confirm whether they have any objections to the sale proposed herein, and such counsel and Mr. Burkhalter informed the Receiver or undersigned counsel that the SEC, Defendant Burkhalter, and the Relief Defendants have no objections to the sale.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit B**, approving the sale of the Tower Road II Property to the Buyer in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, attached hereto as Exhibit A, prior to the November 20, 2025 closing deadline, and grant such other and further relief as the Court deems just and proper.

Dated:  November 10, 2025

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Russell Landy
Florida Bar No. 44417
rlandy@dvllp.com
*Admitted Pro Hac Vice*
Adriana M. Pavon
Florida Bar No. 1025060
apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI  | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Henry F. Sewell, Jr.
Georgia Bar No. 636265

Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I HEREBY CERTIFY that on November 10, 2025, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I served the Motion on Defendant Todd Burkhalter via e-mail and certified mail to his home address in St. Petersburg, Florida.

I FURTHER CERTIFY that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: November 10, 2025.

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
apavon@dvcattorneys.com