**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     Relief Defendants.

Case No. 1:24-cv-03583-VMC

**RECEIVER'S UNOPPOSED MOTION TO APPROVE SALE OF "LIVE MORE" YACHT BEFORE FEBRUARY 26, 2026 CLOSING DEADLINE**

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, hereby files this unopposed Motion to approve sale of "Live More" yacht, before the February 26, 2026 closing deadline and in support states:

## BACKGROUND

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc.  On August 13, 2024, the Court entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning, LLC ("Drive Planning"). *See* ECF No. 10.

The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme.  *See id*. at pp. 1-2.  The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors.  *See id*. at ¶¶ 4-7.

As part of his duties under the Appointment Order, the Receiver identified and took control of the "Live More" yacht (the "Live More Yacht"), a 70-foot Galeon purchased by Todd Burkhalter using Drive Planning's funds derived from investors.  The yacht was taken into the Receiver's custody for the benefit of the Receivership Estate, and the Receiver has overseen its maintenance and storage in

order to preserve its value pending its eventual sale. The yacht was initially maintained and safely docked at a MarineMax Marina in St. Petersburg, Florida. To further protect the asset and reduce carrying costs, the Receiver later authorized the relocation of the yacht to Miami, Florida. The preservation and maintenance of the Live More Yacht includes substantial monthly costs, including insurance, captain services (required by the insurance policy), dockage, electric to operate and maintain the HVAC and hydraulic systems, generator, and appliances,  routine maintenance and service, and minor repairs, all of which were necessary to safeguard a multi-million-dollar asset and preserve its value and marketability for the benefit of defrauded investors.

Based on the Receiver's investigation of the market for comparable luxury vessels, including consultation with industry professionals familiar with the sale and valuation of yachts of similar size and class, and with due regard to realizing the true and proper value of the Live More Yacht and preventing waste and the continued incurrence of substantial maintenance, storage, and operational expenses, the Receiver determined that it was in the best interest of the Receivership Estate to take steps toward marketing the yacht for sale through appropriate industry channels and a qualified broker.

The Receiver solicited and reviewed proposals from multiple yacht brokers to market the yacht for sale and negotiated the terms of the respective listing

3

agreements. Based on his evaluation, the Receiver initially selected MarineMax, which is an experienced yacht broker and authorized dealer for new and used Galeon yachts, agreed to a reduced commission structure for the listing agreement, managed the marina in St. Petersburg, Florida where the Live More Yacht was being stored, performed routine maintenance and repairs to the yacht while it was at that marina, and facilitated the removal from the water and securing of the yacht during two hurricanes in 2024. Given that MarineMax had marketed the yacht for sale for approximately eight (8) months and obtained no written offers to purchase the yacht, and because the Receiver had located a yacht captain in North Miami Beach, Florida who agreed to serve as the captain for nearly one-third the fee of the captain in St. Petersburg, Florida, and located an experienced yacht broker in Miami who agreed to a commission rate less than MarineMax's rate, the Receiver decided to relocate the yacht to the Marina Palms marina in North Miami Beach and list the yacht for sale through Interglobal Yacht Sales.  Interglobal Yacht Sales has substantial experience selling yachts comparable to the Live More Yacht and knowledge of the luxury yacht market in South Florida (which is much larger than the Florida west coast market), and, as such, was qualified to serve as the yacht broker and best positioned to obtain a buyer at or near market value.

Accordingly, the Receiver entered into an exclusive listing agreement with Interglobal Yacht Sales for the Live More Yacht, which set forth, among other

things, the commission structure applicable to Interglobal Yacht Sales and any broker representing a buyer in connection with the sale. In particular, the agreement provides that if another broker represents the buyer, the commission shall be split between Interglobal Yacht Sales and the buyer's broker, for a total commission of 10%. If no outside broker represents the buyer and Interglobal Yacht Sales procures the buyer directly, the commission shall be reduced to 7.5%.

## FACTUAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

Todd Burkhalter purchased the Live More Yacht, a 70-foot Galeon purchased by Todd Burkhalter for $3,386,004 using Drive Planning's funds derived from investors. After conducting extensive market research, MarineMax concluded that the Live More Yacht had a market value of approximately $2.5 million when it first listed the yacht for sale in the fall of 2024. As a result, the Receiver authorized MarineMax to list and begin marketing the Live More Yacht for sale, with a listing price of $2.8 million.

Although MarineMax actively marketed the yacht for sale, no inquiries or offers were received during the first few months of the listing, so the Receiver, over a period of months at the recommendations of MarineMax, lowered the listing price to $2.7 million, then to $2.6 million, then to $2.5 million, and then to $2.4 million. During that time period, several potential purchasers inquired about the yacht and even inspected it, but only one of those inquiries resulted in a substantive offer and

5

meaningful negotiations toward a sale. In particular, one potential purchaser made a verbal offer of $1.8 million to purchase the yacht and during negotiations increased its offer to $1.9 million.  That potential purchaser, however, never presented a written offer with specific terms and ultimate withdrew from negotiations and chose to purchase a brand-new Galeon yacht from MarineMax for more than $3.2 million. Thereafter, the Receiver moved the yacht to North Miami Beach, Florida, entered into a listing agreement with Interglobal Yacht Sales, and listed the yacht for sale for $2.4 million.  Interglobal Yacht Sale aggressively marketed the yacht for sale and even featured it at the Ft. Lauderdale International Boat show, which is one of the largest boat shows in the United States.  Despite Interglobal Yacht Sales extensive efforts and expenses incurred to market the yacht for sale, no offers were received and the Receiver, at the broker's recommendation lowered the listing price to $2.3 million and then to $2.2 million over a period of several months.  Thereafter, the Receiver received a written offer from a potential purchaser (the "Buyer") to purchase the yacht for $1.7 million, which Interglobal Yacht Sales and the Receiver believed was slightly below the yacht's market value.  The Buyer identified certain issues with the yacht, which the Receiver, the yacht captain, and the yacht broker began addressing to increase the value and marketability of the yacht.  The Receiver engaged in negotiations with the Buyer, who ultimately increased his offer by $200,000 to $1,900,000 subject to resolution of the issues he identified.  Based on

the Receiver's broker's extensive marketing efforts, assessment of the condition and desirability of the yacht, analysis of recent sales of comparable yachts, and evaluation of current market conditions, the Receiver and his broker believe that the Buyer's increased offer represents or may even exceed the current market value of the yacht.  As such, given the significant monthly costs to maintain the yacht, including $2,500 for the yacht captain required under the insurance policy, approximately $3,500 for dockage and electricity, and approximately $2,000 for insurance, the Receiver believes that selling the yacht to the Buyer pursuant to his $1,900,000 offer would be in the best interest of the Estate.  Therefore, the Receiver entered into a Purchase and Sale Agreement, attached as **Exhibit A**, which provides for a closing on February 27, 2026 and is subject to Court Approval.

The Appointment Order provides the Receiver the authority to ". . . dispose of any Receivership Property, *other than real estate*, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate". *See id.* at ¶ 37 (emphasis added).  However, in an abundance of caution, and because the yacht constitutes a significant, high-value asset of the Receivership Estate, the Receiver seeks the Court's express approval to proceed with the sale proposed herein.  Because it is possible that the sale to the Buyer does not close, the Receiver also seeks this Court's approval to sell the Live More Yacht to another buyer for at least $1,900,000, so that the Estate need not incur further

7

expenses seeking Court approval for the sale of the property at or above the sale price in the Purchase and Sale Agreement.

Accordingly, the Receiver seeks this Court's approval of the sale of the Live More Yacht pursuant to the Purchase and Sale Agreement attached as Exhibit A because it is in the best interest of the Estate for the reasons set forth herein.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that on February 2, 2026, the Receiver sent an email to counsel for the SEC, requesting that the SEC confirm whether they have any objections to the sale proposed herein, and such counsel informed the Receiver that the SEC has no objection to the sale. On February 3, 2026, undersigned counsel sent emails to Defendant Burkhalter and to counsel for the Relief Defendants, requesting that they confirm whether they have any objections to the sale proposed herein, and Defendant Burkhalter and counsel for the Relief Defendants informed undersigned counsel that they have no objections to the proposed sale.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit B**, approving the sale of the Live More Yacht to the Buyer in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, attached hereto as Exhibit A, and grant such other and further relief as the Court deems just and proper.

8

Dated:  February 10, 2026

s/ *Adriana M. Pavon*

Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Russell Landy
  Florida Bar No. 44417
  rlandy@dvllp.com
  *Admitted Pro Hac Vice*

Adriana M. Pavon
  Florida Bar No. 1025060
  apavon@dvcattorneys.com
  *Admitted Pro Hac Vice*


DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida  33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*

Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

9

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I HEREBY CERTIFY that on February 10, 2026, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I sent the Motion to Defendant Burkhalter by email.

I FURTHER CERTIFY that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  February 10, 2026.

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*