**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     Plaintiff,

v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     Relief Defendants.

Case No. 1:24-cv-03583-VMC

---

**RECEIVER'S RESPONSE TO APPEALS OF**
**RECEIVER'S FINAL CLAIMS DETERMINATIONS**

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") of Drive Planning LLC, files his response to appeals of Receiver's Final Claims Determinations (the "Response to Appeals"), pursuant to the Court's *Order Approving Claims Process and Employment of Stretto Inc. as Noticing and Claims Process Agent* [ECF No. 251], and states:

## FACTUAL BACKGROUND

On August 13, 2024, the Court entered an *Order Appointing Receiver* (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning LLC ("Drive Planning") and all assets owned by or purchased with funds derived from investors or clients of Drive Planning.  *See* ECF No. 10.

On August 25, 2025, the Court entered an *Order Approving Claims Process and Employment of Stretto Inc. as Noticing and Claims Process Agent* (the "Claims Order").  ECF No. 251.  The Claims Order established November 23, 2025, as the bar date (the "Bar Date") for claimants to submit to the Receiver their claims against the Drive Planning Receivership Estate (the "Drive Planning Estate").  In addition, the Claims Order established December 23, 2025, as the deadline for the Receiver to send his final claims determinations (collectively, the "Final Claims Determinations") to claimants. Thereafter, the Court entered an Order granting the Receiver's Motion to extend the Final Claims Determinations deadline to January 22, 2026.  ECF No. 350. The Receiver requested a further extension of the deadline to send his Final Claims Determinations for a subset of 77 claims that required additional review, and the Court granted that request, extending the Final Claims Determinations deadline to February 20, 2026.  ECF No. 356.

The Receiver complied with all Court-Ordered deadlines to send his Final Claims Determinations.    Accordingly,   all   appeals   of   the   Final   Claims

Determinations were due by March 12, 2026 (the "Appeal Deadline"), and the Receiver was required to file this response by April 10, 2026. *See* ECF No. 356.

The Receiver resolved most of the appeals, and there remain only seven unresolved appeals (collectively, the "Appeals").

<strong><u>SUMMARY OF APPEALS</u></strong>

The Receiver submits the following Appeals and his responses thereto for final determination by the Court:

| Ex. | Claim Number | Filed Claim Amount | Allowed Claim Amount | Amount Claimed in Appeal | Basis for Appeal | Receiver's Response |
|---|---|---|---|---|---|---|
| A | 1000987 | $500,000 | $0 | $500,000 | Claimant disputes disallowance of claim due to lack of support for $500,000 deposit to Drive Gulfport Properties. | Drive Gulfport Properties' bank records do not show a $500,000 deposit from this claimant. |
| B | 1000565 | $2,053,100 | $0 | $2,053,100 | Claimant disputes disallowance of his claim on the basis that he is a net winner as a result of the amount he paid to the Estate pursuant to a | The Receiver entered a limited agreement with claimant for (i) claimant's purchase of real property that Drive Planning had purchased for |

| | | | | | Court-approved agreement related to his condominium unit and the amount of his investment with Drive Planning, ignoring the commissions and return of a portion of his investment he received from Drive Planning. | claimant with investor funds and (ii) satisfaction of a note for such purchase. Claimant still owes the Estate repayment for his net gain due to the commissions and return of a portion of his investment he received from Drive Planning, which together far exceed his investment amount, making him a net winner who cannot hold an allowed claim. |
|---|---|---|---|---|---|---|
| C | 1001583 | $225,111.60 | $0 | $250,124 | Claimant disputes disallowance of claim based on returned check. | Drive Planning's bank records show that claimant's check was returned, and no other |

4

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | deposit was ever paid into Drive Planning. |
| D | 1001660 | $66,500 | $59,450 | $60,292.88 | Claimant disputes reduction of claim amount for withdrawals received by claimant. | Claimant fails to properly account for withdrawal from Drive Planning and submitted an erroneous calculation with her appeal. |
| E | 1001973 | $630,000 | $130,000 | $630,000 | Claimant disputes reduction of claim amount due to lack of support for $500,000 cash paid to Drive Planning. | Receiver does not have bank documents to support the claim that $500,000 cash was paid to Drive Planning. |
| F | 1001622 | $56,000 | $0 | $56,000 | Claimant disputes disallowance of claim on the basis that she is a net winner. Claimant alleges that transfers received were payments for services performed for | Receiver does not have sufficient evidence to conclude that claimant provided reasonably equivalent value to Drive Planning in exchange for the large transfers |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | Drive Planning. | claimant received from Drive Planning. |
| G | 1002142 | $67,156 | $0 | $67,156 | Claimant disputes disallowance of claim on the basis that she did not suffer a net loss due to withdrawal of full investment amount and claims false interest promised by Drive Planning. | Receiver must disallow the claim where claimant did not suffer a net loss when applying a money-in/money-out calculation. Claimant cannot seek to recover false interest in her claim. |

## CLAIMANT APPEALS AND RECEIVER RESPONSES

**Claim Number DP1000987:**

Claimant filed Claim DP1000987, asserting a claim for $500,000 against the Drive Planning Estate. *See* Claim DP1000987 at Exhibit A-1. When the Receiver first reviewed this claim, he could not find any record of this claimant or the claimant's deposit in Drive Planning's business records or bank accounts, despite a thorough review of Drive Planning's forensic bank account reconstruction. Moreover, Drive Planning did not issue a promissory note to this claimant. The

6

Receiver further searched Drive Planning's communications, using the claimant's name and email address, and no responsive results were identified.

The Receiver contacted the claimant to inquire how he made his alleged investment in Drive Planning. The claimant informed the Receiver that this claim is based on a wire transfer of $500,000 to Relief Defendant Drive Gulfport Properties from the claimant's bank account in Ecuador.  *See* Claimant's Appeal Email and Wire Transfer Receipt at Exhibit A-2.[1]  The Receiver then reviewed Drive Gulfport Properties' bank records and confirmed that they do not reflect receipt of a $500,000 wire transfer from the claimant. Additionally, the wire transfer receipt reflects a transfer to a purported Drive Gulfport Properties JP Morgan Chase account ending in **5317; however, the Receiver is not aware of any such bank account. Rather, that account number (**5317) corresponds to a Chase credit card account in the name of Drive Planning, LLC, not a deposit account. *See id.*  Nevertheless, that Chase credit card account statement does not show receipt of a $500,000 payment. *See* Chase Credit Card Statement at Exhibit A-3.  The Receiver then reviewed the Relief Defendants' bank records but did not locate the claimant's alleged $500,000 wire transfer in any other Relief Defendant account. Accordingly, the Receiver upheld the disallowance of Claim DP1000987.

---

[1] The Receiver is treating the claimant's email dated January 15, 2026, as an appeal of the Receiver's disallowance of Claim DP1000987 even though it may not meet the requirements for an appeal under this Court's Order [ECF No. 251].

The Receiver contacted the claimant by email, explaining the basis for that disallowance and requesting additional bank documents containing the complete transaction history for the $500,000 transfer, including the IBAN, which is necessary to trace this international wire transfer.  The claimant responded that he would obtain the requested information but has not provided it. Therefore, the Receiver is unable to trace the wire transfer to Drive Gulfport Properties or any other Drive Planning-related entity.

Because the Receiver cannot confirm that the claimant made a $500,000 transfer to Drive Gulfport Properties or any other investment in Drive Planning, he requests that the Court make a final adjudication regarding the allowed amount of Claim DP1000987.  If the Court finds that the claimant made a $500,000 transfer to the Relief Defendant intended as an investment into Drive Planning, then the allowed claim amount should be $500,000. If not, then the Court should uphold the Receiver's Final Determination, completely disallowing Claim DP1000987.

**Claim Number DP1000565:**

Claimant filed Claim DP1000565, asserting a claim for $2,053,100 against the Drive Planning Estate.  *See* Claim DP1000565 at Exhibit B-1. That claim failed to disclose and account for the fact that, while the claimant invested $1,529,600.00 in Drive Planning, the claimant, as a sales agent, received $1,279,356.96 in commissions from Drive Planning and $618,200.00 as a return on his investment.

Therefore, this claimant realized a net gain of $367,956.96 and has no valid claim against Drive Planning.

Calculation of Net Gain Amount for DP1000565:

| Trans. Date | Type | Deposits | Withdrawals |
|---|---|---|---|
| 4/7/2023 | Direct Deposit | | $1,984.00 |
| 6/30/2023 | Direct Deposit | | $14,182.40 |
| 7/14/2023 | Direct Deposit | | $2,182.40 |
| 7/28/2023 | Direct Deposit | | $4,000.00 |
| 8/11/2023 | Direct Deposit | | $12,400.00 |
| 8/25/2023 | Direct Deposit | | $2,800.00 |
| 9/8/2023 | Direct Deposit | | $9,240.00 |
| 9/22/2023 | Direct Deposit | | $15,535.11 |
| 10/6/2023 | Direct Deposit | | $16,840.00 |
| 10/20/2023 | Direct Deposit | | $46,520.24 |
| 11/3/2023 | Direct Deposit | | $34,492.64 |
| 11/17/2023 | Direct Deposit | | $47,610.00 |
| 12/1/2023 | Direct Deposit | | $42,499.35 |
| 12/15/2023 | Direct Deposit | | $26,060.96 |
| 12/29/2023 | Direct Deposit | | $41,330.46 |
| 1/12/2024 | Direct Deposit | | $40,480.77 |
| 1/26/2024 | Direct Deposit | | $73,955.00 |
| 2/23/2024 | Direct Deposit | | $113,468.42 |
| 3/8/2024 | Direct Deposit | | $100,277.75 |
| 3/22/2024 | Direct Deposit | | $45,485.90 |
| 4/5/2024 | Direct Deposit | | $117,376.18 |
| 4/19/2024 | Direct Deposit | | $47,429.78 |
| 5/3/2024 | Direct Deposit | | $77,736.48 |
| 5/17/2024 | Direct Deposit | | $92,900.62 |
| 5/31/2024 | Direct Deposit | | $81,880.18 |
| 6/14/2024 | Direct Deposit | | $96,684.32 |
| 3/08/2024-6/14/2024 | Commissions Applied to Promissory Note | | $74,004.00 |
| 3/29/2023 | Wire | $49,600.00 | |
| 6/22/2023 | Wire | $300,000.00 | |
| 7/14/2023 | Wire | $100,000.00 | |

| | | | |
|---|---|---|---|
| 8/8/2023 | Deposit | $200,000.00 | |
| 10/6/2023 | Wire | | $13,200.00 |
| 12/26/2023 | Wire | | $363,000.00 |
| 12/28/2023 | Deposit | $100,000.00 | |
| 12/28/2023 | Deposit | $300,000.00 | |
| 2/9/2024 | Wire | | $242,000.00 |
| 2/9/2024 | Deposit | $400,000.00 | |
| 3/19/2024 | Deposit | $70,000.00 | |
| 4/16/2024 | Deposit | $10,000.00 | |
| **Totals** | | **$   1,529,600.00** | **$            1,897,556.96** |

The claimant appealed Receiver's Final Determination, demanding an allowed claim amount of $2,053,100. *See* Appeal Email at Exhibit B-2. This claimant has a long history with Drive Planning, having served as one of its principal sales agents, resulting in Drive Planning using investor funds to purchase a condominium unit (the "One Unit") for him and to pay him over $1.2 million in commissions.

This claimant has also engaged in significant litigation against the Estate. Indeed, he has filed 77 court papers and requests for relief in this case and 32 court papers in the related writ of execution action (Case #: 8:25-mc-00022-TPC-NHA, M.D. Fla.), most of which were denied and/or stricken for lack of merit. The claimant's court filings are primarily based on the Receiver's obtaining an order for turnover and imposition of a constructive trust over the One Unit because Drive Planning purchased it with investor funds without receiving reasonably equivalent value. *See* Motion for Turnover and Imposition of Constructive Trust and Opinion and Order granting that Motion (the "Constructive Trust Order"), ECF Nos. 98 and

152. As a result of the Constructive Trust Order [ECF No. 152], and a subsequent Order pursuant to Rule 70, the Clerk transferred the deed to the One Unit to the Receiver. The claimant then sought to retain the One Unit and eventually reached a Court-approved agreement with the Receiver to purchase the One Unit from the Estate for $1,600,000, free and clear of the Estate's constructive trust lien, which amount covered the principal amount due under a promissory note granted to Drive Planning in connection with its purchase of the One Unit for claimant and a portion of the interest due under that note. *See* Motion to Approve Settlement Agreement and Order, ECF Nos. 380 and 381. The claimant made that payment to the Estate, and the Receiver transferred the title to the One Unit to him, thereby fully complying with the agreement.

The basis for the claimant's $1,600,000 payment to the Estate is well documented in the Court-approved agreement. *See id*. at ECF No. 380-1. Nevertheless, in his Appeal, the claimant attempts to conflate the $1,600,000 payment made to purchase the One Unit with repayment of his net gain. *See* Appeal Email at Exhibit B-3. In his appeal, the claimant fails to acknowledge that his payment of $1,600,000 to the Estate was intended solely to purchase the One Unit, as part of a separate transaction with the Receiver, to allow the claimant to retain the One Unit and stop the Receiver from executing on the Writ of Possession issued

11

with respect to the One Unit. *See* Settlement Agreement at ECF No. 380-1.  In fact, the agreement provides:

> For the avoidance of doubt, nothing in this Agreement releases, waives, limits, or otherwise affects any claims the Receiver, the Receivership Estate, or Drive Planning have or may have against any other party or against the Obligor arising out of or relating to (i) commissions, compensation, fees, or other payments received by the Obligor from Drive Planning; (ii) any claims to recover net gains that Obligor received from Drive Planning; (iii) fraudulent transfer, unjust enrichment, or other recovery claims unrelated to the Conveyance; or (iv) any other conduct, transactions, or transfers. The Receiver expressly reserves the right to pursue any and all such claims.

*See id.* at p. 19.

Therefore, the $1,600,000 payment in no way reduces the significant net gain the claimant realized from the commissions and partial return of his investment he received from Drive Planning. Given that the claimant continues to retain the $367,956.96 net gain he received from Drive Planning, the Receiver intends to commence afraudulent transfer action against him to recover that net gain for the benefit of the Drive Planning Estate.  Because the claimant did not suffer a net loss from his investment in Drive Planning, he does not have a valid claim against the Estate. Accordingly, the Receiver respectfully requests that the Court approve his final determination completely disallowing Claim DP1000565.

**Claim Number DP1001583:**

Claimant filed Claim DP1001583, asserting a claim for $225,111.60 against the Drive Planning Estate.  *See* Claim DP1001583 at Exhibit C-1. That claim is based on a $250,124 check the claimant sent to Drive Planning, minus a $25,012.40 interest payment that the claimant received from Drive Planning.  *See id*.  Drive Planning's bank records indicate that the $250,124 check was not successfully deposited. Specifically, Drive Planning deposited that check as part of a $273,124 deposit on July 27, 2024; however, on July 29, 2024, the $250,124 check was returned. *See* the relevant Truist bank statement, with both the deposit and the returned item highlighted, attached as Exhibit C-2.  According to Drive Planning's bank records, the claimant never sent another deposit to Drive Planning. It appears that Drive Planning never verified that the claimant's deposit cleared before issuing her a promissory note and paying her interest in the amount of $25,012.40. Therefore, this claimant realized a net gain of $25,012.40 without ever actually investing in Drive Planning.  Accordingly, the Receiver disallowed Claim DP1001583.

On January 6, 2026, the Receiver contacted the claimant by email, explaining the basis for that disallowance and requesting evidence that the claimant's check to Drive Planning had cleared and/or that the claimant had sent a new check to Drive Planning.  The claimant did not respond to the Receiver.  Then, on February 10,

2026, the Claimant submitted her appeal seeking an allowed claim for the full amount of her returned check—$250,124. *See* Appeal Email at Exhibit C-3.  The Receiver responded that same day again explaining that claimant's check to Drive Planning had been returned and asking for evidence that the claimant had successfully transferred funds to Drive Planning including: (i) bank statements for claimant's account for July and August 2024, showing the funds leaving the claimant's account and confirming whether those funds were subsequently returned or re-credited; and (ii) any documentation from claimant's financial institution regarding the returned check. The Receiver followed up on his request for supporting bank documents by email on February 23, March 5, and March 30, 2026, and by telephone on March 30, 2026. Claimant again failed to respond to the Receiver's emails and voicemail. The claimant has failed to provide any bank documents evidencing that her check to Drive Planning was successfully deposited.

Accordingly, the Receiver respectfully requests that the Court approve his complete disallowance of Claim DP1001583.

**Claim Number DP1001660:**

Claimant filed Claim DP1001660, asserting a claim for $66,500 against the Drive Planning Estate.  *See* Claim DP1001660 at Exhibit D-1.  That claim failed to disclose and account for certain deposits into, and withdrawals from, a Drive Planning bank account, resulting in an incorrect claim amount.  The Receiver, based

on the following forensic reconstruction of all the claimant's transfers to Drive
Planning minus the withdrawal received from Drive Planning, determined that the
claimant suffered a net loss in the amount of $59,450 and, as such, has an allowed
claim for that amount against the Drive Planning Estate.

Calculation of Allowed Claim Amount for DP1001660:

| Trans. Date | Type | Deposits | Withdrawals |
|---|---|---|---|
| 08/02/23 | Wire | $20,000 | |
| 01/30/24 | Wire | $4,300 | |
| 05/03/24 | Wire | | $31,350 |
| 05/06/24 | Wire | $66,500 | |
| | | | |
| **Totals:** | | **$90,800** | **$31,350** |
| **Net Loss:** | **$59,450** | | |

The claimant appealed the Receiver's Final Determination of her allowed
claim amount, demanding an allowed claim amount of $60,292.88. *See* Appeal
Email at Exhibit D-2.  In her Appeal, the claimant provides an unclear explanation
of her calculation and miscalculates her claim amount as $60,292.88 instead of
$59,450. *See* Appeal Email at Comp. Exhibit A. Claimant fails to provide any
documentation supporting her calculation, or contradicting the Receiver's
calculation, of her allowed claim amount. In fact, the bank statement attached to the
claimant's Appeal supports the Receiver's forensic reconstruction. *See* Exhibit D-3
(bank statement confirming claimant's withdrawal of $31,350 from Drive
Planning).  To resolve this appeal, the Receiver sent the claimant a forensic

calculation of her allowed claim amount and explained her error. The Receiver sent the claimant several emails asking if this explanation resolved the appeal. The claimant did not respond to the Receiver. Accordingly, the Receiver respectfully requests that the Court approve his calculation of the claimant's allowed claim amount of $59,450 in accordance with the forensic reconstruction of Drive Planning's bank accounts and dismiss the claimant's Appeal of, and approve, the Receiver's final determination on Claim DP1001660.

**Claim Number DP1001973:**

Claimant filed Claim DP1001973, asserting a claim for $630,000 against the Drive Planning Estate. *See* Claim DP1001973 at Exhibit E-1. That claim lacks documentation for an alleged cash deposit to Drive Planning, resulting in an unsupported claim amount. The Receiver, based on the forensic reconstruction of Drive Planning's bank accounts, determined that the claimant has an allowed claim for $130,000 against the Drive Planning Estate.

The claimant appealed the Receiver's Final Determination of the allowed claim amount, seeking $630,000. *See* Appeal Email at Exhibit E-2. In his Appeal, the claimant asserts that he gave $500,000 in cash to Defendant Burkhalter and to David Bradford for investment in Drive Planning. *See id*. Claimant also provides an affidavit from his sales agent, Stephanie Maus, text messages with Defendant Burkhalter, and a Drive Planning promissory note supporting his allegations of the

16

cash deposit.  *See* Exhibit E-3.  To locate proof of the claimant's cash deposit, the Receiver reviewed Drive Planning's bank records for a deposit for approximately $500,000 in cash at around the time that the claimant alleges he gave the cash to Defendant Burkhalter, but the Receiver could not locate any such deposit in the bank records.  The Receiver then contacted Defendant Burkhalter and David Bradford seeking confirmation of the cash deposit.  *See* emails with Defendant Burkhalter and David Bradford at Exhibit E-4.  Defendant Burkhalter did not respond. Mr. Bradford's counsel responded that the claimant made a cash deposit, but he could not confirm the amount.  *See id*.

The Receiver cannot confirm that the claimant made a cash deposit and/or the amount of the cash deposit. Therefore, he requests that the Court make a final adjudication regarding the allowed amount of Claim DP1001973.  If the Court finds that the claimant made a $500,000 cash deposit to Drive Planning, then the allowed claim amount should be $630,000. If not, then the Court should uphold the Receiver's Final Determination of the allowed claim amount as $130,000.

**Claim Number DP1001622:**

Claimant filed Claim DP1001622, asserting a claim for $56,000 against the Drive Planning Estate.  *See* Claim DP1001622 at Exhibit F-1. That claim failed to disclose and account for certain payments received from Drive Planning, resulting in an incorrect claim amount. The claimant may also be a net winner depending on

17

the basis for other large transfers from Drive Planning to the claimant and whether the claimant provided reasonably equivalent value for those transfers. When analyzing only the transfers between the claimant and Drive Planning that are clearly related to the claimant's investment in Drive Planning, the Receiver, determined that the claimant suffered a net loss in the amount of $56,000.

Calculation of the potential net loss for claim DP1001622:

| Trans. Date | Type | Deposits | Withdrawals | Comment |
|---|---|---|---|---|
| 10/17/23 | Wire | $40,000 | | Real Investment |
| 01/17/24 | Wire | | $4,000 | Interest |
| 02/02/24 | Check | $20,000 | | Real Investment |
| 04/17/24 | Wire | | $4,000 | Interest |
| Totals: | | $60,000 | $8,000 | |
| Net Loss: | $56,000 | | | |

However, when analyzing all transfers between the claimant and Drive Planning, the claimant is a net winner, as shown below:

| Trans. Date | Type | Deposits | Withdrawals | Comment |
|---|---|---|---|---|
| 10/17/23 | Wire | $40,000 | | Real Investment |
| 01/17/24 | Wire | | $4,000.00 | Interest |
| 02/02/24 | Check | $20,000 | | Real Investment |
| 04/17/24 | Wire | | $4,000.00 | Interest |
| 05/28/24 | Check | | $20,000.00 | |
| 05/31/24 | Check | | $20,000.00 | |
| 07/08/24 | Check | | $15,000.00 | |
| 08/12/24 | Check | | $15,000.00 | |
| Totals: | | $60,000 | $78,000 | |
| Net Gain: | $18,000 | | | |

18

When the claimant attempted to file a claim in this case, the Receiver notified her that she had realized a net gain from Drive Planning and may not have a valid claim but still allowed her to complete a claim form. The claimant appealed the Receiver's Final Determination disallowing her claim, demanding an allowed claim amount of $56,000, because she is a net winner. *See* Appeal Email at Exhibit F-2. The claimant's appeal is not contained in one concise email, but rather in a series of responses to the Receiver's inquiries regarding the basis for the transfers the claimant received from Drive Planning, which collectively will be treated as the claimant's appeal.

In her Appeal, the claimant explains that she was an independent contractor of Drive Planning and provides a list of the services provided. *See* Claimant's email dated March 6, 2026, listing her role and responsibilities at Exhibit F-3. The Receiver questions the basis for the claimant's receipt of $70,000 from Drive Planning because the claimant had a personal relationship with Defendant Burkhalter, and the payments she received from Drive Planning were in large and inconsistent amounts within a short time frame. Specifically, the claimant received $40,000 in a three-day period at the end of May 2024, and then another $30,000 on the eve of the commencement of the receivership ($15,000 of which cleared after the appointment of the Receiver). The Receiver does not dispute that the claimant provided property management services to Drive Planning during the last four to six

19

months of the scheme. At the commencement of the receivership case, the claimant was helpful and assisted the Receiver in understanding and touring the Florida investment properties.   Nevertheless, the Receiver remains unsure whether the claimant provided reasonably equivalent value for the $70,000 in transfers she received in the last three months of the Drive Planning scheme.   In addition, the Receiver is aware that the claimant served as Drive Planning's realtor and received commissions that are not reflected in the bank reconstruction and therefore not included in the net gain calculation provided herein.   The Receiver has asked the claimant to explain the basis for those large transfers, but the claimant only provided her list of responsibilities to Drive Planning.   Accordingly, the Receiver cannot confirm that the claimant provided reasonably equivalent value for the $70,000 she received from Drive Planning, which was allegedly unrelated to her investment therein.

Therefore, the Receiver requests that the Court make a final adjudication regarding the allowed amount of Claim DP1001622.   If the Court finds that the claimant provided reasonably equivalent value to Drive Planning for the $70,000 in transfers she received from May to August 2024, then the allowed claim amount should be $52,000. If not, then the Court should uphold the Receiver's Final Determination that the claimant is a net winner and completely disallow Claim DP1001622.

20

**Claim Number DP1002142:**

Claimant filed Claim DP1002142, asserting a claim for $67,156 against the Drive Planning Estate. *See* Claim DP1002142 at Exhibit G-1.[2] That claim failed to disclose and account for the claimant's complete withdrawal of her principal investment from Drive Planning, resulting in the claimant already being made whole and not having a net loss to claim against Drive Planning. The claimant may also be a net winner depending on whether her claim is consolidated with her husband's claim. Their investments were sent to Drive Planning from, and were returned to, a joint bank account. The claimant's husband realized a net gain of $10,500 that he has not repaid to the Estate. Then, this claimant withdrew her entire investment in Drive Planning. Nevertheless, she seeks an even greater recovery from the Estate. Accordingly, the Receiver completely disallowed her claim because she did not realize a net loss from her investment in Drive Planning.

The claimant appealed the Receiver's Final Determination of the allowed claim amount, seeking $67,156. *See* Appeal Email at Exhibit G-2. In her Appeal, the claimant agrees that she withdrew her full $100,000 investment from Drive Planning. Then, she asserts that she is owed her full investment amount plus interest (at 40% per annum) because she already paid taxes on that false interest. The

---

[2] In her claim form, claimant asserted a claim for $0 because she invested $100,000 and then withdrew $100,000. In her appeal, claimant amends her claim amount to seek false interest for $67,156.

Receiver informed the claimant that her request to receive more than 100% of her investment in Drive Planning runs contrary to the Court-approved claims process and to the principles of equity applied in receivership cases. Nevertheless, this claimant chose to appeal the Receiver's Final Determination. *See id.*

The Court-approved claims process provides that the allowed claim amount shall be calculated as the amount a claimant directly transferred to Drive Planning minus the amount the claimant withdrew from Drive Planning. *See* ECF No. 251. In accordance with the Court-approved process for calculating allowed claim amounts, any purported interest income reflected in the claimant's Drive Planning account is a false profit and cannot be counted toward her allowed claim amount. *See id.* Because the claimant invested $100,000 in Drive Planning and thenwithdrew $100,000 from Drive Planning, she does not have a claim against the Drive Planning Estate. Moreover, any taxes she may have paid on interest earned from Drive Planning cannot be counted toward her allowed claim amount. *See id.* Accordingly, even if we ignore the claimant's husband's net gain, which is owed to the Estate, the claimant does not have a valid claim. As such, the Receiver respectfully requests that the Court approve his complete disallowance of Claim DP1002142.

WHEREFORE, the Receiver respectfully requests that this Court (i) adjudicate the Appeals detailed above and determine the allowed amounts (if any) of the subject claims after consideration of the Receiver's determinations and the

evidence presented, and (ii) grant such other and further relief as the Court deems

just and proper, as follows:

| Claim Number | Filed Claim Amount | Receiver's Determination of Allowed Claim Amount | Amount Claimed in Appeal | Receiver's Recommended Allowed Claim Amount |
|---|---|---|---|---|
| 1000987 | $500,000 | $0 | $500,000 | If the Court finds that the claimant made a $500,000 transfer to the Relief Defendant intended as an investment into Drive Planning, then the allowed claim amount should be $500,000. If not, then the Court should uphold the Receiver's Final Determination, completely disallowing this claim. |
| 1000565 | $2,053,100 | $0 | $2,053,100 | $0, Claimant realized a net gain. The Court should uphold the Receiver's Final Determination, completely disallowing this claim. |
| 1001583 | $225,111.60 | $0 | $250,124 | $0, Claimant failed to provide proof the deposit cleared. The Court should uphold the Receiver's Final Determination, |

23

| | | | | |
|---|---|---|---|---|
| | | | | completely disallowing this claim. |
| 1001660 | $66,500 | $59,450 | $60,292.88 | $59,450, the forensic bank reconstruction supports Receiver's calculation of the correct claim amount. The Court should uphold the Receiver's Final Determination on this claim. |
| 1001973 | $630,000 | $130,000 | $630,000 | If the Court finds that the claimant made a $500,000 cash deposit, then the allowed claim amount should be $630,000. If not, then the Court should uphold the Receiver's Final Determination of the allowed claim amount as $130,000. |
| 1001622 | $56,000 | $0 | $56,000 | If the Court finds claimant provided reasonably equivalent value for the $70,000 in transfers she received from Drive Planning, then the allowed claim amount should be $52,000. If not, then the Court should uphold the Receiver's Final Determination, completely disallowing this claim. |

| 1002142 | $67,156 | $0 | $67,156 | $0, Claimant was repaid her investment and did not suffer a net loss. The Court should uphold the Receiver's Final Determination, completely disallowing this claim. |
|---|---|---|---|---|

Respectfully submitted this 10th day of April, 2026.

s/*Adriana Pavon*
Adriana M. Pavon, Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena, as Court-Appointed Receiver*
Adriana M. Pavon
    Florida Bar No. 1025060
    apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
    Florida Bar No. 44417
    rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena, as Court- Appointed Receiver*
Henry F. Sewell, Jr.
    Georgia Bar No. 636265
    Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that, on April 10, 2026, I electronically filed the foregoing Response using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I served the Response on Defendant Russell Todd Burkhalter and on all claimants that submitted an Appeal via e-mail.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

s/*Adriana Pavon*
Adriana M. Pavon, Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

26