**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DRIVE PLANNING, LLC, and RUSSELL TODD BURKHALTER,

Defendants,

and

JACQUELINE BURKHALTER, THE BURKHALTER RANCH CORPORATION, DRIVE PROPERTIES, LLC, DRIVE GULFPORT PROPERTIES LLC, and TBR SUPPLY HOUSE, INC.,

Relief Defendants.

Civil Action No. 1:24-cv-03583-VMC

## ORDER

Before the Court is the Receiver's Renewed Motion for Turnover of and Imposition of Constructive Trust on Real Property on Indiana Traceable to Drive Planning, LLC ("Motion," Doc. 390). Through the Motion, the Receiver seeks an order requiring the immediate turnover of real property in the possession and titled in the name of Gerardo Lorenzo Linarducci and Jennifer Joan Linarducci

("Respondents") and imposing a constructive trust on such real property in favor of the receivership estate.

On June 27, 2025, Mr. Linarducci filed a Voluntary Petition with the U.S. Bankruptcy Court for the Southern District of Indiana, commencing a case under chapter 13 of the Bankruptcy Code. (Doc. 151-1). This voluntary petition operated as an automatic stay over any act to obtain possession or exercise control over property of the bankruptcy estate, which includes all interests in property, wherever held, by Mr. Linarducci. 11 U.S.C. §§ 362(a)(3), 541(a). Thus, the Court previously entered an Order administratively terminating an earlier Motion seeking the same relief (Doc. 131) without prejudice to permit the Receiver to seek stay relief from the Bankruptcy Court. (Doc. 165).

The Receiver brings this renewed Motion pursuant to the order of the Bankruptcy Court granting relief from the automatic stay to permit the Receiver to resume litigation of the constructive trust issues before this Court. *In re Linarducci*, No. 25-03768 (Bankr. S.D. Ind. Mar. 13, 2026), Dkt. 103 ("Stay Relief Order"). Respondents were personally served with the motion on April 27, 2026. (Doc. 400-1). Respondents did not file a response to the Motion which indicates no opposition to the Motion. LR 7.1(B), NDGa.

## Background

The Court writes primarily for the parties and refers the reader to its previous Orders for a history of the Receivership case and Drive Planning's pre-receivership conduct. *See United States Sec. & Exch. Comm'n v. Drive Plan., LLC,* No. 1:24-CV-03583-VMC, 2025 WL 1805796, at *2 (N.D. Ga. June 30, 2025), appeal docketed sub nom. *Haye v. Murena*, No. 25-12437 (11th Cir. July 17, 2025) ("*Haye I*").

The Receiver seeks the immediate turnover of, and the imposition of a constructive trust over a home located on Indianapolis, Marion County, Indiana (the "Property"), which Respondents acquired on July 10, 2023. (*See* Docs. 390-1 & -2). The Receiver avers that "Drive Planning alone paid the purchase price for the Linarducci Property with funds that investors had deposited into Drive Planning's account for the purpose of investing in a Drive Planning investment program." (Declaration of Kenneth D. Murena dated April 14, 2026 ¶ 8, "Murena Decl.," Doc. 390-2). Respondents have not disputed these facts.

## Discussion

The Court incorporates its prior discussion from *Haye I* with respect to jurisdiction and venue. 2025 WL 1805796, at *3. As the Court has explained, though this is a federal receivership arising in a federal question case, "[p]roperty interests are created and defined by state law." *Sec. & Exch. Comm'n v. Pension Fund of Am.*

*L.C.*, No. 05-20863-CIV, 2006 WL 8433996, at *8 (S.D. Fla. Sept. 11, 2006) (quoting *Butner v. United States*, 440 U.S. 48, 55 (1979)). In determining the state law to apply in a federal question case, courts in this circuit generally apply the conflict of law rules of the forum state. *Mukamal v. Bakes*, 378 Fed. App'x 890, 896 (11th Cir. 2010); *see also PRN Real Est. & Invs., Ltd. v. Cole*, 85 F.4th 1324, 1348 (11th Cir. 2023) (recognizing that *Mukamal* is unpublished and that the Eleventh Circuit has not reached the issue in a published case). "In cases involving real property, Georgia courts generally follow the traditional conflict of law rule of lex loci rei sitae, that is, the law of the place where the thing is." *United States v. One 1990 Lincoln Town Car*, 817 F. Supp. 1575, 1581 (N.D. Ga. 1993) (citing *Veach v. Veach*, 53 S.E.2d 98 (Ga. 1949)). The Court thus looks to Indiana law.

"A constructive trust arises in cases where the transaction involved is tainted by fraud, actual or constructive." *Zygulski v. Daugherty*, 236 B.R. 646, 651–52 (N.D. Ind. 1999). Moreover, the remedy "may be imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he or she would be unjustly enriched if permitted to retain it." *Deal v. Gittings*, 144 N.E.3d 716, 726 (Ind. Ct. App. 2020) (quoting *Demming v. Underwood*, 943 N.E.2d 878, 895 (Ind. Ct. App. 2011)).

"In such cases, in order to prevent the wrongdoer from reaping a benefit from his fraud, a court of equity will construct a trust such as equity and good

conscience requires in order to do justice to the parties affected by the fraudulent transaction . . . . It is the fraud or undue influence connected with the original transaction which justifies the court in constructing a trust and holding the wrongdoer responsible as a trustee maleficio." *Zygulski*, 236 B.R. at 651–52 (quoting *Westphal v. Heckman,* 113 N.E. 299, 302 (Ind. 1916); *Hicks v. State,* 635 N.E.2d 1151, 1155 (Ind. Ct. App. 1994)).

Indiana law describes a constructive trust as "a fiction of equity, devised for the purpose of making equitable remedies available against one who through fraud or other wrongful means acquires the property of another." *Id.* at 652 (quoting *Hunter v. Hunter,* 283 N.E.2d 775, 779 (Ind. Ct. App. 1972)). The "transformation of property from one form to another" does not "deprive a beneficiary of the right to the trust property." *Id.* (citing *Mervis Indus. v. Sams,* 866 F.Supp. 1143 (N.D. Ind. 1994)). "The equity rule is that trust property may be followed by the beneficiary so long as its identity can be ascertained." *Id.* (citing *Mervis,* 866 F.Supp. 1143, 1147–48).

Under Indiana law, a constructive trust may be imposed upon the proceeds of embezzled or misappropriated funds, even without the showing of a fiduciary relationship. *Hicks*, 635 N.E.2d at 1154. "Where an agent, in violation of his trust, uses the money of his principal, the law implies a trust in favor of the principal; and to enforce the trust thus implied equity will subject the property purchased to

the claims of the principal as against either a volunteer or a fraudulent grantee . . . ." *Id.* (quoting *Riehl v. Evansville Foundry Ass'n*, 3 N.E. 633, 634 (Ind. 1885)).

The gist of these cases is that under Indiana law, a constructive trust is an available remedy against property purchased with funds misappropriated from Drive Planning, whether on an embezzlement theory or an unjust enrichment theory. Based on the undisputed facts alleged by the Receiver, the Receiver has stated a case for the remedy of a constructive trust.

However, there is one wrinkle in this case—Mr. Linarducci's pending bankruptcy case. As the Bankruptcy Court observed, "whether a constructive trust assertion prevents property from becoming property of a debtor's bankruptcy estate" depends on "whether applicable law makes the imposition of a constructive trust (1) a remedy that takes effect only if and when a court of competent jurisdiction imposes such a trust (in which case bankruptcy should prevent the imposition of a trust); or (2) a property concept that causes equitable title to property to pass to a defrauded party at the moment the fruits of the fraud are used to acquire the property and before the bankruptcy is commenced (in which case bankruptcy should not prevent the imposition of a trust)." (Stay Relief Order at 6–8) (notes omitted). The Bankruptcy Court left it to this Court to determine that question in the first instance.

Having conducted a careful survey of Indiana law, the Court concludes that Indiana law recognizes that a constructive trust arises at the moment of transfer, not at the time the remedy is imposed by a court. Under Indiana law, "an embezzler, from the beginning, acquires no beneficial ownership in property purchased with stolen funds." *Mervis*, 866 F. Supp. at 1147 ("[I]t is 'perhaps universally recognized that a constructive trust will arise when stolen or embezzled funds are used to purchase other property.'") (quoting *Dennis v. United States,* 372 F. Supp. 563 (E.D. Va. 1974)). As a result, the constructive trust beneficiary's interest has priority over the wrongdoer and "and all parties claiming under" them "except purchasers for value and without notice."[1] *Id.* at 1148 (quoting *Fall v. Miller,* 462 N.E.2d 1059 (Ind. App. 1984)); *accord Zygulski*, 236 B.R. at 651 (N.D. Ind. 1999) ("For example, if the debtor possesses a stolen diamond ring, the real owner's rights would trump those of a judgment creditor, and under the Code therefore would defeat the claims of all of the debtor's creditors. Whether or not the court says that the debtor holds the ring in 'constructive trust' for the owner is a detail."). Accordingly, Mr. Linarducci's bankruptcy filing is no barrier to the Court's imposition of a constructive trust.

[1] To the extent lack of notice is relevant, the Court notes the receiver recorded a copy of the Receivership Order in the Southern District of Indiana on August 20, 2024 and with the Marion County recorder on May 23, 2025. (Murena Decl. ¶ 11). Mr. Linarducci's bankruptcy case was filed on June 27, 2025. (Doc. 151-1).

## Conclusion

For the above reasons, it is

**ORDERED** that the Receiver's Renewed Motion for Turnover of and Imposition of Constructive Trust on Real Property on Indiana Traceable to Drive Planning, LLC (Doc. 390) is **GRANTED**. It is

**FURTHER ORDERED** that the Court **DECLARES** that any interest of Respondents in the Property is subject to a constructive trust in favor of the Receivership Estate as beneficiary relating back to the moment of acquisition of the Property by Respondents. It is

**FURTHER ORDERED** that (unless the Receiver and Respondents agree to service by another method) the Receiver is **DIRECETED** to promptly serve Respondents by priority mail express (or similar delivery service, or by personal delivery) a form quitclaim deed conveying the Property to the Receiver on behalf of the Receivership Estate and prepaid return envelope. It is

**FURTHER ORDERED** that, within 45 days from the date of mailing of the form quitclaim deed (or such later time as the Receiver may in his discretion permit), Respondents are **DIRECTED** to execute the form as directed by the Receiver and to vacate the Property. To encourage compliance with this directive, the Receiver may in his discretion agree to pay a reasonable moving expense to

Respondents from estate funds, not to exceed $3,000, without the need for court approval. It is

**FURTHER ORDERED** that, in the event that Respondents fail to timely execute the quitclaim deed, the Receiver may either: (1) apply to this Court for an Order under Federal Rule of Civil Procedure 70(a), or (2) seek an order from the United States District Court for the Southern District of Indiana subject to that court's discretion vesting title to the Property under Federal Rule of Civil Procedure 70(b). Upon completion of either of these steps, or in the event that Respondents execute the quitclaim deed but do not timely vacate the Property, the Receiver may seek a writ of possession from either the United States District Court for the Southern District of Indiana subject to that court's discretion or from the appropriate Indiana state court. It is

**FURTHER ORDERED** that the Receiver is **DIRECTED** to register a copy of this Order with the United States District Court for the Southern District of Indiana within seven days of the date of entry of the Order

**SO ORDERED** this 21st day of May, 2026.

Victoria Marie Calvert
United States District Judge