**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

     Plaintiff,

     v.

DRIVE PLANNING, LLC, and
RUSSELL TODD BURKHALTER,

     Defendants,

and

JACQUELINE BURKHALTER,
THE BURKHALTER RANCH
CORPORATION, DRIVE
PROPERTIES, LLC, DRIVE
GULFPORT PROPERTIES LLC,
and TBR SUPPLY HOUSE, INC.,

     Relief Defendants.

Case No. 1:24-cv-03583-VMC

---

**RECEIVER'S MOTION TO APPROVE SETTLEMENT AND RELEASE
AGREEMENT WITH THE ESTATE OF RICHARD A. MCNELLEY,
VANESSA MCNELLEY AND WESLEY MCNELLEY**

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the

above-styled action, through undersigned counsel, files this Motion to Approve

Settlement and Release Agreement with the Estate of Richard A. McNelley, Vanessa

McNelley and Wesley McNelley and in support, the Receiver states:

## **INTRODUCTION**

The Receiver, Kenneth D. Murena (the "Receiver"), as part of his duties in administering and preserving the assets of the Receivership Estate, assumed control over certain real property located at Blue Ridge Drive, Blue Ridge, Georgia (the "Property"), which was purchased in part with funds from Drive Planning, LLC ("Drive Planning") but titled in the name of Relief Defendant TBR Supply House, LLC ("TBR Supply House"). The Property is encumbered by an Adjustable Rate Note (the "Note") in favor of Richard A. McNelley, and, upon his death, Vanessa McNelley and Wesley McNelley (collectively, the "McNelley Parties"), with an original principal balance of approximately $3,028,121.26.

At the time the Receiver took control of the Property, it was reasonably believed based upon the Receiver's consultations with the Receiver's real estate broker in Blue Ridge, Georgia and other individuals with knowledge of the relevant market, that the Property held substantial equity, with an anticipated market value approaching $4,000,000, as compared to an approximate indebtedness of $2,800,000 (after multiple Note payments reduced the original principal balance). Based on this understanding, and in furtherance of his duty to preserve and maximize value for the Receivership Estate, the Receiver continued making monthly payments on the Note while pursuing a potential sale of the Property.

2

The Receiver thereafter undertook substantial efforts to market and monetize the Property, including listing it for sale beginning on or about December 26, 2024, at an initial listing price of $4,000,000. Despite extended market exposure, there was limited market interest, and the Receiver commissioned a formal appraisal, which concluded that the Property's current market value was $3,000,000, which is substantially lower than the  value estimated by the Receiver's real estate broker soon after the Receiver took control of the Property.

As a result, the Property lacks meaningful equity, generates no income, and remains subject to ongoing carrying costs and operational complications, rendering it a net burden to the Receivership Estate.  As a result, the Receivership Estate, in order to preserve the Receivership Estate assets, stopped making payments on the Note in January 2026, with the last payment being paid on December 30, 2025.

Accordingly, the Receiver now seeks authority to surrender the Property to the McNelley Parties in exchange for the return of all monthly payments that the Receiver made from the Receivership Estate pursuant to the Note.  Specifically, the Parties have agreed to a resolution pursuant to which the Property will be conveyed to the McNelley Parties via a deed in lieu of foreclosure.  And, as part of the resolution reached with the McNelley Parties, the McNelley Parties will return to the Receivership Estate the $306,593.25 in Note payments that the Receiver made in connection with the Property.  In addition, Wesley McNelley shall pay $10,000

3

in exchange for retaining any and all personal property, fixtures, inventory, and furnishings contained within the Suite A and Suite C of the Property (as detailed herein).

## BACKGROUND

### A.   Appointment of Receiver

On August 13, 2024, the Court entered the Appointment Order, appointing Kenneth D. Murena, Esq., as the Receiver over the assets of Drive Planning, LLC ("Drive Planning") and all assets owned by or purchased with funds derived from investors or clients of Drive Planning. *See* ECF No. 10. The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id*. at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of defrauded investors. *See id*. at ¶¶ 4-7. The Receiver also was authorized to engage professionals subject to Court approval, issue subpoenas, and take any legal actions necessary to recover assets and protect the Estate. *See id*. at ¶ 7(f).

### B.   Drive Planning's Purchase of the Property

The Property was acquired on or about June 30, 2022, and the purchase was financed in substantial part through seller financing, evidenced by an Adjustable

Rate Note dated June 2022, with an original principal balance of approximately $3,028,121.26, and with funds from Drive Planning.  *See* Adjustable Rate Note, attached as **Exhibit A**.  The Note provides for a 20-year repayment term, with a maturity date of July 1, 2042, and requires monthly payments of principal and interest, which fluctuate based on an adjustable interest rate but have averaged approximately $23,000 per month during the Receivership.

Following the acquisition, the Property was utilized as the operating location for TBR Outdoors Supply (a gun store) and TBR Supply House (a western clothing store).  To facilitate these operations, the Property underwent significant renovations funded by Drive Planning investor funds, including a substantial redevelopment of the existing structure.

Following the Receiver's analysis of the operations at the Property, the Receiver determined that TBR Supply House, the western retail store operating at the Property, was not profitable and could not sustain ongoing payroll and operating expenses.  As a result, the Receiver implemented a wind-down strategy, including aggressive inventory liquidation and termination of operations, and the business has since been closed.  While the vast majority of inventory and assets were liquidated, a limited amount of miscellaneous personal property remains within the vacant retail space. The Property was also utilized by TBR Outdoors Supply, a gun store; however, that occupant (now operating as Trigger Time Gun & Pawn, LLC) has

refused to vacate the premises or agree to commercially reasonable rental terms. Consequently, the Receiver was required to initiate legal proceedings in relation to the occupant's connection to the Property (and receipt of significant fraudulent transfers from Drive Planning).[1]  As a result, the Property provides no income and only imposes carrying costs upon the Receivership Estate, including without limitation the Note payments, insurance, and property taxes.

On or about December 26, 2024, the Receiver listed the Property for sale at an initial listing price of $4,000,000 and undertook substantial marketing efforts to solicit potential purchasers.  Despite these efforts, the Receiver received only one bona fide offer.  That prospective purchaser ultimately withdrew from the transaction due to, among other issues, certain terms of the subject Note, an easement claim, and issues relating to the non-paying occupant at the Property.

In light of the limited market interest in the Property, the Receiver retained Blue Ridge Appraisals, LLC to conduct an independent appraisal of the Property. The appraisal, effective February 11, 2026, concluded that the fair market value of the Property is $3,000,000.  In reaching this conclusion, the appraiser conducted an interior and exterior inspection of the Property, analyzed comparable sales data, and applied the cost, sales comparison, and income approaches to valuation.  The

---

[1] *See* Case No.1:26-cv-01084-VMC (N.D. Ga.).

appraisal confirmed that the current value is substantially lower than the Receiver's realtor's estimated value after taking control of the Property.

Therefore, the Receiver, in order to preserve Receivership Estate assets, stopped making payments on the Note in January 2026, with the last payment being made on December 30, 2025. The Note was subsequently declared in default by the McNelley Parties.

### C. Negotiations to Settle with the McNelley Parties

In connection with the Property, the Receiver engaged in extensive efforts to address and resolve issues raised by the McNelley Parties that were materially impairing the marketability and potential sale of the Property. The Receiver issued a cease-and-desist letter to Wesley McNelley, directing him to cease asserting the existence of a purported seventy-foot easement across the Property and an alleged prepayment penalty under the Note, both of which were determined to be unsupported by the public record and governing loan documents. The Receiver further pursued discovery, including taking Wesley McNelley's deposition, to investigate Mr. McNelley's claims and any asserted encumbrances affecting the Property.

In addition, the Receiver engaged in negotiations and participated in informal mediation efforts with the McNelley Parties in an attempt to reach a resolution regarding a potential payoff of the loan in connection with a prospective sale.

However, in light of the Property's current appraised value of approximately $3,000,000, any payoff of the outstanding loan balance (exceeding $2,800,000) together with the $306,593.25 in post-receivership payments already made, would leave little to no equity for the Receivership Estate.  Coupled with the absence of willing purchasers, paying millions to unencumber the Property was not economically reasonable.

Accordingly, after extensive negotiations, the Receiver reached a resolution with the McNelley Parties that avoids further depletion of Receivership assets while affirmatively returning value to the Estate.  Pursuant to that resolution, the Receiver will surrender the Property to the McNelley Parties, and, in exchange, the McNelley Parties will return $306,593.25 in post-receivership Note payments previously made by the Estate.  Moreover, Wesley McNelley will  pay $10,000 for any and all personal property, fixtures, inventory, and furnishings contained within the Estate-occupied portions of the Property.  This resolution eliminates the Estate's ongoing burden of monthly carrying costs, insurance, and property taxes, avoids the need to pay the Note balance that exceeds the realizable value of the Property, obviates the need to evict the non-paying occupant at the Property, avoids litigation concerning the existence or extent of any prepayment penalty or easement encumbering the Property, and results in a meaningful recovery to the Receivership Estate that will be preserved for the benefit of defrauded investors.

8

## THE SETTLEMENT

On June 3, 2026, the Receiver and the McNelley Parties executed the Settlement and Release Agreement (the "Settlement"), a copy of which is attached as **Exhibit B**. The Settlement will not become effective until the Court approves it.

Pursuant to the terms of the Settlement, the McNelley Parties shall remit to the Receiver the sum of $306,593.25, representing the mortgage payments made by the Receivership Estate in connection with the Property. Upon receipt of such funds, the Receiver shall convey to the McNelley Parties the Property via a deed in lieu of foreclosure. In addition, contemporaneously with this Settlement payment, Wesley McNelley shall pay to the Receiver Ten Thousand Dollars ($10,000.00) in exchange for retaining any and all personal property, fixtures, inventory, and furnishings located within Suite A (the former TBR Supply House retail space) and Suite C (office) at the Property. Upon receipt of such payment, all right, title, and interest of the Receivership Estate in and to such personal property shall be transferred to Wesley McNelley.

This exchange fully resolves all claims between the Receiver and the McNelley Parties relating to the Property and the Note, and transfers all right, title, and interest in the Property back to the McNelley Parties, thereby relieving the Receivership Estate of any further obligations associated with the Property. The

9

Receiver believes that this Settlement is in the best interests of the Receivership Estate.

The foregoing description of the Settlement is included here for summary purposes only and not intended to constitute a full recitation of the terms of the Settlement. A review of this description or this motion should not be a substitute for a review of the complete Settlement. *See* **Exhibit B**.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached as **Exhibit C**, approving the Settlement, and grant such other and further relief as the Court deems just and proper.

**CERTIFICATION OF CONFERENCE**

The undersigned counsel certifies that prior to filing this motion the Receiver conferred with counsel for the SEC, and undersigned counsel conferred with Defendant Burkhalter and counsel for the Relief Defendants, regarding the relief requested herein. Counsel for the SEC and counsel for the Relief Defendants informed the Receiver or undersigned counsel that they have no opposition to the requested relief. Mr. Burkhalter informed undersigned counsel that he objects to the requested relief.

Respectfully submitted,

s/ *Adriana M. Pavon*
Adriana M. Pavon, Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena,*
*as Court-Appointed Receiver*
Adriana M. Pavon
   Florida Bar No. 1025060
   apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
Russell Landy
   Florida Bar No. 44417
   rlandy@dvllp.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965

*Local Counsel for Kenneth D. Murena,*
*as Court- Appointed Receiver*
Henry F. Sewell, Jr.
   Georgia Bar No. 636265
   Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I hereby certify that on June 12, 2026, I electronically filed the foregoing *Motion* using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and sent the *Motion* to Defendant Burkhalter by email.

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated:  June 12, 2026.

s/ *Adriana M. Pavon*
Russell Landy, Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

11