**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DRIVE PLANNING, LLC, et al.

Defendants.

Civil Action No. 1:24-cv-03583-VMC

# ORDER

Before the Court are the following matters:

- Five largely identical documents entitled "Lender's Letter Objection to Receiver's Failure to Comply with Court-Approved Settlement Procedures and Request for Court Intervention" (Docs. 418, 424, 428, 431, 433).
- Robin Rowan's Motion to Seal (Doc. 413);
- Mark Haye's Motion for Reconsideration of the Court's Determination of Claim No. 1000565 (Doc. 417); and
- Michael Seman's Motion for Reconsideration of the Court's Determination of Claim No. 1001973 (Doc. 426).

## Background

This matter arises in a civil action brought by the United States Securities and Exchange Commission ("SEC") against Drive Planning, LLC ("Drive Planning") and the company's CEO Todd Burkhalter under federal securities laws. (Declaration of Cody C. Turley dated Aug. 9, 2024, "Turley Decl.," ¶ 4, Doc. 2-6; *see generally* Compl., Doc. 1).

### I. Drive Planning runs a Ponzi scheme.

Drive Planning, under the direction of Mr. Burkhalter, offered an investment opportunity called the "Real Estate Acceleration Loan" or "REAL" program. (Turley Decl. ¶ 7). Drive Planning produced and distributed advertisements for REAL in the form of brochures, online videos, social media posts, and web pages. (*Id.* ¶ 8). These advertisements were distributed to the general public through means such as U.S. Mail, email, YouTube, Facebook, and the company's website. (*Id.*).

Drive Planning's offering materials for REAL stated that the investment was a safe and low risk opportunity for investors to generate passive income. (*Id.* ¶ 9). The advertisements and offering materials stated that an individual could invest with a minimum of $20,000 and receive a guaranteed return of 10% every 90 days. (*Id.*). The advertisements stated that Drive Planning would use investments in

REAL to fund bridge loans to real estate developers. (*Id.*). Drive Planning claimed that such bridge loans were fully collateralized by real estate and other assets. (*Id.*).

Financial and bank records show that from September 2020 through June 2024, Drive Planning and Mr. Burkhalter raised $372 million in REAL. (*Id.* ¶ 10). During this period, more than 2,500 investors invested funds in REAL. (*Id.* ¶ 11). These investors reside in at least 48 states (including Georgia), two territories, and multiple countries. (*Id.*).

The SEC contends that Drive Planning did not generate sufficient revenue to pay the promised returns to investors in REAL, Drive Planning and Mr. Burkhalter used investor funds to pay returns to other investors, and that Mr. Burkhalter used investor funds for what appear to be large personal purchases. (*Id.* ¶ 12). As a result of its investigation, the SEC filed this case on August 13, 2024 and sought the appointment of a receiver. (Docs. 1, 2).

Defendant Burkhalter and the SEC agreed to, and the Court entered, a Consent Judgment on April 10, 2025, which committed Mr. Burkhalter to paying disgorgement and a civil penalty for violations of the Securities Act and the Exchange Act, and "preclud[ing him] from arguing that he did not violate the federal securities laws as alleged in the Complaint." (Doc. 102).

## II. The Court enters the Receivership Order.

Meanwhile, on August 13, 2024, the Court entered an Order appointing Kenneth D. Murena as Receiver over "all assets of Defendant Drive Planning, LLC ('Receivership Assets') and the assets of Defendant Burkhalter and the Relief Defendants that: (a) are attributable to funds derived from investors or clients of the Defendants; (b) are held in constructive trust for the Defendants; and/or (c) may otherwise be includable as assets of the estates of the Defendants (collectively, the 'Recoverable Assets')." ("Receivership Order," Doc. 10 at 1–2). The Court also took "exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of" Drive Planning. (*Id.* ¶ 1).

The Receivership Order contained directives to the Receiver regarding litigation, including that an authorization to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind" and "(after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate." (*Id.* ¶¶ 42–43).

## III. The Court authorizes ancillary proceedings against net winners and approves settlement procedures.

On August 7, 2025, the Court entered an order authorizing the Receiver to commence ancillary proceedings against investors to recover net gains (payments

in excess of their investments), against agents to recover commissions, and against third parties to recover improper transfers. (Doc. 234). The Receiver also sought authority for advance approval of settlement terms within a certain range to avoid having to seek case by case approval for every settlement ("Settlement Procedures"). (*See id.*). The Court, out of a concern that this could reduce sums made available to investors who had lost some or all of their principal investments without notice to those investors, directed the Receiver to file a notice about the Settlement Procedures on the Drive Planning Receivership website, and to solicit comments. (*Id.*). On October 6, 2025, the Court approved the Settlement Procedures as modified after reviewing the comments to the Receiver. (Doc. 294).

## IV. The Court enters a claims order

While the Settlement Procedures were being worked out, on August 25, 2025, the Court entered an Order Approving Claims Process and Employment of Stretto Inc. as Noticing and Claims Processing Agent ("Claims Order," Doc. 251). The Claims Order set a deadline for filing claims, directed that the Receiver make determinations about whether to allow timely filed claims, and provided a procedure for the Court's review of the Receiver's claims determinations:

> **4.5 Court's Final Adjudication of Claims:** A claimant with a partially or wholly disallowed claim may appeal the Receiver's Final Determination to this Court for final adjudication by no later than 30 days after the Receiver sends the Final Determination to the claimant by email. A Final Determination is appealed by replying to the

> Final Determination email in writing specifying (1) the intent to appeal the decision to this Court and (2) the basis for disagreement with the Receiver's Final Determination. Any subsequent communications made by the claimant to the Receiver after 30 days from the date of the Final Determination email shall not be part of the record on review. The Receiver will file with the Court a response to any such appeal by no later than 30 days after claimant's written appeal email is received by the Receiver. The response should include the record on review consisting of the Claim Form, Final Determination, claimant's written appeal, and all documents considered by the Receiver or submitted for inclusion by the claimant. The Receiver shall redact the record on review as required under Federal Rule of Civil Procedure 5.2(a). The Court shall have sole jurisdiction and serve as the exclusive venue to consider the appeal of any claimant who objects to any part of the Receiver's Final Determination. This Court's determination on a claimant's appeal is final. Absent an order granting a stay of final distribution pending appeal, any further appeal of the Court's decision on claim allowance will not stay final distribution and neither the Receiver nor any investor, creditor, or other estate professional shall be liable to repay any payment received prior to or during the pendency of any such appeal in the event the claim is later allowed on appeal.

(Doc. 251 at 11–12). After the Receiver made his Final Determinations, the Court entered an Order on Appeals of Receiver's Final Claims Determinations on May 21, 2026. ("Appeals Order," Doc. 413).

## Discussion

### I. Letters from Investors

The investors'[1] form letters raise 3 concerns with the Receiver's pre-litigation collection tactics. First, they argue that the Receiver is not following the Settlement Procedures because the demand letters the Receiver sent do not disclose the procedures and the website no longer has the notice about the procedures. But as the Court explained above, the purpose of providing notice of the Settlement Procedures to investors was not to protect net winners or give them additional substantive rights, but to ensure that net losers had a say in a decision that could result in them recovering less of their lost investments without any future opportunity to be heard.

Second, the investors complain that the letters did not provide enough time to respond. Until a lawsuit is filed against the investors, however, the Court has no role to play in policing deadlines. The Receiver is tasked with discretion in recovering funds for the estate, with the only limitation being his "obligation to

---

[1] The investors refer to themselves as "lenders," but as courts have recognized, "[t]he substance, not the form, of the transactions properly governs the reallocation of assets in the aftermath of the collapse of the Ponzi scheme . . . . regardless of whether the investment, in form, is debt or equity." *In re Int'l Mgmt. Assocs., LLC*, No. 1:09-mp-601-PWB, 2009 WL 6506657, at *10 (Bankr. N.D. Ga. Dec. 1, 2009), *aff'd sub nom. Perkins v. Haines*, 661 F.3d 623 (11th Cir. 2011).

expend receivership funds in a reasonable and cost-effective manner," a broad mandate. (Receivership Order ¶¶ 42–43).

Third, the investors argue that the demand letters seek payment from individual retirement accounts, which could subject the investors to tax penalties. But as the Receiver explains, the tax consequences to any particular investor of a repayment of false profits to the Receivership Estate are not relevant to the Receiver's duties. To the extent the letters seek relief, such relief is denied.

## II. Motion to Seal

Robin Rowan, "a former agent of Drive Planning, LLC who has been sued by the Court appointed Receiver," seeks to file complaints about the Receiver under seal. (Doc. 413). As the Court explained in an earlier Order in this case, sealing documents is disfavored in federal court:

> What [Movant] and others request is, essentially, that the Court make decisions based on information that the public and other parties, such as the SEC, the Receiver, and the Burkhalters, cannot see. But when the Court makes decisions, it has to do so based on reasons and evidence that are clear to the parties and the public. While there are exceptions to this rule, the fact that a statement is of a personal or sensitive nature alone is not a basis to seal a document. The Court understands the harm that the investors have suffered. It is a driving force behind the decisions the Court has already made in supervising the Receiver. The Court has taken steps to make sure the Receivership moves expeditiously to help investors recover as much of their investment as possible, while making sure the Receiver acts in the interests of the Receivership estate and by extension the

> investors. The Court has already permitted several investors to file letters on the docket voicing their concerns. . . . But these letters were filed publicly.

(Doc. 249). The same conclusion holds true here. The Court recognizes Ms. Rowan's concerns about privacy, but those concerns can be ameliorated by redaction, not outright sealing. The Motion to Seal is denied without prejudice to Ms. Rowan refiling her complaint publicly with appropriate redactions. Otherwise, the Court will leave the document under seal but will not review or consider it for any purpose. *See* NDGa LR App. H at A21.

## III. Motions for Reconsideration

The Court turns finally to the motions to reconsider the Appeals Order. Under Local Rule 7.2, NDGa., a motion for reconsideration shall not be filed as a matter of routine practice. *See Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1223 (N.D. Ga. 2012) (citing LR 7.2(E), NDGa). If a party finds it "absolutely necessary" to file, the motion must be filed within 28 days after entry of the order or judgment. LR 7.2(E), NDGa. Such absolute necessity arises only when there is "(1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Bryan v. Murphy*, 246 F. Supp. 2d 1256, 1258–59 (N.D. Ga. 2003) (citation omitted).

A motion for reconsideration may not be used "to present the court with arguments already heard and dismissed or to repackage familiar arguments to test

whether the court will change its mind." *Id*. at 1259. Nor may it be used "to offer new legal theories or evidence that could have been presented in conjunction with the previously filed motion or response, unless a reason is given for failing to raise the issue at an earlier stage in the litigation." *Adler v. Wallace Comput. Servs., Inc.*, 202 F.R.D. 666, 675 (N.D. Ga. 2001). "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998)). Finally, "[a] motion for reconsideration is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Pres. Endangered Areas of Cobb's Hist., Inc. v. U.S. Army Corps of Eng'rs*, 916 F. Supp. 1557, 1560 (N.D. Ga. 1995), *aff'd*, 87 F.3d 1242 (11th Cir. 1996). "If a party presents a motion for reconsideration under any of these circumstances, the motion must be denied." *Bryan*, 246 F. Supp. 2d at 1259; *see also Brogdon ex rel. Cline v. Nat'l Healthcare Corp.*, 103 F. Supp. 2d 1322, 1338 (N.D. Ga. 2000).

In most circumstances, "clear error" means that "the record lacks substantial evidence" to support a particular finding. *Robinson v. Sauls et al.*, No. 1:18-cv-131-TCB, 2021 WL 2103583, at *1 (N.D. Ga. Mar. 4, 2021) (citing *San Martin v. McNeil*, 633 F.3d 1257, 1265 (11th Cir. 2011) and *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1292–93 (S.D. Fla. 2012) ("[C]lear error or manifest injustice occurs where the Court has patently misunderstood a party, or

has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . . Such problems rarely arise and the motion to reconsider should be equally rare.”)).

**A. Claim No. 1000565**

Mark Haye’s motion seeks reconsideration of the Appeals Order to the extent it affirmed the Receiver’s complete disallowance of Claim No. 1000565, which included in part Mr. Haye’s claims for commissions for brokering Drive Planning investments. (Doc. 417). The Receiver opposed the motion. (Doc. 427).

In the Appeals Order, the Court noted that while “commissions paid by Ponzi schemes to brokers can be supported by the reasonably equivalent value of the brokers’ services,” it was Mr. Haye’s burden to establish “evidence supporting the value of his services,” which he failed to meet in his initial claim as well as in his appeal. (Doc. 413 at 17–18). Mr. Haye now seeks a third bite at the apple.

The problem with Mr. Haye’s submission is that, even if the Court were to give Mr. Haye a third opportunity to present evidence he had available when he first filed his claim, Mr. Haye’s motion still does not provide sufficient evidence of the value of his services. Instead, Mr. Haye “respectfully requests leave to supplement the record with additional supporting documentation and sworn statements.” (Doc. 417 ¶ 7). This is too little, too late.

The claims allowance process was designed to be a summary process to be completed expeditiously so that the property of the Receivership Estate can be distributed to investors without unnecessary delay. Aside from dragging out the process further, Mr. Haye fails to justify his delay in offering available evidence, a basic requirement of a motion to reconsider. *Adler*, 202 F.R.D. at 675. The motion is denied.

**B. Claim No. 1001973**

Michael Seman's Motion for Reconsideration seeks reconsideration of the Appeals Order to the extent that it partially allowed Claim No. 1001973. (Doc. 426). Mr. Seman's claim was filed in the amount of $630,000 but only allowed in the amount of $130,000, because while he could document that a substantial cash transaction with Drive Planning had occurred, he could not document the exact dollar amount of the transaction. (Doc. 413 at 21–23). The motion for reconsideration includes two affidavits post-dating the Appeals Order from witnesses to the transaction who confirm the cash payment to Drive Planning and the exact dollar amount. Neither the Receiver nor any party in interest filed any response in opposition to Mr. Seman's motion, which indicates no opposition to the motion. LR 7.1(B), NDGa. For the reasons given in the motion and based on the lack of opposition by any party in interest, the Court will grant the motion and allow the claim in the full amount of $630,000.

## Conclusion

For the above reasons, it is

**ORDERED** that to the extent the documents entitled "Lender's Letter Objection to Receiver's Failure to Comply with Court-Approved Settlement Procedures and Request for Court Intervention" (Docs. 418, 424, 428, 431, 433) seek relief from the Court, such relief is **DENIED**. It is

**FURTHER ORDERED** that Robin Rowan's Motion to Seal (Doc. 419) is **DENIED**. It is

**FURTHER ORDERED** that Mark Haye's Motion for Reconsideration of the Court's Determination of Claim No. 1000565 (Doc. 417) is **DENIED**. It is

**FURTHER ORDERED** that Michael Seman's Motion for Reconsideration of the Court's Determination of Claim No. 1001973 (Doc. 426) is **GRANTED**, and Claim No. 1001973 is **ALLOWED** in the amount of $630,000.

**SO ORDERED** this 12th day of August, 2026.



Victoria Marie Calvert
United States District Judge