**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

DRIVE PLANNING, LLC, and RUSSELL TODD BURKHALTER,

Defendants,

and

JACQUELINE BURKHALTER, THE BURKHALTER RANCH CORPORATION, DRIVE PROPERTIES, LLC, DRIVE GULFPORT PROPERTIES LLC, and TBR SUPPLY HOUSE, INC.,

Relief Defendants.

Case No. 1:24-cv-03583-VMC

**RECEIVER'S UNOPPOSED MOTION TO APPROVE SALE OF REAL PROPERTY ON EAST 2ND STREET IN BLUE RIDGE, GEORGIA BEFORE SEPTEMBER 22, 2026 CLOSING DEADLINE**

Kenneth D. Murena, as Court-Appointed Receiver (the "Receiver") in the above-styled action, through undersigned counsel, hereby files this unopposed

Motion to approve sale of real property located on East 2nd Street in Blue Ridge, Georgia before the September 22, 2026[1] closing deadline, and in support states:

**BACKGROUND**

This action commenced on August 13, 2024, with the filing of the Securities and Exchange Commission's ("SEC") Complaint against Defendants Drive Planning, LLC and Russell Todd Burkhalter and Relief Defendants Jacqueline Burkhalter, The Burkhalter Ranch Corporation, Drive Properties, LLC, Drive Gulfport Properties LLC, and TBR Supply House, Inc. On August 13, 2024, the Court entered an Order Appointing Receiver (the "Appointment Order"), appointing Kenneth D. Murena, Esq. as Receiver of Drive Planning, LLC ("Drive Planning"). *See* ECF No. 10.

The Court found that the appointment of a Receiver was necessary to marshal, preserve, and recover assets derived from fraudulent activities tied to the Defendants' alleged Ponzi scheme. *See id.* at pp. 1-2. The Receiver was tasked with, *inter alia*, securing assets acquired with or otherwise traceable to investor funds, managing the Receivership Estate, and liquidating assets for the benefit of

[1] The Receiver acknowledges the Court's request that it be given at least three weeks to consider motions to approve real estate sales, but it took longer than expected to confirm that all parties consent to the proposed sale. In the event the Court is unable to rule on this Motion prior to the September 22nd closing deadline, the parties will revise the Purchase and Sale Agreement and other closing documents to extend the deadline.

defrauded investors. *See id*. at ¶¶ 4-7. Accordingly, the Receiver took immediate possession and control of, among other properties, real property located on East 2nd Street, in Blue Ridge, Georgia (the "East 2nd Property"), which was purchased by Drive Planning, LLC but titled in the name of Drive Properties, LLC. The East 2nd Property is a vacant home that generates no income for the Receivership Estate and instead imposes ongoing carrying costs, including expenses associated with maintenance, lawn care, and other upkeep necessary to keep the property in a presentable condition for marketing and showings. When the Receiver took control of the East 2nd Property, it was occupied by a tenant with a large dog that caused significant damage to the property. The damages included, among other things, extensive baseboard damage and substantial scratching and deterioration to the exterior patio wood. The Receiver obtained repair estimates for the necessary remediation and restoration work, which exceeded $30,000.[2]

Based on the Receiver's investigation of the Georgia real estate market, and in particular the area where the East 2nd Property is located, and consultation with multiple realtors familiar with that area, with due regard to realizing the true and proper value of the East 2nd Property and preventing waste and/or incurring

---

[2] The Receiver is evaluating potential claims against the former tenant relating to the damage to the property. However, there were no photographs or documented condition reports of the property from prior to the tenant taking possession, and the tenant has asserted that certain damages pre-dated his occupancy.

expenses to maintain it, the Receiver believed it would be in the best interest of the Receivership Estate to immediately start marketing the property for sale by listing it for sale with a reputable and experienced realtor.

After interviewing several qualified realtors, the Receiver selected Harry Norman Realtors ("Harry Norman") to assist him in connection with the marketing and sale of the East 2nd Property. Harry Norman has extensive experience in selling real estate throughout Blue Ridge, Georgia, is familiar with the local real estate market and the community in which the East 2nd Property is located, and has an impressive sales record within the area.

Accordingly, the Receiver entered into an exclusive listing agreement for the East 2nd Property, which provided, among other things, the commission structure for Harry Norman and any broker of a buyer in the sale of the East 2nd Property. In particular, in the event that the buyer is introduced to Harry Norman through an independent broker, each broker would be entitled to receive a commission in the amount of 2.5%, for a total of 5% (as opposed to the market rate of 6%), of the purchase price as full compensation for services they performed in connection with the sale of the East 2nd Property. In the event Harry Norman procures the buyer and does not need to share the commission with another broker, the total commission to Harry Norman would be 4%. This proposed commission structure is below the market rates and will result in a meaningful savings for the Estate.

## FACTUAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE

The East 2nd Property was purchased on May 20, 2022 for approximately $725,700 and titled in the name of Drive Properties LLC. The property was formally listed for sale on or about October 28, 2024 at $795,000, based on market conditions and the recommendation of Harry Norman.

Despite Harry Norman's marketing efforts, market conditions and the condition of the property necessitated several price reductions over time in an effort to generate buyer interest, eliminate the carrying costs of the property, and maximize value for the Receivership Estate. In January 2025, the listing price was reduced to $755,000. Thereafter, when no offers were received, additional reductions were made, including to $697,000 in April 2025, followed by further reductions to $689,000, $639,000, and ultimately to $597,000 as the Receiver continued evaluating market response and carrying costs associated with the property. The East 2nd Property is located in Blue Ridge, Georgia, an area largely driven by tourism and second-home ownership. Since the Receiver took possession of the property, the market for discretionary vacation and second-home purchases in the area has softened considerably, resulting in reduced buyer demand and longer marketing periods for similarly situated properties. In addition to broader market conditions, as stated above, the property requires substantial repairs and remediation arising from tenant-related damage.

Notwithstanding significant marketing efforts and multiple price reductions, the property received very limited buyer interest. Since the Receiver listed it for sale in 2024, the property has received four formal purchase offers. The first buyer ultimately agreed to a purchase price of approximately $697,000. However, prior to closing, the buyer became ill and was unable to complete the transaction, resulting in the contract terminating through no fault of the Receiver. Thereafter, the Receiver continued marketing the property and ultimately secured a second potential buyer, at a purchase price of $660,000 in May 2025. However, the buyer ultimately walked away after executing a purchase and sale agreement.[3] The Receiver also received additional expressions of interest and potential offers during the marketing period, but all of them were well below the properties market value, including offers in the range of approximately $300,000 to $400,000, which the Receiver determined were not in the best interests of the Receivership Estate.

Subsequently, the Receiver received an offer to purchase the Property from another potential purchaser who ultimately agreed to a purchase price of $597,000.

[3] Following the termination of the prior contract, the Receiver, through counsel, issued a demand asserting potential claims against the purchaser arising from the failure to close, including potential claims for specific performance and damages. After evaluating the anticipated costs of litigation, the uncertainty and delay associated with pursuing such claims, and the Receiver's obligation to continue promptly marketing and preserving the value of the property for the benefit of the Receivership Estate, the Receiver determined that continued marketing and sale efforts represented the most economically prudent course of action under the circumstances.

The Receiver sought Court approval of the proposed sale by filing the Receiver's *Unopposed Motion to Approve Sale of Real Property Located on East Second Street in Blue Ridge, Georgia Before July 31, 2026 Closing Deadline*. *See* ECF No. 422. On June 11, 2026, the Court entered an Order granting the Motion and approving the sale. *See* ECF No. 423. The proposed sale, however, was contingent upon the buyer's sale of the buyer's existing residence. Because the buyer could not sell that residence, the transaction ultimately did not close.

Anticipating that possibility, the Court's Order authorized the Receiver, in the event the approved sale did not close, to immediately sell the Property to another buyer for at least $597,000 on terms similar to those previously approved, without the Estate incurring the additional expense associated with seeking further Court approval. *See* ECF No. 423. The Receiver has now secured another buyer for the Property, as set forth below.

The Receiver has received a new offer from a potential buyer (the "Buyer") to purchase the Property. The Buyer initially offered $550,000, and, following negotiations, the Receiver and the Buyer agreed to a purchase price of $575,000, representing approximately 96.3% of the Property's $597,000 listing price (and the prior purchase price approved by the Court).

In light of the ongoing carrying costs associated with the property, the condition of and repairs needed to the property, prior failed transactions, softened

market conditions in the Blue Ridge second-home market, the limited buyer interest and lack of offers received during the extended marketing period following the cancelled contracts, the Buyer's offer of $575,000 representing 96.3% of the current listing price, and other favorable proposed terms, and the Receiver's broker's estimation that this price represents the current market value of the property, the Receiver accepted the Buyer's offer and entered into a Purchase and Sale Agreement, subject to input from the SEC, Defendant Burkhalter, and the Relief Defendants, and approval by this Court. A copy of the Purchase and Sale Agreement is attached as **Exhibit A**. The Purchase and Sale Agreement provides for a $5,000 earnest money deposit, no contribution by the Receiver toward the Buyer's closing costs, a closing date of September 22, 2026, a due diligence period through September 9, 2026, and a loan approval contingency. The Buyer intends to finance up to 80% of the purchase price

Additionally, because there is no mortgage on the property, the Estate would recover the full net proceeds from the sale. Therefore, for the foregoing reasons, the Receiver believes it would be in the best interest of the Receivership Estate to sell the East 2nd Property now for the purchase price of $575,000, pursuant to the Purchase and Sale Agreement. *See* Exhibit A.

Because it is possible that the sale to the Buyer does not close, the Receiver also seeks this Court's approval to sell the East 2nd Property to another buyer for at

least $575,000, so that the Estate need not incur further expenses seeking Court approval for the sale of the property at or above its current market value.

The Appointment Order provides the Receiver the authority to ". . . dispose of any Receivership Property, *other than real estate*, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate". *See id.* at ¶ 37 (emphasis added). Accordingly, the Receiver seeks this Court's approval of the sale of the East 2nd Property pursuant to the Purchase and Sale Agreement attached as Exhibit A because it is in the best interests of the Estate for the reasons set forth herein.

**LEGAL BASIS SUPPORTING APPROVAL OF PRIVATE SALE**

Judicial sales of real property such as the sale of the East 2nd Property are governed by 28 U.S.C. § 2001. Pursuant to subsection (b) of that statute, a receiver may conduct a judicial sale of real property as a private sale subject to court approval after notice to all interested parties and hearing.[4] This Court has authority to approve a private sale of real property, and has significant discretion in setting the terms and

[4] 28 U.S.C. § 2001 (b) provides in pertinent part:

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interests of the estate will be conserved thereby.

conditions for such sale, provided that the Court believes the sale is in the best interest of the Estate. *See SEC v. McClintock,* No. 1:12-CV-04028-SCJ, 2020 U.S. Dist. LEXIS 266272 at *5 (N.D. Ga. July 20, 2020) (authorizing a judicial sale of property under 28 U.S.C. § 2001(b) because it was "clearly in the best interests of the Receivership Estate."); *see also U.S. v. Coal Branch Corp.*, 390 F.2d 7, 9-10 (E.D. Pa. 1968) ("There can be no doubt that Congress has authorized the federal judiciary to use sound discretion in setting the terms and conditions for judicial sales."). "It is a well settled rule that, except in cases of abuse, appellate courts will not disturb the exercise of a district court's discretion in setting the terms and conditions for a judicial sale and the confirmation thereof." *Coal Branch Corp.*, 390 F.2d at 9-10. Further, the Court can waive the specific requirements of 28 U.S.C. § 2001 where it believes that the receiver has substantially complied with the requirements of the statute in connection with the sale of real property. *See McClintock,* 2020 U.S. Dist. LEXIS 266272 at *5.

Moreover, the Receiver believes that his engagement of an experienced real estate broker, the significant efforts made to market the East 2nd Property for sale, including without limitation, listing the East 2nd Property in the Multiple Listing Service and aggressively marketing the East 2nd Property to qualified potential purchasers, performing an extensive analysis of the real estate market, including comparable sales and listings, exceeds the requirements of 28 U.S.C. § 2001, which

require three appraisals and publication of the proposed sale of the East 2nd Property for 10 days. The Receiver believes waiving the requirements of three appraisals and publishing the proposed sale, in light of the costs associated therewith, is particularly appropriate here and soundly within the Court's discretion based on the favorable offer received, the current market value of the East 2nd Property, and the proposed expedited closing of the sale.

Accordingly, the Receiver respectfully requests that the Court exercise its discretion to approve the sale of the East 2nd Property under the terms provided herein, find that the Receiver has substantially complied with the intent of 28 U.S.C. § 2001, and relieve the Receiver of the statutory requirements of a judicial sale of real property as permitted under applicable case law.

## FINALITY OF ORDER

In light of the consent of all parties to the sale of the East 2nd Property contemplated by the Purchase and Sale Agreement, the Receiver requests that the Court order that any reversal or modification on appeal of the authorization to consummate the sale shall not affect the validity of the sale of that property to the Buyer or its assigns. This provision will allow for the immediate conveyance of the property with finality, such that the title insurance company will be able to write the necessary title policy to close the sale without waiting for the expiration of the deadline to appeal this Court's order approving the sale. Good cause exists for

including this provision in the sale approval order because any delay in closing the sale will result in increased carrying costs for the Estate.

## CERTIFICATION OF CONFERENCE

The undersigned counsel certifies that the Receiver sent an email to counsel for the SEC, and undersigned counsel sent emails to Defendant Burkhalter and to counsel for the Relief Defendants, providing details regarding the sale proposed herein and requesting that they confirm whether they have any objections thereto, and such counsel and Mr. Burkhalter informed the Receiver or undersigned counsel that the SEC, Defendant Burkhalter, and the Relief Defendants have no objections to the sale.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court enter the proposed order, attached hereto as **Exhibit B**, approving the sale of the East 2nd Property to the Buyer in accordance with the terms and conditions set forth in the Purchase and Sale Agreement, attached hereto as Exhibit A, prior to the September 22, 2026 closing deadline, and grant such other and further relief as the Court deems just and proper.

Dated: September 9, 2026

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*

*Lead Counsel for Kenneth D. Murena, as Court-Appointed Receiver*
Russell Landy
Florida Bar No. 44417
rlandy@dvllp.com
*Admitted Pro Hac Vice*
Adriana M. Pavon
Florida Bar No. 1025060
apavon@dvcattorneys.com
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960

*Local Counsel for Kenneth D. Murena, as Court-Appointed Receiver*
Henry F. Sewell, Jr.
Georgia Bar No. 636265
Buckhead Centre
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
Telephone: (404) 926-0053
hsewell@sewellfirm.com

**CERTIFICATE OF SERVICE, FONT AND MARGINS**

I HEREBY CERTIFY that on September 9, 2026, I electronically filed the foregoing Motion using the CM/ECF System that will automatically send e-mail notification of such filing to all registered attorneys of record, and I served the Motion on Defendant Todd Burkhalter via e-mail and certified mail to his home address in St. Petersburg, Florida.

I FURTHER CERTIFY that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Dated: September 9, 2026.

s/ *Adriana M. Pavon*
Adriana M. Pavon , Esq.
Florida Bar No. 1025060
*Admitted Pro Hac Vice*
DAMIAN | VALORI | CULMO
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
apavon@dvcattorneys.com