EXHIBIT A

HARRY NORMAN Forbes GLOBAL PROPERTIES

# COUNTEROFFER TO OR MODIFICATION OF THE UNACCEPTED ORIGINAL OFFER

GeorgiaREALTORS®

This Counteroffer is made at 11:00 o'clock a m. on the date of August 19, 2026.

**2026 Printing**

**This is a Counteroffer** to or modification of, as the case may be, (hereinafter collectively "Counteroffer") the unaccepted original offer set forth in the Purchase and Sale Agreement dated August 11, 2026 including all exhibits attached hereto or incorporated by reference therein ("Original Offer") for property located at: REDACTED, **Blue Ridge**, Georgia **30513** ("Property").

**A.** **Previous Counteroffers Rejected.** The party making this Counteroffer acknowledges that in doing so: 1) it constitutes a rejection of the Original Offer as presented and all previous counteroffers; 2) the Original Offer and all previous counteroffers are no longer available for acceptance; 3) no previous counteroffer(s) shall be considered a part of any agreement between the parties; and 4) nothing requires the other party to continue the negotiations.

**B.** **Relationship between Original Offer and This Counteroffer.** The Original Offer is hereby incorporated by reference into this Counteroffer. However, the terms of this Counteroffer shall modify and control over any conflicting or inconsistent provisions contained in the Original Offer.

**C.** **Effect of Accepting This Counteroffer**. When this Counteroffer is signed by the Buyer and Seller and a copy of the same is delivered to both parties, the Original Offer as modified by this Counteroffer constitutes a legally binding agreement. Since the Original Offer (including all exhibits thereto) is incorporated by reference into this Counteroffer, only this Counteroffer needs to be signed to create a legally binding agreement between the parties (even though other parts of the Agreement, including exhibits, have not been signed or initialed).

**D.** **Clean Copy of Agreement.** At any time prior to closing, either party if so requested by the other shall sign a conformed or "clean" copy of the Agreement combining the terms of Original Offer with the controlling and supplemental provisions of this Counteroffer into one (1) document, including initialing or signing, as the case may be, all exhibits. (Include SS622 Conformed Copy of Agreement in conformed or "clean" copy of Agreement) All dates referenced in this conformed or clean copy shall be the dates reflected in the binding agreement rather than the date the conformed or clean copy is signed.

**E.** **Terms and Conditions.** The following terms and conditions of the Original Offer are modified as follows: ***[The sections not filled in or marked N/C (for "no change" which shall mean that no change is being proposed to that section of the agreement) shall not be a part of this Counteroffer and shall remain the same as set forth in the Original Offer.]***

| | |
|---|---|
| **Purchase Price of Property to be Paid by Buyer:**<br>$ 575,000 | **Closing Costs:**<br>**Seller's Contribution at Closing: $ 0** |
| **Closing and Possession.**<br>Closing Date shall be N/C with possession of the Property transferred to Buyer at<br>☒ Closing **OR** ☐ _____ days after Closing at ____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement). | |
| **Holder of Earnest Money ("Holder"):** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)<br>N/C | **Closing Law Firm ("Closing Attorney"):**<br>N/C<br>**Phone Number:**<br>N/C |
| **Earnest Money:** Earnest money will be paid to Holder in a method of payment acceptable to the Holder.<br>☐1. $_____ as of the Offer Date.<br>☒2. $ N/C within ____ days from the Binding Agreement Date.<br>☐3. _____ | |
| **Inspection and Due Diligence.** Property is being sold subject to a Due Diligence Period of N/C days from the Binding Agreement Date. | |
| **Time Limit of this Counter Offer:** This Counteroffer, which incorporates and controls over the Original Offer, shall expire at 4:00 o'clock p .m. on the date of August 20, 2026 unless prior to that time it is accepted in writing and notice (as that term is defined in the Original Offer) is delivered to the party who made the Counteroffer. | |

Buyer(s) Initials ________________ Seller(s) Initials ________________

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Gary Mills IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**F. <u>Other Modifications to the Original Offer</u>:**

1. Purchaser acknowledges and agrees that except for the warranties and representations contained in the Agreement and in the closing documents delivered by Seller to Purchaser at Closing, upon Closing, Seller shall sell and convey to Purchaser and Purchaser shall accept the Property AS IS, WHERE IS, and WITH ALL FAULTS.
2. Notwithstanding any other provisions of this Agreement, Purchaser acknowledges and agrees that Seller is acting solely in its capacity as Receiver for the record owner of the Property, pursuant to court order from the U.S. District Court for the Northern District of Georgia (the "Court"). In addition to other contingencies set forth in this Agreement, Seller's obligations under this Agreement shall be further subject to any conditions, qualifications or restrictions which the Court may impose. In the event Seller has not obtained Court approval prior to the Closing, Seller may unilaterally extend Closing, at its option, for up to sixty (60) days in order to obtain such approvals. In the event the Court has not granted its approval, prior to the extended Closing Date, Seller shall instruct Escrow Agent to return the Deposit to Purchaser within five (5) business days, and this Agreement shall be deemed terminated without either party having any further liability to the other, unless otherwise agreed to by the parties.
3. Purchaser represents and warrants that neither it nor any of its employees, officers, directors, principals, managers, members, or affiliates: (A) is a creditor, an equity security holder, or an insider of Drive Planning, LLC ("Drive Planning"), or any of Drive Planning's affiliates; (B) is not currently, nor has been a director, officer, principal, member, manager, or employee of Drive Planning or any of Drive Planning's affiliates; and (C) has any contractual relationship with the Drive Planning or Drive Planning's affiliates, other than arising from this Agreement. The representations and warranties contained in this section shall be reaffirmed by Purchaser at Closing and shall survive Closing.
4. Exhibit "F" Seller's Property Disclosure Statement Exhibit shall be deleted and Seller shall have no obligation to provide this exhibit.
5. Property is being sold inclusive of all furniture, fixtures, appliances, hot tub, bedding, and all other items remaining in and around the home at the time and date of the Original Offer. Purchaser and Seller agree to execute a Bill of Sale at the time of Closing for these items at no additional cost to Purchaser.
6. Section 10.c. of the Original Offer shall be revised to reflect that Purchaser is a licensed real estate agent in the state of Georgia.

☐ **Additional pages are attached.**

Buyer(s) Initials ______________________ Seller(s) Initials ______________________

**This Counteroffer is made at** 11:00 **o'clock** a **m. on the date of** August 19, 2026.

**By signing this Counteroffer, Buyer and Seller acknowledge that they have each read and understood this Counteroffer and agree to its terms.**

If Buyer or Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

## Buyer Acceptance and Contact Information

1 **Buyer's Signature**

**Ronald Zamora** — Print or Type Name
**August 19, 2026** — Date

3800 Cutcane Road, Mineral Bluff, GA 30559 — Buyer's Address for Receiving Notice

305-467-7009 — Buyer's Phone Number: ☒ Cell ☐ Home ☐ Work

rzamora@zabile.com — Buyer's E-mail Address

2 **Buyer's Signature**

**Marisela Zamora** — Print or Type Name
**August 19, 2026** — Date

3800 Cutcane Road, Mineral Bluff, GA 30559 — Buyer's Address for Receiving Notice

305-467-7130 — Buyer's Phone Number: ☒ Cell ☐ Home ☐ Work

mzamora0713@gmail.com — Buyer's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Seller Acceptance and Contact Information

1 **Seller's Signature**

**Kenneth Dante Murena, Receiver** — Print or Type Name
**Aug 19, 2026** — Date

for Drive Planning, LLC 1000 Brickell Ave. Ste. 1020 — Seller's Address for Receiving Notice

Miami, FL 33131 305-371-3960 — Seller's Phone Number: ☐ Cell ☐ Home ☒ Work

kmurena@dvcattorneys.com — Seller's E-mail Address

2 **Seller's Signature**

Print or Type Name — Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's E-mail Address

☐ **Additional Signature Page (F267) is attached.**

## Buyer's Broker/Affiliated Licensee Contact Information

Buyer Brokerage Firm

**Broker/Affiliated Licensee Signature** — Date: **August 20, 2026**

**Ronald Zamora** — Print or Type Name
GA Real Estate License #

305-467-7009 — Licensee's Phone Number
Fax Number

ronald.zamora@compass.com — Licensee's E-mail Address

NEGBOR — REALTOR® Membership

56 A Mountain Street, Blue Ridge, GA 30513 — Broker's Address

Broker's Phone Number
Fax Number

833 — MLS Office Code
H-67491 — Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

Seller Brokerage Firm

**Broker/Affiliated Licensee Signature** — Date: **Aug 19, 2026**

**Gary R Mills** — Print or Type Name
304058 — GA Real Estate License #

404-229-9998 — Licensee's Phone Number
Fax Number

gary.mills@harrynorman.com — Licensee's Email Address

ACBR — REALTOR® Membership

4651 Olde Towne Pkwy, Marietta, Ga 30068 — Broker's Address

770-977-9500 — Broker's Phone Number
Fax Number

HNBH08 — MLS Office Code
H-19900 — Brokerage Firm License Number

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of Aug 19, 2026 and has been filled in by Gary R Mills.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# PURCHASE AND SALE AGREEMENT

**Offer Date:** 08/11/2026

Georgia REALTORS®

**2026 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   - a. **Property Identification:** Address: REDACTED
     City Blue Ridge, County Fannin, Georgia, Zip Code 30513
     MLS Number: ______ Tax Parcel I.D. Number: BR01 006
   - b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
     - ☐ (1) attached as an exhibit hereto;
     - ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
     - ☐ (3) the same as described in Deed Book ______, Page ______, et. seq., of the land records of the above county; **OR**
     - ☐ (4) Land Lot(s) ______ of the ______ District, ______ Section/ GMD, Lot ______, Block ______, Unit ______, Phase/Section ______ of ______ Subdivision/Development, according to the plat recorded in Plat Book ______, Page ______, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.** $ 550.000.00

3. **Seller's Monetary Contribution toward Buyer's Costs at Closing:** $ 0.00

4. **Closing Date and Possession.** Closing Date shall be 09/22/2026 with possession of the Property transferred to Buyer ☐ upon Closing **OR** ☐ ___ days after Closing at ___ o'clock ☐ AM **OR** ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Closing Law Firm ("Closing Attorney").** Wilson Pruitt **Phone Number:** 706 946 6808

6. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.) Wilson Pruitt

7. **Earnest Money.** Earnest money will be paid to Holder in a method of payment acceptable to the Holder.
   - ☐ **a.** $______ as of the Offer Date.
   - ☐ **b.** $5000.00 within 7 days from the Binding Agreement Date.
   - ☐ **c.** ______.

8. **Inspection and Due Diligence.**
   - a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 21 days from the Binding Agreement Date.
   - b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
     - (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
     - (2) shall pay directly to Seller additional option money of $______ by ☐ check ☐ ACH or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within ______ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at Closing and shall not be refundable to Buyer unless the Closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☐ was (attach F316 Lead-Based Paint Exhibit) **OR** ☐ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    - a. **Buyer's Broker is** Compass Georgia , LLC **and is:**
      - (1) ☐ representing Buyer as a client.
      - (2) ☐ working with Buyer as a customer.
      - (3) ☐ acting as a dual agent representing Buyer and Seller.
      - (4) ☐ acting as a designated agent where: ______ has been assigned to exclusively represent Buyer.
    - b. **Seller's Broker is** Gary Mills **and is:**
      - (1) ☐ representing Seller as a client.
      - (2) ☐ working with Seller as a customer.
      - (3) ☐ acting as a dual agent representing Buyer and Seller.
      - (4) ☐ acting as a designated agent where: ______ has been assigned to exclusively represent Seller.
    - c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:

11. **Time Limit of Offer.** The Offer set forth herein expires at 5:00 o'clock p.m. on the date 08/14/2026.

Buyer(s) Initials RZ (08/11/26 dotloop verified) MZ (08/11/26 dotloop verified) ______ Seller(s) Initials ______ ______

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Laura Elleby IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of Closing Seller will convey good and marketable title to said Property by limited warranty deed subject to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway, wall, fence, mailbox, or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; (4) any title objection(s) raised by Buyer prior to Closing, which Seller was able to satisfy as set forth in the Examination section below or which Buyer waives; and (5) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement and the Closing of the sale of the Property to Buyer shall not terminate any such leases.
   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the Closing. If Seller fails or is unable to satisfy valid title objections at or prior to the Closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written Notice to Seller. Notwithstanding anything to the contrary contained herein, Seller shall be deemed to have satisfied Buyer's title objections if Seller can deliver good and marketable title to the Property, which for all purposes herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy, if such a policy can be issued on the Property or for the Buyer in this transaction.

2. **Purchase Price to be Paid by Buyer.** The purchase price shall be paid in U.S. Dollars by such method of delivery acceptable to the Closing Attorney including, but not limited to, wire transfer of immediately available funds. Where this Agreement refers to sales price, it shall mean the same thing as the purchase price.

3. **Closing Costs.**
   a. **Seller's Monetary Contribution toward Buyer's Costs at Closing:** At Closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any compensation obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller.
   b. **Additional Items Paid by Seller:** In addition to the above, the Seller shall also pay the fees and costs necessary for Seller to convey good and marketable title to the Property and costs and fees of the Closing Attorney: (1) to obtain, prepare and record title curative documents, payoffs and estoppel letters; (2) for Seller not attending the Closing in person; and (3) to handle and deliver Seller's payoffs and proceeds.
   c. **Items Paid by Buyer:** At Closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close or relating to the transaction.
   d. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of Closing shall be prorated as of the date of Closing. Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, the party who paid less than their pro rata share of taxes to the other party at Closing or collected more than their pro rata share of taxes from the other party at Closing, shall upon the issuance of the actual tax bill or any appeal being resolved, promptly pay the other party the amount necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at Closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer may unilaterally extend the Closing Date once for eight (8) days upon Notice to Seller if either Buyer's mortgage lender (including where the financing contingency has expired or there is no financing contingency) or the Closing Attorney are delayed and cannot fulfill their respective obligations by the date of the Closing, provided that the delay is not caused by Buyer (and with respect only to an extension resulting from the Closing Attorney being delayed and the Seller has not already unilaterally extended the Closing Date once for eight (8) days). Seller may unilaterally extend the Closing Date once for eight (8) days upon Notice to Buyer if Seller cannot either satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or bonding off the same or (b) do not prevent Seller from conveying good and marketable title as that term is defined herein) or the Closing Attorney is delayed and cannot fulfill its obligations by the date of the Closing, provided that the delay is not caused by the Seller (and with respect only to an extension resulting from the Closing Attorney being delayed, the Buyer has not already unilaterally extended the Closing Date once for eight (8) days).
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, fobs, access cards, codes and other similar equipment allowing access to the Property, the community, and community amenities. In the event Seller is required to return the above items to a third-party, Seller shall provide Buyer with instructions on how to contact the third-party to obtain such items.
   c. **Devices and Fixtures:** Except as set forth above, if a system, device, or fixture conveyed with the Property ("Device") cannot be operated without a specific controller, then not later than time of possession, Seller will provide Buyer with all controllers which are required for the operation of the Devices. Seller will also provide Buyer with all Device credentials, including but not limited to usernames and passwords, for all Devices including access and guest codes OR Seller may reset Devices to factory defaults and provide Buyer with default credentials for all Devices. Seller will terminate Seller's administrative access and any access granted to a third-party. The cost of transferring third-party support to these Devices and confirming that Seller's and/or third-parties' administrative access is terminated is the responsibility of the Buyer.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

5. **Closing Law Firm.** Buyer shall have the right to select the Closing Attorney to close this transaction, and hereby selects the Closing Attorney referenced herein. In all cases where an individual Closing Attorney is named in this Agreement but the Closing Attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the Closing Attorney. If Buyer's mortgage lender refuses to allow that Closing Attorney to close this transaction, Buyer shall select a different Closing Attorney acceptable to the mortgage lender. The Closing Attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing. In transactions where the Buyer does not obtain mortgage financing, the Closing Attorney shall represent the Buyer in preparing the Closing documents, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement signed by the parties and Closing Attorney, timely recording deeds and issuing an owner's title insurance policy. Other than those services specifically listed above, nothing herein shall obligate the Closing Attorney to perform other legal services, including, but not limited to, certifying or warranting title of the Property, for the Buyer, except pursuant to a separate engagement agreement signed by the Closing Attorney and the Buyer.

6. **Holder of Earnest Money.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving of earnest money. Such charge shall be collected separately from the payment of earnest money. The fact that Holder may represent one of the parties in this transaction as a client or is working with such party as a customer is acknowledged by all parties and shall not be a basis for Holder not performing any of its duties hereunder including, but not limited to, disbursing the earnest money based upon a reasonable interpretation of this Agreement. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) Banking Days after the Binding Agreement Date hereunder or (b) five (5) Banking Days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money, it must be drawn upon an account in a financial institution located in the United States. When the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check or ACH is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give Notice of the same to Buyer and Seller. Buyer shall have three (3) Banking Days from the date of receiving the Notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon Notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived. In the event Holder's bank charges any fees related to Buyer's check or ACH being dishonored, Buyer stopping payment, or Buyer's failure to deliver Earnest Money, Holder shall notify the Buyer and the Buyer shall immediately reimburse Holder the cost of the fees in addition to fulfilling their earnest money obligations.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at Closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the Closing of the Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that: 1) Holder first gives all parties at least ten (10) days Notice stating to whom and why the disbursement will be made; and 2) no interpretation shall be made by Holder dividing the earnest money between Buyer and Seller. Any party, real estate licensee or any other person having knowledge of or an interest in the disbursement of the earnest money may object to or provide information regarding the proposed disbursement by giving written notice of the same to Holder within the above referenced notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection or other information and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send Notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day Notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day Notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Buyer's Right to Inspect Property:** Unless otherwise specified herein, the Property is being sold in "as-is" condition with any and all faults. Therefore, Buyer and/or Buyer's representative(s) have the right to carefully inspect the Property to make sure it meets the needs of the Buyer. **If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.**

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

b. **Buyer's Responsibility to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer is solely responsible for becoming familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime, schools, zoning and land use, and government and transportation maps and plans. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.** Neither Seller nor Seller's Broker shall have any duty to disclose information about sex offenders in the neighborhood.

c. **Buyer's Inspection Rights Continue through Closing:** Upon prior Notice to Seller, Buyer and/or Buyer's representatives shall have the continuing right through Closing to enter the Property at Buyer's expense and at reasonable times to, among other things, and without limitation, conduct inspections, examinations, evaluations, appraisals, surveys and tests, meet contractors and vendors, measure for renovations, determine the condition of the Property and confirm that any agreed upon repairs have been made. Seller shall cause all utilities, systems and equipment to be on and all parts of the house to be accessible, including basements, attics, and crawlspaces so that Buyer may complete all inspections.

d. **Buyer's Inspection Indemnification Obligations: Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages related to the exercise of the above inspection rights by Buyer and Buyer's representatives, and Buyer shall promptly pay Seller the actual cost to restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was prior to such testing or evaluations. Notwithstanding the above, this indemnification obligation shall not apply to damage resulting from defects in the Property uncovered during the inspection of the Property.**

e. **Due Diligence Period:** If the Property is being sold subject to a Due Diligence Period, then: a) this Agreement shall be an option contract during which time Buyer shall have the option, for any reason or for no reason, to terminate this Agreement upon Notice to the Seller given prior to the expiration of the Due Diligence Period, in which case Buyer shall be entitled to a return of Buyer's earnest money without penalty; b) Buyer may, during the Due Diligence Period, seek to amend this Agreement to address any concerns Buyer has with the Property or this Agreement; and c) if Buyer has not terminated this Agreement as set forth above, Buyer shall accept the Property in "as-is" condition, subject to any amendment to this Agreement to address concerns agreed to by the parties.

f. **Seller's Duty to Disclose**: Seller shall disclose to Buyer any and all known latent or hidden defects in the Property that could not be discovered by the Buyer during a reasonably careful inspection of the Property.

g. **Warranties Transfer:** Seller agrees to transfer to Buyer, at Closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

h. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to Closing unless otherwise agreed to in writing by the Buyer and Seller.

9. **Lead-Based Paint and Paint Hazard Evaluation.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978. Buyer shall have the right to conduct a lead hazard evaluation within ten (10) days from the Binding Agreement Date (or other mutually agreed upon time period) and to terminate this Agreement without penalty upon Notice to Seller if lead-based paint and/or lead hazards are found (unless these rights are waived by Buyer in the Lead-Based Paint Exhibit (F316)). If the Lead-Based Paint Exhibit (F316) gives Buyer the right to terminate this Agreement if lead-based paint or lead hazards are found and such Notice of termination is not given within ten (10) days from Binding Agreement Date (or other mutually agreed upon time period), the right to terminate for lead-based paint and/or lead hazards shall be waived.

10. **Brokerage Relationships and Compensation in this Transaction.**

a. **Agency Disclosure:** No Broker in this transaction shall owe a fiduciary duty or any other duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

(1) **No Agency Relationship:** Buyer and Seller acknowledge that: a) if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party; and b) if the same brokerage firm is representing one party as a client and working with the other party as a customer, the Broker and all of Broker's affiliated licensees are representing the client.

(2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

(a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

(b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

(c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

(d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

ii. **Designated Agency Disclosure:** If Broker in this transaction is acting in a designated agency capacity, where one or more licensees of Broker are exclusively representing Buyer and one or more other licensees of Broker are exclusively representing Seller, Buyer and Seller consent to the same and acknowledge that each designated agent or agents shall exclusively represent the party to whom each has been assigned as a client.

**b. Compensation of Broker(s):** Buyer and Seller shall be obligated to pay their respective Compensation obligations, if any, to Broker(s) in full at Closing and as a pre-condition to Closing (so long as the same is permitted by Buyer's mortgage lender). The Closing Attorney is hereby authorized and directed to: (i) show the Compensation of the respective Broker(s) on the settlement statement at Closing; and (ii) disburse such Compensation to Broker(s) upon the consummation of Closing pursuant to the agreement(s) of party paying and receiving such Compensation. The acceptance by the Broker(s) of partial Compensation at Closing shall not relieve the party owing the same from paying the remainder after the Closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of Broker's Compensation).

**c. Disclaimer:** Buyer and Seller have not relied upon any: a) promises, statements or representations (collectively, "Representations") of Brokers other than what is included in this Agreement, in an amendment thereto or in a Pre-Showing Compensation Agreement. This shall include Representations made after this Agreement is entered into that have not been made as an amendment hereto and agreed to by all parties. Brokers shall have no duty to determine whether the identities of the Buyer and/or Seller are legitimate or inspect the Property for termites, defects, hazardous conditions and/or repairs. The Brokers herein shall have no duty to advise Buyer or Seller on any matter relating to the Property which could have been revealed if Buyer: a) had obtained, with respect to the Property, a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, or test for radon, asbestos, mold, moisture, methamphetamine, and/or lead-based paint; b) had the Property inspected by a professional, construction expert, or structural, soils or environmental engineer; c) had this Agreement and transaction reviewed by an attorney, financial planner, mortgage consultant or tax consultant; and/or d) consulted appropriate governmental officials, maps, laws and regulations to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, and whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the matters handled by the professionals referenced above or in the above tests, inspections, evaluations and reviews. Buyer and Seller should seek independent expert advice regarding the above matters and any other matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, inspect or opine on whether the construction of or repairs to the Property were done properly and that such tasks clearly fall outside the scope of real estate brokerage services. Buyer and Seller further acknowledge that Brokers have no duty to ensure that Seller has terminated Seller's and/or third-parties' administrative access to Devices.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) Notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. **Notice.**

**a. Generally:** All Notices given hereunder shall be in writing, legible and signed by the party giving the Notice. In the event of a dispute regarding Notice, the burden shall be on the party giving Notice to prove delivery. The requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by email or facsimile. The person delivering or sending the written Notice signed by a party may be someone other than that party.

**b. Delivery of Notice:** A Notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written Notice by a party; (2) in the case of delivery by a Delivery Service, when the written Notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the Notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written Notice is electronically sent to an email address or facsimile number of a party set forth herein (or subsequently provided by the party following the Notice provisions herein) even if it is not opened by the recipient.

**c. When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker representing a party in a client relationship shall be the authorized agent of the party for the limited purpose of receiving Notice and such Notice to any of them shall for all purposes herein be deemed to be Notice to the party. Notice to an authorized agent shall only be effective if the written Notice is sent to an address, facsimile number or email address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the Notice provisions herein) whether or not it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker are authorized to receive Notices delivered by a Delivery Service. The Broker and the Broker's staff shall not be authorized to receive Notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent(s) of a client shall be the authorized agent(s) of the client for the purposes of receiving Notice.

2. **Default.**

**a. Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty. Unless Seller has otherwise waived Seller's right to terminate due to the Buyer's failure to pay earnest money, Seller may, after the termination of this Agreement, sue Buyer for any portion of the Earnest Money that was either not paid, returned for insufficient funds, or the payment of which was stopped.

**b. Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either (i) seek the specific performance of this Agreement or (ii) terminate this Agreement upon Notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein, and Buyer may pursue any other remedy available at law.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

c. **Rights of Broker:** The Brokers involved in this transaction shall be express third-party beneficiaries of this Agreement, shall have the right to enforce all provisions in this Agreement that benefit them or afford them rights and defenses and shall have all remedies at law or in equity in the event of a breach of this Agreement. In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to each Broker involved in the transaction an amount equal to the Compensation each Broker would have received had the transaction closed. If the same Broker is working with or representing the buyer and seller in the transaction, the Compensation the Broker shall be entitled to in the event of the default shall be the total Compensation the Broker would have received from all parties in the transaction had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of Compensation to be paid to any broker involved in this transaction are incorporated herein by reference. Additionally, upon the request of any party to the transaction, the Broker(s) shall disclose in writing the Compensation they will receive when the transaction closes so that the party knows the exact amount of liquidated damages they will be obligated to pay should the party default herein.

d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and Compensation claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of Closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to Closing, Seller shall promptly give Notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above Notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of Closing shall be extended until the earlier of one year from the original date of Closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**

a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property or a portion thereof becomes subject to a condemnation proceeding or if Seller has received notice of a pending condemnation proceeding; and (2) provide Buyer with all written communications regarding the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon Notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the Closing Attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

c. **Delays Caused by Emergencies:** If at any point after the Binding Agreement date the Governor of Georgia declares a state of emergency for the county in which the Property is located, all unexpired time deadlines herein, including but not limited to the Closing Date, shall automatically extend for the number of days the emergency exists in that county, but not more than eight (8) days. Nothing herein shall prevent the parties by mutual agreement from proceeding forward without extending such deadlines. No deadline shall be extended if this Agreement becomes a binding agreement during a state of emergency.

d. **Digital Signatures:** For all purposes herein, a digital or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the Buyer's mortgage lender or the other party.

e. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the Closing Attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

f. **Entire Agreement, Modification and Assignment:** Except for any Pre-Showing Compensation Agreement or other separate agreement for the payment of Broker's Compensation, that is not a part of or amended by this Agreement, this Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be solely relied upon by the Buyer and binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement (or the other documents referenced above) shall be relied upon or binding upon any party hereto. This Agreement may not be amended, deemed to have been mutually departed from or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may only be assigned (SS611) or listed for sale in a multiple listing service by Buyer prior to Closing with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement, including but not limited to, the obligation to pay the Compensation owed by the assignor.

g. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of Closing.

h. **FIRPTA Affidavit:** Unless Seller is a "foreign person", as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, Seller shall deliver to the Closing Attorney at Closing a FIRPTA (Foreign Investment in Real Property Tax Act) Affidavit indicating that Seller is not a "foreign person". If Seller is a "foreign person", additional taxes may need to be withheld at Closing.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

i. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. These forms are generic and written with the interests of multiple parties in mind. The parties agree to carefully review the GAR Forms to be used in this transaction and modify the same to meet their specific needs. If any party has any questions about their rights and obligations under any GAR form, they should consult an attorney. Provisions in the GAR Forms may be subject to differing interpretations by our courts other than what the parties may have intended. Our courts may at times strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

j. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

k. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to Notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept Notices on behalf of a party (but not send Notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.

l. **No Recording of Agreement:** Buyer shall not record (or permit to be recorded) this Agreement or any memorandum or summary thereof in the Office of Land Records. Buyer shall be liable for damages for violating this section of the Agreement. Nothing herein shall prohibit Buyer from recording a *lis pendens* as part of filing a lawsuit claiming an interest in the Property.

m. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers Notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If Notice of accurate Binding Agreement Date is delivered, the party receiving Notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes Notice of the Binding Agreement Date to the other party.

n. **Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving Notice of Binding Agreement Date, the party objecting shall send Notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.

o. **Property to Be Delivered in Clean Condition:** Notwithstanding any other provision to the contrary, at the time of possession, Seller shall deliver the Property in clean condition, free of trash, garbage, debris, construction materials, pets and personal property of the Seller not otherwise identified in this Agreement as remaining with the Property. Firewood shall not be considered debris. This section shall apply even in transactions where the Property is being sold as-is.

p. **Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:

(1) Handwritten changes shall control over pre-printed or typed provisions;

(2) Exhibits shall control over the main body of the Agreement;

(3) Special Stipulations shall control over both exhibits and the main body of the Agreement, including handwritten changes thereto;

(4) Notwithstanding the above, the Amendatory Clause in the FHA or VA Exhibit shall control over inconsistent or conflicting provisions contained elsewhere in this Agreement. Buyer and Seller acknowledge and agree that the "Agreement to Seek Amendment to Purchase Price Prior to Termination" section in the FHA or VA Exhibits does not conflict and is not inconsistent with the Amendatory Clause.

(5) Except as otherwise provided herein, this agreement and any amendment thereto shall be enforceable, as between the parties, even without the signature of any Broker referenced herein. Notwithstanding the above, if any provision(s) in this Agreement, including a provision(s) in any amendment hereto, changes the total amount of Compensation due to any Broker from the total amount of Compensation said Broker has previously agreed to in writing, then such change to the Broker's Compensation shall only be binding if the Broker impacted by such change consents to the same in writing. If a Buyer's Broker Compensation Exhibit (F259) is attached as an exhibit to this Agreement, this Agreement shall not be enforceable unless this Agreement or such Buyer's Broker Compensation Exhibit is initialed by the Buyer's Broker and, in cases where the Seller's Broker is sharing a portion of its Compensation with the Buyer's Broker, the Seller's Broker.

(6) If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation fully and accurately reflects that party's intentions; b) accepts each special stipulation as if it were written by such party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

(7) If Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

**Copyright© 2026 by Georgia Association of REALTORS®, Inc.** 

q. **STATUTE OF LIMITATIONS: ALL CLAIMS OF ANY NATURE WHATSOEVER AGAINST BROKER(S) AND/OR THEIR AFFILIATED LICENSEES, WHETHER ASSERTED IN LITIGATION OR ARBITRATION AND SOUNDING IN BREACH OF CONTRACT AND/OR TORT, MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE ANY CLAIM OR CAUSE OF ACTION ARISES. SUCH ACTIONS SHALL THEREAFTER BE TIME-BARRED.**

r. **Survival of Agreement:** The following shall survive the Closing of this Agreement: (1) the obligation of a party to Compensation referenced herein; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) Buyer's indemnification obligations arising out of the inspection of the Property by Buyer and Buyer's representatives; (5) the section on condemnation; (6) the section on attorney's fees; (7) the obligations of the parties regarding ad valorem real property taxes; (8) obligations set forth in the Devices and Fixtures Section; (9) Seller's liability for not timely removing items from the Property that Seller agreed to remove; and (10) any obligations which the parties herein agree shall survive the Closing or may be performed or fulfilled after the Closing.

s. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

t. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

a. **Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

b. **Binding Agreement Date:** The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers Notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

c. **Broker:** In this Agreement, the term "Broker" shall mean the licensed Georgia real estate broker(s) or brokerage firm(s) and their affiliated licensees in this transaction except as may be specifically provided otherwise herein.

d. **Business Day:** A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

e. **Client:** "Client" shall mean a party who is being represented by a Broker pursuant to a written brokerage engagement agreement.

f. **Closing:** The Closing shall be the event in which the parties consummate the transaction set forth in this Agreement by: (1) the Seller tendering the deed referenced herein to the Property; (2) the Buyer paying the required consideration hereunder; (3) both parties properly signing all documents and paperwork as required by the Closing Attorney; and (4) both parties fulfilling other agreements set forth herein that must be fulfilled by the Closing (unless the same have been waived or amended). The Closing shall be deemed consummated when the Closing Attorney confirms to the parties that the Closing Attorney is in receipt of all required paperwork, funds, and approvals necessary to complete the transaction and directs for funds to be disbursed and documents to be recorded. All parties acknowledge that the deed will not normally be recorded in the land records on the day of Closing, and the payment of the sales proceeds may not always be made to Seller on the day of Closing (even though the Closing has been consummated) due to certain circumstances such as, for example, the Seller not being at the Closing in person, the Closing occurring after the cutoff for wiring funds that day, or the terms of an escrow agreements signed by the Seller have not been fulfilled resulting in which a portion of Seller's funds being held back.

g. **Compensation:** The term "Compensation" as used in this Agreement shall mean the compensation to be received by Broker, for performing real estate brokerage services in this transaction, regardless of whether it is a flat fee, percentage, bonus or some other method of compensation.

h. **Customer:** The term "Customer" shall mean a party or parties who are not being represented as clients by the Broker with whom the party or parties are working and for whom the Broker may only perform ministerial acts.

i. **Day:** For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

j. **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

k. **Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable".

6. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent emails attempting to get the buyer and/or Seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, Closing Attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or Sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the Seller's proceeds from the Closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or Seller wiring instructions. The buyer and/or Seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and Sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and Sellers should be on special alert for: 1) emails directing the buyer and/or Seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

7. **HEIGHTENED IDENTIFICATION PROCEDURES TO HELP PREVENT FRAUD; COVENANT NOT TO SUE.** There has been a significant increase in criminals attempting to sell properties they do not own by posing as the owners of those properties. To help prevent such crimes, Seller shall immediately, upon request of either the Seller's Broker and/or the Closing Attorney: 1) provide the requesting party with information confirming the Seller's identity, including a current government issued photo identification; 2) meet in person or through audio-visual conferencing to confirm the Seller's identity; and 3) if the Seller is a legal entity, provide the requesting party with the organizational and operating documents of such entity and current photo identification and either meet in-person or in audio-visual meeting with the executor, manager, trustee, general partner, officer, administrator, or other person in a comparable role of the legal entity to confirm their identity. Seller further agrees to cooperate with the Closing Attorney's heightened identification procedures which shall at least meet the standards, if any, supplied by a title insurance company for whom the Closing Attorney is an agent. Seller acknowledges that the transaction may not be able to close unless such procedures are followed. In the event Seller breaches its obligations hereunder, Seller shall be in default of this Agreement. Buyer acknowledges that identity theft may occur regardless of the measures undertaken by the parties, their respective brokers and the attorney(s) involved in the transaction to confirm the Seller's identity. For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer covenants not to sue any Broker(s) and/or the Closing Attorney involved in this real estate transaction for damages arising out of or relating to a fraudulent Seller.

8. **LIMIT ON BROKER'S LIABILITY. BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):**
   a. **SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF COMPENSATION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMPENSATION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO COMPENSATION IS PAID TO BROKER, THAN THE SUM OF $100; AND**
   b. **NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**

9. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

☐ Back-up Agreement Contingency Exhibit (F604) "________"
☐ Buyer's Broker Compensation Exhibit (F259) "___A___"
☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "___B___"
☐ Community Association Disclosure Exhibit (F322) "________"
☐ Condominium Resale Purchase and Sale Exhibit (F204) "________"
☐ Conventional Loan Contingency Exhibit (F404) "___C___"
☐ FHA Loan Contingency Exhibit (F407) "________"
☐ Lead-Based Paint Exhibit (F316) "________"
☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "________"
☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "________"
☐ Legal Description Exhibit (F807 or other) "___D___"
☐ Loan Assumption Exhibit (F416) "________"
☐ No Financing Contingency Exhibit (F401) "________"
☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "___E___"
☐ Seller's Property Disclosure Statement Exhibit (F301, F302, F304, F307 or F310) "___F___"
☐ Survey of Property as Exhibit "___G___"
☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "________"
☐ USDA-RD Loan Contingency Exhibit (F413) "________"
☐ VA Loan Contingency Exhibit (F410) "________"
☐ Other ________________________________
☐ Other ________________________________
☐ Other ________________________________

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

☐ **Additional Special Stipulations (F246) are attached.**

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

If Buyer or Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

## Buyer Acceptance and Contact Information

Ronald Zamora (dotloop verified 08/11/26 3:50 PM EDT JMMP-TBQC-ATNV-UUDF)
1 Buyer's Signature

Ronald Zamora
Print or Type Name Date

3800 Cutcane Road, Mineral Bluff, GA 30559
Buyer's Address for Receiving Notice

305 467 7009
Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work

rzamora@zabile.com
Buyer's Email Address

Marisela Zamora (dotloop verified 08/11/26 3:52 PM EDT 84R1-Y8T1-1CWO-OSEP)
2 Buyer's Signature

Marisela Zamora
Print or Type Name Date

3800 Cutcane Road, Mineral Bluff, GA 30559
Buyer's Address for Receiving Notice

3054677130
Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work

mzamora0713@gmail.com
Buyer's Email Address

☐ **Additional Signature Page (F267) is attached.**

## Seller Acceptance and Contact Information

1 Seller's Signature

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

2 Seller's Signature

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

☐ **Additional Signature Page (F267) is attached.**

## Buyer's Broker/Affiliated Licensee Contact Information

Compass Georgia , LLC
Buyer Brokerage Firm

Ronald Zamora (dotloop verified 08/11/26 3:41 PM EDT JATD-C7KT-BH1W-J3ZZ)
Broker/Affiliated Licensee Signature Date

Ronald Zamora 440452
Print or Type Name GA Real Estate License #

3054677009
Licensee's Phone Number Fax Number

ronald.zamora@compass.com
Licensee's Email Address

NEGB
REALTOR® Membership

56 A Mountain Street, Blue Ridge, GA 30513
Broker's Address

Broker's Phone Number Fax Number

833 H67491
MLS Office Code Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

Harry Norman Realtors
Seller Brokerage Firm

Broker/Affiliated Licensee Signature Date

Gary Mills
Print or Type Name GA Real Estate License #

Licensee's Phone Number Fax Number

Licensee's Email Address

REALTOR® Membership

Broker's Address

Broker's Phone Number Fax Number

MLS Office Code Brokerage Firm License Number

**Binding Agreement Date**: The Binding Agreement Date in this transaction is the date of ______________________ and has been filled in by ______________________.

# BUYER'S BROKER COMPENSATION EXHIBIT
## Exhibit "A"

GeorgiaREALTORS®

**2026 Printing**

(THIS EXHIBIT SHOULD NOT BE USED IF THE BROKER(S) COMPENSATION AND THE PARTY OR BROKER PAYING IT HAVE ALREADY BEEN AGREED TO IN A SEPARATE WRITTEN AGREEMENT AND IS NOT BEING MODIFIED)

This Exhibit is part of the Agreement with an Offer Date of 08/11/2026 for the purchase and sale of that certain Property known as: REDACTED Blue Ridge, 30513, Georgia ("Agreement").

For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby agree as follows:

1. **Compensation Being Offered to Buyer's Broker.** The compensation of the undersigned Buyer's Broker for professional brokerage services ("Compensation") provided in the above-referenced transaction is set forth below and shall be paid by the following party or the Broker working with or representing such party:
   - **A. Compensation Paid by Seller to Buyer's Broker:** The Compensation to be paid by the Seller to Buyer's Broker in this transaction shall be as set forth below:
     - ☐ Five percent ( 5%) of the sales price;
     - ☐ $____;
     - ☐ (other)____
   - **B. Compensation Shared by Seller's Broker with Buyer's Broker:** Such Compensation is a portion of the Compensation paid by Seller to Seller's Broker pursuant to a separate written agreement between Seller and Seller's Broker. The Compensation paid by Seller's Broker to Buyer's Broker in this transaction shall be as set forth below:
     - ☐ two and half percent ( 2.5%) of the sales price;
     - ☐ $____;
     - ☐ (other)____
2. **General.**
   - **A.** Neither Broker shall have a claim for Compensation against the other in the event the closing does not occur.
   - **B.** Any licensee signing this Buyer's Broker Compensation Exhibit ("Compensation Exhibit") on behalf of their Broker warrants that they have full authority to sign on behalf of and bind the Broker to this Compensation Exhibit.
   - **C.** Once this Compensation Exhibit is initialed, it cannot be further modified (even by special stipulation or a later amendment to this Exhibit) without the express written consent of the Broker(s) whose Compensation is set forth or shared herein and any such modification shall be null and void without the affected Broker's written consent.
   - **D.** The Brokers referenced herein are express third-party beneficiaries of this Agreement. The rights to Compensation herein shall survive the Closing, and Brokers shall have all remedies available at law or in equity, in the event Broker is not timely paid.

**SPECIAL STIPULATIONS**: The following Special Stipulations are made a part of this Agreement.

☐ Additional Special Stipulations (F246) are attached.

| | |
|---|---|
| **Buyer's Initials** RZ 08/11/26 3:50 PM EDT dotloop verified; MZ 08/11/26 3:52 PM EDT dotloop verified | **Seller's Initials** |
| Date | Date |
| **Buyer's Broker's Initials** RZ 08/11/26 3:41 PM EDT dotloop verified | **Seller's Broker's Initials** |
| Date | Date |

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Laura Elleby IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# CLOSING ATTORNEY ACTING AS HOLDER OF EARNEST MONEY EXHIBIT "B"

**[Closing Attorney must still consent to serve as Holder using F511]**

Georgia REALTORS®

**2026 Printing**

This Exhibit is part of the Agreement with an Offer Date of 08/11/2026 for the purchase and sale of that certain property known as: REDACTED Blue Ridge, Georgia 30513 ("Agreement").

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.
2. **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.
3. **Closing Attorney Must Agree to Become Holder Within Five (5) Business Days of Receiving Entire Contract**. The Closing Attorney named as Holder shall not become the Holder unless within five (5) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.
4. **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein. Buyer and Seller acknowledge and agree that the fact that the closing attorney may represent a real estate brokerage firm or firms involved in the transaction or regularly close real estate transactions involving a particular broker or agent of the broker shall not prevent the closing attorney from fully performing its duties hereunder, including, but not limited to disbursing earnest money based upon a reasonable interpretation of this Agreement.
5. **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.
6. **Failure of Closing Attorney to Become Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder or fails to timely become Holder, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.
7. **Alternate Holder.** The Buyer must immediately notify all parties if the Closing Attorney fails to become Holder. The Alternate Holder, who must be a broker in this transaction, shall be ______________________________. In the event an Alternate Holder is not named, the Alternate Holder shall be the Buyer's Broker.
8. **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.
9. **Notices To and From Holder.** The Notice procedures in the Agreement shall control with regard to all Notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.
10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction. If an individual attorney who works for a law firm is named as the Closing Attorney herein, all parties agree that the law firm shall technically be the Closing Attorney.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Laura Elleby **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

Closing Attorney: Wilson Pruitt

Address: 316 Summit Street, Blue Ridge Ga, 30513

Phone Number: 706 946 6808

Fax Number:

Email: neworders@wilsonpruittlaw.com

Buyer's Initials: RZ 08/11/26 3:50 PM EDT dotloop verified; MZ 08/11/26 3:52 PM EDT dotloop verified

Seller's Initials: ______

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# CONVENTIONAL LOAN CONTINGENCY
# EXHIBIT "C"

Georgia REALTORS®

**2026 Printing**

This Exhibit is part of the Agreement with an Offer Date of 08/11/2026 for the purchase and sale of that certain Property known as: REDACTED , Blue Ridge , Georgia 30513

1. **Application.** Buyer shall promptly apply for and in good faith seek to obtain the conventional loan or loans described below ("Loan(s)") such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this Conventional Loan Contingency.
*[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| | | Loan Amount | Term | Interest Rate (at par) | Rate Type |
|---|---|---|---|---|---|
| ☐ A. | FIRST MORTGAGE LOAN | 80 % of purchase price | 30 years | Not greater than ______% per annum (or initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only |
| ☐ B. | SECOND MORTGAGE LOAN | ______% of purchase price | ______ years | Not greater than ______% per annum (or initial rate on adjustable loan) | ☐ Fixed<br>☐ Adjustable<br>☐ Interest Only |

2. **Use of Particular Lender**. Buyer may apply for approval of the Loan(s) with any mortgage lender, mortgage broker or mortgage loan originator licensed to do business in Georgia (hereinafter collectively, "Lender"). If any Lender is identified below ("Approved Lender"), Buyer shall apply for approval of the Loan(s) with at least one such Approved Lender. Nothing herein shall require Buyer to obtain mortgage financing from an Approved Lender herein.

**Approved Lender(s)**

3. **Length of the Financing Contingency Period**. The length of the Financing Contingency Period in Section 7 below shall be 21 days from the Binding Agreement Date.

4. **Length of Time for Buyer to Request a Reduction in the Purchase Price Based Upon a Low Appraisal**. The time period for Buyer to request a reduction in the purchase price of the Property, if it appraises for less than the purchase price of the Property, as set forth in Section 14 below, shall be 2 days from the Binding Agreement Date.

5. **Buyer May Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above. Buyer may also apply for different conventional loans than the Loan(s) described above. However, the denial of such other loans shall not be a basis for Buyer to terminate this Agreement. Notwithstanding the above, Buyer shall not have a right to apply for a FHA, VA, or USDA loan unless the parties agree to amend this Agreement to add a FHA, VA, or USDA loan contingency exhibit meeting FHA, VA or USDA requirements, as the case may be (in which event this Conventional Loan Contingency shall no longer be part of this Agreement). Nothing herein shall require the Seller to agree to amend this Agreement.

6. **Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify Seller of any mortgage lender to whom Buyer has sent a notice of intent to proceed with loan application and the name and contact information for the loan originator.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Laura Elleby IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

7. **Financing Contingency.** Buyer shall have a Financing Contingency set forth in Section 3 above to determine if Buyer has the ability to obtain the Loan(s) described above ("Financing Contingency Period"). Buyer shall be deemed to have the ability to obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such Notice ("Notice Period") with a letter of loan denial from a Lender based upon the Lender's customary and standard underwriting criteria ("Loan Denial Letter") stating the basis for the loan denial. The Loan Denial Letter and Lender issuing the Loan Denial Letter must meet all of the requirements set forth elsewhere in this Exhibit, including that the Loan Denial Letter be from an Approved Lender, if one is named in Section 2 above. Such Loan Denial Letter may be provided to Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter falls outside of the Financing Contingency Period. Notwithstanding the above, the end of the Financing Contingency Period shall not limit Buyer's rights under the Appraisal Contingency section of this Agreement, provided that the Appraisal Contingency has not expired.

8. **Use of Approved Lender and Loan Denial Letter**. If there is an Approved Lender identified herein, then the Loan Denial Letter shall come from an Approved Lender. If the Approved Lender is a mortgage broker, the Loan Denial Letter can be from the mortgage broker or the mortgage lender with whom the mortgage broker placed the Loan(s). If Buyer is not required to apply for the Loan(s) with an Approved Lender, the Loan Denial Letter may be written by any Lender.

   Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter must state the basis for the loan denial and may not be based solely upon one or more of the following: (a) Buyer lacking sufficient funds other than the amount of the Loan(s) to close; (b) Buyer not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); (c) Buyer not having provided the lender(s) in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation Reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information"); (d) Buyer making purchases that adversely affect Buyer's debt to income ratio; (e) the Property not appraising for at least the purchase price unless this Agreement is subject to an appraisal contingency and an appraisal meeting the requirements of this Agreement has been performed; or (f) the lender not having completed underwriting the loan request.

   Buyer may terminate this Agreement without penalty based upon an inability to obtain the Loan(s) only if Buyer fulfills all of the applicable requirements set forth in this Exhibit.

9. **Special Approval if Property is a Condominium or Subject to a Master Insurance Policy.** Notwithstanding any provision to the contrary contained herein, if the Property is a unit in a condominium or is covered under a fire and casualty insurance policy covering multiple attached residences, this Agreement is additionally contingent upon Buyer's Lender obtaining underwriting approval of such fire and casualty insurance policy and/or the development (hereinafter "Project Approval"). If an Approved Lender has been identified herein, the Lender under this section must be an Approved Lender. If at any time the Lender determines that the inability to obtain Project Approval is preventing a mortgage loan from being made, then Buyer shall have the right to terminate this Agreement without penalty and receive a full refund of all Earnest Money, provided that Buyer provides Seller with a letter from such Lender or Approved Lender, as the case may be, stating that the inability to obtain Project Approval is what is preventing a mortgage loan from being made to the Buyer. Such letter shall be provided to Seller not later than the date of Closing or within seven (7) days of the termination of the Agreement by Buyer, provided that the Notice of termination is given prior to Closing.

10. **Right of Seller to Request Evidence of Buyer's Ability to Close.** If the Financing Contingency ends without Buyer terminating this Agreement, Seller shall have the right, but not the obligation, to request that Buyer provide Seller with written evidence of Buyer's financial ability to purchase the Property ("Evidence"). A copy of a loan commitment from each institutional mortgage lender from whom Buyer is seeking mortgage financing to purchase the Property stating the type, amount and terms of the loan(s) and the conditions for funding the loan(s), shall be deemed sufficient Evidence. The provision of such Evidence is not a guarantee that the mortgage loan(s) will be funded or that Buyer will close on the purchase of the Property. Buyer shall have five (5) days from the date Seller delivers Notice to Buyer requesting such Evidence to produce the same. No request for such Evidence shall be made by Seller less than five (5) days from the date of Closing. It is intended that the Evidence Buyer produces shall be liberally interpreted, where possible, in favor of a finding that Buyer has the ability to close on the purchase of the Property.

11. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Evidence of Buyer's Ability to Close within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer two (2) days from the date of the delivery of the Notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter (or however many days are left until the Closing but excluding the day of Closing) due to Buyer's default upon Notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

12. **Authorization of Buyer to Release Information to Seller and Brokers.** Buyer does hereby authorize Seller and the Brokers identified herein to communicate with the lenders with whom Buyer is working to determine and receive from said lenders any or all of the following information: (a) the status of the loan application; (b) Buyer's financial ability to obtain the Loan(s) or other loans for which Buyer has applied; (c) whether and when Buyer provided the lenders with Required Information; (d) whether and what conditions may remain to complete the loan application process and issue of a loan commitment; and (e) the basis for any Loan Denial Letter.

13. **Miscellaneous.** For the purposes of this Exhibit, the term "mortgage loan" shall refer to a secured lending transaction where the loan or promissory note is secured by a deed to secure debt on the Property. Whether such mortgage loan is a first or second mortgage loan is a reference to the legal priorities of the deeds to secure debt relative to each other and other liens and encumbrances.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**14. Appraisal Contingency.** In addition to Buyer's other rights herein, this Agreement shall be subject to the following appraisal contingency. Buyer shall cause the lender to: (a) select an appraiser to perform one or more appraisals of the Property and (b) provide Seller with a copy of any appraisal that is for less than the purchase price of the Property. If any such appraisal is for less than the purchase price, Buyer shall, not later than by the end of the time period set forth in Section 4 above, have the right to request that Seller reduce the purchase price of the Property to a price not less than the appraised price by submitting to Seller an Amendment to Purchase Price (F713) ("ATPP") signed by Buyer along with a copy of the appraisal supporting the lower price. In the event that Buyer does not timely submit an ATPP to Seller, Buyer shall be deemed to have waived Buyer's right to do so and this Agreement shall no longer be subject to an appraisal contingency.

Seller shall, not later than three (3) days from the date of an ATPP is delivered to Seller (but not later than two (2) days prior to Closing), accept or reject the ATPP or seek to negotiate with Buyer a lesser reduction in the purchase price of the Property than what is reflected in the ATPP. If Seller timely signs and accepts the ATPP, then Buyer shall be required to close at the new purchase price, and, unless otherwise agreed to in writing by the parties, Buyer's Appraisal Contingency shall terminate. If, within the above timeframe, an ATPP has not been signed and accepted by the Buyer and Seller and timely delivered to create a legally enforceable amendment, Buyer shall have an additional three (3) days (but not later than one (1) day prior to Closing) to terminate this Agreement without penalty. If Buyer does not terminate the Agreement within this timeframe, Buyer's right to terminate due to the failure to agree to an ATPP shall be waived and Buyer shall close on the Property for the purchase price set forth in this Agreement. Nothing herein shall require Buyer to seek a reduction in the purchase price of the Property. If Buyer does not seek a reduction in the purchase price, Buyer shall be obligated to purchase the Property for the price agreed to by the parties in the Agreement.

| | |
|---|---|
| Ronald Zamora (dotloop verified 08/11/26 3:50 PM EDT EF7H-IFV0-LACN-KTIT) | |
| **1 Buyer's Signature** | **1 Seller's Signature** |
| Ronald Zamora | |
| Print or Type Name | Print or Type Name |
| Marisela Zamora (dotloop verified 08/11/26 3:52 PM EDT VD85-QQFC-IZGS-TRND) | |
| **2 Buyer's Signature** | **2 Seller's Signature** |
| Marisela Zamora | |
| Print or Type Name | Print or Type Name |
| ☐ **Additional Signature Page (F267) is attached.** | ☐ **Additional Signature Page (F267) is attached.** |
| Compass Georgia , LLC | Harry Norman Realtors |
| Buyer Brokerage Firm | Seller Brokerage Firm |
| Ronald Zamora (dotloop verified 08/11/26 3:42 PM EDT SKYN-MOEJ-RT9J-MLRU) | |
| **Broker/Affiliated Licensee Signature** | **Broker/Affiliated Licensee Signature** |
| Ronald Zamora | Gary Mills |
| Print or Type Name | Print or Type Name |
| REALTOR® Membership | REALTOR® Membership |

dotloop signature verification: dtlp.us/DA81-iEcw-98iu

"Exhibit D"


08/11/26
3:52 PM EDT
dotloop verified

dotloop signature verification: dtlp.us/DA81-iEcw-98iu

# SALE OR LEASE OF BUYER'S PROPERTY CONTINGENCY EXHIBIT "E"

Georgia REALTORS®

**2026 Printing**

This Exhibit is part of the Agreement with an Offer Date of 08/11/2026 for the purchase and sale of that certain Property known as: REDACTED ____________, Blue Ridge ____________, Georgia 30513 ("Agreement").

1. Buyer warrants that Buyer owns the real property located at 7.93 Cutcane Road ____________, ____________ (City), Mineral Bluff (State) Georgia (Zip Code) ("Other Property"). Buyer agrees to diligently pursue the closing of the sale or lease of the Other Property prior to the end of the Contingency Period (as that term is defined below).

2. At the time of Offer, Buyer warrants that other Property is: [*select all that apply*]
   - ☐ A. Currently under contract with buyer represented by Compass Georgia ,LLC ("Other Property Buyer's Broker" if applicable) with a Closing Date of 08/31/2026 ("Existing Pending Contract").
   - ☐ B. Currently listed with ____________ ("Other Property Seller's Broker"). If the Buyer enters into a contract to sell Buyer's real property after the Binding Agreement Date of this Agreement, Buyer will immediately give Seller Notice of the new contract, and it will become the Existing Pending Contract;
   - ☐ C. Other: ____________

3. This Agreement is contingent upon the occurrence of the following on or before either *[Select one below. The section not selected will not be a part of this Agreement. If neither is selected, the Closing Date of this Agreement is deemed selected]* ☐ the Closing Date of this Agreement (including any extension thereof) **OR** ☐ ____________ ("Contingency Period") *[Select A. and/or B below. Any section not selected will not be a part of this Agreement].*

   ☐ A. **Buyer closing on the sale of the Other Property.** Unless the Other Property is under a binding purchase and sale contract at the time of Offer, Buyer shall keep the Other Property listing for sale with a real estate broker at a list price of not more than $330.000 until it is either sold and closed or the Contingency Period expires. (Nothing herein shall give the Buyer an ability to terminate the Agreement if the Property sells for an amount greater than the list price.)

   ☐ B. **Buyer entering into a lease of the Other Property.** Unless the Other Property is under a binding lease at the time of Offer, Buyer shall keep the Other Property listed for lease with a real estate broker for a lease term of not less than ______ months nor more than ______ months with a monthly rental of not more than $__________ until it is leased or the Contingency Period expires.

4. In the event that the Contingency Period ends without the contingency or contingencies selected above being fulfilled, then the Agreement shall automatically terminate at that time and Buyer shall be entitled to the return of any earnest money without penalty.

5. [This section only applies if there is an Existing Pending Contract.] In the event that the Existing Pending Contract is terminated for any reason whatsoever, Buyer will immediately notify Seller of the same. Buyer shall have the right, but not the obligation, to promptly terminate this Agreement upon delivering such Notice, in which case Buyer shall be entitled to the return of Buyer's earnest money without penalty.

   If Buyer does not timely terminate the Agreement, Seller will have the right, but not the obligation, to request that Buyer, to the extent provided in Section 6 below: 1) pay additional earnest money; and 2) sign an amendment to remove those contingencies and the Due Diligence Period ("Amendment to Kick-Out Contingencies"). If Seller does not exercise this right within three (3) days from Buyer's Notice that Existing Pending Contract has terminated, then Seller's right to request an amendment on this basis will be waived.

   In the event Buyer does not deliver the Amendment to Kick-Out Contingencies within three (3) days of Seller's request, then Seller will have the right, but not the obligation, to terminate this Agreement in which case Buyer will have the right to a refund of earnest money. If Seller does not terminate the Agreement within three (3) days, then Seller's right to terminate this Agreement on this basis will be waived.

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Laura Elleby **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

**6. Kick-Out Clause in this Transaction.** Select Option 1 **OR** Option 2 below. *[If neither option is selected, Option 2 will control.]*

☐ **Option 1. This Agreement is subject to a Kick-Out Clause.** The Seller has the right to continue to market the Property for sale even after it is under contract. In the event Seller receives a bona fide offer to purchase the Property that the Seller would like to accept, then Seller will give Notice of the offer to Buyer. Buyer will then have ________ hours after receipt of the Notice to deposit with Holder additional earnest money of $______________ and deliver to Seller an Amendment to the Agreement signed by Buyer in which Buyer agrees to remove from the Agreement the contingencies and/or Due Diligence Period provisions in the Agreement to the extent checked below. In the event that Buyer delivers the Amendment referenced above to Seller and the additional earnest money (if any referenced above) to Holder within the time period stated above, Seller will execute the Amendment, return a copy of the same to Buyer and the Agreement will otherwise remain in full force and effect subject to the Amendment. In the event the Buyer does not deliver the signed amendment and/or additional earnest money, if applicable, Seller will have the right to terminate this Agreement upon Notice to Buyer, in which event Buyer will receive a refund of all earnest money. Prior to Seller giving Buyer Notice that Seller is exercising the Kick-Out Clause, the contingency or contingencies referenced above may be waived by Buyer upon Notice to Seller and shall no longer be a part of this Agreement. [*Complete either (A) or (B) below. If Option 1 is selected but neither section (A)* ***or*** *(B) are completed, then option (A) below will be deemed to have been selected.*]

(A) ☐ All contingencies and the Due Diligence Period will no longer be part of the Agreement.

(B) The contingencies and/or Due Diligence Period checked below will no longer be a part of the Agreement.

- ☐ Sale or Lease of Buyer's Property Contingency;
- ☐ Due Diligence Period;
- ☐ Right to Request Repairs;
- ☐ any Financing Contingency;
- ☐ any Appraisal Contingency;
- ☐ Special Stipulation identified as: ______________________________
- ☐ Other: ______________________________

☐ **Option 2. This Agreement IS NOT subject to a Kick-Out Clause.**

**7.** Notwithstanding any provision to the contrary contained herein, if any Kick-Out provision is exercised by the Seller, the removal of such checked provisions by Buyer from this Agreement will not eliminate any rights and obligations in either those contingencies or the Due Diligence Period benefiting Seller. Therefore, for example, Seller can still request a proof of evidence of ability to close from the Buyer even though the Agreement is no longer subject to a Financing Contingency.

**8. Duty to Act.** Buyer will diligently pursue the sale or lease of Buyer's Other Property.

**9. Special Stipulations.**

Buyer's Initials: ______ RZ 08/11/26 3:50 PM EDT dotloop verified | NZ 08/11/26 3:52 PM EDT dotloop verified ______

Seller's Initials: ______ [ ] [ ] ______

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

dotloop signature verification: dtlp.us/MG55-U1jG-CTax

# SELLER'S PROPERTY DISCLOSURE STATEMENT
# EXHIBIT "F"

Georgia REALTORS®

**2026 Printing**

This Seller's Property Disclosure Statement ("Statement") is an exhibit to the Purchase and Sale Agreement with an Offer Date of 08/11/2026 for the Property (known as or located at: REDACTED Blue Ridge, Georgia, 30513. This Statement is intended to make it easier for Seller to fulfill Seller's legal duty to disclose hidden defects in the Property of which Seller is aware. Seller is obligated to disclose such defects even when the Property is being sold "as-is."

**A. INSTRUCTIONS TO SELLER IN COMPLETING THIS STATEMENT.**
In completing this Statement, Seller agrees to:
**(1)** answer all questions in reference to the Property and the improvements on the Property;
**(2)** answer all questions fully, accurately and to the actual knowledge and belief of all Sellers (hereinafter, collectively "Knowledge");
**(3)** provide additional explanations to all "yes" answers in the corresponding Explanation section below each group of questions (including providing to Buyer any additional documentation in Seller's possession), unless the "yes" answer is self-evident;
**(4)** if prior to Closing there are any material changes in the answers to any of the questions, Seller shall promptly revise the Statement and provide it to the Buyer and any Broker involved in the transaction.

**B. HOW THIS STATEMENT SHOULD BE USED BY BUYER.** Caveat emptor or "buyer beware" is the law in Georgia. Buyer should conduct a thorough inspection of the Property. If Seller has not occupied or recently occupied the Property, Seller's Knowledge of the Property's condition may be limited. Buyer is expected to use reasonable care to inspect the Property and confirm that it is suitable for Buyer's purposes. If an inspection of the Property reveals problems or areas of concern that would cause a reasonable Buyer to investigate further, Buyer should investigate further. A "yes" or "no" answer to a question means "yes" or "no" to the actual Knowledge and belief of all Sellers of the Property. In other words, if a Seller answers "no" to a question, it means Seller either affirmatively knows that the answer to the question is "no" or has no Knowledge whether such condition exists on the Property. As such, Seller's answers should not be taken as a warranty or guaranty of the actual condition of the Property, nor a substitute for Buyer doing its own due diligence.

**C. SELLER DISCLOSURES.**

| 1. GENERAL: | YES | NO |
|---|---|---|
| (a) What year was the main residential dwelling constructed? 2016 | | |
| (b) Is the Property vacant? | | |
| If yes, how long has it been since the Property has been occupied? | | |
| (c) Is the Property or any portion thereof leased? | | |
| (d) Has the Property been designated as historic or in a historic district where permission must be received to make modifications and additions? | | |

**EXPLANATION:**

| 2. COVENANTS, FEES, and ASSESSMENTS: | YES | NO |
|---|---|---|
| (a) Is the Property subject to a recorded Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") or other similar restrictions? | | |
| (b) Is the Property part of a condominium or community in which there is a community association? **IF YES, SELLER TO COMPLETE AND PROVIDE BUYER WITH A "COMMUNITY ASSOCIATION DISCLOSURE EXHIBIT" GAR F322.** | | |

**EXPLANATION:**

| 3. LEAD-BASED PAINT: | YES | NO |
|---|---|---|
| (a) Was any part of the residential dwelling on the Property or any painted component, fixture, or material used therein constructed or manufacture prior to 1978? **IF YES, THE "LEAD-BASED PAINT EXHIBIT" GAR F316 MUST BE EXECUTED BY THE PARTIES AND THE "LEAD-BASED PAINT PAMPHLET" GAR CB04 MUST BE PROVIDED TO THE BUYER.** | | |

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Laura Elleby **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

| 4. STRUCTURAL ITEMS, ADDITIONS AND ALTERATIONS: | YES | NO |
|---|---|---|
| (a) Has there been any settling, movement, cracking or breakage of the foundations or structural supports of the improvements? | | |
| (b) Have any structural reinforcements or supports been added? | | |
| (c) Have there been any additions, structural changes, or any other major alterations to the original improvements or Property, including without limitation pools, carports or storage buildings? | | |
| (d) Has any work been done where a required building permit was not obtained? | | |
| (e) Are there violations of building codes, housing codes, or zoning regulations (not otherwise grandfathered)? | | |
| (f) Have any notices alleging such violations been received? | | |
| (g) Is any portion of the main dwelling a mobile, modular or manufactured home? | | |
| (h) Was any dwelling or portion thereof (excluding mobile, modular and manufactured dwelling) moved to the site from another location? | | |

**EXPLANATION:**

| 5. SYSTEMS and COMPONENTS: | YES | NO |
|---|---|---|
| (a) Has any part of the HVAC system(s) been replaced during Seller's ownership? | | |
| (b) Date of last HVAC system(s) service: ______ | | |
| (c) Is any heated and cooled portion of the main dwelling not served by a central heating and cooling system? | | |
| (d) Is any portion of the heating and cooling system in need of repair or replacement? | | |
| (e) Does any dwelling or garage have aluminum wiring other than in the primary service line? | | |
| (f) Are any fireplaces decorative only or in need of repair? | | |
| (g) Have there been any reports of damaging moisture behind exterior walls constructed of synthetic stucco? | | |
| (h) Is there any Spray Polyurethane Foam (SPF) insulation in the Property? | | |
| (i) Are any systems/components subject to a lease or rental payment plan (i.e. HVAC, security system, appliances, alternate energy source systems, propane/fuel tanks, etc.)? | | |
| (j) Are there any remotely accessed thermostats, lighting systems, security camera, video doorbells, locks, appliances, etc. servicing the Property? | | |

**EXPLANATION:**

| 6. SEWER/PLUMBING RELATED ITEMS: | YES | NO |
|---|---|---|
| (a) Approximate age of water heater(s): ______ years | | |
| (b) What is the drinking water source: ☐ public ☐ private ☐ well | | |
| (c) If the drinking water is from a well, give the date of last service: ______ | | |
| (d) If the drinking water is from a well, has there ever been a test the results of which indicate that the water is not safe to drink? If yes, date of testing: ______ | | |
| (e) What is the sewer system: ☐ public ☐ private ☐ septic tank | | |
| (f) If the Property is served by a septic system, how many bedrooms was the septic system approved for by health department or other governmental authority? ______ | | |
| (g) Is the main dwelling served by a sewage pump? | | |
| (h) Has any septic tank or cesspool on Property ever been professionally serviced? | | |
| If yes, give the date of last service: ______ | | |
| (i) Are there any leaks, backups, or other similar problems with any portion of the plumbing, water, or sewage systems or damage therefrom? | | |
| (j) Is there presently any polybutylene plumbing, other than the primary service line? | | |
| (k) Has there ever been any damage from a frozen water line, spigot, or fixture? | | |

**EXPLANATION:**

Copyright© 2026 by Georgia Association of REALTORS®

| 7. ROOFS, GUTTERS, and DOWNSPOUTS: | YES | NO |
|---|---|---|
| (a) Approximate age of roof on main dwelling: __________ years. | | |
| (b) Has any part of the roof been repaired during Seller's ownership? | | |
| (c) Are there any roof leaks or other problems with the roof, roof flashing, gutters, or downspouts? | | |

**EXPLANATION:**

| 8. FLOODING AND WATER INTRUSION: | YES | NO |
|---|---|---|
| (a) Excluding water intrusion caused by plumbing, has there been any water intrusion or physical damage to the Property and/or its improvements and/or contents caused by water from the exterior of the improvements ("Flood")? | | |
| (b) Has there been any insurance claim covered under the National Flood Insurance Program or a private flood insurance policy? | | |
| (c) Have any repairs been made to the Property or improvements located on such Property as a result of a Flood (regardless of whether any insurance claim was filed)? | | |
| (d) Have you received any notification regarding the designation of the Property as a Repetitive Loss Property or Severe Repetitive Loss Property? | | |
| (e) Has there been any material erosion affecting the Property? | | |
| (f) Has Seller received notification to obtain and maintain flood insurance under federal law (such as because of a previous form of disaster assistance received by any owner of the Property)? | | |
| (g) Is flood insurance required by current mortgagee? | | |
| (h) Does any part of the Property fall within a 100-year or 500-year floodplain as designated by the Federal Emergency Management Agency? | | |
| (i) Are there any retention ponds, detention ponds or similar facilities on the Property? | | |
| (j) Are there any streams, springs, or ponds on the Property that only flow or are only visible during certain times of the year? | | |

**EXPLANATION:**

| 9. SOIL AND BOUNDARIES: | YES | NO |
|---|---|---|
| (a) Are there any landfills (other than foundation backfill), graves, burial pits, caves, mine shafts, trash dumps or wells (in use or abandoned)? | | |
| (b) Is there now or has there ever been any visible soil settlement or movement? | | |
| (c) Are there any shared improvements which benefit or burden the Property, including, but not limited to a shared dock, septic system, well, driveway, alleyway, or private road? | | |
| (d) Are there presently any encroachments, unrecorded easements, unrecorded agreements regarding shared improvements, or boundary line disputes with a neighboring property owner? | | |
| (e) Are there any underground pipelines crossing the Property that do not serve the Property? | | |

**EXPLANATION:**

Copyright© 2026 by Georgia Association of REALTORS®

| 10. TERMITES, DRY ROT, PESTS, and WOOD DESTROYING ORGANISMS: | YES | NO |
|---|---|---|
| (a) Are you aware of any wildlife accessing the attic or other interior portions of the residence? | | |
| (b) Is there any damage or hazardous condition resulting from such wildlife intrusion; from insects (such as termites, bees and ants); or by fungi or dry rot? | | |
| (c) Is there presently a bond, warranty or service contract for termites or other wood destroying organisms by a licensed pest control company? | | |
| If yes, what is the cost to transfer? $ ______________ What is the annual cost? ____________ | | |
| If yes, company name/contact: ______________________________ | | |
| Coverage: ☐ re-treatment and repair ☐ re-treatment ☐ periodic inspections only | | |
| Expiration Date ______________________ Renewal Date ______________________ | | |

**EXPLANATION:**

| 11. ENVIRONMENTAL, HEALTH, and SAFETY CONCERNS: | YES | NO |
|---|---|---|
| (a) Are there any underground tanks or toxic or hazardous substances such as asbestos? | | |
| (b) Has Methamphetamine ("Meth") ever been produced on the Property? | | |
| (c) Have there ever been adverse test results for radon, lead, mold or any other potentially toxic or environmentally hazardous substances? | | |

**EXPLANATION:**

| 12. LITIGATION and INSURANCE: | YES | NO |
|---|---|---|
| (a) Is there now or has there been any litigation therein alleging negligent construction or defective building products? | | |
| (b) Has there been any award or payment of money in lieu of repairs for defective building products or poor construction? | | |
| (c) Has any release been signed regarding defective products or poor construction that would limit a future owner from making any claims? | | |
| (d) During Seller's ownership have there been any insurance claims for more than 10% of the value of the Property? | | |
| (e) Is the Property subject to a threatened or pending condemnation action? | | |
| (f) How many insurance claims have been filed during Seller's ownership? ______ | | |

**EXPLANATION:**

| 13. OTHER HIDDEN DEFECTS: | YES | NO |
|---|---|---|
| (a) Are there any other hidden defects that have not otherwise been disclosed? | | |

**EXPLANATION:**

| 14. AGRICULTURAL DISCLOSURE: | YES | NO |
|---|---|---|
| (a) Is the Property within, partially within, or adjacent to any property zoned or identified on an approved county land use plan as agricultural or forestry use? | | |
| (b) Is the Property receiving preferential tax treatment as an agricultural property? | | |

It is the policy of this state and this community to conserve, protect, and encourage the development and improvement of farm and forest land for the production of food, fiber, and other products, and also for its natural and environmental value. This notice is to inform prospective property owners or other persons or entities leasing or acquiring an interest in real property that property in which they are about to acquire an interest lies within, partially within, or adjacent to an area zoned, used, or identified for farm and forest activities and that farm and forest activities occur in the area. Such farm and forest activities may include intensive operations that cause discomfort and inconveniences that involve, but are not limited to, noises, odors, fumes, dust, smoke, insects, operations of machinery during any 24-hour period, storage and disposal of manure, and the application by spraying or otherwise of chemical fertilizers, soil amendments, herbicides, and pesticides. One or more of these inconveniences may occur as the result of farm or forest activities which are in conformance with existing laws and regulations and accepted customs and standards.

**ADDITIONAL EXPLANATIONS** (If needed):

## D. FIXTURES CHECKLIST

1. <u>Directions on How to Generally Fill Out Fixtures Checklist</u>. **REGARDLESS OF WHETHER AN ITEM IS A FIXTURE OR NOT, SELLER SHALL HAVE THE RIGHT TO REMOVE ALL ITEMS ON THE FIXTURES CHECKLIST BELOW THAT ARE LEFT BLANK. THE ITEMS ON THE CHECKLIST BELOW THAT ARE CHECKED OR MARKED SHALL REMAIN WITH THE PROPERTY.** Unless otherwise indicated, if an item is left blank, the Seller may remove all of that item from the Property. For example, if "Refrigerator" is left blank, Seller shall remove all Refrigerators on the Property, unless otherwise noted. Similarly, if "Refrigerator" is checked or marked in the Fixtures Checklist, then all refrigerators shall remain with the Property unless otherwise noted. This Fixtures Checklist is intended to supersede the common law of fixtures with regard to the items identified below. The common law of fixtures shall apply to all items not identified on this Fixtures Checklist.

Copyright© 2026 by Georgia Association of REALTORS® 

2. **Items Not Remaining with the Property.** Items identified as not remaining with the Property that are physically attached to the Property shall be carefully removed from the Property in a manner designed to do minimal damage, but such items do not need to be replaced with a similar item. Seller shall make reasonable efforts to repair areas damaged by the removal of an item. Reasonable efforts to repair damage shall not extend to painting newly exposed areas that do not match the surrounding paint color. (Seller is encouraged, but shall not be required, to remove fixtures not remaining with the Property prior to marketing the Property for sale). Seller shall remove all items left blank below prior to Closing or the transfer of possession, whichever is later. Seller shall lose the right to remove those items not timely removed but shall be liable to Buyer for the reasonable cost of disposing such items provided that Buyer disposes of them within 30 days after Closing or the transfer of possession, which is later.

3. **Items Remaining with Property.** Items identified as remaining with the Property shall mean those specific items, including any solely necessary or required controller, as they existed in the Property as of the Offer Date. No such item shall be removed from the Property unless it is broken or destroyed. In the event such item is removed, it shall be replaced with a substantially identical item, if reasonably available. If not reasonably available, it shall be replaced with a substantially similar item of equal quality and value, or better. The same or newer model of the item being replaced in the same color and size and with the same functions or better shall be considered substantially identical. Once the Seller's Property is under contract, the items that may be removed and taken by the Seller, as reflected in this Seller's Property Disclosure Statement, may only be amended with the written consent of the Buyer of the Property.

**Appliances**
- ☐ Clothes Dryer
- ☐ Clothes Washing Machine
- ☐ Dishwasher
- ☐ Garage Door Opener
- ☐ Garbage Disposal
- ☐ Ice Maker
- ☐ Microwave Oven
- ☐ Oven
- ☐ Range
- ☐ Refrigerator w/o Freezer
- ☐ Refrigerator/Freezer
- ☐ Free Standing Freezer
- ☐ Surface Cook Top
- ☐ Trash Compactor
- ☐ Vacuum System
- ☐ Vent Hood
- ☐ Warming Drawer
- ☐ Wine Cooler

**Home Media**
- ☐ Amplifier
- ☐ Cable Jacks
- ☐ Cable Receiver
- ☐ Cable Remotes
- ☐ Intercom System
- ☐ Internet HUB
- ☐ Internet Wiring
- ☐ Satellite Dish
- ☐ Satellite Receiver
- ☐ Speakers
- ☐ Speaker Wiring
- ☐ Switch Plate Covers
- ☐ Television (TV)
- ☐ TV Antenna
- ☐ TV Mounts/Brackets
- ☐ TV Wiring

**Interior Fixtures**
- ☐ Ceiling Fan
- ☐ Chandelier
- ☐ Closet System
- ☐ Fireplace (FP)
- ☐ FP Gas Logs
- ☐ FP Screen/Door
- ☐ FP Wood Burning Insert
- ☐ Light Bulbs
- ☐ Light Fixtures
- ☐ Mirrors
  - ☐ Wall Mirrors
  - ☐ Vanity (hanging) Mirrors
- ☐ Shelving Unit & System
- ☐ Shower Head/Sprayer
- ☐ Storage Unit/System
- ☐ Window Blinds (and Hardware)
- ☐ Window Shutters (and Hardware)
- ☐ Window Draperies (and Hardware)
- ☐ Unused Paint

**Landscaping / Yard**
- ☐ Arbor
- ☐ Awning
- ☐ Basketball Post and Goal
- ☐ Birdhouses
- ☐ Boat Dock
- ☐ Fence - Invisible
- ☐ Dog House
- ☐ Flag Pole
- ☐ Gazebo
- ☐ Irrigation System
- ☐ Landscaping Lights
- ☐ Mailbox
- ☐ Out/Storage Building
- ☐ Porch Swing
- ☐ Statuary
- ☐ Stepping Stones
- ☐ Swing Set
- ☐ Tree House
- ☐ Trellis
- ☐ Weather Vane

**Recreation**
- ☐ Aboveground Pool
- ☐ Gas Grill
- ☐ Hot Tub
- ☐ Outdoor Furniture
- ☐ Outdoor Playhouse
- ☐ Pool Equipment
- ☐ Pool Chemicals
- ☐ Sauna

**Safety**
- ☐ Alarm System (Burglar)
- ☐ Alarm System (Smoke/Fire)
- ☐ Security Camera
- ☐ Carbon Monoxide Detector
- ☐ Doorbell
- ☐ Door & Window Hardware
- ☐ Fire Sprinkler System
- ☐ Gate
- ☐ Safe (Built-In)
- ☐ Smoke Detector
- ☐ Window Screens

**Systems**
- ☐ A/C Window Unit
- ☐ Air Purifier
- ☐ Whole House Fan
- ☐ Attic Ventilator Fan
- ☐ Ventilator Fan
- ☐ Car Charging Station
- ☐ Dehumidifier
- ☐ Generator
- ☐ Humidifier
- ☐ Propane Tank
- ☐ Propane Fuel in Tank
- ☐ Fuel Oil Tank
- ☐ Fuel Oil in Tank
- ☐ Sewage Pump
- ☐ Solar Panel
- ☐ Sump Pump
- ☐ Thermostat
- ☐ Water Purification System
- ☐ Water Softener System
- ☐ Well Pump

**Other**
- ☐ ______________
- ☐ ______________
- ☐ ______________
- ☐ ______________

**Clarification Regarding Multiple Items.** Items identified above as remaining with Property where Seller is actually taking one or more of such items shall be identified below. For example, if "Refrigerator" is marked as staying with the Property, but Seller is taking the extra refrigerator in the basement, the extra refrigerator and its location shall be described below. This section shall control over any conflicting or inconsistent provisions contained elsewhere herein.

**Items Needing Repair.** The following items remaining with Property are in need of repair or replacement:

**RECEIPT AND ACKNOWLEDGEMENT BY BUYER**

Buyer acknowledges receipt of this Seller's Property Disclosure Statement.

Ronald Zamora
dotloop verified
08/11/26 3:50 PM EDT
0AGI-UTUT-VUTW-7KXW

**1 Buyer's Signature**

Ronald Zamora

Print or Type Name

Date

Marisela Zamora
dotloop verified
08/11/26 3:52 PM EDT
NADQ-MQ4S-CTTN-QAOQ

**2 Buyer's Signature**

Marisela Zamora

Print or Type Name

Date

☐ **Additional Signature Page (F267) is attached.**

**SELLER'S REPRESENTATION REGARDING THIS STATEMENT**

Seller represents that the questions in this Statement have been answered to the actual knowledge and belief of all Sellers of the Property

**1 Seller's Signature**

Print or Type Name

Date

**2 Seller's Signature**

Print or Type Name

Date

☐ **Additional Signature Page (F267) is attached.**

Copyright© 2026 by Georgia Association of REALTORS®

## LEGEND

| | |
|---|---|
| △ | CALCULATED POINT |
| ○ | IRON PIN SET (I.P.S. 1/2" RB) |
| ● | IRON PIN FOUND (I.P.F.) |
| ■ | RIGHT-OF-WAY MARKER |
| —— | PROPERTY LINE |
| <<<<<< | RIDGE LINE |
| —x—x— | FENCE |
| - - - - | DITCH |
| | STREAM |
| | HOLLOW |
| | LAND LOT LINE (LLL) |
| | CENTERLINE |
| | POWERLINE |
| | TELEPHONE LINE |
| | PAVED ROAD |
| | DIRT ROAD |
| | GRAVEL ROAD |
| | TELE/POWER POLE |
| ○ | TELE/ELEC BOX |
| □ | FENCE POST F.P. |
| D.B. | DEED BOOK |
| P.B. | PLAT BOOK |
| L.L.C. | LAND LOT CORNER |
| N.T.S. | NOT TO SCALE |

### SURVEY DATA:

1.) TYPE OF SURVEY: RETRACEMENT
2.) SOURCE OF TITLE DESCRIPTION FOR SUBJECT PROPERTY: D.B.833/PG.469
3.) PROPERTY OWNER AT TIME OF SURVEY: TONY D. CASH & RENEE C. CASH
4.) TAX PARCEL # BR01 006
5.) CURRENT ZONING: R-3

THIS PROPERTY IS NOT IN A 100 YEAR FLOOD PLAIN AS PER F.I.R.M. 13111"C"0177"E"

THE INITIAL CONTROL POINTS FOR THIS SURVEY WERE LOCATED UTILIZING GPS. THE EQUIPMENT USED WAS A CHAMPION NV3 DUAL FREQUENCY RECEIVER WITH A SCEPTER GEO HT530+ DATA COLLECTOR RUNNING MICROSOFT ACTIVESYNC SOFTWARE. NETWORK RTK CORRECTIONS WERE RECEIVED VIA A CELLULAR MODEM. THE TYPE OF SURVEY WAS NETWORK RTK UTILIZING THE TRIMBLE VRS REAL TIME NETWORK OPERATED BY EGPS SOLUTIONS, INC. THE RELATIVE POSITIONAL ACCURACY, AS CALCULATED ACCORDING TO THE FEDERAL GEOGRAPHIC DATA COMMITTEE PART 3: NATIONAL STANDARD FOR SPATIAL DATA ACCURACY, IS .04 FT. HORIZONTAL AND .07 FT. VERTICAL AT THE 95% CONFIDENCE LEVEL.

THE BEARINGS SHOWN ON THIS PLAT WERE COMPUTED USING GPS AND BASED ON STATE PLANE COORDINATES, NAD 83, GA WEST. DISTANCES ARE BASED ON HORIZONTAL FIELD MEASUREMENTS. (GRID FACTOR 0.99990238)

THE FIELD DATA UPON WHICH THIS MAP OR PLAT IS BASED HAS A PRECISION OF ONE FOOT IN 5,000+ FEET, AN ANGULAR ERROR OF 06"± PER ANGLE POINT AND WAS ADJUSTED USING LEAST SQUARES RULE.

THIS MAP OR PLAT HAS BEEN CALCULATED FOR CLOSURE AND IS FOUND TO BE ACCURATE WITHIN ONE FOOT IN 194,593 FEET.




SURVEY FOR

# TOCCOA WILDERNESS PROPERTIES, LLC

WITHIN THE CITY LIMITS OF BLUE RIDGE
LAND LOT 278 8th DISTRICT 2nd SECTION
FANNIN COUNTY, GA. JANUARY 11, 2016
SCALE: 1" = 20'

SURVEY REF: D.B.833/PG.469; P.H."D"277/PG.5; P.H."A"534/PG.3; P.H."E"50/PG.5; D.B.959/PG.595 D.B.800/PG.273 D.B.734/PG.201




ALL MATTERS OF TITLE EXCEPTED.

THIS SURVEY IS FOR THE EXCLUSIVE USE OF THE PERSON(S) HEREON NAMED AND IS NOT INTENDED FOR ANY OTHER PARTY.

THIS SURVEY SUBJECT TO ALL RIGHTS-OF-WAY AND EASEMENTS. ACREAGE'S SHOWN, CALCULATED, USING DIMENSIONS SHOWN ON PLAT.

THIS SURVEY PERFORMED USING A TOPCON 3002 TOTAL STATION. A COMPUTER USED FOR ALL CALCULATIONS.

BASED ON MAPS PROVIDED BY FANNIN COUNTY, I HEREBY CERTIFY THAT THIS PROJECT IS IN THE FOLLOWING PROTECTION DISTRICTS:

| YES | NO | PROTECTION DISTRICTS |
|---|---|---|
| | X | ELLIJAY RIVER WATERSHED WATER SUPPLY |
| X | | TOCCOA RIVER WATERSHED WATER SUPPLY |
| | X | TOCCOA RIVER CORRIDOR |
| | X | WETLANDS |
| | X | MOUNTAIN |

### GEORGIA SURVEYOR'S CERTIFICATION

THIS SURVEY WAS PREPARED IN CONFORMITY WITH THE TECHNICAL STANDARDS FOR PROPERTY SURVEYS IN GEORGIA AS SET FORTH IN CHAPTER 180-7 OF THE RULES OF THE GEORGIA BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS AND AS SET FORTH IN THE GEORGIA PLAT ACT (O.C.G.A. 15-6-67).

SIGNATURE IS VALID ONLY IF ORIGINAL AND IN A CONTRASTING COLOR OF INK.

GEORGIA PROFESSIONAL No. 1575 LAND SURVEYOR LANE S. BISHOP 1-15-16

| OFFICE: R.O. | FIELD: M.W. | DRAWN BY: | K.B. 1/13/2016 |
|---|---|---|---|
| CRD. FILE | DWG. FILE | J. O. # | FLD. BOOK |
| FN 821501 | oDonoghue0.17 | 160106"A" | 13(15) |

PREPARED BY
**LANE S. BISHOP AND ASSOCIATES**
LAND AND ENGINEERING SURVEYS
GEORGIA PELS CERTIFICATE OF AUTHORIZATION LSF000306
PO BOX 1506 4145 EAST FIRST ST. BLUE RIDGE GA. 30513
PHONE: (706)632-3919 FAX: (706)632-6873
REGISTERED SURVEYOR: GA R.L.S. #1575 & 2536 TN. R.L.S. #1324 N.C. R.L.S. #2745

RECORDING STAMP SPACE

Doc ID: 002106050001 Type: PLAT
Recorded: 08/31/2016 at 11:00:00 AM
Fee Amt: $8.00 Page 1 of 1
Fannin Co. Clerk of Superior Court
DANA CHASTAIN Clerk of Courts
BK E518 PG 4

"Exhibit G"

dotloop signature verification: dtlp.us/8knO-hysY-b703
05/05/26 10:28 AM EDT
05/05/26 11:26 AM EDT dotloop verified

dotloop signature verification: dtlp.us/8knO-hysY-b703

# LAND PURCHASE AND SALE AGREEMENT

**Offer Date:** 07/31/2026

Georgia REALTORS®

**2026 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: REDACTED
   City Mineral Bluff, County Fannin, Georgia, Zip Code 30559
   MLS Number: 424909 Tax Parcel I.D. Number: 0026011A
   b. **Legal Description:** The legal description of the Property is *[select one of the following below]*:
   ☐ (1) attached as an exhibit hereto;
   ☐ (2) the same as described in Deed Book 1642, Page 9, et. seq., of the land records of the above county; **OR**
   ☐ (3) Land Lot(s) ______ of the ______ District, ______ Section/ GMD, Lot ______, Block ______, Unit ______, Phase/Section ______ of ______ Subdivision/Development, according to the plat recorded in Plat Book ______, Page ______, et. seq., of the land records of the above county.
2. **Acreage.** A Controlling Survey of the Property will be obtained by ☐ Buyer **OR** ☐ Seller and paid for by ☐ Buyer **OR** ☐ Seller.
3. **Purchase Price of Property to be Paid by Buyer:** $330,000 **OR** $n/a per acre. If price is per acre, Seller's estimate of acreage is ______ acres.
4. **Seller's Monetary Contribution toward Buyer's Costs at Closing:** $ 0
5. **Closing Date and Possession.**
   Closing Date shall be 08/31/2026 with possession of the Property transferred to Buyer
   ☐ upon Closing **OR** ☐ ___ days after Closing at ___ o'clock ☐ AM **OR** ☐ PM (attach F219 Temporary Occupancy Agreement).
6. **Closing Law Firm ("Closing Attorney").** KENDRICK AND ASSOCIATES LAW, PC **Phone Number:** 706-400-5055
7. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.) KENDRICK AND ASSOCIATES LAW, PC
8. **Earnest Money.** Earnest money will be paid to Holder in a method of payment acceptable to the Holder.
   ☐ **a.** $______ as of the Offer Date.
   ☐ **b.** $3000.00 within 7 days from the Binding Agreement Date.
   ☐ **c.** ______
9. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 21 days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay directly to Seller additional option money of $______ by ☐ check ☐ ACH or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within ______ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at Closing and shall not be refundable to Buyer unless the Closing fails to occur due to the default of the Seller
10. Property is currently zoned n/a under the applicable zoning ordinances of n/a City/County
11. **Brokerage Relationships in this Transaction.**
    a. **Buyer's Broker is** NorthGroup Real Estate **and is:**
    (1) ☐ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    ______ has been assigned to exclusively represent Buyer.
    b. **Seller's Broker is** Compass - E+E Group (#:833) **and is:**
    (1) ☐ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    ______ has been assigned to exclusively represent Seller.
    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    Seller is owner and listing agent.
12. **Time Limit of Offer.** The Offer set forth herein expires at 5 o'clock p.m. on the date 08/01/2026.

Buyer(s) Initials ______ [GS 07/31/26] [HB 07/31/26] ______ Seller(s) Initials ______ [KB 07/31/26] ______

**THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH** Kimberly Bruner **IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.**
**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

**B. FURTHER EXPLANATIONS TO CORRESPONDING PARAGRAPHS IN SECTION A.**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of Closing Seller will convey good and marketable title to said Property by limited warranty deed subject to: (1) zoning, subdivision and other governmental laws and regulations; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway, wall, fence, mailbox, or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; (4) any title objection(s) raised by Buyer prior to Closing, which Seller was able to satisfy as set forth in the Examination section below or which Buyer waives; and (5) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement and the Closing of the sale of the Property to Buyer shall not terminate any such leases.
   b. **Examination:** Buyer may examine title and/or obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the Closing. If Seller fails or is unable to satisfy valid title objections at or prior to the Closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written Notice to Seller. Notwithstanding anything to the contrary contained herein, Seller shall be deemed to have satisfied Buyer's title objections if Seller can deliver good and marketable title to the Property, which for all purposes herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs Closing Attorney and any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy, if such a policy can be issued on the Property or for the Buyer in this transaction.

2. **Acreage.** Buyer or Seller can terminate this Agreement if the Seller's estimate of the total acreage to be sold to Buyer is at least 15% more or less than the estimate.

3. **Purchase Price to be Paid by Buyer.** The purchase price shall be paid in U.S. Dollars by such method of delivery acceptable to the Closing Attorney including, but not limited to, wire transfer of immediately available funds. If the purchase price is stated as a price per acre, the acreage shall be determined by a survey obtained in the accordance with the procedure below ("Controlling Survey"). The total purchase price shall be determined by multiplying the total number of acres, to the nearest one one-thousandth of an acre as determined by a survey prepared by a registered Georgia surveyor. In the event the Seller is in possession of a survey, to which Buyer agrees in writing shall constitute the Controlling Survey, then said survey be controlling as the exact amount of the acreage being purchased and sold herein. If no survey exists or the existing survey is not acceptable, then a new survey shall be prepared. If there are no objections to the new survey, then the new survey shall be the Controlling Survey to determine the acreage being purchased and sold herein. If there is a dispute by either party regarding the new survey, the dispute shall be resolved in accordance with the Survey Resolution Exhibit attached hereto.

   Buyer warrants that Buyer will have sufficient cash at Closing that will allow Buyer to complete the purchase of Property. Buyer does not need to sell or lease other real property in order to complete the purchase of Property. Where this Agreement refers to sales price, it shall mean the same thing as the purchase price.

4. **Closing Costs and Prorations.**
   a. **Seller's Monetary Contribution toward Buyer's Costs at Closing:** At Closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction, including without limitation, any Compensation obligations of Buyer. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller.
   b. **Additional Items Paid by Seller:** In addition to the above, the Seller shall also pay the fees and costs necessary for Seller to convey good and marketable title to the Property and costs and fees of the Closing Attorney: (1) to obtain, prepare and record title curative documents, payoffs and estoppel letters; (2) for Seller not attending the Closing in person; and (3) to handle and deliver Seller's payoffs and proceeds.
   c. **Items Paid by Buyer:** At Closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close or relating to the transaction.
   d. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of Closing shall be prorated as of the date of Closing. Notwithstanding any provision to the contrary, in the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, the party who paid less than their pro rata share of taxes to the other party at Closing or collected more than their pro rata share of taxes from the other party at Closing, shall upon the issuance of the actual tax bill or any appeal being resolved, promptly pay the other party the amount necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at Closing. The liability to the county and if applicable, city, in which the Property is located for ad valorem real property taxes for the year in which the Property is sold shall be assumed by Buyer upon the Closing of the Property. Buyer agrees to indemnify Seller against any and all claims of the county and if applicable, city, for unpaid ad valorem real property taxes for the year in which the Property is sold.

5. **Closing Date and Possession.**
   a. **Right to Unilaterally Extend the Closing Date:** Buyer and Seller shall each have a limited right to unilaterally extend the Closing Date one (1) time for eight (8) days upon Notice to the other party given on or before the Closing Date. The party unilaterally extending the Closing Date shall state a valid basis for the delay from the reasons identified below in any such Notice to unilaterally extend the Closing Date.
      **(1) Buyer's Right to Unilaterally Extend the Closing Date**: On or before the Closing Date, Buyer may, upon Notice to Seller, unilaterally extend the Closing for eight (8) days for either of the following reasons:
         **i.** The Buyer's mortgage lender is not ready due to no fault of the Buyer; or

**ii.** The Closing Attorney is not ready (except if the Seller has already unilaterally extended the Closing Date for this reason). If the Closing Attorney is not ready, it must be for reasons other than the Buyer caused the delay, the Buyer's mortgage lender is delayed or title objections still need to be resolved.

**(2) Seller's Right to Unilaterally Extend the Closing Date**: On or before the Closing Date, Seller may also, upon Notice to Buyer, extend the Closing for eight (8) days for either of the following reasons:

**i.** Valid title objections still need to be resolved, excluding title objections that (i) can either be satisfied through the payment of money or bonding off the same; or (ii) do not prevent Seller from conveying good and marketable title as defined herein); or

**ii.** The Closing Attorney is not ready (except if Buyer has already unilaterally extended the Closing Date for this reason). If the Closing Attorney is not ready, it must be for reasons other than the Seller caused the delay, the Buyer's mortgage lender is delayed or title objections still need to be resolved.

**b. Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, fobs, access cards, codes and other similar equipment allowing access to the Property, the community, and community amenities. In the event Seller is required to return the above items to a third-party, Seller shall provide Buyer with instructions on how to contact the third-party to obtain such items.

**6. Closing Law Firm.** Buyer shall have the right to select the Closing Attorney to close this transaction, and hereby selects the Closing Attorney referenced herein. In all cases where an individual Closing Attorney is named in this Agreement but the Closing Attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the Closing Attorney. If Buyer's mortgage lender refuses to allow that Closing Attorney to close this transaction, Buyer shall select a different Closing Attorney acceptable to the mortgage lender. The Closing Attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing. In transactions where the Buyer does not obtain mortgage financing, the Closing Attorney shall represent the Buyer in preparing the Closing documents, attempting to clear title of the Property to the satisfaction of the title insurance company, conducting the Closing, disbursing funds according to the settlement statement signed by the parties and Closing Attorney, timely recording deeds and issuing an owner's title insurance policy. Other than those services specifically listed above, nothing herein shall obligate the Closing Attorney to perform other legal services, including, but not limited to, certifying or warranting title of the Property, for the Buyer, except pursuant to a separate engagement agreement signed by the Closing Attorney and the Buyer.

**7. Holder of Earnest Money.** The earnest money will be paid to Holder in a method of payment acceptable to the Holder. Holder has the right to charge Buyer for any cost associated with receiving the earnest money. Such charge shall be collected separately from the payment of earnest money. The fact that Holder may represent one of the parties in this transaction as a client or is working with such party as a customer is acknowledged by all parties and shall not be a basis for Holder not performing any of its duties hereunder including, but not limited to, disbursing the earnest money based upon a reasonable interpretation of this Agreement. The earnest money will be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) Banking Days after the Binding Agreement Date hereunder or (b) five (5) Banking Days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check or pays with an ACH for earnest money, it must be drawn upon an account in a financial institution located in the United States. When the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check or ACH has cleared the account on which the check was written or from which the ACH was sent. In the event any earnest money check or ACH is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give Notice of the same to Buyer and Seller. Buyer shall have three (3) Banking Days from the date of receiving the Notice to cure the default and if Buyer does not do so, Holder shall promptly give Notice of the same to Buyer and Seller, and Seller may within seven (7) days thereafter terminate this Agreement upon Notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived. In the event Holder's bank charges any fees related to Buyer's check or ACH being dishonored, Buyer stopping payment, or Buyer's failure to deliver Earnest Money, Holder shall notify the Buyer and the Buyer shall immediately reimburse Holder the cost of the fees in addition to fulfilling their earnest money obligations.

**8. Earnest Money.**

**a. Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at Closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.

**b. Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the Closing of the Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that: 1) Holder first gives all parties at least ten (10) days Notice stating to whom and why the disbursement will be made; and 2) no interpretation shall be made by Holder dividing the earnest money between Buyer and Seller. Any party, real estate licensee or any other person having knowledge of or an interest in the disbursement of the earnest money may object to or provide information regarding the proposed disbursement by giving written Notice of the same to Holder within the above referenced Notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection or other information and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send Notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day Notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day Notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.

c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.

d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages (collectively, "Claims") arising out of the performance by Holder of its duties, including Claims caused, in whole or in part, by the negligence of the Holder; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

9. **Inspection and Due Diligence.**

a. **Buyer's Right to Inspect Property:** Unless otherwise specified herein, the Property is being sold in "as-is" condition with any and all faults. Therefore, Buyer and/or Buyer's representative(s) have the right to carefully inspect the Property to make sure it meets the needs of the Buyer. **If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.**

b. **Buyer's Responsibility to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer is solely responsible for becoming familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime, schools, zoning and land use, and government and transportation maps and plans. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.** Neither Seller nor Seller's Broker shall have any duty to disclose information about sex offenders in the neighborhood.

c. **Buyer's Inspection Rights Continue through Closing:** Upon prior Notice to Seller, Buyer and/or Buyer's representatives shall have the continuing right through Closing to enter the Property at Buyer's expense and at reasonable times to, among other things, and without limitation, conduct inspections, examinations, evaluations, appraisals, surveys and tests, meet contractors and vendors, measure for renovations, determine the condition of the Property and confirm that any agreed upon repairs have been made. Seller shall cause all utilities, systems and equipment to be on and all parts of the house to be accessible, including basements, attics, and crawlspaces so that Buyer may complete all inspections.

d. **Buyer's Inspection Indemnification Obligations: Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages related to the exercise of the above inspection rights by Buyer and Buyer's representatives, and Buyer shall promptly pay Seller the actual cost to restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was prior to such testing or evaluations. Notwithstanding the above, this indemnification obligation shall not apply to damage resulting from defects in the Property uncovered during the inspection of the Property.**

e. **Due Diligence Period:** If the Property is being sold subject to a Due Diligence Period, then: a) this Agreement shall be an option contract during which time Buyer shall have the option, for any reason or for no reason, to terminate this Agreement upon Notice to the Seller given prior to the expiration of the Due Diligence Period, in which case Buyer shall be entitled to a return of Buyer's earnest money without penalty; b) Buyer may, during the Due Diligence Period, seek to amend this Agreement to address any concerns Buyer has with the Property or this Agreement; and c) if Buyer has not terminated this Agreement as set forth above, Buyer shall accept the Property in "as-is" condition, subject to any amendment to this Agreement to address concerns agreed to by the parties.

f. **Seller's Duty to Disclose**: Seller shall disclose to Buyer any and all known latent or hidden defects in the Property that could not be discovered by the Buyer during a reasonably careful inspection of the Property.

g. **Warranties Transfer:** Seller agrees to transfer to Buyer, at Closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.

h. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to Closing unless otherwise agreed to in writing by the Buyer and Seller.

i. **Due Diligence Materials:** Seller shall provide to the Buyer within five (5) days from the Binding Agreement Date, the items below, if available, pertaining to the Property (hereinafter collectively referred to as "Due Diligence Materials").

(1) **Tax and Title:**
- i. Most recent Property tax assessments and tax bills.
- ii. The most recent title insurance policy insuring the Property, including complete and legible copies of all documents (whether or not recorded) which are referenced as title exceptions.
- iii. The most recent ALTA (American Land Title Association) survey of the Property, or if such a survey is not available, the most recent survey of the Property prepared by a licensed Georgia surveyor.
- iv. A list of special assessment districts in which the Property is located and the schedule of unpaid or pending assessments – if any.
- v. A schedule of impact fees paid or owed on the Property, if any.

(2) **Environmental and Assessments:**
- i. All soil reports covering the Property or any portion thereof.
- ii. All cruise reports of existing timber on the Property.
- iii. All environment (hazardous substances), engineering, physical inspection, marketing and feasibility studies, assessments and reports, including wetlands reports.

(3) **Leases:**
An executed copy of every lease of or affecting the Property or any portion thereof.

(4) **Miscellaneous:**
- i. A schedule of management fees due in connection with any agreements pertaining to the Property.
- ii. All municipal, county, state or federal permits, licenses and authorizations affecting the use, operation, and maintenance of the Property."

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**10. Sellers Warranties and Representations.** Except to the extent provided in this Agreement, Seller warrants as follows:

**a. Authority.** Seller has the right, power and authority to enter into this Agreement and to convey Property in accordance with the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Seller have been duly and validly authorized by Seller to execute and deliver this Agreement and have the right, power and authority to enter into this Agreement and bind Seller.

**b. Bankruptcy.** Seller represents and warrants that Seller is solvent and has not made a general assignment for the benefit of creditors or been adjudicated as bankrupt or insolvent, nor has a receiver, liquidator or trustee of Seller or any of its respective properties (including Property) been appointed or a petition filed by or against Seller for bankruptcy, reorganization or arrangement pursuant to the Federal Bankruptcy Act or any similar federal or state statute, or any proceeding instituted for the dissolution or liquidation of Seller.

**c. Condemnation.** Seller has not been notified that any condemnation or other taking by eminent domain of Property or any portion thereof has been instituted and, to the best of Seller's knowledge, there are no pending or threatened condemnation or eminent domain proceedings (or proceedings in the nature or in lieu thereof) affecting Property or any portion thereof or its use.

**d. Hazardous Substances.** To the best of Seller's knowledge, (1) no "hazardous substances", as that term is defined in the Comprehensive Environmental Response, Compensation, and Liability Act, and the rules and regulations promulgated pursuant thereto, or any other pollutants, toxic materials, or contaminants have been or shall prior to Closing be discharged, disbursed, released, stored, treated, generated, disposed of, or allowed to escape on Property in violation of applicable law; (2) no underground storage tanks are located on the Property or were located on the Property and subsequently removed or filled; (3) Property has not previously been used as a gas station, cemetery, landfill, or as a dump for garbage or refuse; and (4) Property has not previously been and is not currently listed on the Georgia Environmental Protection Division Hazardous Site. Seller has not received any Notice or demand from any governmental or regulatory agency or authority requiring Seller to remove any hazardous substances or contaminants or toxic materials from Property.

**e. Leases.** Other than those leases provided by Seller to Buyer as part of the Due Diligence Materials, there are no other leases of or affecting the Property or any portion thereof and Seller will not enter into any new leases without the written permission of Buyer.

**f. No Litigation.** There are no actions, suits, or proceedings pending or, to the best of Seller's knowledge, threatened by any organization, person, individual, or governmental agency against Seller with respect to Property or against Property, or with respect thereto, nor does Seller know of any basis for such action. Seller also has no knowledge of any currently pending application for changes in the zoning applicable to Property or any portion thereof.

**g. Pre-Existing Right to Acquire.** No person or entity has any right or option to acquire Property or any portion thereof, which will have any force of effect after execution hereof, other than Buyer.

**h. Proceedings Affecting Access.** Seller has not been notified that there are any pending proceedings that could have the effect of impairing or restricting access between Property and adjacent public roads and, to the best of Seller's knowledge, no such proceedings are pending or threatened.

**i. Violations.** To the best of Seller's knowledge, there are no violations of laws, municipal or county ordinances or other legal requirements with respect to Property (excluding any improvements constructed thereon).

**11. Brokerage Relationships and Compensation in this Transaction.**

**a. Agency Disclosure:** No Broker in this transaction shall owe a fiduciary duty or any other duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;

**(3) No Agency Relationship:** Buyer and Seller acknowledge that: a) if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party; and b) if the same brokerage firm is representing one party as a client and working with the other party as a customer, the Broker and all of Broker's affiliated licensees are representing the client.

**(4) Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:

**i. Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*

(a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;

(b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;

(c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.

(d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.

**ii. Designated Agency Disclosure:** If Broker in this transaction is acting in a designated agency capacity, where one or more licensees of Broker are exclusively representing Buyer and one or more other licensees of Broker are exclusively representing Seller, Buyer and Seller consent to the same and acknowledge that each designated agent or agents shall exclusively represent the party to whom each has been assigned as a client.

**b. Compensation of Broker(s):** Buyer and Seller shall be obligated to pay their respective Compensation obligations, if any, to Broker(s) in full at Closing and as a pre-condition to Closing (so long as the same is permitted by Buyer's mortgage lender). The Closing Attorney is hereby authorized and directed to: (i) show the Compensation of the respective Broker(s) on the settlement statement at Closing; and (ii) disburse such Compensation to Broker(s) upon the consummation of Closing pursuant to the agreement(s) of party paying and receiving such Compensation. The acceptance by the Broker(s) of partial Compensation at Closing shall not relieve the party owing the same from paying the remainder after the Closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of Broker's Compensation).

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

c. **Disclaimer:** Buyer and Seller have not relied upon any: a) promises, statements or representations (collectively, "Representations") of Brokers other than what is included in this Agreement, in an amendment thereto or in a Pre-Showing Compensation Agreement. This shall include Representations made after this Agreement is entered into that have not been made as an amendment hereto and agreed to by all parties. Brokers shall have no duty to determine whether the identities of the Buyer and/or Seller are legitimate or inspect the Property for termites, defects, hazardous conditions and/or repairs. The Brokers herein shall have no duty to advise Buyer or Seller on any matter relating to the Property which could have been revealed if Buyer: a) had obtained, with respect to the Property, a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, or test for radon, asbestos, mold, moisture, methamphetamine, and/or lead-based paint; b) had the Property inspected by a professional, construction expert, or structural, soils or environmental engineer; c) had this Agreement and transaction reviewed by an attorney, financial planner, mortgage consultant or tax consultant; and/or d) consulted appropriate governmental officials, maps, laws and regulations to determine, among other things and without limitation, the zoning of Property, the propensity of the Property to flood, flood zone certifications, and whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the matters handled by the professionals referenced above or in the above tests, inspections, evaluations and reviews. Buyer and Seller should seek independent expert advice regarding the above matters and any other matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, inspect or opine on whether the construction of or repairs to the Property were done properly and that such tasks clearly fall outside the scope of real estate brokerage services. Buyer and Seller further acknowledge that Brokers have no duty to ensure that Seller has terminated Seller's and/or third-parties' administrative access to Devices.

12. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) Notice of acceptance of the Offer has been delivered to the party who made the Offer.

13. **Assignment.** In the event Buyer has the right to assign this Agreement, the assignment shall not release Buyer of any of its obligations or liabilities hereunder. Notice of such assignment shall be provided to Seller at least five (5) days prior to Closing.

**C. OTHER TERMS AND CONDITIONS**

1. **Notice.**

a. **Generally:** All Notices given hereunder shall be in writing, legible and signed by the party giving the Notice. In the event of a dispute regarding Notice, the burden shall be on the party giving Notice to prove delivery. The requirements of this Notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by email or facsimile. The person delivering or sending the written Notice signed by a party may be someone other than that party.

b. **Delivery of Notice:** A Notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written Notice by a party; (2) in the case of delivery by a Delivery Service, when the written Notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the Notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written Notice is electronically sent to an email address or facsimile number of a party set forth herein (or subsequently provided by the party following the Notice provisions herein) even if it is not opened by the recipient.

c. **When Broker Is Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker representing a party in a client relationship shall be the authorized agent of the party for the limited purpose of receiving Notice and such Notice to any of them shall for all purposes herein be deemed to be Notice to the party. This shall include, without limitation, receiving notices regarding the disbursement of earnest money after this Agreement has been terminated. Notice to an authorized agent shall only be effective if the written Notice is sent to an address, facsimile number or email address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the Notice provisions herein) whether or not it is not opened by the recipient. Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker are authorized to receive Notices delivered by a Delivery Service. The Broker and the Broker's staff shall not be authorized to receive Notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent(s) of a client shall be the authorized agent(s) of the client for the purposes of receiving Notice.

2. **Default.**

a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty. Unless Seller has otherwise waived Seller's right to terminate due to the Buyer's failure to pay earnest money, Seller may, after the termination of this Agreement, sue Buyer for any portion of the Earnest Money that was either not paid, returned for insufficient funds, or the payment of which was stopped.

b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either (i) seek the specific performance of this Agreement or (ii) terminate this Agreement upon Notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein, and Buyer may pursue any other remedy available at law.

c. **Rights of Broker:** The Brokers involved in this transaction shall be express third-party beneficiaries of this Agreement, shall have the right to enforce all provisions in this Agreement that benefit them or afford them rights and defenses and shall have all remedies at law or in equity in the event of a breach of this Agreement. In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to each Broker involved in the transaction an amount equal to the Compensation each Broker would have received had the transaction closed. If the same Broker is working with or representing the buyer and seller in the transaction, the Compensation the Broker shall be entitled to in the event of the default shall be the total Compensation the Broker would have received from all parties in the transaction had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of Compensation to be paid to any broker involved in this transaction are incorporated herein by reference. Additionally, upon the request of any party to the transaction, the Broker(s) shall disclose in writing the Compensation they will receive when the transaction closes so that the party knows the exact amount of liquidated damages they will be obligated to pay should the party default herein.

d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and Compensation claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of Closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement or Seller's Disclosure of Latent Defects and Fixtures Checklist) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Notwithstanding the above, if the Property is destroyed or substantially destroyed prior to Closing, Seller shall promptly give Notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above Notice. If Buyer or Seller do not terminate this Agreement, Seller shall assign at Closing all of its rights to receive the proceeds from all insurance policies affording coverage for the claim. If the insurance proceeds are paid prior to Closing, the amount of such proceeds shall be credited against the purchase price of the Property.

4. **Other Provisions.**

a. **Buyer's Representations Regarding Ability to Buy Property:** As of the Binding Agreement Date and the Closing Date, Buyer represents and warrants to Seller that Buyer has the right, power and authority to enter into this Agreement and to consummate the transaction contemplated by the terms and conditions of this Agreement; and the persons executing this Agreement on behalf of Buyer have been duly and validly authorized by Buyer to execute and deliver this Agreement and shall have the right, power and authority to enter into this Agreement and bind Buyer. Buyer warrants and represents that Buyer is not prohibited from buying real property within 10 miles of a military base, installation or airport or agricultural land in Georgia pursuant to O.C.G.A. § 2-1-7.

b. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property or a portion thereof becomes subject to a condemnation proceeding or if Seller has received notice of a pending condemnation proceeding; and (2) provide Buyer with all written communications regarding the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon Notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

c. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the Closing Attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.

d. **Delays Caused by Emergencies:** If at any point after the Binding Agreement date the Governor of Georgia declares a state of emergency for the county in which the Property is located, all unexpired time deadlines herein, including but not limited to the Closing Date, shall automatically extend for the number of days the emergency exists in that county, but not more than eight (8) days. Nothing herein shall prevent the parties by mutual agreement from proceeding forward without extending such deadlines. No deadline shall be extended if this Agreement becomes a binding agreement during a state of emergency.

e. **Digital Signatures:** For all purposes herein, a digital or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the Buyer's mortgage lender or the other party.

f. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the Closing Attorney, mortgage lender and/or the title insurance company to meet their respective requirements.

g. **Entire Agreement and Modification:** Except for any Pre-Showing Compensation Agreement or other separate agreement for the payment of Broker's Compensation, that is not a part of or amended by this Agreement, this Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be solely relied upon by the Buyer and binding upon the parties and their successors, heirs and permitted assigns. No representation, statement, promise or inducement not included in this Agreement shall be relied upon or binding upon any party hereto. This Agreement may not be amended, deemed to have been mutually departed from or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may only be assigned (SS611) or listed for sale in a multiple listing service by Buyer prior to Closing with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement, including but not limited to, the obligation to pay the Compensation owed by the assignor.

h. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of Closing.

i. **FIRPTA:** Under the Foreign Investment in Real Property Tax Act ("FIRPTA"), Sellers who are not a "foreign person" as that term is defined in Section 1445(f)(3) of the Internal Revenue Code, shall deliver to the Closing Attorney at Closing a FIRPTA Affidavit. If Seller is a "foreign person" additional taxes may need to be withheld at Closing.

- **j. GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. These forms are generic and written with the interests of multiple parties in mind. The parties agree to carefully review the GAR Forms to be used in this transaction and modify the same to meet their specific needs. If any party has any questions about their rights and obligations under any GAR form, they should consult an attorney. Provisions in the GAR Forms may be subject to differing interpretations by our courts other than what the parties may have intended. Our courts may at times strike down or not enforce provisions in our GAR Forms, as written. No representation is made that the GAR Forms will protect the interests of any particular party or will be fit for any specific purpose. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.
- **k. Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is held to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
- **l. No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions therein, amendments thereto, termination thereof or to Notices signed by Broker but not the party. However, if authorized in this Agreement, Broker shall have the right to accept Notices on behalf of a party (but not send Notices from Broker on behalf of a party unless they are signed by the party). Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it shall be resolved by a court or arbitrator having jurisdiction over the dispute, by the written agreement of the Buyer and Seller, or by the Holder but only in making a reasonable interpretation of the Agreement in disbursing earnest money.
- **m. No Recording of Agreement:** Buyer shall not record (or permit to be recorded) this Agreement or any memorandum or summary thereof in the Office of Land Records. Buyer shall be liable for damages for violating this section of the Agreement. Nothing herein shall prohibit Buyer from recording a *lis pendens* as part of filing a lawsuit claiming an interest in the Property.
- **n. Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers Notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If Notice of accurate Binding Agreement Date is delivered, the party receiving Notice shall sign the same and immediately return it to the other party. Notwithstanding any other provision to the contrary contained in this Agreement, it is the express intent of this section that (1) a broker or licensee involved in the real estate transaction may perform the ministerial task of filling in the Binding Agreement Date and (2) sending a fully signed purchase and sale agreement with a specific Binding Agreement Date included, that one of the parties has agreed to, constitutes Notice of the Binding Agreement Date to the other party.
- **o. Objection to Binding Agreement Date:** If the Buyer or Seller objects to the date entered as the Binding Agreement Date, then within one (1) day from receiving Notice of Binding Agreement Date, the party objecting shall send Notice of the objection to the other party. The objection shall be resolved by the written amendment between the Buyer and Seller by executing a binding agreement date confirmation (F733). The absence of an agreement on the Binding Agreement Date shall not render this Agreement unenforceable. The failure of a party to timely object will result in the parties accepting the Binding Agreement Date as entered.
- **p. Property to Be Delivered in Clean Condition:** Notwithstanding any other provision to the contrary, at the time of possession, Seller shall deliver the Property in clean condition, free of trash, garbage, debris, construction materials, pets and personal property of the Seller not otherwise identified in this Agreement as remaining with the Property. Firewood shall not be considered debris. This section shall apply even in transactions where the Property is being sold as-is.
- **q. Rules for Interpreting This Agreement:** In the event of internal conflicts or inconsistencies in this Agreement, the following rules for how those conflicts or inconsistencies shall be resolved will apply:
  - (1) Handwritten changes shall control over pre-printed or typed provisions;
  - (2) Exhibits shall control over the main body of the Agreement;
  - (3) Special Stipulations shall control over both exhibits and the main body of the Agreement, including handwritten changes thereto;
  - (4) Notwithstanding the above, the Amendatory Clause in the FHA or VA Exhibit shall control over inconsistent or conflicting provisions contained elsewhere in this Agreement. Buyer and Seller acknowledge and agree that the "Agreement to Seek Amendment to Purchase Price Prior to Termination" section in the FHA or VA Exhibits does not conflict and is not inconsistent with the Amendatory Clause.
  - (5) Except as otherwise provided herein, this agreement and any amendment thereto shall be enforceable, as between the parties, even without the signature of any Broker referenced herein. Notwithstanding the above, if any provision(s) in this Agreement, including a provision(s) in any amendment hereto, changes the total amount of Compensation due to any Broker from the total amount of Compensation said Broker has previously agreed to in writing, then such change to the Broker's Compensation shall only be binding if the Broker impacted by such change consents to the same in writing. If a Buyer's Broker Compensation Exhibit (F259) is attached as an exhibit to this Agreement, this Agreement shall not be enforceable unless this Agreement or such Buyer's Broker Compensation Exhibit is signed by the Buyer's Broker and, in cases where the Seller's Broker is sharing a portion of its Compensation with the Buyer's Broker, the Seller's Broker.
  - (6) If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation fully and accurately reflects that party's intentions; b) accepts each special stipulation as if it were written by such party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.
  - (7) If Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller.

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

r. **Survival of Agreement:** The following shall survive the Closing of this Agreement: (1) the obligation of a party to pay Compensation; (2) any warranty of title; (3) all written representations of Seller in this Agreement regarding the Property or neighborhood in which the Property is located; (4) Buyer's indemnification obligations arising out of the inspection of the Property by Buyer and Buyer's representatives; (5) the section on condemnation; (6) the section on attorney's fees; (7) the obligations of the parties regarding ad valorem real property taxes; (8) the ability of Broker to receive Notices on behalf of a client after the termination of this Agreement; and (9) any obligations which the parties herein agree shall survive the Closing or may be performed or fulfilled after the Closing.

s. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate.

t. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**

a. **Banking Day**: A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.

b. **Binding Agreement Date**: The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers Notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.

c. **Broker:** In this Agreement, the term "Broker" shall mean the licensed Georgia real estate broker(s) or brokerage firm(s) and their affiliated licensees in this transaction except as may be specifically provided otherwise herein.

d. **Business Day**: A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.

e. **Client:** "Client" shall mean a party who is being represented by a Broker pursuant to a written brokerage engagement agreement.

f. **Closing:** The Closing shall be the event in which the parties consummate the transaction set forth in this Agreement by: (1) the Seller tendering the deed referenced herein to the Property; (2) the Buyer paying the required consideration hereunder; (3) both parties properly signing all documents and paperwork as required by the Closing Attorney; and (4) both parties fulfilling other agreements set forth herein that must be fulfilled by the Closing (unless the same have been waived or amended). The Closing shall be deemed consummated when the Closing Attorney confirms to the parties that the Closing Attorney is in receipt of all required paperwork, funds, and approvals necessary to complete the transaction and directs for funds to be disbursed and documents to be recorded. All parties acknowledge that the deed will not normally be recorded in the land records on the day of Closing, and the payment of the sales proceeds may not always be made to Seller on the day of Closing (even though the Closing has been consummated) due to certain circumstances such as, for example, the Seller not being at the Closing in person, the Closing occurring after the cutoff for wiring funds that day, or the terms of an escrow agreements signed by the Seller have not been fulfilled resulting in which a portion of Seller's funds being held back.

g. **Compensation:** The term "Compensation" as used in this Agreement shall mean the compensation to be received by Broker, for performing real estate brokerage services in this transaction, regardless of whether it is a flat fee, percentage, bonus or some other method of compensation.

h. **Customer:** The term "Customer" shall mean a party or parties who are not being represented as clients by the Broker with whom the party or parties are working and for whom the Broker may only perform ministerial acts.

i. **Day**: For the purposes of this Agreement, the term "Day" shall mean a full calendar day ending at 11:59 p.m., except as may be provided for elsewhere herein. For the purposes of counting days for determining deadlines, the specific date referenced as either the Binding Agreement Date or the date from which the deadline shall be counted will be day zero.

j. **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

k. **Use of Initials "N/A":** The use of the initials "N/A" or "N.A." in filling out a blank in this Agreement shall mean "not applicable"

6. **Property Not Being Sold for Value of Any Improvements on Land.** Buyer acknowledges that the Property may contain certain incidental improvements such as existing homes, barns, fences, outbuildings and wells. Buyer acknowledges that the Property is being purchased for the value of the land rather than the value of any improvements presently located thereon. All improvements are being sold in "as-is" condition. Buyer acknowledges that the improvements on the Property, if any, may be in need of significant repair, may contain defective conditions and may not have been constructed or used in accordance with all applicable laws. Since the condition of any existing improvements is immaterial to Buyer's decision to purchase the Property, Seller shall have no responsibility to make any disclosures or repairs relative to the same. Buyer covenants not to sue Seller with respect to any matter relating to the condition of said improvements and agrees to indemnify and hold Seller harmless with respect to the same. Buyer expressly waives: (1) any and all rights to inspect and test for lead-based paint and/or lead-based paint hazards for not less than ten (10) days from the Binding Agreement Date; and (2) the right not to be contractually obligated under this Agreement until the above time period has lapsed.

7. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent emails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, Closing Attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the Closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

Copyright© 2026 by Georgia Association of REALTORS®, Inc. 

dotloop signature verification: dtlp.us/zCZ2-rXJ1-4QtB

8. **HEIGHTENED IDENTIFICATION PROCEDURES TO HELP PREVENT FRAUD; COVENANT NOT TO SUE:** There has been a significant increase in criminals attempting to sell properties they do not own by posing as the owners of those properties. To help prevent such crimes, Seller shall immediately, upon request of either the Seller's Broker and/or the Closing Attorney: 1) provide the requesting party with information confirming the Seller's identity, including a current government issued photo identification; 2) meet in person or through audio-visual conferencing to confirm the Seller's identity; and 3) if the Seller is a legal entity, provide the requesting party with the organizational and operating documents of such entity and current photo identification and either meet in-person or in audio-visual meeting with the executor, manager, trustee, general partner, officer, administrator, or other person in a comparable role of the legal entity to confirm their identity. Seller further agrees to cooperate with the Closing Attorney's heightened identification procedures which shall at least meet the standards, if any, supplied by a title insurance company for whom the Closing Attorney is an agent. Seller acknowledges that the transaction may not be able to close unless such procedures are followed. In the event Seller breaches its obligations hereunder, Seller shall be in default of this Agreement. Buyer acknowledges that identity theft may occur regardless of the measures undertaken by the parties, their respective brokers and the attorney(s) involved in the transaction to confirm the Seller's identity. For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer covenants not to sue any Broker(s) and/or the Closing Attorney involved in this real estate transaction for damages arising out of or relating to a fraudulent seller.

9. **LIMITATION OF LIABILITY AND STATUTE OF LIMITATIONS. BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):**
   a. **SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF COMPENSATION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMPENSATION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMPENSATION IS PAID TO BROKER, THAN THE SUM OF $100; AND**
   b. **NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.**
   c. **STATUTE OF LIMITATIONS: FOR AND IN CONSIDERATION OF THE SUM OF $10.00 AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE THEREBY ACKNOWLEDGED, ALL CLAIMS OF ANY NATURE WHATSOEVER AGAINST BROKER(S) AND/OR THEIR AFFILIATED LICENSEES INVOLVED IN THIS TRANSACTION, WHETHER ASSERTED IN LITIGATION OR ARBITRATION AND SOUNDING IN BREACH OF CONTRACT AND/OR TORT, MUST BE BROUGHT WITHIN ONE (1) YEAR FROM THE DATE ANY CLAIM OR CAUSE OF ACTION ARISES. SUCH ACTIONS SHALL THEREAFTER BE TIME-BARRED. ALL BROKERS REFERENCED HEREIN SHALL BE EXPRESS THIRD-PARTY BENEFICIARIES OF THIS PROVISION.**

10. **Exhibits and Addenda**. All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement.

- ☐ Back-up Agreement Contingency Exhibit (F604) "________"
- ☐ Buyer's Broker Compensation Exhibit (F259) "E"
- ☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) "F"
- ☐ Community Association Disclosure Exhibit (F322) "________"
- ☐ Legal Description Exhibit (F807 or other) "D"
- ☐ Seller's Property Disclosure Statement Exhibit (F302, F307) "A"
- ☐ Special Title Exceptions Pertaining to Property as Exhibit "________"
- ☐ Special Warranties and Representations of Seller as Exhibit "________"
- ☐ Survey of Property as Exhibit "C"
- ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "________"
- ☐ Other No Financing Contingency- Exhibit "B"
- ☐ Other ________
- ☐ Other ________
- ☐ Other ________

**SPECIAL STIPULATIONS:** The following Special Stipulations are made a part of this Agreement.

Item 2.- Left blank because there is already a recent survey done by the Seller.

Contract is contingent upon a successful perk test and approval for 4 bedroom septic.

Buyer will arrange and pay for perk test.

When Seller obtains the mineral rights, Buyer wants the mineral rights for this property transferred to them.

☐ **Additional Special Stipulations (F246) are attached.**

**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

**By signing this Agreement, Buyer and Seller acknowledge that they have each read and understood this Agreement and agree to its terms.**

If Buyer or Seller is a legal entity, this Agreement must be signed by one or more authorized persons, as required in the entity's legal documents. The person's signature must include the capacity in which the person is signing, such as "Trustee", "General Partner", "Manager", "President", etc.

## Buyer Acceptance and Contact Information

Glendon C Smith (dotloop verified 07/31/26 7:56 PM EDT ZWSS-GJPE-Y5AK-NGIL)
1 Buyer's Signature

Glendon C Smith
Print or Type Name Date

284 Major Ridge Road, Blue Ridge, GA 30513
Buyer's Address for Receiving Notice

770-365-9439
Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work

glendonsmith@gmail.com
Buyer's Email Address

Holly Allen Smith (dotloop verified 07/31/26 7:58 PM EDT 27TZ-6ZVQ-CBXC-U8DH)
2 Buyer's Signature

Holly Allen Smith
Print or Type Name Date

284 Major Ridge Road, Blue Ridge, GA 30513
Buyer's Address for Receiving Notice

404-502-4374
Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work

hollysmith0429@gmail.com
Buyer's Email Address

☐ **Additional Signature Page (F267) is attached.**

## Seller Acceptance and Contact Information

Ronald Zamora (dotloop verified 07/31/26 8:11 PM EDT KTZO-FB9H-7JFP-8VSK)
1 Seller's Signature

Ronald Zamora
Print or Type Name Date

3800 Cutcane Road, Mineral Bluff, GA 30559
Seller's Address for Receiving Notice

(305) 467-7009
Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

ronald.zamora@compass.com
Seller's Email Address

2 Seller's Signature

Print or Type Name Date

Seller's Address for Receiving Notice

Seller's Phone Number: ☐ Cell ☐ Home ☐ Work

Seller's Email Address

☐ **Additional Signature Page (F267) is attached.**

## Buyer's Broker/Affiliated Licensee Contact Information

NorthGroup Real Estate
Buyer Brokerage Firm

Kimberly K Bruner (dotloop verified 07/31/26 7:54 PM EDT AX4C-IPVY-OFFW-TKSM)
**Broker/Affiliated Licensee Signature** Date

Kimberly Bruner 361483
Print or Type Name GA Real Estate License #

706-455-5703 n/a
Licensee's Phone Number Fax Number

kimpossiblerealestate@gmail.com
Licensee's Email Address

NE GA BOR
REALTOR® Membership

3355 Lenox Ave., Suite 750, Atlanta, GA 30326
Broker's Address

404-383-6616
Broker's Phone Number Fax Number

NRTH 01 75956
MLS Office Code Brokerage Firm License Number

## Seller's Broker/Affiliated Licensee Contact Information

Compass Real Estate
Seller Brokerage Firm

Ronald Zamora (dotloop verified 07/31/26 8:11 PM EDT IL7X-OCHP-W8W4-ZK06)
**Broker/Affiliated Licensee Signature** Date

Ronald Zamora 440452
Print or Type Name GA Real Estate License #

(305) 467-7009
Licensee's Phone Number Fax Number

ronald.zamora@compass.com
Licensee's Email Address

NE GA BOR
REALTOR® Membership

56 Mountain Street, Blue Ridge, GA 30513
Broker's Address

706-785-9555
Broker's Phone Number Fax Number

67491
MLS Office Code Brokerage Firm License Number

**Binding Agreement Date**: The Binding Agreement Date in this transaction is the date of 07/31/2026 and has been filled in by Kimberly Bruner.

**Copyright© 2026 by Georgia Association of REALTORS®, Inc.**

# SELLER'S PROPERTY DISCLOSURE STATEMENT (LOT/LAND) EXHIBIT "A"

Georgia REALTORS®

**2025 Printing**

This Seller's Property Disclosure Statement ("Statement") is an exhibit to the Purchase and Sale Agreement with an Offer Date of 09/30/2025 for Property known as or located at: REDACTED , Georgia 30559. This Statement is intended to make it easier for Seller to fulfill Seller's legal duty to disclose hidden defects in the Property of which Seller is aware. Seller is obligated to disclose such defects even when the Property is being sold "as-is."

**A. INSTRUCTIONS TO SELLER IN COMPLETING THIS DISCLOSURE STATEMENT. In completing this Disclosure Statement, Seller agrees to:**

**(1) answer all questions in reference to the Property and the improvements thereon;**

**(2) answer all questions fully, accurately and to the actual knowledge and belief of all Sellers (hereinafter, collectively "Knowledge");**

**(3) provide additional explanations to all "yes" answers in the corresponding Explanation section below each group of questions (including providing to Buyer any additional documentation in Seller's possession), unless the "yes" answer is self-evident;**

**(4) promptly revise the Statement if there are any material changes in the answers to any of the questions prior to Closing and provide a copy of the same to the Buyer and any Broker involved in the transaction.**

**B. HOW THIS STATEMENT SHOULD BE USED BY BUYER. Caveat emptor or "buyer beware" is the law in Georgia. Buyer should conduct a thorough inspection of the Property. If Seller has not occupied the Property or has not recently occupied the Property, Seller's Knowledge of the Property's condition may be limited. Buyer is expected to use reasonable care to inspect the Property and confirm that it is suitable for Buyer's purposes. If an inspection of the Property reveals problems or areas of concern that would cause a reasonable Buyer to investigate further, Buyer should investigate further. A "yes" or "no" answer to a question means "yes" or "no" to the actual Knowledge and belief of all Sellers of the Property. In other words, if a Seller answers "no" to a question, it means Seller has no Knowledge whether such condition exists on the Property. As such, Seller's answers should not be taken as a warranty or guaranty of the accuracy of such answers, nor a substitute for Buyer doing its own due diligence.**

**C. SELLER DISCLOSURES.**

| 1. GENERAL: | YES | NO |
|---|---|---|
| (a) Is the Property vacant? | | |
| If yes, how long has it been since the Property has been occupied? N/A | | |
| (b) Is the Property or any portion thereof leased? | | |

**EXPLANATION:**

| 2. COVENANTS, FEES, and ASSESSMENTS: | YES | NO |
|---|---|---|
| (a) Is the Property subject to a recorded Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") or other similar restrictions? | | |
| (b) Is the Property part of a condominium or community in which there is a community association? **IF YES, SELLER TO COMPLETE AND PROVIDE BUYER WITH A "COMMUNITY ASSOCIATION DISCLOSURE EXHIBIT" GAR F322.** | | |

**EXPLANATION:**

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Laura Elleby IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2025 by Georgia Association of REALTORS®, Inc.

| 3. THE PROPERTY: | YES | NO |
|---|---|---|
| (a) How many acres are in Property? 7.93 | | |
| (b) What is the current zoning of Property? | | |
| (c) Will conveyance of Property exclude any mineral, oil, and timber rights? | | |
| (d) Are there any governmental allotments committed? | | |
| (e) Have any licenses or usage permits been granted for, but not limited to, crops, minerals, hunting, water, grazing or timber? | | |

**EXPLANATION:**

| 4. SOIL, TREES, SHRUBS AND BOUNDARIES: | YES | NO |
|---|---|---|
| (a) Is there any fill dirt on Property? | | |
| (b) Are there any landfills (other than foundation backfill), graves, burial pits, caves, mine shafts, trash dumps or wells (in use or abandoned)? | | |
| (c) Is there now or has there ever been any visible soil settlement or movement? | | |
| (d) Is any part of Property located in a 100 year Special Flood Hazard Area where there is at least a 1% chance of a flood in any given year? | | |
| (e) Are there any drainage or flooding problems on Property? | | |
| (f) Are there any diseased or dead trees? | | |
| (g) Are there any shared improvements which benefit or burden the Property, including, but not limited to a shared dock, septic system, well, driveway, alleyway, or private road? | | |
| (h) Are there presently any encroachments, unrecorded easements, unrecorded agreements regarding shared improvements, or boundary line disputes with a neighboring property owner? | | |

**EXPLANATION:**

| 5. TOXIC SUBSTANCES: | YES | NO |
|---|---|---|
| (a) Are there any underground tanks or toxic or hazardous substances such as asbestos? | | |
| (b) Has Property ever been tested for radon or any other environmental contaminates? | | |

**EXPLANATION:**

| 6. OTHER MATTERS: | YES | NO |
|---|---|---|
| (a) Have there been any inspections in the past year? | | |
| If yes, by whom and of what type? | | |
| (b) Are there any violations of local, state or federal laws, codes or regulations with respect to Property? | | |
| (c) Have you received notices by governmental or quasi-governmental agency affecting Property? | | |
| (d) Are there any existing or threatened legal actions affecting Property? | | |
| (e) Is there any system or item on Property which is leased or which has a fee associated with its use? | | |
| (f) Are there any private or undedicated roadways for which owner may have financial responsibility? | | |
| (g) If Property is served by well water, is the well on Property? | | |
| (h) Has the Property been enrolled in a Conservation Use Program? | | |
| If yes, when was the Property enrolled? | | |
| (i) Are there any other latent or hidden defects that have not otherwise been disclosed? | | |

**EXPLANATION:**

Copyright© 2025 by Georgia Association of REALTORS®, Inc.

| 7. AGRICULTURAL DISCLOSURE: | YES | NO |
|---|---|---|
| (a) Is the Property within, partially within, or adjacent to any property zoned or identified on an approved county land use plan as agricultural or forestry use? | | |
| (b) Is the Property receiving preferential tax treatment as an agricultural property? | | |

It is the policy of this state and this community to conserve, protect, and encourage the development and improvement of farm and forest land for the production of food, fiber, and other products, and also for its natural and environmental value. This notice is to inform prospective property owners or other persons or entities leasing or acquiring an interest in real property that property in which they are about to acquire an interest lies within, partially within, or adjacent to an area zoned, used, or identified for farm and forest activities and that farm and forest activities occur in the area. Such farm and forest activities may include intensive operations that cause discomfort and inconveniences that involve, but are not limited to, noises, odors, fumes, dust, smoke, insects, operations of machinery during any 24 hour period, storage and disposal of manure, and the application by spraying or otherwise of chemical fertilizers, soil amendments, herbicides, and pesticides. One or more of these inconveniences may occur as the result of farm or forest activities which are in conformance with existing laws and regulations and accepted customs and standards.

**8. UTILITIES:**

Seller warrants that the following utilities serve Property. (The term "serve" shall mean: the indicated utilities and services are available and functional at the property line.) Check (✓) only those utilities below that are included in the sale of Property.

*[The utilities listed below that are not checked do not serve Property.]*

| | |
|---|---|
| ☐ Electricity | ☐ Public Sewer |
| ☐ Natural Gas | ☐ Public Water |
| ☐ Telephone | ☐ Private/Well Water |
| ☐ Cable Television | ☐ Shared Well Water |
| ☐ Garbage Collection | ☐ Other ______________________ |

☐ **Additional pages are attached.**

**SELLER'S REPRESENTATION REGARDING SELLER'S LOT/LAND PROPERTY DISCLOSURE STATEMENT:**

Seller represents that Seller has followed the Instructions to Seller in Completing This Disclosure Statement set forth in Paragraph A above and will follow the same in updating this Disclosure Statement as needed from time to time.

Seller: Ronald Zamora (dotloop verified 07/25/26 10:05 PM EDT A66V-VSGF-BKD4-YLPL) Date: ______________________

Seller: ______________________ Date: ______________________

☐ **Additional Signature Page (F267) is attached.**

**RECEIPT AND ACKNOWLEDGMENT BY BUYER:**

Buyer acknowledges the receipt of this Seller's Lot/Land Property Disclosure Statement.

Buyer: Glendon C. Smith (dotloop verified 07/31/26 4:45 PM EDT 0WT4-PD4C-6GKG-RCLX) Date: ______________________

Buyer: Holly Allen Smith (dotloop verified 07/31/26 4:42 PM EDT WQGR-K9OW-VMCR-MXQH) Date: ______________________

☐ **Additional Signature Page (F267) is attached.**

# NO FINANCING CONTINGENCY
# EXHIBIT "_____"

GeorgiaREALTORS®

**2026 Printing**

This Exhibit is part of the Agreement with an Offer Date of ______________________________ for the purchase and sale of that certain Property known as: ___________________________________________, ___________________________, Georgia ___________.

1. **Method of Purchase**
   A. ☐ **All Cash Purchase ("All Cash"):** Buyer has sufficient liquid assets to purchase the Property in this transaction for All Cash. The Buyer has no right to unilaterally extend the Closing Date for eight (8) days for reason of mortgage lender delay. Notwithstanding the above, Buyer shall have the right to extend the Closing Date for eight (8) days if the Closing Attorney is not ready except if the basis for the Closing Attorney not being ready is due to or related to the mortgage lender delay.

   **OR**

   B. ☐ **Financed Purchase with No Financing Contingency:** Buyer intends to obtain mortgage financing to pay for all or a portion of the purchase price of the Property; provided, however, this Agreement shall not be subject to a financing contingency. Even though Buyer is obtaining a mortgage loan, the Buyer has no right to unilaterally extend the Closing Date for eight (8) days for reason of mortgage delay. Notwithstanding the above, Buyer shall have the right to extend the Closing Date for eight (8) days if the Closing Attorney is not ready except if the basis for the Closing Attorney not being ready is due to or related to the mortgage lender delay.

2. **Verification of Funds.** Within _______ days from the Binding Agreement Date, Buyer shall be obligated to provide or cause to be provided to Seller information describing in specific detail the source of all Buyer's funds necessary to purchase the Property ("Required Information"). The Required Information shall consist of one or more of the following:
   A. A letter or letters from a trust, stock brokerage firm and/or financial institution holding funds, stocks, bonds and/or other assets (hereinafter collectively referred to as "Assets") of or on behalf of Buyer and dated subsequent to the Binding Agreement Date stating that Buyer has funds in US Dollars of at least an amount specified in the letter and/or Assets on deposit with the institution of a value specified in the letter, that are sufficient to allow Buyer to complete the purchase of the Property;
   B. An account statement or statements from the trust, stock brokerage firm and/or financial institution(s) holding funds and/or Assets confirming a specific amount of funds in US Dollars on deposit with the institution. Such account statement must be for the regular time period that such statements are issued immediately preceding the Binding Agreement Date.
   C. If Option 1(B) is selected above, a loan commitment letter from a mortgage lender.

3. **Authorization and Security.** Buyer does hereby authorize Seller and Seller's Broker to communicate with any person providing information regarding Buyer's source of funds to purchase the Property to verify such information and to answer any questions Seller or Seller's Broker may have regarding the source of Buyer's funds to purchase the Property. In providing any account statement to Seller, Buyer shall be entitled to delete or otherwise shield account numbers, social security numbers, telephone numbers and other information the release of which could jeopardize the security of the account or put the Buyer at greater risk of identity theft.

4. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Required Information within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the Notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon Notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

5. **Appraisal Contingency.** In addition to the other rights of Buyer set forth herein, this Agreement ☐ shall or ☐ shall not be subject to the Property appraising for at least the purchase price. Buyer shall have the rights set forth in this exhibit in the event the Property does not appraise for at least the purchase price in accordance with the terms and conditions set forth below:
   A. **Type of Appraisal:** The appraisal shall be a "certified appraisal" of the Property (as that term is defined in O.C.G.A. § 43-39A-2) performed or signed off by a licensed or certified appraiser (as those terms are defined in the rules and regulations of the Georgia Real Estate Appraiser's Board) and include a statement that the appraiser performed an "independent appraisal assignment" (as that term is defined in O.C.G.A. § 43-39A-2(24)) with respect to the Property.
   B. **Selection of Appraiser:** The appraiser shall be selected by *[Select one. The sections not selected shall not be a part of this Agreement.]:* ☐ Buyer, ☐Seller, OR ☐ Other (___________________________); and all parties agree that this appraiser shall only perform a single certified appraisal of the Property.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Kimberly Bruner IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

**C. Rights of Buyer If Property Does Not Appraise:** If Buyer has an appraisal contingency and any appraisal performed pursuant to and in accordance with this exhibit is for less than the purchase price of the Property, the Buyer shall have the right to request within ________ days from the Binding Agreement Date that Seller reduce the purchase price of the Property to a price not less than the appraisal price by submitting an Amendment to Purchase Price (F713) ("ATPP") to Seller along with a complete copy of the appraisal which is for less than the purchase price. In the event that Buyer does not submit an ATPP within the time frame referenced above, Buyer shall be deemed to have waived Buyer's right to request a reduction in the purchase price and this Agreement shall no longer be subject to an appraisal contingency. The time limit of the offer for the Seller to accept or reject the ATPP shall run through the earlier of: (1) three (3) days from the date that the ATPP is delivered to Seller; or (2) the time of Closing (excluding any extensions of the Closing resulting from the unilateral extension of the Closing Date).

If Seller does not accept the ATPP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon Notice to Seller, provided that such Notice is given within three (3) days of the earlier of: (a) the date that Buyer receives Notice that Seller has not accepted the ATPP; or (b) the last date Seller could have accepted the ATPP. In neither circumstance shall the Buyer's right to terminate extend beyond the time of Closing.

**D. Buyer Not Obligated to Seek Price Reduction:** Nothing herein shall require Buyer to seek any reduction in the purchase price of the Property. If Buyer does not seek a reduction in the purchase price, Buyer shall be obligated to purchase the Property for the price agreed to by the parties in the Agreement.

**6. Special Approval if Property is a Condominium or Subject to a Master Insurance Policy**.

This Agreement ☐ IS or ☐ IS NOT contingent upon Buyer's lender obtaining underwriting approval of any fire and casualty insurance policy and/or development (hereinafter "Project Approval"). If at any time the lender determines that the inability to obtain Project Approval is preventing a mortgage loan from being made, then Buyer shall have the right to terminate this Agreement without penalty and receive a full refund of all Earnest Money, provided that Buyer provides Seller with a letter from such lender stating that the inability to obtain Project Approval is what is preventing a mortgage loan from being made to the Buyer. Such letter shall be provided to Seller not later than the date of Closing or within seven (7) days of the termination of the Agreement by Buyer, provided that the Notice of termination is given prior to Closing.

Buyer's Initials: GCS 07/31/26 4:45 PM EDT dotloop verified HOS 07/31/26 4:42 PM EDT dotloop verified

Seller's Initials: RZ 07/31/26 8:11 PM EDT dotloop verified

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

https://search.gsccca.org/Imaging/HTML5Viewer.aspx?id=2699505&key1=F344&key2=6&county=55&countyname=FANNIN&userid=593741&appid=28 1/2

Type: PLAT
Kind: GENERIC MAPS AND PLATS
Recorded: 2/7/2022 9:53:00 AM
Fee Amt: $10.00 Page 1 of 1
Fannin Co. Clerk of Superior Court
DANA CHASTAIN Clerk of Courts

Participant ID(s): 7951616124, 2919157511

BK F344 PG 8

THE SPACE ABOVE IS RESERVED FOR THE CLERK OF SUPERIOR COURT FOR RECORDING DATA

APPROVED
FANNIN COUNTY LAND DEVELOPMENT OFFICE
Marie Woody
2/3/2022
DATE

FOR RECORDING ONLY. DOES NOT GUARANTEE A BUILDABLE LOT.

NOT VALID FOR RECORDING UNLESS SIGNED AND DATED BY FANNIN COUNTY LAND DEVELOPMENT

GEORGIA SURVEY DATA
A. THE FIELD DATA UPON WHICH THIS PLAT IS BASED HAS CLOSURE PRECISION OF ONE FOOT IN 33,509 FEET, AND AN ANGULAR ERROR OF 2 SECONDS PER ANGLE POINT, AND WAS ADJUSTED USING LEAST SQUARES.
B. THE PERIMETER OF THIS SURVEY HAS A CLOSURE PRECISION OF ONE FOOT IN 181,498 FEET.
C. ANGULAR AND LINEAR MEASUREMENTS OBTAINED BY USE OF A SOKKIA IX ROBOTIC TOTAL STATION.
D. DATE(S) OF FIELD SURVEY: 1-12-2022.
E. OWNER INFORMATION AT TIME OF SURVEY:
OWNER: RONALD ZAMORA
SOURCE OF TITLE: DB 1008 pg 3
TAX PARCEL: PORTION OF #0026-011

GEORGIA SURVEYOR CERTIFICATION
O.C.G.A. 15-6-67(c)(3)(A)(i) (APPROVAL NEEDED)
As required by subsection (d) of O.C.G.A. Section 15-6-67, this plat has been prepared by a land surveyor and approved by all applicable local jurisdictions for recording as evidenced by approval certificates, signatures, stamps, or statements hereon. Such approvals or affirmations should be confirmed with the appropriate governmental bodies by any purchaser or user of this plat as to intended use of any parcel. Furthermore, the undersigned land surveyor certifies that this plat complies with the minimum technical standards for property surveys in Georgia as set forth in the rules and regulations of the Georgia Board of Registration for Professional Engineers and Land Surveyors and as set forth in O.C.G.A. Section 15-6-67.

Darryl C. Whitworth
DARRYL C. WHITWORTH, RLS No. 3071 DATE: 1/27/22

GEORGIA REGISTERED No. 3071 LAND SURVEYOR DARRYL C. WHITWORTH

CALL TABLE

| Course | Bearing | Distance |
|---|---|---|
| 1 | S03°08'14"W | 307.85' |
| 2 | S01°59'41"E | 71.36' |
| 3 | S25°54'09"E | 142.52' |
| 4 | S33°15'43"E | 307.48' |
| 5 | S73°25'56"W | 44.95' |
| 6 | S26°46'57"W | 46.39' |
| 7 | S64°58'55"W | 37.77' |
| 8 | N80°59'45"W | 39.91' |
| 9 | S89°43'54"W | 35.43' |
| 10 | N85°24'02"W | 34.82' |
| 11 | N79°43'30"W | 81.44' |
| 12 | N71°45'33"W | 35.36' |
| 13 | S85°23'49"W | 28.21' |
| 14 | S40°48'54"W | 43.66' |
| 15 | S73°00'24"W | 12.52' |
| 16 | N78°55'53"W | 26.97' |
| 17 | N74°35'51"W | 40.60' |
| 18 | N81°55'30"W | 31.18' |
| 19 | S80°44'15"W | 21.50' |
| 20 | S67°50'06"W | 21.04' |
| 21 | S64°07'38"W | 52.81' |
| 22 | S70°52'08"W | 19.68' |
| 23 | S64°23'24"W | 20.71' |
| 24 | S60°06'56"W | 37.24' |
| 25 | S67°45'54"W | 19.18' |
| 26 | N15°29'26"W | 384.80' |
| 27 | N77°04'24"E | 123.39' |
| 28 | N77°02'19"E | 118.22' |
| 29 | N00°27'12"E | 241.76' |
| 30 | N32°45'42"E | 154.90' |
| 31 | N62°11'19"E | 47.51' |
| 32 | R= 770.00' Tan: 48.55' Chd: N66°06'42" E | Δ: 96.97' CA: 7°12'56" 96.90' |
| 33 | N69°43'10"E | 102.90' |

NOTE 1:
NO DEED WAS FOUND FOR THE VAN HOOK CHURCH PROPERTY. THIS AREA IS IDENTIFIED AS A 0.91 ACRE TRACT IN PB 21 pg 134. THE AREA WITHIN SAID TRACT IS A PORTION OF THE PROPERTY DESCRIBED IN DB 45 pg 716 BUT APPEARS TO HAVE BEEN EXCLUDED FROM THE PROPERTY CONVEYED IN DB 148 pg 745. THE PROPERTY LINE INDICATED HEREON AT CALLS 29-30 WAS ESTABLISHED AS INDICATED IN PH C-162 pg 6 AND PB 21 pg 134.




DIVISION SURVEY
PREPARED FOR
**Ronald Zamora**

PORTION OF PH C-162 pg 6
LAND LOT 111
8th DISTRICT, 1st SECTION
FANNIN COUNTY, GEORGIA

DATE: JANUARY 27, 2022

REVISIONS:
DATE COMMENT

LEGEND
IRON PIN FOUND; IRON PIN SET (IPS); COMPUTED POSITION (NO MONUMENT); ROCK; CONCRETE MONUMENT; FIRE HYDRANT; UTILITY POLE; WATER METER; WATER VALVE; GAS METER; GAS VALVE; POWER BOX; UTILITY PEDESTAL; DRAIN INLET; STORM MH; SEWER MH; LIGHT POLE
RB — REBAR; OTP — OPEN TOP PIPE; CTP — CRIMP TOP PIPE; P.O.B. — POINT OF BEGINNING; R/W — RIGHT OF WAY; P/L — PROPERTY LINE; C/L — CENTERLINE; N/F — NOW OR FORMERLY; DB/pg — DEED BOOK/PAGE; PB/pg — PLAT BOOK/PAGE; PP — UTILITY POLE; LL — LAND LOT; RCP — REINFORCED CONC PIPE; CMP — CORRUGATED METAL PIPE; CPP — CORRUGATED PLASTIC PIPE
PROPERTY LINE; LAND LOT LINE; RIGHT OF WAY; O/H POWER; O/H TELEPHONE; FENCE; STREAM OR POND; UG GAS LINE; UG POWER; SEWER LINE; WATER LINE; UG COMMUNICATIONS; STORM LINE; R/R TRACKS
ASPHALT; CONCRETE; GRAVEL
EXIST. CONTOUR; EXIST. INDEX CONTOUR; PROP. CONTOUR; PROP. INDEX CONTOUR

MONUMENT DIMENSIONS ARE OUTSIDE/OVERALL DIMENSIONS. ALL IPS ARE CAPPED 5/8" REBAR UNLESS OTHERWISE NOTED.

"Thou shalt not remove thy neighbor's landmark, which they of old time have set." Deuteronomy 19:14 KJV

DISCLOSURE & NOTICE
This drawing and any findings does not constitute a title or legal opinion by Chastain & Associates, P.C. Any provided certification is a statement based on facts and knowledge known to the registrant and is not a guarantee or warranty, either expressed or implied. Other documents or conditions may exist that would affect this property. As a unique pictorial and graphic professional work, this survey is subject to the Copyright laws of the United States. The latest date of field survey work is the date applicable to provisions of Statutes of Limitation. No certification or liability is extended to any party not named hereon. Subsurface matters not certified unless excavated.
IN GOD WE TRUST

PREPARED BY
**CHASTAIN & ASSOCIATES, P.C.**
SURVEYING~PLANNING~CONSULTING
TN NC SC AL GA Since 1995
"Covering Dixie Like The Dew"
CHASTAINASSOCIATES.COM
(706)276-7528 (770)889-1770
email: INFO@CHASTAINASSOCIATES.COM
288 N. Main St. Ellijay, GA 30540
GEORGIA CERTIFICATE OF AUTH. LSF000781
TENNESSEE PROFESSIONAL REG. No. 1937
NORTH CAROLINA LAND SURVEYING FIRM C-3198
ALABAMA LAND SURVEYING FIRM CA-852-LS
SOUTH CAROLINA SURVEYING FIRM COA No. 5205

50 0 100 200
GRAPHIC SCALE - 1" = 100'

SHEET 1 OF 1
FILE: 221318

EXHIBIT C

dotloop verified 10:43 AM EDT 09/30/25
dotloop verified 8:22 PM EDT 07/31/26
dotloop verified 8:23 PM EDT 07/31/26
dotloop signature verification: dtlp.us/xWml-P2Wb-n0et

dotloop signature verification: dtlp.us/xWml-P2Wb-n0et

RZ 09/30/25 10:43 AM EDT dotloop verified

GCS 07/31/26 8:22 PM EDT dotloop verified

HCS 07/31/26 8:23 PM EDT dotloop verified

Type: WD
Kind: WARRANTY DEED
Recorded: 3/14/2025 1:58:00 PM
Fee Amt: $25.00 Page 1 of 2
Transfer Tax: $0.00
Fannin Co. Clerk of Superior Court
DANA CHASTAIN Clerk of Courts

**BK 1642 PG 9 - 10**

**Return recorded document to:**
Wilson Pruitt LLC
316 Summit Street
Blue Ridge, GA 30513
File No. M25-008

Deed Prep Only

# Limited Warranty Deed

STATE OF GEORGIA
COUNTY OF FANNIN

THIS INDENTURE is made the 14 day of March, 2025, between **Ronald Zamora** ("Grantor"), and **Ronald Zamora** ("Grantee"), (the words "Grantor" and "Grantee" to include their respective heirs, successors, and assigns where the context requires or permits).

WITNESSETH THAT: Grantor, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, in hand paid at and before the sealing and delivery of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these presents does grant bargain, sell and convey unto Grantee, the following described property:

> All that tract or parcel of land lying and being in the 8th District, 1st Section, Land Lot 111, Fannin County, Georgia, being 7.93 acres, more or less, as set forth on plat of survey by Darryl C. Whitworth, GRLS No. 3071, dated January 27, 2022 and recorded in Plat Book F344, Page 8, Fannin County Records, to which reference is hereby made for a more complete and accurate legal description.

For information purposes only: Map Parcel No. 0026 011 (Parent)

TOGETHER WITH right of ingress, egress and utility easement along existing roads to the subject property; AND SUBJECT TO all existing easements, restrictions, reservations and rights of way of record.

*Chain of Title:* This being a part of the same property as was conveyed to Grantor herein by Special Warranty Deed from Bank of America, N.A., Successor by Merger to BAC Home Loans Servicing, LP, fka Countrywide Home Loans Servicing, LP for the benefit of The JPMMT 2006-S3 Trust dated May 4, 2012 and recorded in Deed Book 1008, Page 3, Fannin County Records.

dotloop signature verification: dtlp.us/eM0r-Khny-V6ko

# CLOSING ATTORNEY ACTING AS HOLDER OF EARNEST MONEY EXHIBIT "E"

**[Closing Attorney must still consent to serve as Holder using F511]**

GeorgiaREALTORS®

**2026 Printing**

This Exhibit is part of the Agreement with an Offer Date of 07/31/2026 for the purchase and sale of that certain property known as: REDACTED Mineral Bluff, Georgia 30559 ("Agreement").

1. **Closing Attorney Shall Act as Holder.** The Closing Attorney named in this Agreement shall be the Holder of the earnest money and other trust funds referenced in this Agreement subject to the Closing Attorney timely: a) agreeing to serve; b) signing the appropriate documents; and c) timely delivering the same to Buyer and Seller as more particularly described below.
2. **Buyer Must Timely Deliver Certain Documents to Closing Attorney Acting as Holder of Earnest Money.** When the Closing Attorney has been named as Holder in the Agreement, Buyer must deliver to Closing Attorney within two (2) business days from the Binding Agreement Date: a) the fully-signed and executed Agreement in its entirety ("Entire Contract"); and b) a copy or copies of the Escrow Agreement (F511) for the Closing Attorney to sign agreeing to become the Holder. Buyer must similarly deliver to Holder all amendments to the Entire Contract within two (2) business days of the date that the Amendment becomes binding.
3. **Closing Attorney Must Agree to Become Holder Within Five (5) Business Days of Receiving Entire Contract.** The Closing Attorney named as Holder shall not become the Holder unless within five (5) business days from the date that the Closing Attorney receives the Entire Contract, the Closing Attorney has: a) countersigned the Agreement of Closing Attorney to serve as Holder (GAR Form F511, and sometimes referred to as "Escrow Agreement") without change or modification so except for filling in the blanks contained therein; and b) delivered the same to Buyer and Seller. When this occurs, Closing Attorney's rights and duties as Holder and the timeframe for completing the same shall commence.
4. **Rights and Duties of Closing Attorney Acting as Holder.** Notwithstanding any provision to the contrary contained in the Agreement, Closing Attorney acting as Holder shall have all of the pre-printed rights and duties of Holder set forth in the GAR Purchase and Sale Agreement (a copy of which is incorporated herein by reference), regardless of whether such rights and duties are set forth in this Agreement. In the event of a conflict between this Agreement and the pre-printed right and duties of Holder set forth in the GAR Purchase and Sale Agreement, the latter shall control unless otherwise agreed to in writing by Buyer, Seller, and Holder. In the event the transaction does not close, Closing Attorney shall not have a right to deduct any of attorney's costs or fees pertaining to the Closing from the earnest money or other trust funds being held by Closing Attorney, except as may be provided elsewhere herein. Buyer and Seller acknowledge and agree that the fact that the closing attorney may represent a real estate brokerage firm or firms involved in the transaction or regularly close real estate transactions involving a particular broker or agent of the broker shall not prevent the closing attorney from fully performing its duties hereunder, including, but not limited to disbursing earnest money based upon a reasonable interpretation of this Agreement.
5. **Earnest Money Must Be Paid to Closing Attorney Acting as Holder by Wire Transfer.** Buyer shall be responsible for paying all earnest money and other Buyer trust funds to the Closing Attorney acting as Holder by wire transfer of immediately available funds or by such other method deemed acceptable and/or required by Closing Attorney, as the case may be.
6. **Failure of Closing Attorney to Become Holder.** If the Closing Attorney named as Holder has not become Holder because the Closing Attorney rejects being the Holder or fails to timely become Holder, then: a) the Alternate Holder named below, who must be a broker in this transaction, shall automatically become the Holder instead of the Closing Attorney; b) all parties consent to the earnest money being paid or transferred to the Alternate Holder; and c) all parties shall cooperate with one another to sign any documents required to accomplish the same. The signature of the Alternate Holder to the Agreement at the time it is first signed shall be deemed consent of the Alternate Holder to serve as Holder. The Alternate Holder's duties and the timeline for performing those duties shall commence when the Alternate Holder becomes the Holder.
7. **Alternate Holder.** The Buyer must immediately notify all parties if the Closing Attorney fails to become Holder. The Alternate Holder, who must be a broker in this transaction, shall be ______________________. In the event an Alternate Holder is not named, the Alternate Holder shall be the Buyer's Broker.
8. **Closing Attorney Holding Earnest Money in All-Cash Transaction.** In an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the Closing Attorney can hold the earnest money (and other trust funds), but in the event of a dispute between the parties regarding the disbursement of the funds, the Closing Attorney shall not disburse the funds based upon a reasonable interpretation of the Agreement. Instead and notwithstanding any provision to the contrary contained in this agreement, in the event of a dispute regarding the earnest money in an all-cash transaction where the Closing Attorney is representing the Buyer or Seller, the only remedy available to the Closing Attorney to resolve the dispute regarding the disbursement of earnest money shall be to interplead the funds into a court of competent jurisdiction.
9. **Notices To and From Holder.** The Notice procedures in the Agreement shall control with regard to all Notices to and from Holder. Holder's contact information is set forth in signature pages to this Agreement.
10. **Closing Attorney's Contact Information.** The Closing Attorney named below shall be the Holder in this transaction. If an individual attorney who works for a law firm is named as the Closing Attorney herein, all parties agree that the law firm shall technically be the Closing Attorney.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Kimberly Bruner IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

Closing Attorney: KENDRICK AND ASSOCIATES LAW PC
Address: 211 CLEVELAND STREET, SUITE C, BLAIRSVILLE, GA 30512

Phone Number: 706-400-5055
Fax Number: 706-400-5059
Email: r_kendrick@gamtnlaw.com

Buyer's Initials: GCS 07/31/26 4:45 PM EDT dotloop verified HAS 07/31/26 4:42 PM EDT dotloop verified

Seller's Initials: RZ 07/31/26 8:11 PM EDT dotloop verified

Copyright© 2026 by Georgia Association of REALTORS®, Inc.

# BUYER'S BROKER COMPENSATION EXHIBIT
## Exhibit "F"

Georgia REALTORS®

**2026 Printing**

(THIS EXHIBIT SHOULD NOT BE USED IF THE BROKER(S) COMPENSATION AND THE PARTY OR BROKER PAYING IT HAVE ALREADY BEEN AGREED TO IN A SEPARATE WRITTEN AGREEMENT AND IS NOT BEING MODIFIED)

This Exhibit is part of the Agreement with an Offer Date of 07/31/2026 for the purchase and sale of that certain Property known as: REDACTED Mineral Bluff, 30559, Georgia ("Agreement").

For and in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned do hereby agree as follows:

1. **Compensation Being Offered to Buyer's Broker.** The compensation of the undersigned Buyer's Broker for professional brokerage services ("Compensation") provided in the above-referenced transaction is set forth below and shall be paid by the following party or the Broker working with or representing such party:
   - **A. Compensation Paid by Seller to Buyer's Broker:** The Compensation to be paid by the Seller to Buyer's Broker in this transaction shall be as set forth below:
     - ☐ ________ percent (____%) of the sales price;
     - ☐ $________;
     - ☐ (other)________
   - **B. Compensation Shared by Seller's Broker with Buyer's Broker:** Such Compensation is a portion of the Compensation paid by Seller to Seller's Broker pursuant to a separate written agreement between Seller and Seller's Broker. The Compensation paid by Seller's Broker to Buyer's Broker in this transaction shall be as set forth below:
     - ☐ Three percent (3%) of the sales price;
     - ☐ $________;
     - ☐ (other)________

2. **General.**
   - **A.** Neither Broker shall have a claim for Compensation against the other in the event the closing does not occur.
   - **B.** Any licensee signing this Buyer's Broker Compensation Exhibit ("Compensation Exhibit") on behalf of their Broker warrants that they have full authority to sign on behalf of and bind the Broker to this Compensation Exhibit.
   - **C.** Once this Compensation Exhibit is initialed, it cannot be further modified (even by special stipulation or a later amendment to this Exhibit) without the express written consent of the Broker(s) whose Compensation is set forth or shared herein and any such modification shall be null and void without the affected Broker's written consent.
   - **D.** The Brokers referenced herein are express third-party beneficiaries of this Agreement. The rights to Compensation herein shall survive the Closing, and Brokers shall have all remedies available at law or in equity, in the event Broker is not timely paid.

**SPECIAL STIPULATIONS**: The following Special Stipulations are made a part of this Agreement.

☐ Additional Special Stipulations (F246) are attached.

[INITIALS ON FOLLOWING PAGE]

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Kimberly Bruner IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2026 by Georgia Association of REALTORS®, Inc.

GCS 07/31/26 4:45 PM EDT dotloop verified

1 Buyer's Initials

Date

HCS 07/31/26 4:42 PM EDT dotloop verified

2 Buyer's Initials

Date

KB 07/31/26 3:59 PM EDT dotloop verified

3 Buyer's Broker's Initials

07/31/2026

Date

RZ 07/31/26 8:11 PM EDT dotloop verified

1 Seller's Initials

Date

2 Seller's Initials

Date

RZ 07/31/26 8:11 PM EDT dotloop verified

3 Seller's Broker's Initials

07/31/2026

Date

Copyright© 2026 by Georgia Association of REALTORS®, Inc.